Jason A. Crotty (State Bar #196036)
jcrotty@mabr.com
MASCHOFF BRENNAN
450 Sansome Street, Suite 1005
San Francisco, California 94111
Telephone: (415) 969-6918

Benjamin Charkow (*pro hac vice* pending)
bcharkow@mabr.com
MASCHOFF BRENNAN
15 W. 26th Street, 7th Floor
New York, NY 10010
Telephone: (212) 529-3347

*Attorneys for Defendant*
RENESAS ELECTRONICS AMERICA INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| KOJI IP, LLC,<br><br>                                    Plaintiff,<br><br>          v.<br><br>RENESAS ELECTRONICS AMERICA, INC.,<br><br>                                    Defendant. | Case No.:  3:24-cv-03089-PHK<br><br>**DEFENDANT RENESAS ELECTRONICS AMERICA INC.'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES (35 U.S.C. § 285)**<br><br>Hearing Date: August 2, 2024<br>Time: 1:00 p.m.<br>Hon. Peter H. Kang |

## <u>NOTICE OF MOTION</u>

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on Friday, August 2, 2024, at 1:00 p.m., a hearing will be held before the Honorable Peter H. Kang at the San Francisco Courthouse, Courtroom F – 15th Floor, 450 Golden Gate Ave., San Francisco, CA 94102 on Defendant Renesas Electronics America Inc.'s Motion for Attorneys' Fees.

# **TABLE OF CONTENTS**

STATEMENT OF RELIEF ................................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 1

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL BACKGROUND ............................................................................. 1

        A.      Overview ................................................................................................. 1

        B.      The Asserted Patent .............................................................................. 2

        C.      The First Action ..................................................................................... 4

        D.      The Second Action ................................................................................ 4

        E.      The Third Action ................................................................................... 5

        F.      Ramey LLP:  Koji's Counsel and Business Partner ......................... 6

III.    LEGAL STANDARD .......................................................................................... 7

IV.     ARGUMENT ......................................................................................................... 8

        A.      REA is the Prevailing Party ................................................................. 8

        B.      These Cases are Exceptional ............................................................. 11

        C.      Bases for Sanctions Against Koji's Counsel ................................... 18

V.      AMOUNT OF FEES .......................................................................................... 20

VI.     CONCLUSION ................................................................................................... 21

i

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Cases</u>                                                                                                                                    Page(s)

3

*Bayer CropScience AG v. Dow AgroSciences LLC*,
4     851 F.3d 1302 (Fed. Cir. 2017) ................................................................................................. 8

5 *Blackbird Tech LLC v. Health In Motion LLC*,
    944 F.3d 910 (Fed. Cir. 2019) ......................................................................................... 15, 16
6

*Bright v. United States*,
7     603 F.3d 1273 (Fed. Cir. 2010) ............................................................................................... 11

8 *Bristol–Myers Squibb Co. v. Ben Venue Labs., Inc.*,
    246 F.3d 1368 (Fed. Cir. 2001) ............................................................................................... 16
9

*Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*,
10     532 U.S. 598 (2001) .................................................................................................................. 8

11

*Buster v. Greisen*,
12     104 F.3d 1186 (9th Cir. 1997) ................................................................................................. 17

13 *Camancho v. Bridgeport Fin., Inc.*,
    523 F.3d 973 (9th Cir. 2008) ................................................................................................... 20
14

*Cap Co., Ltd. v. McAfee, Inc.*,
15     No. 14-CV-05068-JD, 2015 WL 4734951 (N.D. Cal. Aug. 10, 2015) .................................... 13

16 *Commercial Space Management Co., Inc. v. The Boeing Co., Inc*,
    193 F.3d 1074 (9th Cir. 1999) ............................................................................................. 9, 10
17

*CRST Van Expedited, Inc. v. EEOC*,
18     578 U.S. 419 (2016) ............................................................................................................ 8, 11

19

*CTD Networks LLC v. Microsoft Corp.*,
20     No. W-22-CV-01049-XR, 2023 WL 5417141 (W.D. Tex. Aug. 22, 2023) ............................. 13

21 *Eon-Net LP v. Flagstar Bancorp*,
    653 F.3d 1314 (Fed. Cir. 2011) ............................................................................................ 7, 16
22

*EscapeX IP LLC v. Google LLC*,
23     No. 22-cv-08711-VC, 2023 WL 5257691 (N.D. Cal. Aug. 16, 2023) ............................*passim*

24

*Estate of Blue v. Cnty. of Los Angeles*,
25     120 F.3d 982 (9th Cir. 1997) ................................................................................................... 17

26 *Fink v. Gomez*,
    239 F.3d 989 (9th Cir. 2001) ................................................................................................... 18

27

28

*First Time Videos, LLC v. Oppold*,
No: 6:12-cv-1493-Orl-36KRS, 2013 WL 12094410 (M.D. Fla. Sept. 16, 2013) .................... 10

*Freedman Seating Co. v. Am. Seating Co.*,
420 F.3d 1350 (Fed. Cir. 2005) ................................................................................................ 13

*Geovector Corp. v. Samsung Elecs. Co. Ltd.*,
No. 16-CV-02463-WHO, 2017 WL 76950 (N.D. Cal. Jan. 9, 2017) ....................................... 13

*Gonzalez v. City of Maywood*,
729 F.3d 1196 (9th Cir. 2013) .................................................................................................. 20

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) .................................................................................................................. 20

*Highway Equip. Co. v. FECO, Ltd.*,
469 F.3d 1027 (Fed. Cir. 2006) ............................................................................................ 8, 10

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*,
876 F.3d 1372 (Fed. Cir. 2017) ............................................................................................... 15

*Kelly v. Wengler*,
822 F.3d 1085 (9th Cir. 2016) .................................................................................................. 20

*Lumen View Tech. LLC v. Findthebest.com, Inc.*,
811 F.3d 479 (Fed. Cir. 2016) .................................................................................................... 8

*Melamed v. Blue Cross of Cal.*,
557 F. App'x 659 (9th Cir. 2014) ............................................................................................... 9

*Nat'l Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.*,
676 Fed. Appx. 967 (Fed. Cir. 2017) ....................................................................................... 17

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
572 U.S. 545 (2014) .................................................................................................................... 7

*Ortiz & Assocs. Consulting, LLC v. VIZIO, Inc.*,
No. 3:23-CV-00791-N, 2024 WL 815553 (N.D. Tex. Feb. 27, 2024)................................. 7, 19

*Owens v. Kaiser Found. Health Plan, Inc.*,
244 F.3d 708 (9th Cir. 2001) ...................................................................................................... 9

*Pickman v. Am. Express Co.*, No. C,
11–05326 WHA, 2012 WL 258842 (N.D. Cal. Jan. 27, 2012).................................................. 9

*Power Mosfet Techs., L.L.C. v. Siemens AG*,
378 F.3d 1396 (Fed. Cir. 2004) .................................................................................................. 8

*Q-Pharma, Inc. v. Andrew Jergens Co.*,
360 F.3d 1295 (Fed. Cir. 2004) .................................................................................................. 8

iii

*Rambus Inc. v. Infineon Techs. AG*,
    318 F.3d 1081 (Fed. Cir. 2003) ............................................................................... 18

