1                  UNITED STATES DISTRICT COURT

2                  NORTHERN DISTRICT OF CALIFORNIA

3          Before The Honorable Peter H. Kang, Magistrate Judge

4

5    KOJI IP, LLC,                    )
                                      )
6              Plaintiff,             )
                                      )
7    vs.                              )    No. C 24-03089-PHK
                                      )
8    RENESAS ELECTRONICS AMERICA,     )
     INC.,                            )
9                                     )
               Defendant.             )
10   _____ )

11                                    San Francisco, California
                                      Thursday, September 19, 2024
12

13   TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
             RECORDING 10:31 - 11:50 = 1 HOUR 19 MINUTES
14

15   APPEARANCES:

16   For Plaintiff:
                                      Ramey, LLP
17                                    5020 Montrose Boulevard
                                      Suite 800
18                                    Houston, Texas 77006
                                 BY:  SUSAN S.Q. KALRA, ESQ.
19                                    WILLIAM P. RAMEY III, ESQ.
                                      JEFFREY KUBIAK, ESQ.
20   For Defendant:
                                      Maschoff Brennan
21                                    450 Sansome Street
                                      Suite 1005
22                                    San Francisco, California
                                      94111
23                               BY:  JASON A. CROTTY, ESQ.

24

25

2

1  Transcribed by:              Echo Reporting, Inc.
                                Contracted Court Reporter/
2                               Transcriber
                                echoreporting@yahoo.com
3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1  <u>Thursday, September 19, 2024</u>                    <u>10:31 a.m.</u>

2                        P-R-O-C-E-E-D-I-N-G-S

3                              --oOo--

4          THE CLERK:  Now calling Civil Matter 24-3089, Koji

5  IP versus Renesas Electronics America.

6      Counsel, when speaking, please approach the podiums and

7  state appearances for the record.

8          THE COURT:  Why don't we have counsel approach.

9  Since we're -- don't have a court reporter, we're recording

10  this for transcription purposes, you need to speak into the

11  microphones at the -- at the podiums, please.  And, guys,

12  just remember, kind of like in a deposition, everyone speak

13  one at a time, again, just for audio transcript purposes.

14      Can I get appearances.

15          MS. KALRA:  Good morning, your Honor.  Susan

16  Kalra, appearing for the Plaintiff.

17          THE COURT:  Yes.

18          MR. CROTTY:  Jason Crotty of Maschoff Brennan,

19  appearing for Defendant Renesas Electronics of America.

20          THE COURT:  Mr. Crotty, since this is an order to

21  show cause hearing, I -- I mean, unless things spill over,

22  I'm probably not going to allow you to have much to say

23  because it's not really your motion anymore.  That's already

24  submitted.

25          MR. CROTTY:  Understood.  Thank you.

4

1          THE COURT:  Ms. Kalra, who's here with you today?

2          MS. KALRA:  Mr. William Ramey.

3          MR. RAMEY:  Good morning, your Honor.

4          THE COURT:  Good morning.

5          MS. KALRA:  And Mr. Jeffrey Kubiak.

6          MR. KUBIAK:  Good morning, your Honor.

7          THE COURT:  Good morning.

8      All right.  Ms. Kalra, are you going to be speaking on

9  behalf of all three of the Ramey attorney lawyers, Ramey

10  Firm lawyers, or who's going to do most of the talking?  You

11  all three could talk of course.

12          MS. KALRA:  I will not.  Mr. Ramey will handle

13  most of it.

14          THE COURT:  Okay.  Let's take care -- since -- Mr.

15  Ramey, since you actually aren't counsel of record in the

16  case but I see you're going to be making representations of

17  fact to the Court, I'm going to ask that the court reporter

18  -- sorry -- the Deputy to swear both you and Mr. Kubiak just

19  so we cover all our bases there.  So, if you both could

20  please stand.

21          THE CLERK:  Raise your right hand.  Do you

22  solemnly swear or affirm that the testimony you're about to

23  give before this Court shall be the truth, the whole truth,

24  and nothing but the truth, so help you God or so you affirm?

25          MR. RAMEY:  I do.

5

1            MR. KUBIAK:  I do.

2            THE CLERK:  Thank you.  You may be seated.

3            THE COURT:  And since Mr. Crotty is probably not

4  going to jumping up to speak, Mr. Kubiak, if you want to,

5  you could use the other microphone on the other podium if

6  you want to speak.

7            MR. KUBIAK:  Thank you, your Honor.

8            THE COURT:  Okay.  All right.  So, Mr. Ramey, I

9  guess you're going to be doing most of the talking?

10           MR. RAMEY:  Yes, your Honor.

11           THE COURT:  All right.

12           MR. RAMEY:  Yes, your Honor.  So, we received your

13  show cause order.  Ms. Kalra reported to me after the August

14  22nd hearing that she had with you that you brought up some

15  issues about our use of pro hac vice anticipated on the

16  signature lines on pleadings.

17      Immediately upon receiving that feedback from Ms.

18  Kalra, we discontinued that practice.  It was never our

19  intention, your Honor, to indicate that either myself or Mr.

20  Kubiak was a licensed California attorney.  As I said in the

21  briefing to the Court, we did that main -- for -- for two

22  reasons.  We did that first because one of our clients asked

23  us as cases were resolving more quickly, to discount some of

24  that expense up front, and we recognized that was a mistake

25  when to Court pointed it out.  We have discontinued that.

6

1      And, secondly, as we put in the briefing, there was

2  some personal issues going on with Ms. Kalra, and we left

3  that on there for notice purposes.

4      I, as the managing partner of the firm, am aware of the

5  issues, but I did not read her sealed declaration because

6  that was between the Court and Ms. Kalra, not me.  So, I

7  can't comment on that part of it.

8          THE COURT:  Okay.  All right.  So, first of all,

9  just to confirm, Mr. Ramey and Mr. Kubiak, I just want to

10  make 100 percent sure you're -- neither of you are members

11  of the California Bar?

12          MR. RAMEY:  I am not, your Honor, Mr. Ramey.

13          MR. KUBIAK:  I am not, your Honor.

14          THE COURT:  Okay.  And none of you, therefore, are

15  members of the Bar of this Court?

16          MR. KUBIAK:  That is correct.

17          MR. RAMEY:  Correct, your Honor.

18          THE COURT:  Okay.  And, as you point out, I mean,

19  I think you say in the OSC response and I think in some of

20  the declarations that the way you've handled pro hac vice in

21  this court was a mistake essentially and that you've tried

22  to rectify that, right?  Summarizing too generally or is

23  that basically it?

24          MR. RAMEY:  No, your Honor.  I think that's

25  correct.  We -- we weren't trying to misrepresent anything,

7

1  but once the Court pointed that out, we've changed
2  practices.
3          THE COURT:  Okay.  So, just so, again, I'm clear,
4  you don't -- I mean, the OSC order itself refers to the
5  Civil Local Rules on pro hac vice admission, and, this,
6  again, is for unauthorized practice of law.  Given the
7  response, you don't really engage with those legal -- the
8  legal standards of those rules.  As I read -- read the
9  response and the declarations, the response is that you're
10 changing your internal procedures to avoid those issues
11 going forward.  Is that correct?
12         MR. RAMEY:  Correct, your Honor.  We don't want to
13 give the impression that we're trying to indicate we're
14 licensed in California.
15         THE COURT:  Okay.  So, is there really -- I mean,
16 you agree there's been a failure to comply with the Local
17 Rules on pro hac vice admission?
18         MR. RAMEY:  Your Honor, we -- we always thought we
19 were practicing under the -- the license of Ms. Kalra.  So,
20 we never thought that we were in violation.  We never
21 intended that to be the case.  We modified the practice when
22 the Court pointed it out.  So, if what was done in the past
23 is deemed to have been a violation, then, yes, your Honor,
24 we were in violation.  But we -- we never intended that to
25 be -- we always had pro hac vice anticipated in cases that

8

1 did carry on longer.

2          THE COURT:  Right.

3          MR. RAMEY:  We did, in fact, do the pro hac vice

4 and have people admitted.  So, that was our mistake for not

5 doing it right at the start, your Honor.

6          THE COURT:  Right.  Okay.  So, and I think in the

7 order to show cause you've got a long list of cases where

8 you, Mr. Ramey, have either appeared as counsel or your

9 name's on the pleadings going back to 2017.  And I think for

10 Mr. Kubiak, it goes back at least a couple -- one or two

11 years.  And, of course, the list is longer for Mr. Ramey.

12     I mean, you've been aware of the Court's Local Rules

13 since 2017, right?

14          MR. RAMEY:  Yeah.  I was -- yes, your Honor, we

15 were aware of the Local Rules.  We -- we -- we just didn't

16 understand that was a violation, what we were doing.

17          THE COURT:  Okay.  Well, Local Rule 11-3 says --

18 and I think we say this in the OSC -- that you're supposed

19 to file your PH -- pro hac vice applications at the time of

20 the filing of the complaint, right?

21          MR. RAMEY:  Yes, your Honor.

22          THE COURT:  Okay.  And since we've put in the

23 order to show cause order it's at least 48 cases where you

24 never filed a pro hac vice application and certainly not at

25 the time of the filing of the complaints in those cases,

9

1  including the -- the cases here in front of me, right?

2          MR. RAMEY:  Yes, your Honor.  I think that -- yes,

3  your Honor.

4          THE COURT:  Okay.  And for Mr. Kubiak, I think we

5  talked about this, 16 plus the -- this case and what I'm

6  calling the second case.  So, that's a total of 18 cases, is

7  that right?

8          MR. KUBIAK:  Yes, sir.  I think that's correct.

9          THE COURT:  Okay.  And, so, again, I just want to

10  be clear.  You're not -- technically, those are violations

11  of the Local Rules, right?

12          MR. RAMEY:  Yes, your Honor.  We -- we

13  misapprehended the way we were practicing.  We -- we

14  modified that practice.

15          THE COURT:  All right.  And, again, the Local

16  Rules require filing the application at the time of the

17  complaint and also filing -- submitting the fee for the pro

18  hac vice application at the time of the complaint, right?

19          MS. KALRA:  If I may, your Honor.  11-3 also says

20  it can be filed at the time of the complaint or at the time

21  of first appearance, the pro hac vice application.