*Raniere v. Microsoft Corp.*,
    887 F.3d 1298 (Fed. Cir. 2018) ................................................................................. 8

*Realtime Adaptive Streaming LLC v. Netflix, Inc.*,
    41 F.4th 1372 (Fed. Cir. 2022) ................................................................................ 10

*Realtime Adaptive Streaming LLP v. Netflix, Inc.*,
    No. CV 19-6361-GW-JCx, 2020 WL 8024356 (C.D. Cal. Nov. 23, 2020) ........... 10

*Richter v. Oracle Am., Inc.*,
    No. 22-CV-04795-BLF, 2023 WL 8586690 (N.D. Cal. Dec. 8, 2023) ................... 17

*Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs.*,
    858 F.3d 1383 (Fed. Cir. 2017) ................................................................................. 7

*Ruegsegger v. Caliber Home Loans, Inc.*,
    No. SA CV 20-00531-DOC-KES, 2020 WL 2549934 (C.D. Cal. May 19, 2020) ...... 9

*Ryan v. Editions Ltd. W., Inc.*,
    786 F.3d 754 (9th Cir. 2015) ................................................................................... 20

*Schering Corp. v. Geneva Pharms., Inc.*,
    339 F.3d 1373 (Fed. Cir. 2003) ............................................................................... 16

*SFA Sys., LLC v. Newegg Inc.*,
    793 F.3d 1344 (Fed. Cir. 2015) .................................................................... 7, 15, 16

*Shipping & Transit, LLC v. Hall Enterprises, Inc.*,
    No. CV 16–06535–AG–AFM, 2017 WL 3485782 (C.D. Cal. July 5, 2017) ......... 16

*Stephens v. Tech Int'l, Inc.*,
    393 F.3d 1269 (Fed. Cir. 2004) ............................................................................... 15

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
    726 F.3d 1306 (Fed. Cir. 2013) ............................................................................... 14

*Thermolife Int'l LLC v. GNC Corp.*,
    922 F.3d 1347 (Fed. Cir. 2019) ............................................................................... 17

*TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*,
    529 F.3d 1364 (Fed. Cir. 2008) ............................................................................... 13

*Uniloc USA, Inc. v. Blackberry Corp.*,
    No. 3:18-CV-1883-N, 2021 WL 12104812 (N.D. Tex. July 1, 2021) ................... 10

*United Cannabis Corp. v. Pure Hemp Collective Inc.*,
    66 F.4th 1362 (Fed. Cir. 2023) ................................................................................. 8

*Verna IP Holdings, LLC v. Alert Media, Inc.*,
    No. 6:21-CV-00422-ADA, 2023 WL 5918320 (W.D. Tex. Sept. 11, 2023) ............................7

*Viavi Sols. Inc. v. Platinum Optics Tech. Inc.*,
    No. 5:20-CV-05501-EJD, 2023 WL 3236896 (N.D. Cal. May 2, 2023) ...................................8

*Vilox Techs., LLC v. Salesforce, Inc*.,
    No. 23-CV-05047-AMO, 2024 WL 2807924 (N.D. Cal. May 31, 2024)................................13

## Statutes

28 U.S.C. § 1927 ..........................................................................................................................18
28 U.S.C. § 2072 ..........................................................................................................................11
35 U.S.C. § 285 ......................................................................................................... 1, 7, 10, 11

## Rules

Cal. R. Prof. Conduct 4.2 ..............................................................................................................6
Fed. R. Civ. P. 41 ...........................................................................................................5, 9, 10, 11
N.D. Cal. Civil L.R. 11-4 ...............................................................................................................6

Defendant's Notice of Motion and Motion for Attorneys' Fees – 3:24-cv-03089-PHK

**STATEMENT OF RELIEF**

Defendant Renesas Electronics America Inc. ("REA") moves to recover its attorneys' fees from Plaintiff Koji IP, LLC ("Koji") pursuant to 35 U.S.C. § 285.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

REA brings this motion to address Koji's relentless pursuit of frivolous patent infringement claims, a crusade spanning three lawsuits in two courts.  The cases were pursued in a slipshod manner that imposed unnecessary costs on REA.  Along the way, Koji has cycled through a series of supposedly infringing products while strategically avoiding litigation on the merits.  Despite knowing REA was represented, Koji also directly contacted in-house counsel at Renesas.  REA repeatedly informed Koji that it would move for sanctions, but Koji continued to file and assert frivolous claims.  The result was three consecutive voluntary dismissals.

The facts demonstrate that these cases were filed for an improper purpose: to leverage the substantial cost of litigation to obtain a settlement notwithstanding the absence of a meritorious claim.  REA is the prevailing party and for the reasons detailed below, those cases are "exceptional."  Accordingly, pursuant to 35 U.S.C. § 285, REA seeks the fees improperly imposed on it by Koji.  Although the fees sought by REA are relatively modest, an award will serve to deter future frivolous claims.

**II.    FACTUAL BACKGROUND**

**A.    Overview**

Koji filed three patent infringement actions against REA, each asserting that REA products infringe claims 1-4 of U.S. Patent No. 10,790,703 ("the '703 patent"):

- *Koji IP, LLC v. Renesas Electronics America, Inc.*, Case No. 1:23-cv-01674-SKC (D. Col.) ("First Action"), filed on June 30, 2023, and voluntarily dismissed on September 6, 2023.

- *Koji IP, LLC v. Renesas Electronics America, Inc.*, Case No. 3:23-cv-05752-LJC (N.D. Cal.) ("Second Action"), filed on November 8, 2023, and voluntarily dismissed on January 30, 2024.

- *Koji IP, LLC v. Renesas Electronics America, Inc.*, Case No. 3:24-cv-03089-PHK (N.D. Cal.) ("Third Action"), filed on May 22, 2024, and voluntarily dismissed on June 12, 2024.

The complaints in these actions are substantively identical and the Second and Third Actions are largely cut-and-paste versions of the First Action.  REA has not been the only target: Koji has also asserted the '703 patent against Energous Corp. (Case No. 4:23-cv-05750 (N.D. Cal.)), and GuRu Wireless, Inc. (Case No. 2:24-cv-03713 (C.D. Cal.)).  The Energous case quickly settled, and the GuRu Wireless case is pending.