22          THE COURT:  Okay.  So, if Mr. Ramey and Mr. Kubiak

23  were not appearing in the case yet but they -- but they

24  anticipated that they might, then -- and it doesn't -- the

25  Rule doesn't say at the earlier.  It just says that that's

1  when you have to file is at the time you're filing at the
2  complaint or at your first appearance.
3          THE COURT:  So, it's your -- well, their names
4  appear on the pleadings, on the complaints.  Isn't that an
5  appearance?
6          MS. KALRA:  As pro hac vice anticipated?
7          THE COURT:  Well, it's an appearance to the Court.
8  Once their names are on the pleadings, they've appeared,
9  haven't they?
10         MS. KALRA:  They haven't been admitted yet, and --
11         THE COURT:  Well, that's the whole point.
12         MS. KALRA:  Right.  So --
13         THE COURT:  They put their names on a pleading,
14  like a complaint.  They've appeared in front of the Court,
15  and the Rule says you're supposed to file your pro hac vice
16  application at that time.
17     (Pause.)
18         THE COURT:  Right?
19         MR. RAMEY:  Your Honor, we were misapplying the
20  rule until we -- until we appeared in person because we
21  always originally said we were always using Ms. Kalra to do
22  the appearances until we got further in the case.
23         THE COURT:  Okay.  I'll get to that in a second,
24  but I just want to close the loop on this.  You're not
25  interpreting first appearance as first appearance like

11

1  standing up in court, are you?

2         MS. KALRA:  Not necessarily.  I mean, there's --

3  there's a number of ways that --

4         THE COURT:  Right.  You appear in front of the

5  Court when you file a pleading with your name on it as

6  counsel for a party.

7         MS. KALRA:  That's a fair interpretation.

8         THE COURT:  Okay.  So, again, just so I'm clear,

9  not really a -- I just want to make sure there's not really

10 a dispute here that in the 40 plus cases for Mr. Ramey and

11 the 16 or 18 cases for Mr. Kubiak, there was a violation of

12 the Local Rule in terms of the timing of the filing of the

13 pro hac vice applications, right?

14        MR. RAMEY:  Yes, your Honor.

15        THE COURT:  Okay.  And it was also a violation of

16 the Local Rule in all those cases, including the one here,

17 by not paying the fee at the time those applications would

18 have been due, right, or fees?

19        MR. RAMEY:  Because no application was filed, no

20 fee was paid, correct, your Honor.

21        THE COURT:  And, Mr. Kubiak (sic), with regard to

22 this case, did you advise either Mr. Ramey or Mr. Kubiak

23 about what the Local Rules require and the timing issues?

24        MS. KALRA:  On this specific case?

25        THE COURT:  Yes.

1          MS. KALRA:  I advised them of your Honor's

2    position after the last hearing.  However --

3          THE COURT:  Yeah.  I'm -- I'm talking about at the

4    time the case started here.

5          MS. KALRA:  Correct.  I've worked with Mr. Ramey

6    and Mr. Kubiak on many many many cases, and the rule has

7    been the same as far as I know for many many years now, and

8    I know I've had a discussion several times with everybody at

9    the firm about that, but I don't recall having that

10   discussion in this particular case.

11         THE COURT:  Okay.  All right.  All right.  I

12   should have said this up -- because I'm going to -- I think

13   we're going to use these terms just for the record.  When

14   they're called something like -- there are three cases

15   involving Koji and Renesas.  The first case is the Colorado

16   case, which is Docket Number 21-1674.  What I might refer to

17   and the parties might refer to as the second case is the

18   case -- second case filed here in the Northern District of

19   California, Docket 23-5752.  And the third case is the

20   current case here that raised all these issues, which is

21   Docket Number 24-3089.  So, you all understand that's what I

22   mean.  The first case is the Colorado case.  Second case was

23   the second in line but the first Northern District case, and

24   then the third case is this current case.

25         MR. RAMEY:  Yes, your Honor.

1          THE COURT:  So, we have the same terminology in

2   mind.  Okay.

3      Okay.  I mean, I understand that that was your

4   practice, and I appreciate you being candid about

5   misapplying the Rule.  Was there any attempt at the Ramey

6   Firm to do legal research on -- to -- to justify the

7   practice that you had had in the past about not filing pro

8   hac vice applications or was it just a procedural managerial

9   decision, as you said?

10          MR. RAMEY:  Your Honor, if you go back to the --

11  towards the earlier cases, we always filed pro hac vice.  It

12  was -- it was in consultation -- discussions with the client

13  that we -- we slipped into doing it the other way because

14  some of the -- he was having a lot of cases resolve real

15  quickly at the low end expense.  So, that's -- we

16  acknowledge that we let that Rule slip, and we acknowledge

17  that, your Honor.

18          THE COURT:  Okay.  So, and you say that this was

19  -- this practice of not filing the pro hac vices was done at

20  the request of -- I'm going to mispronounce his name again

21  -- Mr. Go -- help me out.

22          MR. RAMEY:  I pronounce -- mispronounce it every

23  time too, your Honor.  It's Doctor Gorrichategui's.

24          THE COURT:  Gorrichategui.  Okay.  So, Mr.

25  Gorrichategui, I think you said that it was a request he

1 made near early '22, but the list of cases and the order to

2 show cause found go back to certainly before '22 a number of

3 them.  The earliest one is 2017, where on pro hac vices were

4 filed.  And, like I said, there's a number of them leading

5 up to 2022.

6     I guess, first, generally, a lot of the cases -- most

7 of the cases don't involve Koji as a Plaintiff.  So, does

8 Mr. Gorrichategui, is he the -- the client in charge of all

9 the cases we've listed here in the order to show cause?

10         MR. RAMEY:  No, your Honor.  The -- some of the

11 ones for 2017 were actually transferred from Texas into

12 California.  So, we were on the pleadings already.  We never

13 made an appearance in that matter because we weren't trying

14 to make an appearance in those -- in that case once it was

15 transferred.  I believe we're talking about the Traxcell v.

16 Apple cases.

17         THE COURT:  No.  The earliest 2017 case is Global

18 Equity v.  Alibaba Group.

19         MR. RAMEY:  And that was another -- another --

20 another instance of a case transferred that was in

21 California.  That -- that was Hicks -- John Thomas with

22 Hicks Thomas was the -- the lead on it.  So, that was a --

23 that one I didn't look at in particular separate from what I

24 did in the pleading, but that was so long ago.  That one was

25 a mistake of not having it on there then.  That's -- that

15

1   one I -- just a mistake.  It was the incorrect practice.

2          THE COURT:  All right.  So, I guess the -- the

3   question is, you know, obviously Koji is a client of yours

4   and Mr. Gor --

5          MR. RAMEY:  Doctor Gorrichategui, your Honor.

6          THE COURT:   -- Gorrichategui is in charge of Koji

7   because it owns or controls -- is owned or controlled by

8   DynaIP, I take it?

9          MR. RAMEY:  Your Honor, Koji IP, LLC is -- is the

10  -- owns the IP, and then it's managed by DynaIP Deals, which

11  is managed by Doctor Gorrichategui.

12         THE COURT:  Got it.  Okay.  So, are the -- I mean,

13  even the ones that -- that are post-2022 of the cases listed

14  on page five of the order to show cause, was that request

15  from Doctor Gorrichategui, did that apply to all these

16  cases?  I mean, he wasn't the client for all these cases,

17  was he?

18         MR. RAMEY:  He is the managing member for -- for

19  all those cases.

20         THE COURT:  He is the managing member?

21         MR. RAMEY:  For different LLC entities.

22         THE COURT:  Right, right.

23         MR. RAMEY:  Okay.  Pardon me.

24         THE COURT:  Through the DynaIP management of those

25  entities?

16

1          MR. RAMEY:  Yes, your Honor.

2          THE COURT:  Okay.  So, for example, VDPP, that's a

3   DynaIP --

4          MR. RAMEY:  Yes.

5          THE COURT:  -- entity?

6          MR. RAMEY:  Yes, your Honor.

7          THE COURT:  All right.  And then let's go back to

8   the earliest from 2022.  Here we go.  Valjakka v. Netflix?

9   That's a 2022 -- that's a March 2022 case.

10          MS. KALRA:  I believe Mr. Ramey's admitted in that

11  case.

12          MR. RAMEY:  Yes, your Honor.  I'm admitted in that

13  one.

14          THE COURT:  Okay.  What about Traxcell Techs v.

15  Google?

16          MR. RAMEY:  That was the -- Traxcell v. Google was

17  transferred from Texas to California.  I never entered an

18  appearance.  The case was dismissed shortly thereafter by

19  Judge Corley.

20          THE COURT:  Okay.  E-submissions Software?

21          MR. RAMEY:  Doctor Gorrichategui, your Honor.

22          THE COURT:  Okay.  Escape XIP?

23          MR. RAMEY:  Doctor Gorrichategui, your Honor.

24          THE COURT:  So, everything from '22 -- '22 onward,

25  all these entities are Doctor Gorrichategui's?

17

1        MR. RAMEY:  He's the manager of the -- the LLC's,

2   your Honor.

3        THE COURT:  Okay.  But what about pre 2022?  I

4   mean, if he made the request in 2022, that doesn't explain

5   why there were no pro hac vices filed in a number of cases

6   before 2022.

7        MR. RAMEY:  No, your Honor.  That doesn't -- the

8   ones that were -- I know the Valjakka v. Netflix, I was

9   admitted in that one.  That case I've now withdrawn as

10  counsel from -- your Honor, I'm sorry.  Now I'm not thinking

11  of the Court's name.  I apologize, your Honor.

12       THE COURT:  That's okay.

13       MS. KALRA:  Judge Tigar.

14       MR. RAMEY:  Judge Tigar, yes, your Honor.

15       THE COURT:  Okay.  Tigar it's pronounced.

16  CyboEnergy v. Movin Electric Power Tech?

17       MR. RAMEY:  Yes, your Honor.  That one -- that's a

18  Doctor Gorrichategui case.

19       THE COURT:  Riggs Tech Holdings v. Vagaro?

20       MR. RAMEY:  Yes, your Honor.

21       THE COURT:  Okay.  But if you made the request in

22  2022, these are 2021 cases.  So, I'm just -- again, I

23  understand that he made the request that you not file pro

24  hac vice's in 2022 according to the declarations, but if

25  these were DynaIP cases before 2022, what explains the

18

1  failures in those cases?

2          MR. RAMEY:  There was error in the process that we

3  had at the firm, your Honor.

4          THE COURT:  Okay.  PacSec3 v. Juniper Networks?

5          MR. RAMEY:  That was, again, a case that was

6  transferred from the Western District when it was settled.

7  It was settled as it was being transferred.  So, we didn't

8  -- we were intending to make an appearance in that case.