## B.    The Asserted Patent

The '703 patent ("Smart wireless power transfer between devices") relates to a system consisting of a charging device (referred to as a "powering device") that is configured to wirelessly charge another device ("powered device").  (*See* Ex. A (Abstract)).[1]  The patent also states that the powering device may be powered by a battery ("battery power source").  (*Id.* at claim 1; *see also, e.g., id.*, 8:40-9:8; Fig. 5 (referring to battery 109).)  The claims are directed to controlling wireless charging operations performed by a powering device based on how the charging operation affects the battery used to power the powering device.  (*See, e.g., id.*, 40:62-41:8.)  The patent differentiates between battery 109 of the powering device and battery 209 of the powered device.  (*See, e.g., id.*, 9:10-16; 10:54-64; Fig. 6.)  In other words, the '703 patent is explicit about there being two separate batteries, one that supplies power to the powering device for charging and a second on the powered device that is charged.  All four claims are system claims and Claim 1 is representative:

> A wireless power transfer system for wirelessly charging a powered device, comprising:
> - a battery power source for supplying power to the wireless power transfer system;
> - wireless communication circuitry for establishment of a close-range wireless communication over which a message associated with the powered device is communicated from the powered device; and
> - wireless powering circuitry including a transmitter configured to emit electromagnetic waves to form a radiative powering region within which the electromagnetic waves can be received by wireless powered circuitry of the powered device to generate power for charging a battery in the

---

[1]All cited Exhibits are attached to the Declaration of Benjamin Charkow filed herewith.

powered device, the wireless powering circuitry being configured to be activated when the close-range wireless communication is established,

- wherein transmission power of the wireless communication circuitry is so controlled as to make a range of the close-range wireless communication substantially narrower than a range of the radiative powering region,

- wherein the message is issued by the powered device when a battery level of the battery is below a predetermined threshold, and the wireless powering circuitry is configured to be activated in response to receipt of the message from the powered device over the established close-range wireless communication, and

- wherein, when the wireless power transfer system is powered by the battery power source, a determination is made whether a level of drop in a battery level of the battery power source in a given time period is below a threshold, so that activation of the wireless powering circuitry is allowed only when the level of drop is determined to be below the threshold.

(*Id.* at claim 1.)  Thus, the claims are directed to a "wireless power transfer system" containing at least a "battery power source" and "transmitter" that operates as a powering device for charging a battery of a "powered device," with requirements on both the powering and powered sides of the system.

To support its contentions, Koji attached claim charts to the complaints, but those charts lack any reasonable substance and combine multiple products.  For most limitations, the charts simply parrot the claim language without explaining *how* the alleged infringement occurs.  (*See* Ex. B-2, Ex. H-2, D.I. 1-2.)  All the accused REA products have been semiconductor devices or evaluation kits for semiconductor devices.  The accused REA products are not wireless power transfer systems that include a "battery power source" or a "transmitter."  Rather, they are *components* that REA customers can use in systems they design and manufacture.  For example, a representative image of the REA components accused in the Third Action is provided below:



Defendant's Notice of Motion and Motion for Attorneys' Fees – 3:24-cv-03089-PHK

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### C.    The First Action

The First Action was filed on June 30, 2023, in the District of Colorado.  (*See* Ex. B.)  The accused product was the P9222-R-EVK evaluation kit ("P9222-EVK"; *see* Ex. BB) and, as demonstrated in detail below, the infringement allegations were frivolous.  At the outset, REA also told Koji that there were nominal U.S. sales of the accused product (approximately $5,000).  Thus, even putting aside the substantive challenges to Koji's claims, there was no possibility of meaningful damages.  (*See* Ex. C.)

The complaint alleged that venue was appropriate because a third-party sales representative of REA was located in Colorado.  (*See* Exs. B, C.)  However, because venue cannot be based on the location of a third party, REA informed Koji that the case had been filed in the wrong court.  (*See id.*)  But Koji steadfastly maintained that Colorado was proper (*See* Ex. D at 4), forcing REA to file a motion to dismiss for improper venue (and other shortcomings, including infringement and pleading deficiencies).  (*See* Ex. F.)  Although it had insisted that venue was proper, Koji responded to the motion by voluntarily dismissing the case rather than filing an opposition.  (*See* Ex. G.)  Thus, the cost of the motion (including a declaration from an REA employee regarding venue) was entirely avoidable and unnecessary.  Importantly, the REA motion to dismiss plainly made Koji aware of some of the many critical deficiencies with its case, including inescapable conclusion that the accused REA products could not infringe the claims of the '703 patent.

### D.    The Second Action

Nevertheless, Koji filed the Second Action in this Court on November 8, 2023.  (*See* Ex. H.)  Although plainly already aware of many substantive shortcomings, the new complaint fixed nothing.  Instead, it was a cut-and-paste of the original complaint — so much so that allegations about venue and personal jurisdiction being proper in Colorado remained.  (*Id.*, ¶¶ 3-6.)  On December 22, 2023, REA sent Koji a letter, again detailing numerous inadequacies, including non-infringement, but also multiple pleading failures.  (*See* Ex. I.)  Many of these issues were raised in the First Action.  Koji never responded to that letter.  Rather, it apparently

1   scoured the REA website searching for other wireless charging products that it could accuse of

2   infringement.

3         On January 3, 2024, Koji identified three new supposedly infringing products.  (*See*

4   Ex. J.)  Predictably, the claims against these newly identified products were even more frivolous.

5   On January 18, 2024, REA responded in writing, noting that the supposed infringement

6   allegations were frivolous because, again, the accused products did not include, among others, a

7   "battery power source" or a "transmitter."  (*See* Ex. N.)  Moreover, as detailed below, *two of the*

8   *newly accused REA products were clearly sold before the earliest priority date of the '703*

9   *patent, making them prior art.*  (*Id.*)

10         On January 30, 2024, the day after REA sought to meet and confer regarding another

11   motion to dismiss (*see* Ex. T), Koji voluntarily dismissed the Second Action (*see* Ex. U).

12   Pursuant to the two dismissal rule (set forth in detail below), this second dismissal operated as an

13   adjudication on the merits against Koji.  *See* Fed. R. Civ. P. 41(a)(1)(B).  Thus, the matter should

14   have been concluded.

15         **E.**     **The Third Action**

16         Undeterred, Koji filed the Third Action on May 22, 2024 (D.I. 1).  The new complaint

17   abandoned the previously accused product in favor of one identified during the meet and confer

18   for the Second Action.  (However, the products that predate the '703 patent were not accused in

19   the Third Action, and Koji simply ignored that it had alleged that prior art products infringe.)  As

20   detailed below, Koji's infringement allegations were again baseless.

21         Koji sent the complaint to REA but did *not serve* REA with any summons to appear in

22   court.  Along with the copy of the complaint, Koji included a letter offering to settle for $59,000.

23   (*See* Ex. V.)  The letter stated that the proposed amount was not a "valuation" of the merits, but

24   rather was based on a supposed shared desire to avoid litigation costs.  The letter stated that the

25   offer would be withdrawn if REA responded to the complaint.  (*Id.*)  In other words, Koji offered

26   a settlement far below the cost of litigation even before it formally served the complaint.

27         On May 31, 2024, REA sent a letter to Koji explaining that the case had already been

28   resolved by operation of the two dismissal rule, and (again) identifying substantive defects with

the case.  (*See* Ex. W.)  That letter plainly notified Koji that REA continued to be represented by the same counsel that had represented it in the first two actions.  (*See id*.)  Nevertheless, on June 7, 2024, Koji's counsel, Mr. Ramey, sent an email directly to Mr. Makasi Yabe — in house counsel at Renesas Electronics Corporation (the parent company of REA) — seeking to settle the matter.  (*See* Ex. X ("We are hopeful to discuss an early resolution with you").)  Contacting a party known to be represented is a violation of the rules of professional responsibility in California.  *See* Cal. R. Prof. Conduct 4.2; *see also* N.D. Cal. Civil L.R. 11-4.  Counsel for Renesas sent a letter flagging the issue and asking that future communications be directed to them.  (*See* Ex. Y.)