9          THE COURT:  Okay.  Apple v. Traxcell Techs?

10         MR. RAMEY:  Same -- same situation, your Honor.

11 It was transferred from Texas.  We were intending to enter

12 an appearance as we were in settlement.

13         THE COURT:  I may be mispronouncing it, DATRAC or

14 DATRAC v. PrognoCIS?

15         MR. RAMEY:  Prognosis?  Your Honor, that was

16 another case that we were in settlement talks at the time.

17         THE COURT:  NetSoc v. LinkedIn?

18         MR. RAMEY:  That was another -- pardon me, your

19 Honor.  NetSoc v. LinkedIn, that was error on the part of

20 the firm.  That case was filed.

21         THE COURT:  Okay.  NetSoc v. Quora?

22         MR. RAMEY:  Same thing, your Honor.  The -- the

23 NetSocs cases.  They are not Doctor Gorrichategui cases.

24         THE COURT:  So, those were -- those were errors.

25 Global Equity Management v. Alibaba?

19

1          MR. RAMEY:  That case was -- was filed in -- in

2    the Eastern District of Texas, and it was caught up and

3    stayed when it was transferred out to California.  So, we

4    never entered an appearance.  The PTAB disposed of that

5    patent, and the case was dismissed.

6          THE COURT:  Okay.  And there's another Global

7    Equity Management v. eBay case?

8          MR. RAMEY:  That -- that's the same JIMSA

9    (phonetic).

10          THE COURT:  Okay.  And I think we already talked

11    about Global Equity Management v. Alibaba?

12          MR. RAMEY:  Yes, your Honor.  Same -- same facts

13    on that one.

14          THE COURT:  And I'm 99 percent sure that the cases

15    we listed in the order to show cause for Mr. Kubiak overlap

16    with the cases for Mr. Ramey, is that right?  Are there any

17    others that you're aware of where Mr. Kubiak's on the

18    pleadings but -- or appeared but Mr. Ramey didn't?

19          MR. KUBIAK:  No, your Honor.  As far as I know,

20    there's not.

21          THE COURT:  Okay.  And I know Mr. Ramey's doing

22    most of the talking, but I want -- again, anything you want

23    to add on your own behalf with regard to failures to file

24    pro hac vices in those cases?

25          MR. KUBIAK:  I'm not as familiar with the cases as

20

1  Mr. Ramey is.  He knows them by -- by name and docket.  As

2  the -- the 18 cases that were listed for me, four of those

3  were -- were transferred from Western District.  Nine of

4  them I was listed on the jury charge as an attorney, and it

5  was -- that was in error as well.  Four of them is my

6  recollection I'm actually listed on the complaint.  And,

7  so --

8          THE COURT:  Yes, but was it just error?

9          MR. KUBIAK:  Well, it's -- it's an error as in not

10 understanding the Rule I suppose.

11         THE COURT:  Okay.  All right.  And we -- I don't

12 know if we gave the full list, but I think the order to show

13 cause indicates that Mr. Ramey has appeared and/or currently

14 working on at least 37 cases in the Central District of

15 California.  Is that -- any dispute about that number?  Is

16 it?

17         MR. RAMEY:  No, your Honor.  That's -- I think

18 most of those are now closed, but there may be a couple of

19 them that we're handling.  But when we're filing new

20 documents for each other, we removed that from the

21 pleadings.

22         THE COURT:  Okay.  And then, Mr. Kubiak, we

23 counted about 10 cases in the Central District.  Is that

24 right?  I'm assuming that you've got the numbers, right?

25         MR. KUBIAK:  I would have to defer to Mr. Ramey on

21

1 that.

2          THE COURT:  Okay.  And, again, I think we -- what

3 we saw was, similarly, there was a failure to file pro hac

4 vice applications in the Central District in most -- most of

5 those cases.  Again, tell me if I'm wrong in our review of

6 the records there.

7          MR. RAMEY:  So, the -- a few of the -- one of the

8 cases was transferred out from Texas.  And, so, it was

9 closed shortly thereafter.  But, your Honor, generally, that

10 is closed.

11          THE COURT:  Okay.  What I saw from at least one

12 document is actually the clerk's office in that court sent

13 you -- sends notices out when pro hac vices are overdue.

14 So, I think you received at least a number of those, right?

15          MR. RAMEY:  Yes, your Honor.

16          THE COURT:  Okay.  You know, I -- I've got a

17 factual question.  I know Ms. Kalra works out of your

18 Redwood City office, is that right?  She said that at the

19 last hearing.

20          MR. RAMEY:  Yes, your Honor.

21          THE COURT:  All right.  But I saw, and I think

22 it's required under the Local Rules in the Central District,

23 your website says you've got a Los Angeles office.  Is that

24 -- is that wrong?  Is that right?

25          MR. RAMEY:  We have a Los Angeles address, yes,

22

 1  your Honor.

 2          THE COURT:  Okay.  All right.  Who works there?

 3          MR. RAMEY:  Ms. Kalra.

 4          THE COURT:  Okay.  How much?  What percentage of

 5  your time, Ms. Kalra, do you spend down there?

 6          MS. KALRA:  As I mentioned during the last

 7  appearance and as still continues now, since mid 2023 --

 8          THE COURT:  Yeah.

 9          MS. KALRA:  -- my living situation has changed

10  drastically.

11          THE COURT:  So, let's -- let's talk about the --

12          MS. KALRA:  Okay.

13          THE COURT:  -- historical period before your

14  personal situation distracted you from being able to work.

15          MS. KALRA:  So, I pretty much split my time

16  between Northern California and Southern California.

17          THE COURT:  Okay.

18          MS. KALRA:  Until fairly recently.

19          THE COURT:  Okay.  So, about 50/50 here and --

20          MS. KALRA:  Yes.

21          THE COURT:  -- and in the Central District?  Okay.

22  Okay.  And then in the -- I think you -- and maybe this is

23  reference to -- I think it's in reference to Ms. Kalra's

24  personal situation, which I won't go into in open court.  In

25  the OSC response, you talk about you added your names to the

23

1   pleadings in this case and I think in other cases to provide

2   notice?  I think you mentioned the word -- You talked about

3   providing notice, and I guess I just was -- notice for what

4   purpose and to whom?

5           MR. RAMEY:  Yes, your Honor.  Maybe that was an

6   inarticulate way to do it.  Notice so that we get notice

7   back when filings are received.  We were just making sure

8   that nothing was missed.

9           THE COURT:  So, that you would receive notice of

10  filings, not that people would get notice from you, right?

11          MR. RAMEY:  That's correct.

12          THE COURT:  I see.  Okay.  And are you both --

13  you, Mr. Kubiak, Mr. Ramey, are you ECF filers?  Do you have

14  ECF accounts with the court?  Is that how you get notice?

15          MR. KUBIAK:  Yes, your Honor, I do.

16          MR. RAMEY:  No -- well, I don't know if I have

17  one.  My paralegal takes care of that, your Honor.  I

18  apologize.  I do know in the last 18 months we have switched

19  practices.  So, now we use a third party service that gives

20  us notices so we can put a tag line on everything that gets

21  filed as we -- as we get the filing papers.  It's through

22  Ms. Kalra's login.  So, I don't think it comes in to me

23  specifically, but it comes in through Ms. Kalra's ECF.

24          THE COURT:  Okay.  All right.  But when you said

25  in the OSC response that you -- it's for notices so that you

24

1  get notice of filings from the Court?

2          MR. KUBIAK:  Yes, sir.

3          THE COURT:  Is that -- I just want to make sure I

4  understand that.

5          MR. KUBIAK:  Absolutely.

6          MR. RAMEY:  Yes, your Honor.

7          THE COURT:  All right.  And then in the OSC

8  response, you -- you say -- you said there was no deceptive

9  intent or intent to indicate that you were licensed here in

10  California, which I take -- you said that here today.  I

11  guess that raises a question in my mind because you don't

12  really discuss the legal standards for -- under the Local

13  Rules for unauthorized practice of law.

14      Is -- is your mens rea even relevant?  Am I supposed to

15  take that into account here?

16          MR. RAMEY:  Your Honor, I think the -- to the

17  extent we were advising any of these clients on the scope of

18  a patent claim, whether the accused product fit within the

19  scope of those claims, our USPTO license does, in fact,

20  allow us to -- to give nationally general -- general -- but

21  we can't appear in a courtroom and hold ourselves out as

22  California attorneys, but we are allowed to give advice to

23  clients as to the validity of their patent, whether their

24  patent might be infringed, whether someone else's product

25  falls within the scope of those claims.

25

1          THE COURT:  Well, I mean, I'm -- I think I still
2    am.  I was a registered patent attorney.  I mean, we all
3    know work in the Patent Office doesn't involve opinions on
4    infringement, right?  I mean, Patent Office work is not --
5    Patent Office doesn't decide infringement issues.
6          MR. RAMEY:  That's correct, your Honor.  We cited
7    a case in the OSC response from the Ninth Circuit that --
8    that provides that we're able to give those opinions, but
9    we're not able to hold ourselves out as California lawyers.
10          THE COURT:  I'll take a closer look at that.  But
11    that didn't really answer my question.  I mean, you make a
12    point of saying you didn't have any deceptive intent here.
13    I just am trying to figure out what the legal standard is
14    here.  I -- we can look it up obviously, but is -- I mean,
15    is -- is it a subjective standard?  Am I supposed to look at
16    your -- your intent or not here?  Is that relevant?  And if
17    it is -- and it's like the follow up is if your mens rea is
18    relevant, is it a subjective standard or is it an objective
19    standard?
20          MR. RAMEY:  As with most sanctions motions, it
21    would be an objective standard that's applied to like a Rule
22    11 analysis so that whether there was actually -- that the
23    elements fit the unauthorized practice of law.
24          THE COURT:  Okay.  Do you have any case law that
25    tells us that it's an objective standard for unauthorized

26

1 practice?

2          MR. RAMEY:  I don't, your Honor.  I can -- but I

3 can provide that to the Court afterwards.  I didn't --

4          THE COURT:  Okay.

5          MR. RAMEY:  -- bring that.

6          THE COURT:  Now, we -- I mean, since we're talking

7 about unauthorized practice of law, the actual acts of

8 practicing law, those are intentional.  I mean, you don't

9 kind of accidentally practice law, right?

10     (Pause.)

11          THE COURT:  I mean, there is an intent to

12 undertake the actions which constitute the practice of law,

13 right?