Shortly thereafter, Koji dismissed its case for the third time (D.I. 12), this time explicitly with prejudice.

### F.    Ramey LLP:  Koji's Counsel and Business Partner

All three actions were filed by William P. Ramey, III and other lawyers at Ramey LLP. The Certificate of Interested Entities (D.I. 4) states that Ramey LLP also has an interest in the outcome of the litigation.  Thus, as to the cases brought against REA, it appears that Ramey LLP is both counsel and client.  According to the LexisNexis legal analytics platform Lex Machina, Mr. Ramey is counsel on approximately 195 active patent cases, and Ramey LLP consistently ranks among the most active plaintiff-side patent litigation firms in the United States.  (*See* Ex. Z.)  The overwhelming majority of cases filed by Ramey LLP appear to be quickly settled or dismissed:  the median time to termination is 149 days.  (*Id*. at 2.)  Notwithstanding a docket of nearly 200 active patent infringement cases, the website for Ramey LLP identifies only six lawyers at the firm.

Clients of Ramey LLP have already been ordered to pay attorneys' fees for similar actions in this District and others.  *See EscapeX IP LLC v. Google LLC*, No. 22-cv-08711-VC, 2023 WL 5257691 (N.D. Cal. Aug. 16, 2023).  In awarding fees in the *EscapeX* case, Judge Chhabria stated: "This was, in short, an effort to force a modest settlement by pestering a tech giant with a frivolous suit on the assumption that the tech giant will prefer to capitulate than fight back."  *Id*. at *2.  Not only did the Court grant a motion to award fees under § 285, it also

1   pointedly stated that the "attorneys for EscapeX are lucky that Google did not separately ask the

2   Court to impose sanctions on them." *Id.* at *1; *see also Ortiz & Assocs. Consulting, LLC v.*

3   *VIZIO, Inc.*, No. 3:23-CV-00791-N, 2024 WL 815553, at *2 (N.D. Tex. Feb. 27, 2024) (granting

4   fees under § 285 and noting "history of filing and dismissing suits," "making a settlement

5   demand below the cost of defense" and "substantive weakness" of litigation position); *Verna IP*

6   *Holdings, LLC v. Alert Media, Inc.*, No. 6:21-CV-00422-ADA, 2023 WL 5918320, at *2 (W.D.

7   Tex. Sept. 11, 2023) (finding litigation conduct "objectively unreasonable" after adverse

8   *Markman* ruling).

9   **III.    LEGAL STANDARD**

10      "The court in exceptional cases may award reasonable attorney fees to the prevailing

11  party." 35 U.S.C. § 285. An exceptional case is "one that stands out from others with respect to

12  the substantive strength of a party's litigating position (considering both the governing law and

13  the facts of the case) or the unreasonable manner in which the case was litigated." *Octane*

14  *Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). Courts consider "the

15  totality of the circumstances" when deciding whether a case is "exceptional." *Id.* In making the

16  determination, courts consider factors such as frivolousness, motivation, objective

17  unreasonableness and the need to advance considerations of deterrence. *Id.* at 554 n.6.

18      Filing an action for an improper purpose — such as attempting to leverage the cost of

19  litigation into a quick settlement regardless of the merits — is relevant to the "exceptional case"

20  inquiry. *See, e.g., SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1350 (Fed. Cir. 2015) ("[A]

21  pattern of litigation abuses characterized by the repeated filing of patent infringement actions for

22  the sole purpose of forcing settlements, with no intention of testing the merits of one's claims, is

23  relevant to a district court's exceptional case determination under § 285."); *see also Eon-Net LP*

24  *v. Flagstar Bancorp*, 653 F.3d 1314, 1327 (Fed. Cir. 2011) (noting that settlement offers that

25  were "less than ten percent of the cost that [a defendant] expended to defend suit — effectively

26  ensured that [a plaintiff's] baseless infringement allegations remain unexposed"); *see also*

27  *Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs.*, 858 F.3d 1383 (Fed.

28

1    Cir. 2017) (reversing decision declining to award fees where court failed to consider patent

2    holder's nuisance value lawsuits against third parties).

3         Pre-suit diligence is a factor that may be considered in the totality-of-circumstances

4    analysis of whether a case is exceptional.  *See Bayer CropScience AG v. Dow AgroSciences LLC*,

5    851 F.3d 1302, 1307 (Fed. Cir. 2017); *Lumen View Tech. LLC v. Findthebest.com, Inc.*, 811 F.3d

6    479, 481–83 (Fed. Cir. 2016).  At a minimum, any competent pre-suit investigation into

7    infringement requires a party "interpret the asserted patent claims and compare the accused

8    device with those claims before filing a claim alleging infringement."  *Q-Pharma, Inc. v. Andrew*

9    *Jergens Co.*, 360 F.3d 1295, 1300-01 (Fed. Cir. 2004).

10   **IV.    ARGUMENT**

11        **A.    REA is the Prevailing Party**

12        A litigant is a prevailing party if (1) there is a change in the parties' legal relationship

13   (2) that has the necessary judicial imprimatur to be judicially sanctioned.  *See Buckhannon Bd. &*

14   *Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598 (2001)).  While a

15   decision on the merits is not required, *see CRST Van Expedited, Inc. v. EEOC*, 578 U.S. 419,

16   431-32 (2016), dismissal of a party's infringement suit with prejudice is "tantamount to a

17   decision on the merits" and is sufficient to establish an opposing party as prevailing.  *Raniere v.*

18   *Microsoft Corp.*, 887 F.3d 1298, 1307 (Fed. Cir. 2018); *see also Highway Equip. Co. v. FECO,*

19   *Ltd.*, 469 F.3d 1027, 1035 (Fed. Cir. 2006) (a voluntary dismissal with prejudice "has the

20   necessary judicial imprimatur to constitute a judicially sanctioned change in the legal

21   relationship of the parties").

22        REA is the prevailing party because Koji dismissed the instant action with prejudice (D.I.

23   12).  *See United Cannabis Corp. v. Pure Hemp Collective Inc.*, 66 F.4th 1362 (Fed. Cir. 2023);

24   *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1416 (Fed. Cir. 2004) ("The

25   dismissal of a claim with prejudice, however, is a judgment on the merits under the law of the

26   Federal Circuit."); *Viavi Sols. Inc. v. Platinum Optics Tech. Inc.*, No. 5:20-CV-05501-EJD, 2023

27   WL 3236896 (N.D. Cal. May 2, 2023).

28

1    REA is also the prevailing party in the Second Action because Koji twice dismissed

2    pursuant to Rule 41(a)(1)(A), and Rule 41(a)(1)(B) states: "if the plaintiff previously dismissed

3    any federal- or state-court action based on or including the same claim, a notice of dismissal

4    operates as an adjudication on the merits."  This provision is known as the "two dismissal rule."