14          MR. KUBIAK:  Yes, sir.

15          THE COURT:  I mean, I don't see any way you can

16 kind of stumble into accidentally practicing law.

17          MR. RAMEY:  No, your Honor.  I think there's

18 always a gray area when you talk about the USPTO

19 registration, and I think the Supreme Court has wrestled

20 with that about what constitutes the -- you know, whether or

21 not they're able to give opinions as to validity and claim

22 scope, and that's what that courts have said registered

23 patent attorneys are able to do.

24          THE COURT:  Claim scope and validity, sure.  Maybe

25 claim construction.  But infringement?  I'm not sure the

27

1  case law supports that.  And, also, you're not taking the

2  position that being members of the patent are -- allow you

3  to appear on pleadings in litigations in California?

4          MR. RAMEY:  Not at all, your Honor.

5          THE COURT:  No.  Okay.  All right.  Again, for

6  purposes -- in this case particularly, I think you said you

7  were on the pleadings for notice but this is also in order

8  to help out Ms. Kalra's personal situation, right?  I don't

9  want to get into detail on that.  Is that -- is that right?

10          MR. RAMEY:  Yes, your Honor.

11          THE COURT:  Okay.  So, that was basically covering

12  for her while she's going through this personal --

13          MR. RAMEY:  Yes, your Honor.

14          THE COURT:  -- these personal issues --

15          MR. RAMEY:  Yes, your Honor.

16          THE COURT:  -- where she can't work?  Okay.  So,

17  again, I just -- you put your names on the pleadings

18  purposefully.  It wasn't like an accident, right?  It was to

19  help her out, right?

20          MR. RAMEY:  It was -- they were personally -- they

21  were purposely, pardon me, your Honor, purposely put on the

22  pleadings.

23          THE COURT:  Okay.  So, the question I have is

24  before Ms. Kalra joined your firm, I think she represented

25  that she was either in a different firm or I know she was

28

1  your local counsel as like someone who was outside the firm

2  but acted as local counsel for your firm here in cases here.

3  Is that right?

4          MR. RAMEY:  That's correct, your Honor.

5          THE COURT:  Okay.  So, I mean, because Ms. Kalra's

6  -- I'm trying to be sensitive here.  Because Ms. Kalra has

7  her own personal situation here, you have the option of

8  associating in a different local counsel, right, when --

9  instead of putting your names on the pleadings, right?

10         MR. RAMEY:  Yes, your Honor.  We -- we quite

11  literally we were helping a colleague at the time.  So,

12  that's -- that's what we were doing.

13         THE COURT:  Yeah.

14         MR. RAMEY:  But, of course, we always had the

15  option of finding other counsel.

16         THE COURT:  All right.  So, in the OSC response,

17  you said that Ms. Kalra was acting as lead attorney on all

18  California matters?  So, when did she join the firm?

19         MR. RAMEY:  Your Honor, I'm sorry.  I -- it blends

20  again because we've worked with Ms. Kalra for a long time.

21         THE COURT:  Sure.

22         MR. RAMEY:  She would remember I'm certain.

23         MS. KALRA:  February 2023.

24         THE COURT:  Okay.  And, so, when you say in the

25  response that she was acting as lead attorney on all

29

1 California matters, that even includes matters where she was

2 co-counsel or local counsel before she officially joined the

3 firm?

4          MR. RAMEY:  I see your point now.  Yes, your

5 Honor.  She was the lead counsel on the --

6          THE COURT:  Okay.

7          MR. RAMEY:  -- matters even when she was with the

8 other firm.

9          THE COURT:  Okay.  And, again, I think we counted

10 upwards of 56 or more cases in this court where your firm

11 and Mr. Ramey's firm is listed as counsel.

12     So, Ms. Kalra, you were lead attorney in 56 cases?

13          MS. KALRA:  Over the course of years.

14          THE COURT:  Well, that's -- I'm just -- I mean,

15 probably 40 plus of them were just in the last two years.

16          MS. KALRA:  Yes.  And, of course, in consultation

17 with Mr. Ramey for most of them and Mr. Kubiak on a few.

18          THE COURT:  Okay.  And then, Ms. Kalra, in your

19 declaration you say -- this is on paragraph 20 -- it's

20 always been the practice of Ramey, LLP to work under my

21 California Bar admission on cases in California.  I'm not

22 aware of any case where I was not listed as the attorney of

23 record.

24     So, I mean, we've mentioned these cases I think, but

25 PacSec v. Juniper Networks, which is Docket Number 21-7812,

30

1   and NetSoc v. LinkedIn, which is Docket Number 20-483, in
2   both -- at least both those cases, only Mr. Ramey appears on
3   the pleadings.

4          MS. KALRA:  I think I was involved in -- I
5   remember one of those cases.

6          THE COURT:  But those are both cases in this
7   court.  So, I guess the -- I guess I'm trying to reconcile
8   your statement that you were lead counsel on all cases for
9   Ramey in California, but we found at least two where you
10  weren't on the pleadings anywhere.  You weren't on the
11  docket.

12         MS. KALRA:  Oh, so, I should probably qualify that
13  statement a little.  I was lead counsel for the cases in
14  which I either was an employee of Ramey, LLP or hired as
15  local counsel.  And, so, if I wasn't hired as local counsel
16  or the cases prior to the time I joined the firm, then my
17  name would not be on those pleadings.

18         THE COURT:  Okay.  But I -- no California Barred
19  lawyer is on those pleadings?  And I -- I know that they --
20  they do predate your joining the firm --

21         MS. KALRA:  Yes.

22         THE COURT:  -- but I don't know when -- maybe
23  that's -- when did you start working as co-counsel/local
24  counsel with the firm?

25         MS. KALRA:  I don't recall a specific date, but I

31

1  believe it was maybe 2020.

2          THE COURT:  Okay.

3          MR. RAMEY:  Your Honor, just to be very clear

4  about those two --

5          MS. KALRA:  Yes.

6          MR. RAMEY:  -- cases that you said that I appeared

7  without local counsel, those cases were transferred into

8  California and dismissed shortly thereafter.  We -- we never

9  -- that -- a court transferred those cases to California.  I

10 never officially entered an appearance in that court at all.

11 So, those would be two examples of one where I would enter

12 an appearance simply because it was sent there --

13         THE COURT:  Yeah.

14         MR. RAMEY:  -- but we would try to -- we got rid

15 of the cases shortly thereafter.

16         THE COURT:  Okay.  So, let -- let's talk about the

17 other issue which you've raised and it's in your OSC

18 response which you say that, Mr. Kubiak, Mr. Ramey, you have

19 been representing clients in California "under the

20 California Bar license of Ms. Kalra"?  I don't understand

21 what "under the Bar license of Ms. Kalra" means.

22         MR. RAMEY:  She's the -- the attorney -- the

23 attorney that's advising the California clients, and we're

24 simply providing services to the clients under the -- under

25 the guidance of Ms. Kalra.  It's her Bar license that --

32

1   she's the one -- the lead attorney.  She's the -- the

2   contact for that client.

3           THE COURT:  Okay.  So, help me out here.  Under

4   the -- I mean, you don't cite any law.  I mean, do the

5   California Ethics Rules allow out-of-state lawyers to

6   practice and advise clients about California litigation

7   under the Bar license of -- of a California Barred attorney

8   without getting admitted pro hac?

9           MR. RAMEY:  We were providing legal services to

10  Ms. Kalra at her request.  She's the one that's working with

11  the client.  So, that's -- that's how we did it, your Honor.

12  We weren't advising directly the clients without Ms. Kalra

13  being the one that was in charge of the overall

14  representation of the client in -- for California purposes.

15      Again, our representation was limited more towards what

16  the -- the claim scope was, the validity of the patent, and

17  what products might infringe, because of our USPTO Bar

18  registration.

19          THE COURT:  Well, at the last hearing, I think Ms.

20  Kalra represented that you, Mr. Ramey, have most of the

21  client contact with Doctor Gorrichategui, that she -- that,

22  for example, the work on the claims charts, deciding whether

23  or not to file cases.  That's your discussions with him?

24          MR. RAMEY:  That's correct, your Honor.

25          THE COURT:  Okay.  Well, then how are your -- how

33

1  is that operating under Ms. Kalra's Bar license?

2          MR. RAMEY:  She is the person that -- that assumes

3  responsibility for the representation of the client.  We

4  provide services for the client under Ms. Kalra's

5  representation, and that's services as we've talked about a

6  second ago.

7          THE COURT:  Okay.  So, just so I'm clear, no 56,

8  58 or whatever cases?  I mean, I think -- you say you've

9  been representing clients in California, but you've been

10 doing it through or under Ms. Kalra's Bar license.  Is that

11 the -- the -- the argument here?

12         MR. RAMEY:  Yes, your Honor.

13         THE COURT:  Okay.  Do you have any law that says

14 that that's allowed under the unauthorized practice of law

15 rules or case law?

16         MR. RAMEY:  I don't have it before me now.  I do

17 know that under -- that it was our -- it was our -- from

18 reading the California Rules previously, it was my

19 understanding that we could provide services as long as we

20 weren't holding ourselves out to be an attorney, as long as

21 we were practicing under the direction and guidance of Ms.

22 Kalra.  That was our understanding.

23         THE COURT:  Okay.  So, where does -- I guess I --

24 where does the phrase "under the Bar license" of another

25 lawyer come from?  Is that something from cases?  It sounded

34

1  like it came from some legal source.  Is that just a --
2  where did it come from I guess is the question?
3          MR. RAMEY:  I think I may have grabbed that -- my
4  thought may have come back from the Texas Rules of
5  Professional Conduct because they -- they -- recently the
6  Texas Supreme Court updated the Rules in Texas for Texas
7  lawyers, and they -- they didn't say under the Bar license
8  but under the guidance of a responsible attorney.  That may
9  have been where that came from.
10         THE COURT:  Okay.  Okay.  Sorry.  I'm circling
11  back a little bit.  So, in the OSC response, you said that
12  Mr. Ramey -- the decision was made by Mr. Ramey at the rest
13  of -- request of Doctor Gorrichategui in early '22 to
14  attempt to reduce costs by not automatically filing pro hac
15  vice applications.
16      I just want to be clear.  Mr. Ramey, was that your
17  decision alone, to not file the pro hac vice applications in
18  response to that request?
19         MR. RAMEY:  It had been our practice already to
20  which we were approved in cases, but we -- we had been
21  filing in some of them, and then he had asked us to stop.
22  So, I'm the one that made that decision, yes.
23         THE COURT:  Okay.  So, I just want to make sure.
24  Mr. Kubiak, were you involved in that decision?
25         MR. KUBIAK:  No, sir.