5    *See e.g., Commercial Space Management Co., Inc. v. The Boeing Co., Inc*, 193 F.3d 1074, 1076

6    (9th Cir. 1999).  The policy behind the two dismissal rule is to "'eliminate the annoying of a

7    defendant by being summoned into court in successive actions and then, if no settlement is

8    arrived, requiring him to permit the action to be dismissed and another one commenced at

9    leisure.'"  *Pickman v. Am. Express Co.*, No. C 11–05326 WHA, 2012 WL 258842, at *3 (N.D.

10   Cal. Jan. 27, 2012) (citation omitted).  In other words, the rule was designed for precisely these

11   circumstances.

12   The inquiry under Rule 41(a)(1)(B) is not whether the claims in the various complaints

13   are exactly the same, but whether the lawsuits arise from the "same transactional nucleus of

14   facts" such that the claims are "all grounds for recovery which could have been asserted, whether

15   they were or not, in a prior suit between the same parties."  *Owens v. Kaiser Found. Health Plan,*

16   *Inc.*, 244 F.3d 708, 714 (9th Cir. 2001) (quotation marks and citation omitted).  "Thus, as long as

17   a defendant was 'twice voluntarily dismissed under Rule 41' with respect to 'substantially the

18   same' claims, then dismissal with prejudice is proper 'under the two dismissal rule.'"

19   *Ruegsegger v. Caliber Home Loans, Inc*., No. SA CV 20-00531-DOC-KES, 2020 WL 2549934,

20   at *1 (C.D. Cal. May 19, 2020) (*quoting Melamed v. Blue Cross of Cal*., 557 F. App'x 659, 661-

21   62 (9th Cir. 2014)).  As detailed above, each of the three cases Koji brought against REA involve

22   the same allegation that REA products infringe claims 1-4 of the '703 patent.  Accordingly, the

23   actions arise out of the "same transactional nucleus of facts."  *Owens*, 244 F.3d at 714.  Thus, the

24   two dismissal rule applies, and dismissal of the Second Action operated as an "adjudication on

25   the merits."  Fed. R. Civ. P. 41(a)(1)(B).[2]

26

27   ───────────────

28   [2] Although the dismissal of the Second Action stated that it was without prejudice
     (Ex. U), that label is irrelevant.  *See Commercial Space Management*, 193 F.3d at 1080 ("the
     label a plaintiff attaches to a second Rule 41(a)(1) dismissal is irrelevant if a subsequent action is

1     As a dismissal pursuant to Rule 41(a)(1)(A) deprives the court of jurisdiction upon its

2     filing, the Ninth Circuit has held that whether a second dismissal is subject to the two dismissal

3     rule is an issue that becomes ripe and can be determined *only in a third action*, if and when one

4     is filed. *See Commercial Space Management*, 193 F.3d at 1076.  Thus, it is appropriate for the

5     Court to assess whether REA is a "prevailing party" in the Second Action in the Third Action.

6     Indeed, under *Commercial Space Management*, there is no earlier time to do it.

7     Although the Federal Circuit has not squarely addressed the issue, several courts have

8     held that an adjudication on the merits pursuant to the two dismissal rule makes a defendant the

9     prevailing party for § 285 purposes.  *See Realtime Adaptive Streaming LLC v. Netflix, Inc.*, No.

10    CV 19-6361-GW-JCx, 2020 WL 8024356, at *3 (C.D. Cal. Nov. 23, 2020), *aff'd*, 41 F.4th 1372

11    (Fed. Cir. 2022)[3]; *Uniloc USA, Inc. v. Blackberry Corp.*, No. 3:18-CV-1883-N, 2021 WL

12    12104812 (N.D. Tex. July 1, 2021); *but see First Time Videos, LLC v. Oppold*, No: 6:12-cv-

13    1493-Orl-36KRS, 2013 WL 12094410, at *5 (M.D. Fla. Sept. 16, 2013), *aff'd*, 559 F. App'x 931

14    (11th Cir. 2014).

15    An adjudication on the merits pursuant to the two dismissal rule plainly changes the

16    parties' legal relationship.  And Rule 41 itself requires the conclusion that such a dismissal

17    carries a sufficient judicial imprimatur for a defendant to be awarded prevailing party status (*i.e.*,

18    the lawsuit has ended with an adjudication on the merits).  *See Realtime Adaptive Streaming*,

19    2020 WL 8024356, at *3-5; *cf. Highway Equip.*, 469 F.3d at 1035 (voluntary dismissal with

20

21

22

23    filed 'based on or including the same claim,' because Rule 41(a)(1) itself instructs that such a

24    dismissal 'operates as an adjudication upon the merits.'") (quoting Fed. R. Civ. P. 41(a)(1)).

25    [3] On appeal, the Federal Circuit sidestepped the issue.  *See Realtime Adaptive Streaming
      LLC v. Netflix, Inc.*, 41 F.4th 1372, 1375 n.2 ("On appeal, Realtime challenges whether its two
      voluntary dismissals rendered Netflix a prevailing party. But we need not resolve that question

26    here.").  However, Judge Reyna issued a separate opinion stating: "I dissent in part because I

27    also believe that the district court did not err in determining that two voluntary dismissals
      without prejudice is sufficient to confer prevailing party status under 35 U.S.C. § 285."  *Id.* at

28    1381 (Reyna, J., concurring-in-part and dissenting-in-part).

prejudice under Rule 41(a)(2) carries necessary judicial imprimatur to award prevailing party status).[4]

> Common sense undermines the notion that a defendant cannot "prevail" unless the relevant disposition is on the merits. Plaintiffs and defendants come to court with different objectives. A plaintiff seeks a material alteration in the legal relationship between the parties. A defendant seeks to prevent this alteration to the extent it is in the plaintiff's favor. The defendant, of course, might prefer a judgment vindicating its position regarding the substantive merits of the plaintiff's allegations. The defendant has, however, fulfilled its primary objective whenever the plaintiff's challenge is rebuffed, irrespective of the precise reason for the court's decision.

*CRST*, 578 U.S. at 431. REA met its objective and Koji's challenge was "rebuffed" when the dismissal was filed, such dismissal operating as an adjudication on the merits and precluding Koji from bringing the claim again. REA is thus the prevailing party in both the Second and Third Actions.

### B.    These Cases are Exceptional

Koji's cases against REA are "exceptional" because of the frivolous nature of the infringement claims and the re-filing of the same claims even after there was an adjudication on the merits. Moreover, these cases were filed for an improper purpose, to leverage the cost of litigation to obtain a quick settlement without regard to the merits of the action. Koji also accused prior art products, rendering the asserted patent invalid and Mr. Ramey improperly contacted Renesas in-house counsel to settle the case despite knowing that Renesas was represented. Koji and its counsel also had express written notice: REA repeatedly identified the many deficiencies of Koji's cases and stated that it might seek its fees under § 285. But Koji continued filing and pursuing frivolous claims. Considering the totality of the circumstances, the Second and Third Actions are "exceptional."

### 1.    Koji's Infringement Allegations Were Frivolous

As set forth above, Claim 1 (and each claim of the patent) requires a "battery power source" and a "transmitter" on the powering side, among other limitations. Thus, to show

---

[4] The Rules themselves reflect the judicial imprimatur of the U.S. Supreme Court. *See* 28 U.S.C. § 2072; *see also Bright v. United States*, 603 F.3d 1273 (Fed. Cir. 2010) (the Federal Rules of Civil Procedure are deemed to have the force and effect of a federal statute).