35

1          THE COURT:  Okay.  Ms. Kalra, were you involved in
2  that decision?
3          MS. KALRA:  No, your Honor.
4          MR. RAMEY:  She was not.
5          THE COURT:  Did any of the three of you have
6  discussion about that decision at any point?
7          MR. RAMEY:  I don't recall a discussion with --
8  with either Ms. Kalra or Mr. Kubiak.
9          THE COURT:  All right.  And the request from Mr.
10  Gorrichategui was in early '22, but you did submit a
11  declaration from him.  He doesn't make any mention of that.
12  I guess -- I guess the question is why -- since he made the
13  request, why wasn't it in his declaration?
14          MR. RAMEY:  We -- he made the specific -- his --
15  he was looking at it strictly for Rule 11 purposes.
16          THE COURT:  Yeah.
17          MR. RAMEY:  So -- so, I believe that was an
18  oversight on our part, your Honor.
19          THE COURT:  Okay.  All right.
20          MR. RAMEY:  But you have it in my declaration
21  and --
22          THE COURT:  No, no.  I just -- it was curious that
23  it's in your dec but the person who actually made the
24  request, you had his declaration.  I was curious why he
25  didn't say, Yes, I did say that.  It's kind of like triple

36

1    hearsay at some point, right?  That's fine.

2        Okay.  So --

3            MR. RAMEY:  Well, I mean, we can call Mr. -- get

4    Doctor Gorrichategui to submit a subsequent declaration that

5    this is -- this is what happened.

6            THE COURT:  I take -- I take your representation.

7        Okay.  So, again, just so I'm clear, the decision, at

8    least as of 2022 not to file pro hac vice applications was

9    to reduce costs.  That was the -- the motivating factor,

10   right?

11           MR. RAMEY:  That was a factor.  It was -- Doctor

12   Gorrichategui -- we -- we were already in the majority of

13   the cases not doing that, and then -- but he had asked us to

14   this.  So, yes, your Honor.

15           THE COURT:  Okay.  And, so, in the majority of the

16   cases where you already were not doing that, was that also

17   to reduce costs?

18           MR. RAMEY:  No, your Honor.  As I said before,

19   that was -- that was simply the -- we were waiting until we

20   were further in the case before we did that.  And that was

21   a --

22           THE COURT:  The cost issue was not -- not even a

23   factor in those earlier cases?

24           MR. RAMEY:  No, it wasn't, your Honor.

25           THE COURT:  Okay.  And did the -- did the not

1  filing of the pro hac vice applications and, therefore, not

2  paying the fees, did that reduce costs for your law firm as

3  well or would you always have gotten reimbursed by clients?

4           MR. RAMEY:  We would only be reimbursed for our

5  expenses if there was a recovery from the client for the --

6  for -- not for necessarily just that case but from the --

7  the -- whatever cases that particular LLC was filing.

8           THE COURT:  Okay.  Don't get into too much detail,

9  but I believe that your firm primarily works on contingency

10 basis?

11          MR. RAMEY:  A large portion of our work is

12 contingent based, your Honor.

13          THE COURT:  Okay.  So, there'd be a number of

14 cases where the pro hac vice application fees wouldn't get

15 reimbursed if the client doesn't get recovery from those

16 cases, right?

17          MR. RAMEY:  Well, your Honor, as I said, there

18 might be -- we typically seldom have only one or two cases

19 per client.  So, we -- you know, the expenses are -- I can't

20 count in any case except for -- that we weren't reimbursed

21 our expenses.

22          THE COURT:  All right.  And for the -- certainly

23 since the -- to be 100 percent clear on this, the decision

24 not to file the pro hac vice applications after early 2022,

25 that was not based on any kind of accounting error or

38

1  calendaring error?  It was -- it was a decision based on

2  that client's request, right?

3         MR. RAMEY:  Yes, sir.

4         THE COURT:  Okay.  All right.

5      Mr. Ramey, about how many times per year have you

6  traveled to California for work in the last couple of years?

7         MR. RAMEY:  This year, your Honor, this may only

8  be my second trip to California.  Last was in -- Judge

9  Holcomb in the Central District and then here, your Honor.

10 So, I think that's correct.  The prior years, I -- I can't

11 recall being in California in 2023.  I'm not saying I

12 wasn't, but I can't recall being in California.

13        THE COURT:  Mr. Kubiak?

14        MR. KUBIAK:  Yes, your Honor.  This case -- of

15 course, I'm here today -- and the pro hac appearance that I

16 made in the -- the one case, and I was not in California,

17 but I -- I'm counting the Zoom call as --

18        THE COURT:  Okay.

19        MR. KUBIAK:  -- being here.

20        THE COURT:  All right.  And going back let's say

21 in the last three, four years, have you met with clients in

22 California?

23        MR. KUBIAK:  No, sir.

24        MR. RAMEY:  No, your Honor.

25        THE COURT:  Okay.  Have you met with opposing

39

1  counsel and opposing parties in California?

2          MR. RAMEY:  No, your Honor.

3          MR. KUBIAK:  No, never.

4          THE COURT:  Okay.  Have you negotiated settlements

5  in California?

6          MR. RAMEY:  No, your Honor.

7          THE COURT:  Have you negotiated patent transfer,

8  monetization or sales or purchase agreements in California?

9          MR. RAMEY:  No, your Honor.

10         MR. KUBIAK:  No, sir.

11         THE COURT:  How many times have you taken or

12  defended depositions in California?

13         MR. RAMEY:  Never, your Honor.

14         MR. KUBIAK:  Never.

15         THE COURT:  How many times have you appeared in

16  hearings, oral argument, conferences in a California court?

17  Let's go like four or five years max.

18         MR. RAMEY:  Okay.  Your Honor, I can think of the

19  JIMSA case, and I was -- that was Judge Alsup, and I tend to

20  -- I believe I was admitted in that case.  I know you said I

21  wasn't.  So, I'm not going to question that, your Honor, but

22  -- but I did appear for hearings in this court.  So, I'm

23  fairly certain he had admitted me at some point.

24         THE COURT:  It's possible.

25         MR. RAMEY:  The -- the Judge Holcomb, we did a pro

40

1 hac vice down in the Central District when I -- when I had

2 to appear.  That was our -- our practice, and then this

3 Court, and you did a pro hac for us in a previous hearing I

4 understand.  And then Judge Tigar did a pro hac in that

5 case, and that -- '23.  So, I wasn't -- it was Zoom

6 hearings, your Honor.  So, I wasn't actually in California,

7 but I had probably, now that I think about it, probably four

8 or five hearings with Judge Tigar, but I was pro hac in

9 that.

10          THE COURT:  In the last four or five years, trials

11 in California, either of you?

12          MR. RAMEY:  No, your Honor.

13          MR. KUBIAK:  No, your Honor.

14          THE COURT:  Okay.  Arbitrations or mediations?

15          MR. RAMEY:  No, your Honor.

16          MR. KUBIAK:  No, sir.

17          THE COURT:  All right.  Settlement conferences?

18          MR. RAMEY:  No, your Honor.

19          MR. KUBIAK:  No.

20          THE COURT:  Going back to the physical offices,

21 both in Redwood City and Los Angeles, do either of you have

22 your own office within that location?

23          MR. RAMEY:  No, your Honor.

24          MR. KUBIAK:  No.

25          THE COURT:  I think Ms. Kalra described that she's

41

1  got a physical office.  Is it big enough to accommodate even

2  more than one attorney?

3          MR. RAMEY:  I think it would be.  Just it wouldn't

4  be comfortable.

5          THE COURT:  Well, are they separate offices for

6  different attorneys within the actual location?

7          MR. RAMEY:  It's just one office, your Honor

8          THE COURT:  Okay.  All right.  Speaking with Ms.

9  Kalra, the OSC response on page four says that Ms. Kalra was

10 not aiding or abetting the unauthorized practice of law as

11 she was always licensed.  Well, okay.  I mean, it's hard --

12 you can't -- that's such a response -- she can't really aid

13 and abet itself, right.  She's licensed, right.  The

14 question is since neither of you two are licensed, I didn't

15 see anything in the OSC response that separates -- let me

16 put it this way.  If, hypothetically, the Court finds that

17 there has been unauthorized practice of law here by either

18 of you two, is there a separate reason why Ms. Kalra should

19 not necessarily then be found to have been aiding and

20 abetting that?  Again, hypothetically in the first part.

21         MR. RAMEY:  I think that would be a -- a mens rea

22 where she would have to intentionally try to allow us on a

23 -- to commit the unauthorized practice of law.  And,

24 clearly, she was not trying to -- to cause us to commit the

25 unauthorized practice of law in the State of California.

42

1          THE COURT:  Mr. Kubiak?

2          MR. KUBIAK:  Your Honor, I tend to agree with Mr.

3   Ramey.  I think she would have had to have had some intent

4   to do it.

5          THE COURT:  Okay.  All right.  Let's talk about

6   number two, dismissal rule.  So, under Rule 41(a), we all

7   know if you voluntarily dismiss a case twice, the second one

8   acts as a judgment on the merits and bars the -- a third

9   case.

10       So, Koji voluntarily dismissed the Colorado case -- we

11  call that the first case -- by notice under Rule

12  41(a)(1)(A)(I) and also then voluntarily dismissed what

13  we've been calling the second case here by notice under Rule

14  41(a)(1)(A)(I) as well.

15       So, I think I asked Ms. Kalra this.  At the time that

16  you filed the third complaint here, had you done any

17  research or analysis as to why that third complaint was not

18  barred by the two dismissal rule?

19         MR. RAMEY:  Yes, your Honor.  I knew from my years

20  of practice.  This is an issue that had came up early on in

21  my practice when I was in a firm called Mathews Joseph

22  Shaddox and Mason that they had dismissed some cases and

23  then weren't -- that's when we came to the Rule 41 rule,

24  that the second dismissal typical bars you.  But there's --

25  there -- as in most issues of law, there's -- there's

43

1  exceptions that -- that can allow it to be refiled.  And,
2  so, I knew that exists and actually would work in Doctor
3  Gorrichategui's cases.  This came back in some of the DATREC
4  cases, not the one that you're referencing that we needed to
5  look to whether we could refile that, and that's
6  -- that's where it came up again, and I saw that there were
7  all those exceptions.  So, I knew that there could.  And, as
8  we said in the pleadings, your Honor, the first dismissal we
9  filed based on what we thought was good venue from -- from
10 what you see in the pleadings, an image on their website
11 where they say they -- that that's the location of them, and
12 they then presented some affidavits.  And, so, it's not
13 that's an authorized salesperson.  And, so, we didn't think
14 we'd from that evidence.  We asked -- originally had asked
15 simply that we just transfer the case to California.  And
16 the Defendants wanted a dismissal.  That's fine.  We
17 dismissed it.  But that -- in my mind, that would be one
18 explanation of why that third -- why the -- that second 41
19 dismissal of the first California case wouldn't qualify as a
20 second dismissal on the merits.  That was the reason we --
21 we filed the third case.
22         THE COURT:  So, you don't cite any case law that
23 says a dismissal that's motivated by venue issues doesn't
24 count.  I mean, I say -- I think you say you -- you argue
25 that, right, that it shouldn't, but I didn't see any law

44

1  that says that that's one of the exceptions that you're

2  referring to.