1   infringement of any claim, Koji would need to demonstrate that a single REA product satisfied

2   both limitations (as well as the other limitations in the claims).  As detailed above as to the

3   Second Action, REA put Koji on notice via the motion to dismiss in the First Action that the

4   P9222-EVK lacked at least a "battery power source" and a "transmitter."  (*See* Ex. F at 9.)

5   Nevertheless, Koji filed the Second Action with the same infringement allegations.

6          The P9222-EVK Manual — relied upon by Koji as the basis for its infringement claims

7   — demonstrates that the P9222-EVK contains neither a "battery power source" nor a

8   "transmitter."  It states that "additional lab equipment is required when using the kit," including a

9   "power source" and a "WPC certified transmitter":

10
11
12
13
14
15
16



17  (*See* Ex. AA at 5 (highlighting added).)  Thus, the document *cited by Koji* demonstrates that the

18  P9222-EVK does not infringe.  Moreover, the power supply that would be used with this type of

19  evaluation kit would be a bench power supply, a common piece of laboratory equipment that

20  obtains power from an outlet.  That is not a *battery* power source, as required by the claims.

21  Predictably, Koji abandoned its assertion that the P9222 product infringed in the Third Action,

22  highlighting the frivolousness of that claim.

23          The Third Action purported to accuse "Renesas Electronics's PTX130W/PTX30W."  *See*

24  (D.I. 1-2 (claim chart).)  However, these are two separate products (*see* Exs. BB, CC) and Koji

25  also cited to the PTX130W-30W-EVK evaluation kit, a third product.  Koji also cites a

26  document entitled "PTX130W/PTX30W Hardware Integration" ("Integration Manual") which

27  sets forth guidelines regarding how an REA customer might integrate those REA components

28  into a customer product.  (*See* D.I. 1-2; Ex. DD (Integration Manual).)  Although the claim chart

- 12 -

suggests otherwise, the Integration Manual does not describe an actual product.  Rather, it shows an *exemplary application* that could include REA components and describes how they might be integrated.  Thus, the "accused product" is not product at all.  Rather, it is an amalgam of three separate products and an example from a guidance document.

Under the "all elements" rule, an accused device must contain each limitation of the claim, either literally or by an equivalent, to be infringing.  *See, e.g., TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc*., 529 F.3d 1364, 1379 (Fed. Cir. 2008) (*quoting Freedman Seating Co. v. Am. Seating Co*., 420 F.3d 1350, 1358 (Fed. Cir. 2005)).  Accordingly, Koji's attempt to combine different products is improper.  *See, e.g., Geovector Corp. v. Samsung Elecs. Co. Ltd*., No. 16-CV-02463-WHO, 2017 WL 76950, at *4 (N.D. Cal. Jan. 9, 2017) ("This hodgepodge of different attributes from various different accused products and third-party sources is insufficient to chart a single product against all elements of Claim 1."); *Cap Co., Ltd. v. McAfee, Inc*., No. 14-CV-05068-JD, 2015 WL 4734951, at *2 (N.D. Cal. Aug. 10, 2015) ("Infringement cannot be shown by a muddled hash of elements from different products…").[5]

Even putting aside the improper combining of multiple products, Koji's infringement allegations are baseless.  For example, Fig. 1 of the REA Integration Manual depicts a block diagram of an exemplary application, with the two accused REA components indicated by gray shading.

---

[5] Improperly cobbling together features from separate products appears to be something of a specialty of Ramey LLP.  *See, e.g., Vilox Techs., LLC v. Salesforce, Inc*., No. 23-CV-05047-AMO, 2024 WL 2807924, at *2 (N.D. Cal. May 31, 2024) ("Vilox's cobbling together of different screenshots, features, and products falls short."); *CTD Networks LLC v. Microsoft Corp*., No. W-22-CV-01049-XR, 2023 WL 5417141, at *6 (W.D. Tex. Aug. 22, 2023) ("As the Court has repeatedly reminded Plaintiff, it cannot mix and match across products in this fashion."); *EscapeX*, 2023 WL 5257691, at *1 ("EscapeX's initial and first amended complaints cobbled together features from two different YouTube products to allege infringement of its purported patent.").  All these cases involved parties represented by Ramey LLP.  Notwithstanding these admonitions, Ramey LLP lawyers continue to improperly combine features from multiple products.

Figure 1. PTX130W/PTX30W Application Block Diagram

(Ex. EE at 3.)  Notably, the battery and transmitter (*i.e.*, poller antenna) are *not* included in either of the REA components, nor are the microcontroller or other power management components.

As to "battery power source," Koji's claim chart points to the PTX30W, which is on the "listener" (*i.e.*, powered device) side of the system.  (*See* D.I. 1-2 at 5.)  As indicated above, the '703 patent is clear that the alleged invention is directed to systems with two batteries, one that supplies power to the powering device for performing wireless charging and a second on the powered device that is charged via the powering device.  However, Koji alleged infringement of the battery power source of the powering device based only on a battery of a "powered device" being charged, not a battery of a "powering device" providing the charging.  Koji's assertion is completely nonsensical in that the battery that is being charged cannot also be the battery that is supplying the power to perform the charging.  Additionally, for the last two "wherein" clauses, the Koji claim chart identifies the "power management" component in Figure 1.  (*See id.* at 10-11.)  As indicated above, that component is not part of the PTX130W, and such a component (and its manner of operation) would be selected by an REA customer for that customer's application.

For these reasons, the infringement claims in the Second and Third Actions are baseless. It is particularly frivolous to cobble together multiple products and a guidance document and yet still have multiple missing limitations and infringement allegations based on a physical impossibility (*i.e.*, a battery that recharges itself).  *See, e.g., Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1327 (Fed. Cir. 2013) (an objectively baseless or frivolous patent case is

- 14 -

1    one "that no reasonable litigant could reasonably expect success on the merits."); *Stephens v.*

2    *Tech Int'l, Inc.*, 393 F.3d 1269, 1273–74 (Fed. Cir. 2004) ("A frivolous infringement suit is one

3    which the patentee knew or, on reasonable investigation, should have known was baseless.")

4    (quotation marks and citation omitted).  Moreover, it is appropriate for the Court to consider "the

5    need to deter similarly weak arguments in the future."  *Inventor Holdings, LLC v. Bed Bath &*

6    *Beyond, Inc.*, 876 F.3d 1372, 1377–78 (Fed. Cir. 2017); *see also Blackbird Tech LLC v. Health*

7    *In Motion LLC*, 944 F.3d 910, 917 (Fed. Cir. 2019).