3          MR. RAMEY:  Precisely, your Honor.  So, I knew the

4  law, and then later -- and when we -- when this Court

5  brought it up, we researched it again.  We verified that is

6  the law in California.  And, but, as I said in the

7  pleadings, after we started talking -- talking to the

8  Defendants' counsel, we went back and looked at that and

9  researched it, couldn't find anything directly on point, the

10 venue.  And, so, because of the -- not wanting to burden the

11 Defendant, we dismissed before they had to answer.  That was

12 100 percent exactly why we did that.

13      The -- you know, we -- we knew that generally you can.

14 You can make the argument to a court, and the court can

15 accept that argument or not is -- is what it sort of is

16 right now.  If you make -- if you show extraordinary -- I'm

17 not reading it right now, but it's basically if you show

18 circumstances that -- that merit the filing of the third

19 complaint, that there was something odd that happened in the

20 history, and I think the venue is something odd that

21 happens.  However, because, as I say in there, we -- we

22 looked hard for a case that was directly on point after

23 talking to -- to Defendants' counsel, and while we didn't

24 find anything, the client said just dismiss it.

25          THE COURT:  Yeah.  So -- okay.  So, I'm not really

45

1  that concerned about what you did post-complaint.  I'm

2  really more concerned about what you did in terms of

3  researching or looking into the issue when you file -- at

4  the time of or before you filed the third complaint.  I

5  mean, is there -- you didn't submit it, I assume.  There's

6  -- there's no memo that was filed.  There's no research

7  memo.  There's no billing records that show that you -- the

8  amount of work you did kind of thinking about and working on

9  the issue.  Is that --

10          MR. RAMEY:  No, your Honor, but I -- but I knew

11  the law.  I mean, the -- so, I mean, that's what you -- you

12  gain experience in the law from practicing.  So, I knew it

13  was something we could do, but -- but, as I said, when we

14  couldn't find that case exactly on point after Defendants'

15  counsel brought the issue up and our client said, Well, we

16  don't need to fight about fees.  Let's just dismiss it.  And

17  that was the -- that was the basis for it.

18          THE COURT:  Okay.  I mean, did you -- did you

19  consider the issue about the two dismissal rule before you

20  filed the third complaint?

21          MR. RAMEY:  Yes, your Honor.  We knew that it had

22  been dismissed before.

23          THE COURT:  Yeah.

24          MR. RAMEY:  We knew it had been dismissed.  We --

25  I mean, we did, in fact, ask that -- you know, that we just

46

1  transfer, but that -- that was -- and, fine, we'll dismiss

2  it.  We -- the venue rules in patent cases, as this Court's

3  aware, have become difficult.  And, so, when they put

4  forward a declaration, even though we had a website image,

5  that declaration's going to carry the day.  And then we

6  would be burdening the Court -- or burdening the Defendant

7  and the Courts with extra work.  So, we -- we thought what

8  we were doing was the least burdensome manner to get rid of

9  the case in Colorado.

10       And, in truth, as we look at it now, your Honor, our

11  true issue, the mistake we made is dismissing that first

12  Colorado -- the first -- pardon me -- the first California

13  case.  We should have -- we could have held onto that case

14  because we were -- the client had already identified that

15  product.  They didn't have it charted.  But, again, because

16  of the sales being $4,000 of that first product, we tried to

17  reduce the cost for everyone.

18          THE COURT:  Okay.  So -- okay.  So, before filing

19  the third complaint, you -- with regard to the two dismissal

20  rule, it was based on I think you said your experience of

21  just your general knowledge of the law, is that -- is that

22  right?

23          MR. RAMEY:  One hundred percent, your Honor.

24          THE COURT:  Okay.  And I think Ms. Kalra's

25  declaration says something to the same effect.  Did you two

47

1    talk about the issue before you filed the third complaint?

2          MR. RAMEY:  She -- I made her aware we were filing

3    the third complaint, yes.

4          THE COURT:  No, but I'm talking about the -- the

5    two dismissal issue specifically.  Did you talk about it?

6          MR. RAMEY:  I don't recall a specific conversation

7    on that.  I'm not going to say it didn't happen.  We have

8    lots of conversations about the cases that are going on and

9    the direction of the firm.

10          THE COURT:  Okay.  Ms. Kalra, do you have any

11   memory?

12          MS. KALRA:  I don't have a specific memory of that

13   particular conversation, and I agree with Mr. Ramey we

14   talked about a lot of things, and we talked frequently.

15          THE COURT:  Okay.  So, other than your opinions

16   and kind of based on your experience in the law, there's no

17   other -- you didn't -- like I said, you didn't cite any case

18   law?  There's not a legal basis for avoiding the two

19   dismissal rule other than your own beliefs at the time, is

20   that right?

21          MR. RAMEY:  No, your Honor.  In fact, we did cite

22   to the Court a case that's specifically out of California.

23   I'm sorry.  Now I'm forgetting where it is.

24          THE COURT:  The Mill Creek Athletics case that you

25   cite?  Is that what you're talking about?

48

1          MR. RAMEY:  Yes, your Honor.

2          THE COURT:  Yeah.  So, let's talk about that.  So,

3  <u>Mill Creek Athletics</u> was a case discussing whether costs and

4  fees should be awarded under Rule 41(d).  It doesn't ever

5  discuss whether a complaint is barred under Rule 41(a).  So,

6  I don't -- I don't understand how <u>Mill Creek Athletics</u>

7  provides a legal standard for filing a third complaint here.

8  And that case only involved a second complaint.

9          MR. RAMEY:  Your Honor, I -- I know I cited one in

10 here because that was the -- I know I talked about this.

11 you know what, your Honor?  It's in the -- it's in the

12 briefing on the response to the motion for fees.  It's on --

13 in the show cause response.  I noticed that when I was

14 preparing -- when I was reviewing this morning, that that --

15 there was a chunk of argument that could have been put in

16 this response as well.  But the case law is there.

17     This <u>Mill Creek Athletic</u>, I'm not recalling this case.

18 I thought that this case -- well, this one's -- this case

19 simply showed that, you know, that attorney's fees aren't

20 recoverable  and would be okay.  So, I am recalling that

21 case now.  But the -- the other one I know the briefing was

22 in the response to the motion for fees.  I don't think I

23 have that pulled up on my computer either because I -- I

24 didn't come with that.  So, I'm -- there is a -- there is a

25 case in that briefing, your Honor, that -- that's -- that's

49

1  the reason we did -- allowed it to happen.

2          THE COURT:  There's a case you cited in the

3  opposition to motion for fees that says you're allowed to

4  file a third complaint?

5          MR. RAMEY:  There's reason -- reasonable -- I

6  mean, I think it may be in here somewhere.  Pardon me, your

7  Honor.  I'm sorry.

8          THE COURT:  That's okay.  I'm -- that's why I'm

9  asking the question because I didn't see anything.

10          MR. RAMEY:  I apologize, your Honor.

11          THE COURT:  So, while you're pulling that up,

12  since you are referring to the motion for fees, I'll let Mr.

13  Kubiak jump in if he knows what case we're talking about.

14          MR. KUBIAK:  I'm not aware of any case cited on

15  that particular point, your Honor.  And, just to correct the

16  record, I don't believe -- my recollection is they never

17  offered to transfer the first case here.  They just

18  dismissed.  And I think there was representation that our

19  folks made, and I don't remember that happening.

20          MR. RAMEY:  In a phone conversation I had with Mr.

21  Cronacks (phonetic) about this, we had specifically said we

22  could dismiss this -- or agreed to a transfer, and he said

23  he'd rather we dismiss it.  We dismissed.  I think it was

24  within a day we dismissed.  So --

25          THE COURT:  All right.

50

1          MR. RAMEY:  I don't see it in my declaration, your
2   Honor.

3          THE COURT:  Your declaration only cites <u>Mill Creek</u>
4   <u>Athletics</u>.

5          MR. RAMEY:  But I know -- well, in the interest of
6   time -- we can certainly look at your opposition to the
7   motion.  You think it's somewhere in the opposition to the
8   motion for fees?

9          MR. RAMEY:  I thought it was, your Honor, but I
10  know I read the case in preparation for this hearing.  I
11  went back over that.

12         THE COURT:  Okay.  Let's -- so, in the current
13  record, there's no case law that you're able to cite to me
14  that says what the standard is and why you're allowed to
15  file a third complaint after voluntarily dismissing the
16  first two, right?

17         MR. RAMEY:  Your Honor, no.  It's -- it's in the
18  -- the pleadings to the Court.  I just -- I'm sorry.  I
19  can't --

20         THE COURT:  Okay.  We'll look in your opposition
21  brief on the motion for fees and go from there.

22       And then in the opposition -- not the opposition.  In
23  the OSC response, at page 14, you said the dismissal in
24  Colorado was more akin to convenience.  Again, I -- you
25  don't cite any law.  Is there any law that says that a

51

1  dismissal for convenience doesn't count for Rule 41

2  purposes?

3          MR. RAMEY:  No, your Honor.  There -- what it

4  says, there's law that -- that I cite in the pleading.  In

5  the pleadings it says that absent special circumstances, you

6  know, you can't file a third complaint.  The second one

7  operates as a dismissal with prejudice.  That's what the law

8  is, and it's -- I cited a Ninth Circuit case for that.  But

9  I'm not seeing it right now, your Honor.

10      The -- and I'm sorry if I've forgotten your exact

11  question.  I apologize.

12          THE COURT:  There's no -- you used the phrase

13  dismissal for convenience.  I just wanted to make sure.