8                    **2.      Koji's Actions Against REA Were Filed for an Improper Purpose**

9            It is improper to leverage the high cost of patent litigation to obtain a quick nominal

10   settlement notwithstanding the absence of meritorious claims.  *See, e.g.*, *SFA Sys.*, 793 F.3d at

11   1350.  As detailed above, Koji's infringement allegations have changed but have nevertheless

12   consistently been frivolous.  Koji also promptly sought nominal settlements based not on the

13   strength of the infringement case or information regarding sales of the accused products, but on

14   litigation costs.  Additionally, Koji refused to engage on the substance of the case and

15   strategically avoided motion practice that would have tested its claims.  Even after REA

16   identified the incurable defects in its case, Koji continued to file additional lawsuits, none of

17   which addressed the previously identified defects.[6]  In short, this case has all the hallmarks of a

18   case filed for an improper purpose, namely, to leverage the high cost of litigation to obtain a

19   settlement regardless of the merits.  In addition to the baselessness of the infringement claims

20   addressed above, the following are additional aspects of the totality of the circumstances that

21   demonstrate that these actions were filed for an improper purpose.

22           ***Quick Settlement Offers Below the Cost of Defense***:  Koji made settlement offers far

23   below the cost of defense, including as low as $5,000.  (*See* Ex. M.)  Even before serving the

24

25           [6] During the Second Action, REA sent a detailed letter setting forth the many pleading
     inadequacies of the Koji compliant (*e.g.*, insufficient detail to allege infringement under
26   *Iqbal/Twombly*, and failure to properly plead inducement and contributory infringement, including
     pleading knowledge of the patent, knowledge of infringement, and no substantial non-infringing
27   use).  (*See* Ex. I.)  The letter included comprehensive citations to cases from the Federal Circuit
     and this District.  (*Id.*)  Koji dismissed its case rather than have the complaint tested via a motion
28   to dismiss.  Nevertheless, Koji filed a substantively identical complaint in the Third Action.

complaint in the Third Action, Koji proposed a $59,000 settlement.  (*See* Ex. V.)  The amounts demanded are a tiny fraction of the cost of defense in a typical patent case and indicate that Koji sought to leverage the cost of litigation to quickly obtain a nominal settlement.  *See, e.g., Blackbird Tech*, 944 F.3d at 910 (no abuse of discretion in awarding § 285 fees where plaintiff make multiple settlement demands that were far less than anticipated cost of defense) (*citing Eon-Net*, 653 F.3d at 1327 (affirming district court determination that plaintiff "acted in bad faith by exploiting the high cost to defend complex litigation to extract a nuisance value settlement")).

*Accusing Prior Art Products*:  In its effort to find additional products to accuse to salvage the Second Action, Koji accused REA prior art products of infringement.  (*See* Ex. J.) The earliest Koji application was filed in December 2016 (Ex. A at 1, (60)), but the allegedly infringing products have datasheets dated May 2016 (RX111) and July 2014 (ISL1801).  (*See* Ex. N.)  It is well-established that a product "which would literally infringe if later in time anticipates if earlier."  *See, e.g., Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373, 1379 (Fed. Cir. 2003) (*quoting Bristol–Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1378 (Fed. Cir. 2001).)  Koji has never explained how the claims of the '703 patent can be valid when two allegedly infringing products predate the earliest potential priority date.  At a minimum, accusing the prior art indicates that Koji's due diligence was essentially non-existent. *See also EscapeX*, 2023 WL 5257691, at *1 ("[a] basic online search would have revealed that the accused 'Auto Add' feature predated EscapeX's patent.").

*Avoidance of the Merits*:  Koji dismissed the First Action rather than oppose REA's motion to dismiss (*see supra*) and dismissed the Second Action when REA proposed meeting and conferring on an REA motion to dismiss in that Action (*see* Exs. T, U).  Koji did not respond to multiple substantive letters.  The strategic avoidance of any exercise testing the merits of patent infringement claims is a relevant § 285 factor.  *See SFA Sys.*, 793 F.3d at 1350 ("[A] pattern of litigation abuses characterized by the repeated filing of patent infringement actions for the sole purpose of forcing settlements, with no intention of testing the merits of one's claims, is relevant to a district court's exceptional case determination under § 285."); *Shipping & Transit, LLC v. Hall Enterprises, Inc.*, No. CV 16–06535–AG–AFM, 2017 WL 3485782, at *8 (C.D. Cal.

1  July 5, 2017) ("[t]hese tactics present a compelling need for deterrence and to discourage

2  exploitative litigation by patentees who have no intention of testing the merits of their claims.").

3       *Prior Notice of Frivolousness*:  REA repeatedly informed Koji that its claims were

4  baseless and that it might seek fees under § 285 if the action was not promptly dismissed.  *See*

5  Exs. C, E, I ("[p]lease be advised that if this matter moves forward, Renesas will seek to have

6  this case declared "exceptional" under § 285 and it will seek its fees), L, N ("please be again

7  advised that if this matter moves forward, Renesas will seek to have this case declared

8  "exceptional" under § 285 and it will seek its fees."), R, W ("[p]lease be again advised that if this

9  matter moves forward, Renesas will seek to have this case declared "exceptional" under § 285

10  and it will seek its fees.").  Notice of a frivolous position is relevant to the exceptional case

11  analysis.  *See generally Thermolife Int'l LLC v. GNC Corp.*, 922 F.3d 1347, 1357 (Fed. Cir.

12  2019) ("Recently, we have stressed that one consideration that can and often should be important

13  to an exceptional-case determination is whether the party seeking fees 'provide[d] early, focused,

14  and supported notice of its belief that it was being subjected to exceptional litigation behavior.'")

15  (citation omitted); *Nat'l Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.*, 676 Fed. Appx.

16  967, 973 (Fed. Cir. 2017) (affirming award of fees where party was "on notice" of potentially

17  frivolous position based on information provided by opposing party yet took no remedial action);

18  *EscapeX*, 2023 WL 5257691, at *1 ("Google placed EscapeX on notice of the baselessness of its

19  claims early and often, urging it to dismiss the case.").  In these cases, REA repeatedly put Koji

20  on notice via: (1) a motion to dismiss, (2) multiple letters, and (3) multiple emails.  Yet not only

21  did it do nothing to remedy its position, Koji filed more cases against REA.

22       **3.**      **Filing an Action That Was Barred by Preclusion**

23       As set forth above, the Third Action was barred under the two dismissal rule because the

24  dismissal of the Second Action operated as an adjudication on the merits.  The Ninth Circuit has

25  held — in the Rule 11 context — that asserting claims barred by *res judicata* is baseless.  *See,*

26  *e.g., Buster v. Greisen*, 104 F.3d 1186, 1190 (9th Cir. 1997); *Estate of Blue v. Cnty. of Los*

27  *Angeles*, 120 F.3d 982, 985 (9th Cir. 1997); *see also Richter v. Oracle Am., Inc.*, No. 22-CV-

28  04795-BLF, 2023 WL 8586690, at *4 (N.D. Cal. Dec. 8, 2023) ("The Ninth Circuit has

1   recognized that cases are frivolous when they are filed despite being barred by preclusion, and a

2   reasonable and competent inquiry would have led to this conclusion.").  In the context of § 285,

3   the result should be the same as it is "exceptional" to file an action that is precluded where a

4   reasonable inquiry would have revealed that preclusion.  Moreover, the filing of a precluded case

5   indicates that any pre-suit investigation was wildly inadequate.