14  There's no law that says a dismissal for -- I don't even

15  know what a dismissal for convenience is.  It's not a --

16  it's not in the Rules, but a dismissal for convenience is

17  not exempt from the two dismissal rule under Rule 41, is it?

18          MR. RAMEY:  I think it could be because it would

19  be one of those special circumstances that we were talking

20  about, your Honor, that -- that's allowed.

21          THE COURT:  Okay.  So, if you've got case law in

22  the opposition to the motion for fees that addresses that,

23  we'll look for it.

24      And, also, you know, I think you say in the OSC

25  response and I think Mr. -- sorry -- Gorrichategui --

1        MR. RAMEY:  Yes, your Honor.

2        THE COURT:  -- says in his declaration that you --

3  "Mr. Ramey informed me that we would likely lose the venue

4  motion," which is why he authorized the dismissal of the

5  Colorado case.  So, I mean, if there was a recognition

6  internally on your side that you'd likely lose the venue

7  motion, it's not really -- it's not really a dismissal for

8  convenience, right?  I mean, it's a tactical decision that

9  you're going to lose the venue issue.

10        MR. RAMEY:  No, your Honor.  I'd strongly disagree

11  with that.  We were trying to save the parties resources

12  because starting a venue fight means we're going to have to

13  conduct discovery.  That was the -- you know, discovery of

14  -- discovery of -- of Koji's people then, so, to avoid that.

15  That was the basis for it.  So, it is -- and the convenience

16  would mean so we don't have to go into the venue discovery.

17  They said, Hey, California's the right place for this suit

18  to be.  So, that's what -- that's what I meant by that is

19  that it is for saving the parties resources, which is what

20  -- what I thought the -- the law tried to do is encourage

21  counsel to discuss matters with one another in hopes of

22  justice and speedy resolution.  So, we were simply trying to

23  reduce the -- the burdens for everyone.

24        THE COURT:  Okay.  So, you're not relying -- just

25  so I'm clear, because you do cite it in the OSC response in

53

1    your declaration.  You're not really relying on

2    <u>Mill Creek Athletics</u> as authority for the filing of the

3    third complaint, right?  Because that's a fees and cost

4    case.  It's not a barred complaint case.

5            MR. RAMEY:  Right.  But I'd have to go back and

6    see.  It might also cite the -- the standard for that.  I

7    don't recall off the top of my head, but I know that the --

8    I just read the -- the case, you know, in the last couple of

9    days, the case law about that.

10           THE COURT:  Okay.  You also in the OSC response

11   make note that a third complaint charted a different product

12   than that was charted in the second case and even in the

13   first case, the same.  Is there any law that you cited that

14   says -- or that you know of that says that the third

15   complaint isn't barred because it's charting different

16   products, even though it's the same party, same patent?

17           MR. RAMEY:  No, your Honor.  I'd say the law is

18   there's reasonable explanation that can be made that does

19   allow the third case.  I wouldn't say that it's because it

20   was a new product.  That was just one of the other

21   additional factors that could go to allowing you to file --

22   file that third complaint.  That's all.

23           THE COURT:  Okay.  And, again, is that -- we'll

24   have to look at whether the case law in your opposition to

25   the motion for fees goes to that issue.

54

1      Okay.  Ms. Kalra, in your declaration -- it's not in

2  the OSC response.  At paragraph 27 of your declaration, you

3  said that there are exceptions that allow the refiling of a

4  complaint where previous dismissal was made pursuant to

5  stipulation, but you don't cite any case law on that.

6  What's -- what's your support for that assertion?

7           MS. KALRA:  It's actually in Rule 41, and I think

8  it is (a) -- (a)(1)(A)(ii).

9           THE COURT:  Okay.  So, but --

10          MS. KALRA:  But I -- I do see that -- after I

11 looked at the law, subsequently, I did see that it has to be

12 signed by both parties.

13          THE COURT:  That's what a stipulation is, right?

14          MS. KALRA:  Correct.  Well, a stipulation can also

15 be an agreement that's not necessarily executed by people.

16 I mean, I've seen stipulations by email where everybody

17 says, Do you stipulate?  Yes.  So --

18          THE COURT:  But that's deemed a signature because

19 it -- it's a confirmation.

20          MS. KALRA:  Correct.

21          THE COURT:  Right.  So, but you talk about

22 exceptions for dismissals by stipulation, but how is that

23 relevant to the issues here?  There was no -- none of the

24 prior dismissals were by stipulation.

25          MS. KALRA:  So, it was my understanding that the

55

1   prior -- that the dismissal in Colorado -- I wasn't involved

2   in the Colorado case itself, but it was my understanding

3   that the dismissal in the Colorado case was by agreement

4   between the parties, and I probably, you know, should have

5   looked a little harder at that, but I took that at face

6   value.

7          THE COURT:  Okay.  I mean, the document says what

8   it says, but I'll say it.  It -- it is a notice of

9   dismissal.  It's only signed by Mr. Ramey.  It's not signed

10  by -- by opposing counsel.  So, I -- does the -- the

11  stipulation issue, I mean, is it even germane here?

12         MS. KALRA:  Only as far as that was my

13  understanding initially was that everyone had agreed to the

14  dismissal.

15         THE COURT:  Okay.  But the actual dismissal is not

16  a stipulation.  It's a notice of dismissal.  I mean, pull it

17  up.  It's a notice of dismissal.

18         MS. KALRA:  Correct.  And I -- and I know that

19  sort of in -- having looked at it but not on the spur of the

20  moment.

21         THE COURT:  Okay.

22         MS. KALRA:  So, I looked at it a little bit later

23  than the initial filing.

24         THE COURT:  Okay.  Okay.  Very briefly, and this

25  is because in the interest of time, on the prefiling

56

1  analysis with regard to infringement, Mr. Ramey, the OSC

2  response is -- and I take it that you -- you had taken the

3  position that the claims had their plain and ordinary

4  meaning before you filed the third complaint, right?

5          MR. RAMEY:  Under the Federal Circuit law, the

6  heavy bias towards that, yes, your Honor.

7          THE COURT:  Okay.  And, again, you didn't submit

8  anything.  Is -- is there any written work product that is

9  -- that precedes the filing of the third complaint that --

10  that shows that -- the analysis to make sure that it is

11  plain and ordinary meaning?

12          MR. RAMEY:  Yes, your Honor.  Our comparison of

13  the claims -- the claim elements are in the claim chart from

14  the patent, and then -- from our reading of the patent and

15  from our reading as applied to the accused device.

16          THE COURT:  But there's no -- I mean, the claims

17  chart is an infringement chart.  There's no claim

18  construction column, right?

19          MR. RAMEY:  But I don't -- I don't understand what

20  the Court means, and we do have a column with the claim

21  elements.

22          THE COURT:  Yeah.

23          MR. RAMEY:  And then the -- the accused elements

24  from the Defendant's accused instrumentality with a

25  description of why we think that element is met in -- in

57

1  each instance.

2      But I think Mr. Kubiak wants to add something, your

3  Honor.

4          MR. KUBIAK:  Yes, your Honor.  With regard to the

5  claim charts and infringement analysis, many times that

6  would be me, but -- and I would have to go through the

7  specification because sometimes the -- the claim charts are

8  confusing at best.  And, so, I have to go back and figure

9  out what the -- as far as is there something in the file,

10 written analysis.  Usually I'll do it on a yellow pad, and

11 when I'm done, I'm done, and I -- I don't keep those.  Once

12 I'm satisfied with whatever claim construction it is, that's

13 -- that's pretty much the end of it.  And, so, then I --

14 then I would go through and compare it to whatever the

15 device is.

16         THE COURT:  Okay.  So, actually -- actually, it

17 was a little bit unclear to me because there's reference to

18 Mr. Sanatori (phonetic).  In the claims chart for the third

19 complaint, did you work on that or Mr. Ramey or --

20         MR. KUBIAK:  For the third complaint, that would

21 have been Mr. Ramey.

22         THE COURT:  Okay.  You worked on the one for the

23 first and second complaints?

24         MR. KUBIAK:  That's correct.

25         THE COURT:  Okay.

58

1          MR. RAMEY:  And I worked on -- I didn't mean to

2    cut you off.

3          THE COURT:  No.  Just that -- so, I was going

4    where I think you were going to go, just was there

5    collaboration between the two of you on any of the charts

6    that the other one was working on?

7          MR. RAMEY:  Yes.  We 100 percent certainly look at

8    each other's work.

9          MR. KUBIAK:  Many times, yes.  It might not be as

10   detailed as -- as providing him here's -- here's my basis

11   for it, as opposed to just sitting down.  Typically we take

12   all day Tuesday to go over whatever we're going over and

13   just say, Here's what I found.  This is what I think.

14         MR. RAMEY:  So, certainly.  And that actually is a

15   good point Mr. Kubiak brings up.  We do in the firm exactly

16   for this purpose have Tuesdays set aside for -- for meetings

17   where we go through every case that's in the firm and then

18   look at every issue, look at the case, because we don't want

19   to miss any of these issues or have something inappropriate

20   occur.

21         THE COURT:  And I think in the OSC response you

22   say on page 16 that there are two situations where a claim

23   term can deviate or not be its plain ordinary meaning.

24   That's where the patent case and lexicographer or the term

25   so deprives the claim of clarity that there's no means by

1  which the scope may be ascertained from the language used,

2  which I think you were referring to.  So, that's the way you

3  -- you went through those two and then decided that neither

4  of them applied, so you could use plain and ordinary

5  meaning.  Is that for the --

6        MR. KUBIAK:  Yes, sir.

7        THE COURT:  -- charts?  Is that --

8        MR. RAMEY:  Yes, your Honor.

9        THE COURT:  Okay.  And I think you say it, I just

10 want to be 100 percent clear.  Ms. Kalra didn't work on any

11 of the claims terms for any of the complaints, right?

12        MR. RAMEY:  She would --

13        MR. KUBIAK:  She did not work on the claim chart.

14 She would accept whatever we told her as -- as accurate.

15        THE COURT:  Okay.  All right.

16    Ms. Kalra, I think your declaration says that you

17 relied on -- for the claims charts, you relied on Mr. Ramey

18 for the third complaint and I assume Mr. Kubiak for the

19 second complaint.  Is that right?

20        MS. KALRA:  That's correct, but I reviewed them

21 before they got filed to just double check that we had

22 everything in the claim charts that we need to have in in

23 the exhibit.

24        THE COURT:  Okay.  How much time did you spend

25 reviewing the claims charts?