6               **4.      Improperly Contacting a Represented Party**

7       REA's counsel sent a detailed letter regarding the Third Action on May 31, 2024 (Ex. W)

8   but on June 7, 2024, Koji's counsel sent an email to Renesas in-house counsel seeking to settle

9   the case (Ex. X).  As set forth above, this was a violation of the California rules of professional

10  contact, which can be considered under § 285.  *See, e.g., Rambus Inc. v.  Infineon Techs. AG*,

11  318 F.3d 1081, 1106 (Fed. Cir. 2003) (litigation misconduct and unprofessional behavior

12  relevant to § 285 analysis).

13      **C.      Bases for Sanctions Against Koji's Counsel**

14      When an attorney unreasonably or vexatiously multiplies the proceedings, courts may

15  require the attorney to personally satisfy "the excess costs, expenses, and attorneys' fees

16  reasonably incurred because of such conduct."  28 U.S.C. § 1927.  To impose sanctions under

17  § 1927, a court must find that the attorney's conduct was at least reckless.  *See Fink v. Gomez*,

18  239 F.3d 989, 993 (9th Cir. 2001).  For the reasons set forth above, Ramey LLP's actions were at

19  least reckless.  At a minimum, just pursuing baseless infringement claims and filing the Third

20  Action despite the two dismissal rule operating as an adjudication on the merits was "reckless."

21      Courts also have the inherent power to levy sanctions, including attorneys' fees, when a

22  party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.  *See, e.g., id.* at

23  991.  Under the court's inherent power, sanctions are only available "if the court specifically

24  finds bad faith or conduct tantamount to bad faith."  *Id*. at 994.  "[M]ere recklessness, without

25  more, does not justify sanctions under a court's inherent power[,]" but "recklessness when

26  combined with an additional factor such as frivolousness, harassment, or an improper purpose"

27  can be sufficient.  *Id*. at 993-94.  For the reasons set forth above, including the prior sanction by

28

1    Judge Chabbria on similar grounds, the filing and re-filing of these cases is conduct tantamount

2    to bad faith.

3    Indeed, REA submits that it is essentially impossible for a small law firm (six lawyers are

4    noted on the website) to properly and ethically litigate nearly 200 patent infringement cases

5    simultaneously, let alone conduct adequate pre-filing investigations to file multiple new actions

6    virtually every week.  (For example, on the *day* Ramey LLP filed the Third Action (May 22,

7    2024), it also filed four other patent infringement actions.  (*See* Ex. Z at 3-4.))  The inevitable

8    result of a small law firm adopting a high-volume patent infringement business model is the

9    filing of lawsuits with minimal pre-suit investigation, as appears to have occurred here.  For the

10   cases that do not immediately settle, a series of missed deadlines and inattention to basic

11   litigation obligations surely follows.[7]  Tasks are foisted on the defendant (and the court),

12   imposing costs on them.  But to Ramey LLP, this appears to be a feature not a bug, since the

13   entire point is to leverage the cost of litigation into settlements notwithstanding the absence of

14   meritorious claims.

15   These same Ramey LLP lawyers have also been reprimanded in no uncertain terms for

16   similar behavior in this District.  *See EscapeX*, 2023 WL 5257691, at *1 ("It is obvious that

17   EscapeX conducted no serious pre-suit investigation and that this case was frivolous from the

18

19         [7] Infrequent minor oversights are part of litigation and are generally accommodated as a
     matter of professional courtesy.  But in these cases, they appear to indicate a deliberate decision

20   by Koji's counsel to avoid spending time on basic litigation tasks and imposing unnecessary
     costs on REA.  As examples, REA pointed out that the complaint in Second Action contained

21   personal jurisdiction and venue allegations for Colorado, surely the result of sloppy cutting-and-
     pasting.  (*See* Ex. I.)  Koji promised to file an amended complaint, but REA had to repeatedly

22   prod Koji's counsel to file it, as otherwise REA would have had to file a motion to dismiss on an
     issue that it had assured would be corrected.  (*See* Exs. L, M.)  Although counsel for REA had

23   not yet appeared, Koji did not serve the Amended Complaint, creating issues regarding the due
     date for an REA motion to dismiss.  Koji's counsel also failed to reach out regarding the Rule 26

24   statement, so REA did (Ex. P), only to receive a sloppily revised statement recycled from another
     case.  (*See* Ex. S.)  For a case that had less than a dozen docket entries before it was dismissed,

25   this amounts to Koji's counsel essentially doing no work in a case that it initiated.  Rather, it
     foisted tasks onto REA, which took deadlines and litigation obligations seriously.  *Cf. Ortiz &*

26   *Assocs.*, 2024 WL 815553, at *1 (noting failure to "comply with the Court's discovery deadlines,
     including deadlines to serve infringement contentions and discovery requests").  For a small firm

27   supposedly litigating approximately 200 patent cases (and constantly filing more), slipshod work
     is assured, making the actions in these cases at least reckless and, REA submits, tantamount to

28   bad faith.

start.").  The *EscapeX* decision was issued before the Ramey LLP lawyers filed both the Second and Third Actions, yet it appears to have had little deterrent effect.

For these reasons, sanctions under § 1927 and the court's inherent powers against Koji's counsel of record are also appropriate.

## V.    AMOUNT OF FEES

To calculate an award of attorneys' fees, district courts apply "the lodestar method, multiplying the number of hours reasonably expended by a reasonable hourly rate."  *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 763 (9th Cir. 2015).  "A reasonable hourly rate is ordinarily the prevailing market rate in the relevant community."  *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) (quotation marks and citation omitted).  "[T]he burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  *Camancho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (quotation marks and citation omitted).  The party requesting fees also bears "the burden of submitting billing records to establish that the number of hours" requested are reasonable.  *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). The number of hours should not exceed the number of hours that reasonable competent counsel would bill for similar services.  *See Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

As set forth in the Declaration of Jason A. Crotty filed herewith, the total fees sought (that have been invoiced to date) are $37,503.50.  REA's counsel's rates are below those frequently approved in this district and the number of hours expended and the overall amount sought are exceptionally reasonable given Koji's ever-changing infringement claims, communications and correspondence with Koji's counsel, and analysis of the issues.  REA is also entitled to fees that have not yet been invoiced to REA and for the fees associated with this motion.  Having prevailed on the merits in the Second and Third Actions, REA seeks fees only for the Second and Third Actions, but not the First Action.

1

## VI.    CONCLUSION

2          For the reasons set forth above, the Court should find that REA is the "prevailing party"

3   in both the Second and Third Actions and that Koji's and its counsel's litigation tactics and

4   conduct make those cases "exceptional."  Upon such a finding, the Court should order that Koji

5   and its counsel be jointly and severally liable for REA's attorneys' fees in those actions.

6

7   Dated: June 26, 2024                         Respectfully submitted,

8                                                MACHOFF BRENNAN

9                                                By:    */s/ Jason A. Crotty*
10                                                      Jason A. Crotty
                                                       Benjamin Charkow

11                                               *Attorneys for Defendant*
12                                               RENESAS ELECTRONICS AMERICA INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28