60

1          MS. KALRA:  I looked at the claim charts.  I
2    looked at the patent, about an hour and a half.
3          THE COURT:  And for the third complaint, Mr.
4    Ramey, about how much time did you spend on that claims
5    chart?
6          MR. RAMEY:  Your Honor, I spoke with Doctor
7    Gorrichategui and with Mr. Sanatori.  So, Mr. Sanatori works
8    for Doctor Gorrichategui.  We discussed that claim chart for
9    approximately an hour and a half when they first presented
10   it to me.  The question I asked back to them is was this
11   product included with the previous claim chart, and -- and
12   then they said no, and they didn't think it was part of the
13   -- the sales stream we had because it wasn't included
14   before, and we checked our emails, saw that it likely wasn't
15   included in the prior numbers that came from Renesas.  And
16   then I went back to the claim chart again, looked at it,
17   made sure all the elements were -- were addressed by their
18   plain and ordinary meaning.  Probably at that point it was
19   another 45 minutes.  So, it's total about two hours and
20   fifteen minutes.
21         THE COURT:  Okay.  And, Mr. Kubiak, about how much
22   time did you spend conferring on the third complaint's claim
23   chart?
24         MR. KUBIAK:  On the third complaint?  Very little.
25   I mean, I knew what was going on, but as far as really

61

1 talking about it, that was pretty much between Mr. Ramey and

2 Ms. Kalra.

3          THE COURT:  Okay.  And how much time did you spend

4 on the claims chart that was attached both in the first case

5 and --

6          MR. KUBIAK:  One and two?

7          THE COURT:  Yeah, first and second complaints.

8          MR. KUBIAK:  For the -- for the very first claim

9 chart, I probably spent six, seven hours on it.  Mr.

10 Sanatori is very bright, but I don't always agree with him.

11          THE COURT:  And I think I asked Ms. Kalra this in

12 the last hearing.  I wasn't sure she knew the exact answer.

13 Mr. Sanatori is not a patent agent?  He's not a member of

14 the Patent Bar?

15          MR. KUBIAK:  As far as I know he is not.

16          THE COURT:  He's not a lawyer?

17          MR. KUBIAK:  No.

18          THE COURT:  Okay.

19          MR. RAMEY:  No, no, no.  He -- I think he -- in

20 his declaration, he specifies his technical experience.  He

21 has 20 years doing this type of work, but -- but you're

22 right.  That's why Mr. Kubiak and I and Ms. Kalra, you know,

23 we review what he does, and we don't accept it at face

24 value.

25          THE COURT:  Okay.  All right.  Let me just make

62

1  sure I don't have any other questions.  Okay.

2      So, last chance.  Any other matters, anyone, Ms. Kalra

3  as well, want to bring to my attention or raise with the

4  Court that you haven't had a chance to?

5          MR. RAMEY:  No, your Honor.  I'd simply like to

6  say on behalf of me and Mr. Kubiak and my firm and Ms. Kalra

7  that I -- we never intended to get Ms. Kalra in any issues

8  with the California State Bar, and we never, as our law

9  firm, intended to practice law in California.  And, so, we

10 -- we -- we do -- we do tell the Court that we've changed

11 our practices.  We -- we made a mistake.  We accept that

12 fact.  We've -- we've done what we can to fix that and

13 rectify it going forward.  It won't -- won't happen again,

14 unless we can get a license or in cases we get admitted pro

15 hac vice.

16          THE COURT:  You're always free to take the

17 California Bar exam.  Nothing's stopping you from doing

18 that.

19          MR. RAMEY:  I've thought about it many times, your

20 Honor.

21          MR. KUBIAK:  Too old, sir.

22          THE COURT:  I didn't really probe this, but --

23 because it's not -- it's more what you're going to be doing

24 going forward.  Is it your going forward practice going to

25 be that -- I understand nobody's going to be on the

63

1 pleadings unless they're either already going to be admitted

2 pro hac or -- or they're already a member of the California

3 Bar, right?  But are you also going to work on the case from

4 Texas and just funnel everything to Ms. Kalra without being

5 on the pleadings?  Is that the -- is that -- she can't work

6 on the cases alone, right?

7         MR. RAMEY:  She will handle the legal

8 representation of the case, and we would be involved in

9 assisting her with the technical aspects of the case.  The

10 client is based in Texas.

11         THE COURT:  Yeah.

12         MR. RAMEY:  And we'd be advising the client there

13 for -- for that purpose on infringement, but all the legal

14 analysis, anything that would have to be in California would

15 go through Ms. Kalra.

16         THE COURT:  That includes claims charts for

17 complaints in the future or for infringement contentions,

18 right?

19         MR. RAMEY:  She --

20         THE COURT:  I mean, she can't draft those from

21 scratch herself, right?

22         MR. RAMEY:  Well, correct, but she -- right now,

23 so, it's her current practice that she looks at everything.

24 She has the -- the say before -- if she doesn't like a claim

25 chart, it won't get filed.

64

1          THE COURT:  Okay.

2          MR. KUBIAK:  I see our position as being like her

3   law clerk essentially.

4          THE COURT:  Okay.  I think I've asked this, but do

5   you know of any California ethics opinions that allow you to

6   do that, that is, prepare documents for her that she will

7   review but then file in California courts but that's not --

8   that doesn't count as the unauthorized practice of law here?

9   Because it's -- it goes beyond simply advising the client,

10  right?  You're preparing documents that you know are

11  intended to be filed in a California court.

12         MR. RAMEY:  We're providing the -- the services of

13  Mr. Sanatori, they were helping prepare something that she

14  has the final say on approving.

15         THE COURT:  Yeah.

16         MR. RAMEY:  We -- we use our experience as

17  registered patent agents to do that and our experience with

18  the client.

19         THE COURT:  But just more specifically, because

20  they -- did you cite -- are you aware of, because you didn't

21  cite any -- are you aware of any law, any California ethics

22  opinions, anything that allow you to do that work knowing

23  that it's going to be intended to be filed in a California

24  court and where the State Bar has said, yes, that's not the

25  unauthorized practice of law?

1        MR. RAMEY:  I'm not -- I'm not aware of an

2 opinion, your Honor, that says that -- I'm not aware of any

3 specific opinion on that issue.

4        THE COURT:  Okay.  All right.  Mr. Crotty, I'll

5 give you one chance to speak, only if it deals with the

6 motion for fees, though, because that -- there has been some

7 discussion.

8        MR. CROTTY:  Just as a factual matter, most of the

9 communications on this case are about settlement.

10        THE COURT:  Yeah.

11        MR. CROTTY:  And I don't know where that falls in

12 terms of like -- I know they're going to change the

13 pleadings but the substance of who's doing what, most of my

14 interactions were with Mr. Ramey, mostly over email, joint

15 documents, settlement offers, that sort of thing.  So, I

16 don't know what side of the line that falls in.

17     And then as to the fees motion, the only thing I would

18 like to say is that we would consider this part of the

19 manner of litigation that's relevant under Octempics

20 (phonetic), and that's it.

21        THE COURT:  Okay.  Well, the fee -- from the

22 Court's point of view, the fees motion is submitted.  So, I

23 don't want to supplement the record any further.  I just

24 wanted to give you a fair chance to talk because there has

25 been some discussion of it.

1      Okay.  Are we submitted on the OSC?  Anything further?

2           MR. RAMEY:  Just one second, your Honor.

3           THE COURT:  Sure.

4           MS. KALRA:  May I speak with Mr. Ramey for just a

5   second?

6           THE COURT:  Sure.

7           MS. KALRA:  Thank you.

8      (Pause.)

9           MR. RAMEY:  Your Honor, we'd request leave of the

10  Court to file the additional authority on the Rule 41,

11  because I know we cited it in briefing.  So, I would just

12  present the case, no argument on it, just present the case

13  to the Court.

14          THE COURT:  Well, if you're sure it's in the

15  motion for fees, we'll pick it up that way.

16          MR. RAMEY:  I thought it was, your Honor.  But I'm

17  just asking -- I'm still asking for motion for leave just to

18  submit that supplemental authority.

19          THE COURT:  You can submit it, but you have to

20  point to where it is in the motion for fees, right, because

21  that was the representation.  I don't want you -- at this

22  point, I mean, you've already filed your written response.

23  I don't want you going out doing -- you should have found

24  case -- I think you would have found cases by now if you had

25  any.  So, yeah, you can -- you can submit the additional

1  authority --

2           MR. RAMEY:  Thank you, your Honor.

3           THE COURT:  -- without argument.

4      Okay.  Any -- other than that, submitted?

5           MR. RAMEY:  Yes, your Honor.

6           THE COURT:  Okay.  Anything further from you, Ms.

7  Kalra?

8           MS. KALRA:  No, your Honor.

9           THE COURT:  Okay.  Mr. Kubiak?

10          MR. KUBIAK:  No, sir.

11          THE COURT:  Mr. Crotty?

12          MR. CROTTY:  No, your Honor.

13          THE COURT:  Okay.  We're adjourned till the next

14  matter, and an order will issue, you know, in due course.

15     Ms. Kubiak, as to your administrative motion to seal

16  your supplemental declaration --

17          MR. KUBIAK:  Ms. Kalra.

18          THE COURT:  Am I --

19          MR. KUBIAK:  No.  It's Ms. Kalra.

20          THE COURT:  Sorry.  I thought I said Kalra.  Ms.

21  Kalra, as to your administrative motion, I'm going to deny

22  in part and grant in part.  What I --

23          MS. KALRA:  Okay.

24          THE COURT:  There's parts of that declaration that

25  are -- that actually go to the -- the OSC response, but

68

1  parts go to your personal issues.  So, submit a proposed

2  redacted version that redacts whatever you consider to be

3  truly personal --

4          MS. KALRA:  Right.

5          THE COURT:  -- information, and then the Court

6  will consider it.

7          MS. KALRA:  Thank you very much, and I appreciate

8  that.

9          THE COURT:  All right.  I think in the proceedings

10 today that covers everything.  So, anything further from

11 anyone?

12         MR. RAMEY:  Nothing from Plaintiff, your Honor.

13         MR. KUBIAK:  No, your Honor.

14         THE COURT:  Okay.  Thank you.

15         MR. RAMEY:  Thank you.

16         THE COURT:  Thank you for your time.

17         THE CLERK:  We're off the record in this matter.

18     (Proceedings adjourned at 11:50 a.m.)

19

20

21

22

23

24

25

69

<u>CERTIFICATE OF TRANSCRIBER</u>

    I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

    I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.

Echo Reporting, Inc., Transcriber

Monday, September 30, 2024

*Echo Reporting, Inc.*