United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

KOJI IP, LLC,

Plaintiff,

v.

RENESAS ELECTRONICS AMERICA, INC.,

Defendant.

Case No. 24-cv-03089-PHK

**ORDER REGARDING OSC AND IMPOSING SANCTIONS ON RAMEY FIRM LAWYERS**

Re: Dkt. 27

"***Every*** member of the bar of this Court ***and any attorney permitted to practice in this Court*** under Civil L.R. 11 ***must*** . . . [b]e familiar with ***and comply with*** the standards of professional conduct required of members of the State Bar of California." Civil L.R. 11-4 (emphasis added).

***

This is a patent infringement action. But this Order goes beyond patent law and touches on issues relevant to the rules of professional conduct for federal practitioners.

The Parties have consented to proceed before a Magistrate Judge for all purposes, including entry of a final judgment under 28 U.S.C. § 636(c). *See* Dkts. 10, 20. Now before the Court are responses and supplemental briefing from Plaintiff's counsel from the Ramey law firm—Attorneys William P. Ramey, III, Susan S.Q. Kalra, and Jeffrey E. Kubiak—with respect to this Court's Order to Show Cause ("OSC"). *See* Dkts. 28, 33, 38. The Court issued the OSC, on August 29, 2024, regarding why these attorneys should not be sanctioned under Federal Rule of Civil Procedure 11 and the Court's inherent authority. [Dkt. 27]. In connection with Defendant's motion for attorneys' fees and sanctions, Defendant's counsel brought to the Court's attention

information indicating that Plaintiff's counsel may have been engaging in the unauthorized practice of law in this Court and/or aiding and abetting the unauthorized practice of law. [Dkt. 25 at 15]. The Court will issue a separate Order on that motion for fees and sanctions which are legally unrelated to the issues at hand. With regard to the OSC, the Court held a hearing on September 19, 2024. *See* Dkts. 30, 40. After post-hearing briefing, the matter is now deemed submitted and the Court turns to its analysis, starting with a brief summary of the relevant procedural history.

## RELEVANT BACKGROUND

### I. The Ramey Firms Filed and Voluntarily Dismissed Three Patent Infringement Lawsuits on Behalf of the Same Plaintiff Asserting the Exact Same Patent Against the Exact Same Defendant in Each Case.

On May 22, 2024, Plaintiff commenced this patent infringement action against Defendant. *See* Dkt. 1. This is the ***third*** lawsuit filed by one or all of these attorneys of the Ramey LLP firm on behalf of Koji IP, LLC; and in all three lawsuits, the Ramey firm (on behalf of its client Koji) accused Renesas Electronics America, Inc. of infringing U.S. Patent No. 10,790,703. *See* Complaint *Koji IP, LLC v. Renesas Electronics America, Inc.* ("*Koji I*"), No. 1:23-cv-01674-SKC (D. Colo. Jun. 30, 2023), ECF No. 1; Complaint, *Koji IP, LLC v. Renesas Electronics America, Inc.* ("*Koji II*"), No. 3:23-cv-05752-LJC (N.D. Cal. Nov. 8, 2023), ECF No. 1.

These Ramey firm lawyers filed voluntary dismissals of each of the first two *Koji v. Renesas* actions under Federal Rule of Civil Procedure 41. *See* Notice of Voluntary Dismissal, *Koji I*, No. 1:23-cv-01674-SKC (D. Colo. Sept. 6, 2023), ECF No. 18; Notice of Voluntary Dismissal, *Koji II*, No. 3:23-cv-05752-LJC (N.D. Cal. Jan. 30, 2024), ECF No. 12. These lawyers then filed the third *Koji v. Renesas* lawsuit (the case currently at hand) less than a year after voluntarily dismissing the second identical lawsuit. [Dkt. 1]. As with those two prior lawsuits, Plaintiff voluntarily dismissed this Third Action on June 12, 2024. [Dkt. 12]. When they filed the voluntary dismissal of this third *Koji v. Renesas* case, the lawyers here filed no explanation for their basis for filing the case in the first instance (despite the clear mandates of Federal Rule of Civil Procedure 41(a)(1)(B)).

**II. Unauthorized Practice of Law.**

On June 26, 2024, Defendant filed a motion for attorneys' fees and sanctions. [Dkt. 18]. Plaintiff opposed, and Defendant filed a reply. [Dkt. 24; Dkt. 25]. In the reply brief, Defendant raised the issue of the potential unauthorized practice of law by Plaintiff's counsel, Mr. Ramey. [Dkt. 25 at 15]. The Court heard oral argument on that motion on August 22, 2024. *See* Dkt. 26. Ms. Kalra (another Ramey firm lawyer) appeared as counsel for Plaintiff at that hearing, but the other Ramey firm lawyers identified on the pleadings (Mr. Ramey and Mr. Kubiak) did not appear. During oral argument, counsel for Defendant raised additional details on the alleged unauthorized practice of law by Mr. Ramey.

In this matter, Ms. Kalra—who during the relevant time period here and until recently was registered on the Court's electronic case filing ("ECF") system as counsel of record for Plaintiff—filed the complaint, civil cover sheet, report on the filing of a patent action, certificate of interested entities, and proposed summons. *See* Dkts. 1-5. The documents filed by Ms. Kalra in this case state that they originated from the law offices of Ramey LLP, 5020 Montrose Blvd., Suite 800, Houston, Texas 77006. Ms. Kalra is a member of the Northern District of California bar and an active member of the State Bar of California in good standing.

The body of the text of the complaint is signed by Ms. Kalra and identifies her to be Plaintiff's counsel ("Susan S.Q. Kalra (CA State Bar No. 16740"). [Dkt. 1 at 7]. Ms. Kalra and Mr. Ramey *both* signed the jury demand on the final page of the complaint, and they are identified therein as "Attorneys for Plaintiff." *Id.* at 8. The front page of the complaint includes the names of these two attorneys and similarly identifies them as "Attorneys for Plaintiff." *Id.* at 1. The final page of the complaint is signed by these two attorneys but also includes the name and contact information for another attorney from the Ramey LLP firm, Mr. Kubiak (also there identified as one of the "Attorneys for Plaintiff"). *Id.* at 8. In the signature block on the last page of the complaint, both Mr. Ramey and Mr. Kubiak have the words "*pro hac vice* anticipated" next to their names along with Texas Bar numbers. *Id.* Mr. Ramey's signature appears not just on the complaint but also on several other documents filed in this case on behalf of Plaintiff. For example, the notice of voluntary dismissal in this case was signed by both Ms. Kalra and Mr.

Ramey—both identified as "Attorneys for Plaintiff"—and Mr. Ramey includes the "*pro hac vice* anticipated" language after his name in that filing as well. [Dkt. 12 at 2].

By affixing "*pro hac vice* anticipated" next to their names in documents filed on the docket since the earliest days of this case, Mr. Ramey and Mr. Kubiak appear to indicate their intent to seek *pro hac vice* admission to this Court for this matter. The problem is that, to date, neither has filed (and no attorney has filed) a motion on either Mr. Ramey's or Mr. Kubiak's behalf seeking *pro hac* status in this case.

The record reveals that Mr. Ramey and Mr. Kubiak are out-of-state attorneys who are acting as Plaintiff's litigation counsel in this case. The information provided by Ms. Kalra at the hearing on August 22, 2024 made clear that Mr. Ramey was engaged in the bulk of legal activity in litigating this case. As noted, neither Mr. Ramey nor Mr. Kubiak are licensed to practice law in California. Neither individual had sought, much less been granted, *pro hac vice* status in this case. The docket shows plainly that there was no application for *pro hac vice* admission filed on their behalf at the time of the filing of the complaint in this action, despite the instructions for the timing of such a motion in the Northern District of California's Civil Local Rules. *See* Civil L.R. 11-3(b).

As noted above, this is the third in a trilogy of cases filed by these attorneys on behalf of this same Plaintiff alleging infringement by this same Defendant of the same asserted patent. The Second Action was filed in this Court on November 8, 2023. *Koji II*, No. 3:23-cv-05752-LJC (N.D. Cal. Nov. 8, 2023), ECF No. 1. The identification of Plaintiff's counsel in the complaint in that Second Action is identical in all material respects to the complaint in this Third Action: Ms. Kalra and Mr. Ramey signed the complaint on the final page under the jury demand language; Ms. Kalra signed the body of the complaint; both Ms. Kalra and Mr. Ramey are identified on the face sheet and in the signature block on the final page as "Attorneys for Plaintiff;" and Mr. Kubiak is further identified as one of the "Attorneys for Plaintiff" in the signature block on the final page. Both Mr. Ramey and Mr. Kubiak list their Texas bar numbers and include the notation "*pro hac vice* anticipated" in the signature block on the last page (and, for Mr. Ramey, on the face sheet) of that *Koji II* complaint. No application for *pro hac vice* admission was ever filed on behalf of

either Mr. Ramey or Mr. Kubiak in the Second Action and certainly none was filed at the time of the filing of the complaint in that case (again despite the strictures in the Civil Local Rules).

At the motion hearing on August 22, 2024, counsel for Defendant brought to the Court's attention the fact that Mr. Ramey has appeared as counsel on pleadings in numerous cases in this District prior to the current action. Based on the Court's further investigation, it became clear that Mr. Ramey and Mr. Kubiak have regularly litigated numerous cases in the Northern District of California without being members of the California bar or the Northern District of California's Bar and without seeking *pro hac vice* admission in virtually all of these prior cases.

To date, the Court has identified at least **fifty-six *other*** civil actions in the Northern District of California in which Mr. Ramey registered as an attorney of record for a party on the docket for each of those cases, or at a minimum, signed the pleadings identifying himself to be the plaintiff's counsel with "*pro hac vice*" status or "*pro hac vice* anticipated" language added. *See CyboEnergy, Inc. v. Duracell Power Center, LLC*, No. 3:24-cv-08891-LJC (filed 12/10/24) (attorney to be noticed); *WirelessWerx IP, LLC v. Zipline Int'l, Inc.*, No. 3:24-cv-08462-PHK (filed 11/26/24) (attorney to be noticed); *Kephart Consulting, LLC v. AxxonSoft US, Inc.*, No. 4:24-cv-06770-KAW (filed 9/26/24) (lead attorney); *VDPP, LLC v. Roku, Inc.*, No. 5:24-cv-05303-VKD (filed 8/16/24) (signed complaint with "*pro hac vice*"); *mCom IP, LLC v. WestAmerica Bancorporation*, No. 3:24-cv-03609-SK (filed 6/14/24) (signed jury demand with "*pro hac vice* anticipated"); *Autonomous IP, LLC v. Lyft, Inc.*, No. 3:24-cv-03348-RFL (filed 6/4/24) (attorney to be noticed); *Linfo IP, LLC v. Alibaba Grp. (U.S.) Inc.*, No. 3:24-cv-03098-RS (filed 5/22/24) (lead attorney); *WFR IP, LLC v. Alibaba Grp. (U.S.) Inc.*, No. 3:24-cv-02179-TSH (filed 4/12/24) (signed complaint with "*pro hac vice*"); *Linfo IP, LLC v. Third Love, Inc.*, No. 4:24-cv-02195-HSG (filed 4/12/24) (signed complaint with "*pro hac vice*"); *Flick Intelligence, LLC v. HTC Am. Inc.*, No. 5:24-cv-02201-NC (filed 4/12/24) (signed complaint with "*pro hac vice* anticipated"); *PacSec3, LLC v. Radware, Inc.*, No. 3:24-cv-02146-AGT (filed 4/10/24) (signed complaint with "*pro hac vice* anticipated"); *VDPP, LLC v. Xiaomi USA, LLC*, No. 5:24-cv-01783-EKL (filed 3/22/24) (lead attorney); *VDPP, LLC v. Vivitek Corp.*, No. 5:24-cv-01781-BLF (filed 3/22/24) (attorney to be noticed); *VDDP, LLC v. Motorola Mobility LLC*, No. 3:24-cv-01672-LJC

United States District Court
Northern District of California

(filed 3/18/24) (lead attorney); *WirelessWerx IP, LLC v. Lyft, Inc.*, No. 5:24-cv-01144-VKD (filed 2/26/24) (attorney to be noticed); *WirelessWerx IP, LLC v. Wing Aviation LLC*, No. 4:24-cv-01040-YGR (filed 2/21/24) (signed jury demand with "*pro hac vice* anticipated"); *SmartWatch MobileConcepts, LLC v. Google, LLC*, No. 3:24-cv-00937-RFL (filed 2/16/24) (lead attorney); *Missed Call, LLC v. Twilio Inc.*, No. 3:24-cv-00681-LB (filed 2/5/24) (lead attorney); *Missed Call, LLC v. RingCentral, Inc.*, No. 3:23-cv-06728-TLT (filed 12/31/23) (signed jury demand with "*pro hac vice* anticipated"); *Missed Call, LLC v. 8x8, Inc.*, No. 3:23-cv-06723-VC (filed 12/30/23) (signed jury demand with "*pro hac vice* anticipated"); *WirelessWerx IP, LLC v. OnFleet, Inc.*, No. 3:23-cv-06724-AMO (filed 12/30/23) (signed complaint and jury demand with "*pro hac vice* anticipated"); *WirelessWerx IP, LLC v. Life360, Inc.*, No. 3:23-cv-06725-AMO (filed 12/30/23) (signed complaint and jury demand with "*pro hac vice* anticipated"); *Mesa Digital, LLC v. Quanta Comp. USA, Inc.*, No. 3:23-cv-06711-VC (filed 12/29/23) (signed jury demand with "*pro hac vice* anticipated"); *CyboEnergy, Inc. v. N. Elec. Power Tech., Inc.*, No. 4:23-cv-06121-JST (filed 11/27/23) (signed complaint with "*pro hac vice* anticipated"); *Koji IP, LLC v. Energous Corp.*, No. 4:23-cv-05750-HSG (filed 11/8/23) (attorney to be noticed); *Vilox Techs., LLC v. Salesforce, Inc.*, No. 3:23-cv-05047-AMO (filed 10/2/23) (attorney to be noticed); *Fare Techs. LLC v. Lyft, Inc.*, No. 3:23-cv-04935-RFL (filed 9/26/23) (attorney to be noticed); *Flick Intelligence, LLC v. Google, LLC*, No. 3:23-cv-04803-TLT (filed 9/19/23) (attorney to be noticed); *HyperQuery, LLC v. LG Elecs. U.S.A., Inc.*, No. 3:23-cv-04725-JCS (filed 9/14/23) (attorney to be noticed); *VDPP, LLC v. Vivo, Inc.*, No. 5:23-cv-04241-NC (filed 8/18/23) (lead attorney); *Ask Sydney, LLC v. Google, LLC*, No. 3:23-cv-03955-JD (filed 8/8/23) (attorney to be noticed); *Safecast Ltd. v. Google, LLC*, No. 5:23-cv-03128-PCP (filed 6/23/23) (lead attorney); *Haley IP, LLC v. Motive Techs., Inc.*, No. 4:23-cv-02923-HSG (filed 6/14/23) (lead attorney); *ALD Social, LLC v. Apple, Inc.*, No. 3:23-cv-02695-JSC (filed 5/31/23) (attorney to be noticed); *Silent Commc'n, LLC v. Adobe, Inc.*, No. 3:23-cv-02696-TLT (filed 5/31/23) (attorney to be noticed); *Flick Intelligence LLC v. Niantic, Inc.*, No. 3:23-cv-02219-TLT (filed 5/5/23) (jury demand with "*pro hac vice* anticipated"); *WirelessWerx IP, LLC v. Google, LLC*, No. 4:23-cv-01852-JST (filed 4/17/23) (attorney to be noticed); *WirelessWerx IP, LLC v. Uber Techs., Inc.*, No. 3:23-cv-00990-AMO

(filed 3/3/23) (attorney to be noticed); *Street Spirit IP LLC v. Meta Platforms, Inc. f/k/a Facebook, Inc.*, No. 3:23-cv-00879-WHA (filed 2/27/23) (signed complaint and jury demand with "*pro hac vice* anticipated"); *Street Spirit IP LLC v. Instagram et al.*, No. 3:23-cv-00883-WHA (filed 2/27/23) (signed complaint and jury demand with "*pro hac vice* anticipated"); *Street Spirit IP LLC v. LinkedIn Corp.*, No. 3:23-cv-00884-AMO (filed 2/27/23) (signed complaint and jury demand with "*pro hac vice* anticipated"); *ALD Social LLC v. Verkada, Inc.*, No. 3:23-cv-00049-JSC (filed 1/5/23) (attorney to be noticed); *Escapex IP LLC v. Google LLC*, No. 3:22-cv-08711-VC (filed 12/13/22) (attorney to be noticed); *ESIGNATURE SOFTWARE, LLC v. Adobe, Inc.*, No. 3:22-cv-05962-JSC (filed 10/12/22) (attorney to be noticed); *Traxcell Techs., LLC v. Google LLC*, No. 3:22-cv-04807-JSC (filed 8/22/22) (lead attorney); *Valjakka v. Netflix, Inc.*, No. 4:22-cv-01490-JST (filed 3/9/22) (lead attorney); *CyboEnergy, Inc. v. N. Elec. Power Tech., Inc.*, No. 3:21-cv-08534-SI (filed 11/2/21) (lead attorney); *Riggs Tech. Holdings, LLC v. Vagaro, Inc.*, No. 3:21-cv-07927-TSH (filed 10/8/21) (attorney to be noticed); *PacSec3, LLC v. Juniper Networks, Inc.*, No. 5:21-cv-07812-EJD (filed 10/6/21) (attorney to be noticed); *Apple Inc. v. Traxcell Techs. LLC*, No. 3:21-cv-06059-EMC (filed 8/5/21) (attorney to be noticed); *DATREC, LLC v. PrognoCIS, Inc.*, No. 3:21-cv-01595-JCS (filed 3/5/21) (lead attorney); *NetSoc, LLC v. LinkedIn Corp.*, No. 3:20-cv-00483-VC (filed 1/22/20) (lead attorney); *NetSoc, LLC v. Quora, Inc.*, No. 3:19-cv-06518-VC (filed 10/11/19) (lead attorney); *Global Equity Mgmt. (SA) Pty. Ltd. v. Alibaba.com Inc.*, No. 3:17-cv-02177-WHA (filed 4/19/17) (lead attorney); *Global Equity Mgmt. (SA) Pty. Ltd. v. eBay, Inc.*, No. 3:17-cv-02178-WHA (filed 4/19/17) (lead attorney); *Global Equity Mgmt. (SA) Pty. Ltd. v. Alibaba Grp. Holding, Ltd.*, No. 3:17-cv-02435-WHA (filed 4/28/17) (attorney of record).

Mr. Ramey sought *pro hac vice* admittance in **only ten of those fifty-six cases** (three of which occurred subsequent to the OSC hearing). *See WirelessWerx IP, LLC v. Zipline Int'l, Inc.*, No. 3:24-cv-08462-PHK (application filed 3/4/25 averring *pro hac vice* granted "4" times in the twelve months prior); *Kephart Consulting, LLC v. AxxonSoft US, Inc.*, No. 4:24-cv-06770-KAW (application filed on 2/24/25 averring "3" times in the twelve months prior); *CyboEnergy, Inc. v. Duracell Power Center, LLC*, No. 3:24-cv-08891-LJC (application filed 12/12/24 averring "0"

times in the twelve months prior); *WirelessWerx IP, LLC v. Lyft, Inc.*, No. 5:24-cv-01144-VKD (application filed on 4/29/24 averring "0" times in the twelve months prior); *CyboEnergy, Inc. v. N. Elec. Power Tech., Inc.*, No. 3:21-cv-08534-SI (application filed on 3/23/24 averring"1" time in the twelve months prior); *Safecast Ltd. v. Google, LLC*, No. 5:23-cv-03128-PCP (application filed on 8/3/23 averring "1" time in the twelve months prior); *Traxcell Techs., LLC v. Google LLC*, No. 3:22-cv-04807-JSC (application filed on 10/28/22 averring "3" times in the twelve months prior); *Apple Inc. v. Traxcell Techs. LLC*, No. 3:21-cv-06059-EMC (application filed on 2/8/22 averring "n/a" times in the twelve months prior); *DATREC, LLC v. PrognoCIS, Inc.*, No. 3:21-cv-01595-JCS (application filed on 4/14/21); *NetSoc, LLC v. Quora, Inc.*, No. 3:19-cv-06518-VC (application filed on 11/26/19).

The Court has likewise identified at least **seventeen *other*** civil actions in the Northern District of California (not including the Second Action or this Third Action) in which Mr. Kubiak registered as an attorney of record for a party on the docket for each of those cases, or at a minimum, is designated in the pleadings as a party's counsel with "*pro hac vice*" or "*pro hac vice* anticipated" status language added. *See VDPP, LLC v. Roku, Inc.*, No. 5:24-cv-05303-VKD (filed 8/16/24) ("*pro hac vice*"); *mCom IP, LLC v. WestAmerica Bancorporation*, No. 3:24-cv-03609-SK (filed 6/14/24) ("*pro hac vice* anticipated"); *Autonomous IP, LLC v. Lyft, Inc.*, No. 3:24-cv-03348-RFL (filed 6/4/24) (lead attorney); *Linfo IP, LLC v. Alibaba Grp. (U.S.) Inc.*, No. 3:24-cv-03098-RS (filed 5/22/24) ("*pro hac vice* anticipated"); *WFR IP, LLC v. Alibaba Grp. (U.S.) Inc.*, No. 3:24-cv-02179-TSH (filed 4/12/24) ("*pro hac vice*"); *Linfo IP, LLC v. Third Love, Inc.*, No. 4:24-cv-02195-HSG (filed 4/12/24) ("*pro hac vice*"); *VDPP, LLC v. Xiaomi USA, LLC*, No. 5:24-cv-01783-EKL (filed 3/22/24) ("*pro hac vice*"); *WirelessWerx IP, LLC v. Wing Aviation LLC*, No. 4:24-cv-01040-YGR (filed 2/21/24) ("*pro hac vice* anticipated"); *SmartWatch MobileConcepts, LLC v. Google, LLC*, No. 3:24-cv-00937-RFL (filed 2/16/24) (attorney to be noticed); *Missed Call, LLC v. RingCentral, Inc.*, No. 3:23-cv-06728-TLT (filed 12/31/23) ("*pro hac vice* anticipated"); *Missed Call, LLC v. 8x8, Inc.*, No. 3:23-cv-06723-VC (filed 12/30/23) ("*pro hac vice* anticipated"); *WirelessWerx IP, LLC v. OnFleet, Inc.*, No. 3:23-cv-06724-AMO (filed 12/30/23) ("*pro hac vice* anticipated"); *WirelessWerx IP, LLC v. Life360, Inc.*, No. 3:23-cv-06725-

AMO (filed 12/30/23) ("*pro hac vice* anticipated"); *Koji IP, LLC v. Energous Corp.*, No. 4:23-cv-05750-HSG (filed 11/8/23) ("*pro hac vice* anticipated"); *Flick Intelligence, LLC v. Google, LLC*, No. 3:23-cv-04803-TLT (filed 9/19/23) (lead attorney); *Haley IP, LLC v. Motive Techs., Inc.*, No. 4:23-cv-02923-HSG (filed 6/14/23) (lead attorney); *Silent Commc'n, LLC v. Adobe, Inc.*, No. 3:23-cv-02696-TLT (filed 3/31/23) (attorney to be noticed).

Mr. Kubiak admits that he sought *pro hac* admission in this Court ***only once*** ever. [Dkt. 28-15 at ¶ 11 ("I acknowledge that I filed only a single *pro hac vice* application.")]; *see SmartWatch MobileConcepts, LLC v. Google, LLC*, No. 3:24-cv-00937-RFL (application filed on 5/22/24 averring that Mr. Kubiak had been granted *pro hac* admission by the Court "0" times in the twelve months preceding the application). In that application for *pro hac vice* admission, Mr. Kubiak identifies Ms. Kalra as his local co-counsel.

The Court has identified at least **forty-five *other*** patent cases in the Northern District of California in which Ms. Kalra is identified as an attorney of record on the docket along with either Mr. Ramey or Mr. Kubiak, where one or both of them are listed as counsel of record or in the pleadings or filings as plaintiff's counsel with "*pro hac vice*" or "*pro hac vice* anticipated" status. *See Kephart Consulting, LLC v. AxxonSoft US, Inc.*, No. 4:24-cv-06770-KAW (filed 9/26/24) (Ramey listed as Lead Attorney on docket and Ms. Kalra listed as local counsel in original *pro hac vice* application); *VDPP, LLC v. Roku, Inc.*, No. 5:24-cv-05303-VKD (filed 8/16/24) (Ramey signed complaint with "*pro hac vice*;" Kubiak identified as "*pro hac vice*"); *mCom IP, LLC v. WestAmerica Bancorporation*, No. 3:24-cv-03609-SK (filed 6/14/24) (Ramey signed jury demand with "*pro hac vice* anticipated;" Kubiak listed as "*pro hac vice* anticipated"); *Autonomous IP, LLC v. Lyft, Inc.*, No. 3:24-cv-03348-RFL (filed 6/4/24) (Ramey listed as attorney to be noticed; Kubiak identified as lead attorney); *Linfo IP, LLC v. Alibaba Grp. (U.S.) Inc.*, No. 3:24-cv-03098-RS (filed 5/22/24) (Ramey listed as lead attorney; Kubiak listed as "*pro hac vice* anticipated"); *WFR IP, LLC v. Alibaba Grp. (U.S.) Inc.*, No. 3:24-cv-02179-TSH (filed 4/12/24) (Ramey signed complaint with "*pro hac vice*;" Kubiak listed as "*pro hac vice*"); *Linfo IP, LLC v. Third Love, Inc.*, No. 4:24-cv-02195-HSG (filed 4/12/24) (Ramey signed complaint with "*pro hac vice*;" Kubiak listed as "*pro hac vice*"); *Flick Intelligence, LLC v. HTC Am. Inc.*, No. 5:24-cv-02201-NC (filed

4/12/24) (Ramey signed complaint with "*pro hac vice* anticipated"); *PacSec3, LLC v. Radware, Inc.*, No. 3:24-cv-02146-AGT (filed 4/10/24) (Ramey signed complaint with "*pro hac vice* anticipated"); *VDPP, LLC v. Xiaomi USA, LLC*, No. 5:24-cv-01783-EKL (filed 3/22/24) (Ramey lead attorney; Kubiak listed as "*pro hac vice*"); *VDPP, LLC v. Vivitek Corp.*, No. 5:24-cv-01781-BLF (filed 3/22/24) (Ramey attorney to be noticed); *VDDP, LLC v. Motorola Mobility LLC*, No. 3:24-cv-01672-LJC (filed 3/18/24) (Ramey lead attorney); *WirelessWerx IP, LLC v. Lyft, Inc.*, No. 5:24-cv-01144-VKD (filed 2/26/24) (Ramey attorney to be noticed); *WirelessWerx IP, LLC v. Wing Aviation LLC*, No. 4:24-cv-01040-YGR (filed 2/21/24) (Ramey signed jury demand with "*pro hac vice* anticipated;" Kubiak listed as "*pro hac vice* anticipated"); *SmartWatch MobileConcepts, LLC v. Google, LLC*, No. 3:24-cv-00937-RFL (filed 2/16/24) (Ramey lead attorney; Kubiak listed as attorney to be noticed); *Missed Call, LLC v. Twilio Inc.*, No. 3:24-cv-00681-LB (filed 2/5/24) (Ramey lead attorney); *Missed Call, LLC v. RingCentral, Inc.*, No. 3:23-cv-06728-TLT (filed 12/31/23) (Ramey signed jury demand with "*pro hac vice* anticipated;" Kubiak listed as "*pro hac vice* anticipated"); *Missed Call, LLC v. 8x8, Inc.*, No. 3:23-cv-06723-VC (filed 12/30/23) (Ramey signed jury demand with "*pro hac vice* anticipated;" Kubiak listed as "*pro hac vice* anticipated"); *WirelessWerx IP, LLC v. OnFleet, Inc.*, No. 3:23-cv-06724-AMO (filed 12/30/23) (Ramey signed complaint and jury demand with "*pro hac vice* anticipated;" Kubiak listed as "*pro hac vice* anticipated"); *WirelessWerx IP, LLC v. Life360, Inc.*, No. 3:23-cv-06725-AMO (filed 12/30/23) (Ramey signed complaint and jury demand with "*pro hac vice* anticipated;" Kubiak listed as "*pro hac vice* anticipated"); *Mesa Digital, LLC v. Quanta Comp. USA, Inc.*, No. 3:23-cv-06711-VC (filed 12/29/23) (Ramey signed jury demand with "*pro hac vice* anticipated"); *CyboEnergy, Inc. v. N. Elec. Power Tech., Inc.*, No. 4:23-cv-06121-JST (filed 11/27/23) (Ramey signed complaint with "*pro hac vice* anticipated"); *Koji IP, LLC v. Energous Corp.*, No. 4:23-cv-05750-HSG (filed 11/8/23) (Ramey attorney to be noticed; Kubiak listed as "*pro hac vice* anticipated"); *Vilox Techs., LLC v. Salesforce, Inc.*, No. 3:23-cv-05047-AMO (filed 10/2/23) (Ramey attorney to be noticed); *Fare Techs. LLC v. Lyft, Inc.*, No. 3:23-cv-04935-RFL (filed 9/26/23) (Ramey attorney to be noticed); *Flick Intelligence, LLC v. Google, LLC*, No. 3:23-cv-04803-TLT (filed 9/19/23) (Ramey attorney to be noticed; Kubiak listed as lead attorney);

*VDPP, LLC v. Vivo, Inc.*, No. 5:23-cv-04241-NC (filed 8/18/23) (Ramey lead attorney); *Safecast Ltd. v. Google, LLC*, No. 5:23-cv-03128-PCP (filed 6/23/23) (Ramey lead attorney); *Haley IP, LLC v. Motive Techs., Inc.*, No. 4:23-cv-02923-HSG (filed 6/14/23) (Ramey on brief "*pro hac vice anticipated*;" Kubiak lead attorney); *ALD Social, LLC v. Apple, Inc.*, No. 3:23-cv-02695-JSC (filed 5/31/23) (Ramey attorney to be noticed); *Silent Commc'n, LLC v. Adobe, Inc.*, No. 3:23-cv-02696-TLT (filed 5/31/23) (Ramey attorney to be noticed; Kubiak listed as lead attorney); *Flick Intelligence LLC v. Niantic, Inc.,* No. 3:23-cv-02219-TLT (filed 5/5/23) (Ramey signed jury demand with "*pro hac vice* anticipated"); *Street Spirit IP LLC v. Meta Platforms, Inc. f/k/a Facebook, Inc.*, No. 3:23-cv-00879-WHA (filed 2/27/23) (Ramey signed complaint and jury demand with "*pro hac vice* anticipated"); *Street Spirit IP LLC v. Instagram et al.*, No. 3:23-cv-00883-WHA (filed 2/27/23) (Ramey signed complaint and jury demand with "*pro hac vice* anticipated"); *Street Spirit IP LLC v. LinkedIn Corp.*, No. 3:23-cv-00884-AMO (filed 2/27/23) (Ramey signed complaint and jury demand with "*pro hac vice* anticipated"); *ALD Social LLC v. Verkada, Inc.*, No. 3:23-cv-00049-JSC (filed 1/5/23) (Ramey attorney to be noticed); *Escapex IP LLC v. Google LLC*, No. 3:22-cv-08711-VC (filed 12/13/22) (Ramey attorney to be noticed); *ESIGNATURE SOFTWARE, LLC v. Adobe, Inc.*, No. 3:22-cv-05962-JSC (filed 10/12/22) (Ramey attorney to be noticed); *Traxcell Techs., LLC v. Google LLC*, No. 3:22-cv-04807-JSC (filed 8/22/22) (Ramey lead attorney); *Valjakka v. Netflix, Inc.*, No. 4:22-cv-01490-JST (filed 3/9/22) (Ramey lead attorney); *CyboEnergy, Inc. v. N. Elec. Power Tech., Inc.*, No. 3:21-cv-08534-SI (filed 11/2/21) (Ramey lead attorney); *Riggs Tech. Holdings, LLC v. Vagaro, Inc.*, No. 3:21-cv-07927-TSH (filed 10/8/21) (Ramey attorney to be noticed); *Apple Inc. v. Traxcell Techs. LLC*, No. 3:21-cv-06059-EMC (filed 8/5/21) (Ramey attorney to be noticed); *NetSoc, LLC v. Quora, Inc.*, No. 3:19-cv-06518-VC (filed 10/11/19) (Ramey lead attorney).

As noted above, Mr. Ramey has only filed applications for *pro hac vice* admission in ten of these cases (the majority of which were filed *after* the OSC issued in this case), and Mr. Kubiak has only filed one *pro hac vice* application in this Court ever. Ms. Kalra was listed as local counsel for Mr. Ramey and Mr. Kubiak in their *pro hac vice* applications, including in the most recent *Kephart Consulting* case, where the original *pro hac vice* application was denied, and a

renewed application was filed listing a different local counsel (apparently after Ms. Kalra separated from the Ramey law firm). *See* No. 24-cv-06770-KAW, ECF Nos. 26, 29.

At the August 22, 2024 hearing, counsel for Defendant brought to the Court's attention that Mr. Ramey has also appeared as counsel without obtaining *pro hac* admission in numerous cases in the Central District of California. Based on this Court's investigation thus far, Mr. Ramey has appeared as counsel in at least **thirty-seven** cases in the Central District of California (thirty-three of which were filed in 2022 or later) and Mr. Kubiak has appeared as counsel in at least **ten** of those cases. It appears that Mr. Ramey and Mr. Kubiak have similarly failed to seek *pro hac vice* admission in many of those cases despite receiving notices from that court that their *pro hac vice* applications were due, and they appear to have continued to litigate those cases even after receiving such notices. *See, e.g.,* Notice of Pro Hac Vice Application Due, *VDPP, LLC v. Mazda Motor of Am. Inc.*, No. 8:24-cv-00571-JWH-ADS (C.D. Cal. Mar. 18, 2004), ECF No. 11.

This is not the first time Mr. Ramey, or his law firm, have been faced with sanctions for improper conduct involving failure to follow local rules or procedures on *pro hac vice* admission. *See Nimitz Techs. LLC v. CNET Media, Inc.*, No. 21-1247-CFC, 2022 WL 17338396, at *7-8 (D. Del. Nov. 30, 2022) (noting that, because "Mr. Ramey chose not to appear" at a court-ordered hearing regarding his failure to obtain new local counsel to sponsor his *pro hac* admission, the court "found that Mr. Ramey's willful disregard . . . warranted sanctions"). More recently, on March 11, 2025, a Magistrate Judge in the Southern District of Florida issued a Report and Recommendation on a motion for attorney fees and sanctions in another patent infringement action in which Mr. Ramey and his law firm represented the plaintiff. *mCom IP, LLC v. City Nat'l Bank of Fla.*, No. 23-23427-Civ-Scola/Lett, 2024 U.S. Dist. LEXIS 43754 (S.D. Fla. Mar. 11, 2025). There, the court noted conduct which is shockingly similar to the conduct at issue here: "[f]or the duration of the litigation," a local attorney, Victoria Brieant, had been "the only counsel of record" for the plaintiff, even though "the case was actually litigated by [the plaintiff's] national lead counsel, . . . Attorney William Ramey from RAMEY LLC, a law firm based in Houston, Texas, [who] never entered an appearance or moved for *pro hac vice* admission." *Id.* at *3-4. In recommending that sanctions be imposed against the plaintiff's counsel, the *mCom* court explicitly

admonished Mr. Ramey and the local attorney for their conduct, noting that "[d]espite failing to move for *pro hac vice* admission or otherwise appearing in this matter, Attorney Ramey functioned in a primary role spearheading the interactions with Defendant's counsel, while Brieant took a back-seat." *Id.* at *14-15.

These sanctions involving similar violations of *pro hac vice* rules are better viewed within a larger context of a pattern of sanctions ordered against Mr. Ramey, Ms. Kalra, and the Ramey firm (and its clients) across a range of issues and cases nationwide. *See, e.g.*, *ESCAPEX IP, LLC v. GOOGLE LLC*, No. 23-CV-10839 (VSB) (VF), 2025 WL893739, at *10-11 (S.D.N.Y. Mar. 24, 2025) ("As other courts have noted, Plaintiff's counsel has a track record of commencing 'frivolous suits' against 'tech giant[s]' like Google, for the purpose of 'forc[ing] a modest settlement . . . on the assumption that the tech giant will prefer to capitulate than fight back. . . . The conduct by Plaintiff's counsel's here is part of a long pattern of similar behavior that warrants deterrence through an award under § 1927."); *EscapeX IP LLC v. Google LLC*, No. 22-cv-08711-VC, 2024 WL 557729, at *1 (N.D. Cal. Feb. 12, 2024) ("Here, the attorneys for EscapeX acted recklessly by filing a frivolous Rule 59(e) motion that unreasonably multiplied the proceedings of this case. . . . Therefore, Google is entitled to reimbursement of its reasonable attorneys' fees and costs in the amount of $63,525.30 to be levied jointly and severally against EscapeX's attorneys, William P. Ramey, III and Susan S.Q Kalra."); *VDPP, LLC v. Volkswagen Grp. of Am., Inc.*, No. H-23-2961, 2024 WL 3856797, at *2 (S.D. Tex. Aug. 13, 2024) ("VDPP's misconduct infected the entire litigation. It is entirely fitting to require VDPP to pay all of Volkswagen's fees to defeat a case that never should have been filed."); *WPEM, LLC v. SOTI Inc.*, No. 2:18-CV-00156-JRG, 2020 WL 555545, at *7 (E.D. Tex. Feb. 4, 2020) ("In sum, the Court finds that WPEM wholly failed to conduct an invalidity and enforceability pre-filing investigation and ignored obvious issues that should have been readily apparent to it had it adequately [sic] them as part of its own preparation for litigation. WPEM's failures cause this case to stand out from an ordinary case and warrant a fee recovery by SOTI.").

The Ramey law firm's client base and approach to the practice of law is no secret to those in the patent litigation community—the firm files multitudes of lawsuits on behalf of patent

United States District Court
Northern District of California

assertion entities and typically settles them quickly for relatively low value amounts. *See* Lauren Castle, *Lawyer Big Tech Loves to Hate Wears Backlash as Badge of Honor*, BLOOMBERG LAW, https://news.bloomberglaw.com/us-law-week/lawyer-big-tech-loves-to-hate-wears-backlash-as-badge-of-honor (last visited March 17, 2025). According to a recent database search, the Ramey firm appears to be counsel of record in over 150 pending and active patent cases nationwide. *See* Number of Active Patent Cases Involving Ramey Firm as Counsel of Record, Docket Navigator, https://search.docketnavigator.com/patent/search/patent_cases (search using term "Ramey" in "Firms" field, select "Ramey" search term, follow hyperlink to View Results, select "Active" option under "Case Status" Filter).

It is quite likely that the volume-focused and quick-settlement nature of the Ramey law firm's practice motivated these attorneys' decisions to largely avoid filing *pro hac vice* applications and to seek *pro hac* admission in only a handful of cases. Mr. Ramey admitted as much at the OSC hearing. The *pro hac* admission fee in this District is $328 for each attorney in each case—multiply that number even by one hundred cases for one attorney and that obviously yields a significant cost to a firm and its clients. Mr. Ramey himself stated at the OSC hearing that the motivation to avoid these costs is particularly acute given that so many of the Ramey firm's cases settle in the relatively early stages of litigation. By avoiding these *pro hac* fees over the years, the Ramey law firm has saved a substantial amount of money, but at a cost to the Court, the public, and the profession.

## DISCUSSION

### I. Rule 11 Violations

As summarized above, on June 26, 2024, Defendant filed a motion seeking attorneys' fees as a prevailing party under 35 U.S.C. § 285, as well as seeking sanctions under 28 U.S.C. § 1927 and the Court's inherent powers. [Dkt. 18]. While that motion references Federal Rule of Civil Procedure 11, the basis for the request for fees rests on § 285 and the basis for the request for sanctions rests on § 1927 and the Court's inherent powers.

Based on the Parties' briefing on that motion as well as the representations of counsel during the August 22, 2024 hearing, the Court grew concerned of the possibility that the pre-suit

investigation conducted by Plaintiff's counsel prior to filing the complaint in this Third Action was so inadequate that potential Rule 11 sanctionable conduct could be implicated. Because Defendant did not seek sanctions under Rule 11 (and thus, did not follow the safe harbor procedures), and because the Court raised the issue of the potential for Rule 11 sanctions *sua sponte*, the Court provided Plaintiff and its counsel, the Ramey lawyers, notice and a reasonable opportunity to respond as to why they should not be sanctioned under Rule 11 for the conduct detailed at length in the OSC. *See* Fed. R. Civ. P. 11(c)(3); *Mellow v. Sacramento Cnty.*, 365 F. App'x 57 (9th Cir. Jan. 25, 2010). "Rule 11 sanctions may be imposed only in response to claims that are not 'warranted by existing law or by a nonfrivolous argument for the extension, modification or reversal of existing law.'" *United Nat. Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1115-16 (9th Cir. 2001) (quoting Fed. R. Civ. P. 11(b)(2)). "This standard is applied with particular stringency where, as here, the sanctions are imposed on the court's own motion[;] . . . *sua sponte* sanctions 'will ordinarily be imposed only in situations that are akin to a contempt of court.'" *Id.* (quoting *Barber v. Miller*, 146 F.3d 707, 711 (9th Cir. 1999)) (alteration omitted).

As discussed above, the Court issued the OSC on August 29, 2024, ordering the Ramey law firm attorneys to respond and to show cause why they should not be sanctioned pursuant to Rule 11 and the Court's inherent authority. [Dkt. 27]. The fifteen-page OSC discusses in detail the conduct at issue and explicitly provides the Ramey lawyers notice and an opportunity to respond as to why they should not be sanctioned under Rule 11 and the Court's inherent authority for such conduct. *See* Fed. R. Civ. P. 11(c)(B).

The Ramey firm filed their response to the OSC on September 12, 2024, including a brief, declarations from each of the three Ramey lawyers at issue, a declaration from a technical consultant working with the Ramey firm on this case, a declaration from the manager of Plaintiff Koji, and several exhibits. [Dkt. 28]. The Court conducted a hearing on the OSC on September 19, 2024, at which all three Ramey firm lawyers appeared. [Dkt. 30]. At the hearing, the Ramey lawyers requested leave to submit supplemental legal authority which the Court granted. [Dkt. 32]. The Ramey lawyers filed their supplemental briefing on September 20, 2024. [Dkt. 33].

Rule 11 requires at least one counsel of record to sign every pleading, written motion, or

United States District Court
Northern District of California

other paper presented to the Court. Fed. R. Civ. P. 11(a). "By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney . . . certifies" that the paper is not "frivolous" or meant to further "any improper purpose" and that it was submitted "after an inquiry reasonable under the circumstances." Fed. R. Civ. P. 11(b).

Rule 11 authorizes the Court to impose sanctions on an attorney who fails to conduct a reasonable pre-filing inquiry if the paper at issue lacks merit or is otherwise frivolous. *In re Keegan Mgmt. Co. Sec. Litig.*, 78 F.3d 431, 434 (9th Cir. 1996). Sanctions imposed under Rule 11 are limited to that which is sufficient to deter "repetition of such conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(2). Rule 11 sanctions may include nonmonetary directives, orders to pay penalties to the court, and monetary awards for "reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4). The Court has wide and substantial discretion regarding the application of Rule 11 sanctions. *See Hudson v. Moore Bus. Forms, Inc.*, 836 F.2d 1156, 1163 (9th Cir. 1987) ("The district court has wide discretion in determining the appropriate sanction for a Rule 11 violation."); Fed. R. Civ. P. 11(b)(3).

The standard for determining whether a paper is frivolous is one of objective reasonableness at the time of the attorney's signature. *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002). "Frivolous filings are 'those that are both baseless and made without a reasonable and competent inquiry.'" *Est. of Blue v. Cnty. of L.A.*, 120 F.3d 982, 985 (9th Cir. 1997) (quoting *Buster v. Griesen*, 104 F.3d 1186, 1190 (9th Cir. 1997)). Before imposing Rule 11 sanctions, the Court "must conduct a two-prong inquiry to determine: (1) whether the complaint is legally or factually 'baseless' from an objective perspective, and (2) if the attorney has conducted 'a reasonable and competent inquiry' before signing and filing it." *Christian*, 286 F.3d at 1127.

The Ramey lawyers admit that the First Action filed in Colorado (*Koji I*) was identical to the Second Action filed in this Court (*Koji II)*. [Dkt. 28 at 16 ("Koji admits that it refiled the same infringement allegations it previously dismissed in Colorado in the Northern District of California.")]. They admit that they voluntarily dismissed the *Koji I* lawsuit under Rule 41 by

notice. *Id.* at 15. And they admit that they voluntarily dismissed the identical *Koji II* lawsuit under Rule 41 by notice. *Id.* at 16-17. By operation of Rule 41(a)(1)(B), "if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits." Because Koji's lawyers previously dismissed the same claim in *Koji I*, the notice of dismissal in *Koji II* operated as an adjudication on the merits. The issue then is what justification the Ramey lawyers had for filing the exact same lawsuit a third time, after the two previous dismissals, and what pre-filing inquiry those lawyers conducted to determine whether such filing was warranted before launching this third lawsuit.

At the August 22, 2024 hearing, Ms. Kalra was unable to identify any pre-filing inquiry by herself or any other Ramey LLP attorney (much less reasonable inquiry supported by law) regarding Rule 41's effect here, and regarding whether or not the complaint in this Third Action was warranted by existing law or any other permissible basis under Rule 11. Ms. Kalra was equally unable to identify whether any of the Ramey LLP lawyers performed any pre-filing inquiry as to the impact of the dismissal filed in the Second Action prior to the filing of that notice of dismissal. At the hearing and in the briefing on the motion for fees and sanctions, Plaintiff's counsel was unable to cite any law of which they were aware prior to filing the complaint in this Third Action which reasonably supported the position that the dismissals of the complaints in the previous two identical actions avoided an adjudication on the merits under Rule 41.

Similarly, in response to the OSC, the Ramey lawyers failed to cite any authority which would have supported the filing of the complaint in this Third Action in light of Rule 41, either based on existing law or any other permissible bases under Rule 11. The response to the OSC argues that "William Ramey relied on his over 20 years of experience in refiling the lawsuit" for this Third Action. [Dkt. 28 at 18]. Mr. Ramey's personal experience is not legal authority for avoiding the impact of the previous two dismissals under Rule 41.

In the response briefing, Plaintiff's counsel argues that "Rule 41 specifically allows a lawsuit to be filed more than twice if there is . . .'a persuasive explanation for the course of litigation.'" *Id.* There is no such "specific" language allowing a lawsuit to be filed a third time in Rule 41. The response further argues that "Ramey knew there were exceptions that allowed the

refiling of a complaint, in cases where there is 'a persuasive explanation for the course of litigation.'" *Id.* (citing *Milkcrate Athletics, Inc. v. Adidas Am., Inc.*, 619 F. Supp. 3d 1009 (C.D. Cal. 2022)). The *Milkcrate* case cited by the Ramey lawyers is wholly inapposite to Rule 11and does *not* discuss an exception to the dispositive effect of the two prior dismissals under Rule 41.

In *Milkcrate*, there was no issue presented regarding potential sanctions under Rule 11. Instead, the issue there was whether the Court should award costs and fees to the defendant under Federal Rule of Civil Procedure 41(d). 619 F. Supp. 3d at 1024-28. Indeed, the quote from *Milkcrate* cited by the Ramey lawyers in the response to the OSC is taken out of context—the full text of the sentence reads: "An 'award under Rule 41(d) is appropriate' where 'the [movant] has failed to present a persuasive explanation for the course of litigation' and the nonmovant shows it has 'incurred needless expenditures as a result.'" *Id.* at 1025 (citation omitted).

To reiterate, *Milkcrate* was concerned with whether to award fees and costs to the defendant under Rule 41(d). *Milkcrate* does not concern whether to impose court-ordered sanctions *sua sponte* under Rule 11(c)(3) (which would be payable to the Court)—and the Ninth Circuit has recognized the important distinction between sanctions to be awarded based on a motion of a party versus sanctions imposed based on a court's initiative under Rule 11. *Barber*, 146 F.3d at 711. There is simply no discussion in *Milkcrate* which sets forth any kind of "exception" under Rule 41(a)(1)(B). There is no discussion of a rule in *Milkcrate* which would "specifically" allow for the filing of a duplicative third complaint which asserts the same cause of action by the same plaintiff against the same defendant involving the same patent (after two previous voluntary dismissals). There is no discussion in *Milkcrate* of Rule 41(a)(1)(B), of any "exception" under that rule, or of any impact of the ruling on how to analyze Rule 11 *sua sponte* sanctions.

Further, even if the "persuasive explanation for the course of litigation" rule in *Milkcrate* for avoiding costs under Rule 41(d) was somehow analogized to or extended by implication to Rule 41(a)(1)(B), the application of that rule in *Milkcrate* is contrary to the Ramey lawyers' response. In *Milkcrate*, the court awarded costs to the defendant because the plaintiff filed a second action after dismissing a previous action, where the allegations in both actions concerned

"the same operative facts and include the same copyright infringement claim at issue[.]" 619 F. Supp. 3d at 1025-26. That same situation exists here—the Ramey lawyers filed this Third Action even after dismissing the previous two cases, even though all three cases concern the same operative facts and include the same patent infringement claims. If anything, *Milkcrate* instructs that an award of costs is appropriate in the analogous factual situation as is present here.

At the OSC hearing, Mr. Ramey admitted that *Milkcrate* is not legal support for an exception under Rule 41(a)(1)(B) for filing a third complaint after previously dismissing two identical or substantially identical prior complaints. Mr. Ramey also admitted that *Milkcrate* is not support for the assertion that he somehow "knew" based on his experience of any such exception to Rule 41 that would have allowed or excused the filing of the third complaint here. That is, Mr. Ramey did not analyze *Milkcrate* as part of his prefiling diligence before filing the third complaint here. Indeed, in their declarations in response to the OSC, the Ramey law firm attorneys simply refer to their unexplained "opinion" that the dismissal of the First Action in Colorado somehow did not count for purposes of Rule 41, that based on their years of experience there are unidentified "exceptions" to Rule 41, and that they "believed" the circumstances allowed them to refile the complaint. [Dkt. 28-1 at ¶ 12; Dkt. 28-2 at ¶ 17; Dkt. 28-3 at ¶ 20].

The response to the OSC only cites *Milkcrate* to support the position that an "exception" to Rule 41(a)(1)(B) somehow exists in the law, and as discussed above, that case does not support the assertion. Accordingly, the Ramey lawyers provided no legal support for their assertion that they were somehow justified in filing the third complaint here. None of their declarations state that they performed legal research into the issue before filing the third complaint, and none state that they even knew about the inapposite *Milkcrate* case before filing the third complaint. At best, they are left merely with reliance on their years of experience and factual arguments about convenience to the parties. The argument that the dismissal of the First Action in Colorado "was more akin to convenience and not a merits dismissal" is unpersuasive because nothing in that original dismissal states that the dismissal was for mere convenience, and there is no provision of Rule 41 which somehow exempts the impact of a voluntary dismissal if it is allegedly "for convenience" or to "reduce costs" as Plaintiff's lawyers now argue. [Dkt. 28 at 15-16].

Further, the Ramey lawyers admit that the First Action was dismissed because they understood they would lose the pending motion to dismiss for improper venue. [Dkt. 28 at 15 ("The first [lawsuit] was dismissed by Koji when it determined that it would likely lose a venue motion.")]. At the OSC hearing, Mr. Ramey conceded that he was unable to locate any case law supporting the position that voluntary dismissal for "convenience" or to reduce costs (by avoiding a fight over venue) is exempt from Rule 41's impact. [Dkt. 40 at 50:22-51:20]. In their supplemental brief, the Ramey lawyers argue that a dismissal on venue grounds does not operate as a decision on the merits, citing *Perrin v. TRW Info Services*, 990 F.2d 1259 (9th Cir. 1993). [Dkt. 33 at 3 n.7]. The problem is that the dismissal on venue grounds in *Perrin* was a result of an order dismissing the case issued by the district court, not as a result of the operation of voluntary dismissal under Rule 41. The other defect in the Ramey lawyers' argument is that the dismissal of the First Action here was *not* on venue *grounds*. Motivation to file a voluntary dismissal is not a dismissal on venue grounds—the legal basis for a voluntary dismissal is Rule 41 (and not a ruling or finding that venue was improper). The argument that the "basis" for the dismissal was that Koji did not want to contest an improper venue motion is not the same thing as a dismissal on venue grounds, and it does not transform a voluntary dismissal (which here was unqualified and made no reference to venue on its face) into a dismissal on venue grounds. The Ramey lawyers cite no law in their OSC response that supports the assertion that a voluntary dismissal motivated by a venue issue is treated as a dismissal on venue grounds. And the Ramey lawyers make no averment in their declarations that they researched or even considered this issue in their prefiling inquiry before filing this Third Action.

More fundamentally, the Ramey lawyers' argument about whether the dismissal of the First Action was a "decision on the merits" is a red herring. Under Rule 41, it is the dismissal of the second lawsuit (identical to the first lawsuit) which results in an adjudication on the merits. Rule 41 has no language which turns on whether or not the first dismissal was "on the merits" or not. As long as the first dismissal was voluntary and by notice under Rule 41(a)(1)(B), and as long as the first case was "based on or including the same claim" as in the second case, then the notice of dismissal of the second case operates as an adjudication on the merits.

The Ramey lawyers' argument that this Third Action somehow differed from the scope of the previous two dismissed actions is unsupported by the record. [Dkt. 28 at 18]. The Ramey lawyers argue that the patent infringement claims chart appended to the third complaint "charted a new product that had not been alleged as infringing in the prior suit." *Id.* That argument misrepresents the breadth of the pleading of the second complaint (and thus, the breadth of the dismissal of that case). The second complaint avers that "Defendant [Renesas] maintains, operates, and administers systems, products, and services that infringes [sic] one or more of claims 1-4 of the '703 patent. . . . Support for the allegations of infringement may be found in the chart attached as Exhibit B. These allegations of infringement are preliminary and are therefore subject to change." [Dkt. 19-1 at 119-20]. The prayer for relief in the second complaint specifically requests that the court "award Plaintiff an accounting for acts of infringement not presented at trial and an award by the Court of additional damage for any such acts of infringement" and seeks "a decree addressing future infringement that . . . awards damages for future infringement in lieu of an injunction in an amount consistent with the fact that for future infringement the Defendant will be an adjudicated infringer of a valid patent[.]" *Id.* at 121-22. Thus, the face of the second complaint encompassed more than just the specific exemplary product in the claims chart attached to that complaint, specifically sought relief against Renesas for all present and future infringement, and specifically reserved the right to change the allegations of infringement.

The fact that the third complaint attached a claims chart for a different product than the one specifically charted for the second complaint myopically ignores the scope of the allegations of infringement in the second complaint (which facially covered all present, future, and any other alleged infringing products, not limited to the one in the claims chart). In this regard, it is noteworthy that only a few months separated the dismissal of the Second Action and the filing of the Third Action—and the evidence for the allegedly "new" product charted for the third complaint is dated November 22, 2023, well before the date of dismissal of the second complaint. The "new" product charted for the Third Action complaint existed at the time of the Second Action and—in light of the literal breadth of the pleading accusing Renesas of infringement in the second complaint—that "new" product was already subsumed in the infringement accusations in

the Second Action.

The argument relying on the allegedly "new" claims chart attached to the third complaint similarly ignores the scope of the infringement allegations in the third complaint. The Ramey lawyers ignore the fact that the scope of the infringement allegations in the third complaint completely mirror and duplicate the scope of the infringement allegations in the second dismissed complaint. Both complaints use the same language. As with the second complaint, the third complaint avers that "Defendant [Renesas] maintains, operates, and administers systems, products, and services that infringes [sic] one or more of claims 1-4 of the '703 patent. . . . Support for the allegations of infringement may be found in the chart attached as Exhibit B. These allegations of infringement are preliminary and are therefore subject to change." [Dkt. 1 at 3-4]. The prayer for relief in the third complaint (just like the second complaint) specifically requests that the court "award Plaintiff an accounting for acts of infringement not presented at trial and an award by the Court of additional damage for any such acts of infringement" and seeks "a decree addressing future infringement that . . . awards damages for future infringement in lieu of an injunction in an amount consistent with the fact that for future infringement the Defendant will be an adjudicated infringer of a valid patent[.]" *Id.* at 6. Thus, just like the second complaint, the face of the third complaint encompasses more than just the specific exemplary product in the claims chart attached to the complaint, specifically seeks relief against Renesas for all present and future infringement at the time, and specifically reserves the right to change the allegations of infringement.

In sum, the Ramey lawyers' argument that they were justified in filing the third complaint because the claims chart attached to that complaint was for a "new" or "different" product which was not explicitly identified as infringing in the Second Action is unavailing. The breadth of the Second Action encompassed that "new" product by literally stating that the infringement allegations were subject to change and thus not limited to the one specific product in the claims chart attached to the second complaint. That "new" product existed as of November 2023, the same month the second complaint was filed, and months before the Second Action was voluntarily dismissed. And, conversely, the breadth of the third complaint facially reaches beyond the one exemplary product identified in the claims chart attached to that third complaint, and like the

second complaint specifies that the allegations of infringement were subject to change. And because Koji's lawyers voluntarily dismissed the second complaint by notice under Rule 41, that served as an adjudication on the merits and barred filing the identically worded third complaint.

Further, at the OSC hearing, Mr. Ramey was unable to identify any pre-filing inquiry by himself or any other Ramey LLP attorney (much less reasonable inquiry supported by law) regarding the effect of Rule 41 on whether the complaint in this Third Action was warranted by existing law or any other permissible basis under Rule 11. That is, the citation to case law (*Milkcrate* discussed above) in the OSC response and in the attorneys' declarations is a *post hoc* attempt to justify the conduct at issue. Mr. Ramey was equally unable to identify whether any of the Ramey LLP lawyers performed any pre-filing inquiry as to the impact of the dismissal filed in the Second Action prior to the filing of that dismissal. Plaintiff's counsel was likewise unable to cite any law of which they were aware *prior to filing the complaint in this Third Action* which reasonably supported the position that the dismissals of the complaints in the previous two actions avoided an adjudication on the merits under Rule 41, and thus, which reasonably supported the filing of the complaint in this Third Action.

The course of action the Ramey lawyers took after filing the third complaint is further illustrative. The Ramey lawyers admit that immediately after filing the third complaint, "a copy was sent to the Defendant with a proposed settlement letter." [Dkt. 28 at 12]. That is, like the general approach the Ramey firm employs, the Ramey lawyers here sought immediate payment in settlement of this Third Action before litigating the issues on the merits. And more importantly, the Ramey lawyers sought settlement payment without having done any diligence into whether the third complaint was justifiably filed under Rule 41. When confronted with the Rule 41 issue by Renesas's counsel, Koji's lawyers here simply dismissed this Third Action rather than litigate the issue on the merits. This course of action is indicative of an attempt to harass Renesas, by filing a third lawsuit without proper prefiling inquiry solely to attempt to eke out a settlement payment. The quick voluntary dismissal of the third complaint supports a finding that this Third Action was not filed in a good faith attempt to vindicate Koji's patent rights on the merits; rather, that early dismissal is evidence of a quickly abandoned and failed attempt to try to obtain settlement

payment from Renesas. Based on the record as a whole, the Court **FINDS** that the filing of the third complaint here and counsel's failures to perform pre-filing inquiry into the Rule 41 issues constitute bad faith and are akin to a contempt of court on the part of the three Ramey law firm lawyers.

Accordingly, in light of the totality of the factual record and pursuant to applicable legal standards, the Court **FINDS** that these three Ramey law firm attorneys engaged in bad faith litigation and violated their obligations under Rule 11 with regard to this case. None of these attorneys performed any pre-filing investigation (much less an adequate inquiry) as to the impact of the prior dismissals on the ability to file the complaint in this Third Action under Rule 41. None of these attorneys proffered an adequate or reasonable justification for their failure to do so. The conduct by these attorneys here is similar to the conduct sanctioned under Rule 11 in *Sanai v. Sanai*, 408 F. App'x 1 (9th Cir. 2010). In *Sanai*, the sanctioned parties filed duplicative causes of action in a second action after the court there dismissed the first action. *Id.* at 2. There, "[t]he court ordered appellants to show cause why they should not be sanctioned for realleging claims the court had dismissed, gave them an opportunity to be heard, and thereafter made an express finding that they had acted in bad faith." *Id.* at 2-3. The Ninth Circuit affirmed the imposition of Rule 11 sanctions. *Id.* Here, as in *Sanai*, the bad faith abuse of the litigation system is evident from the record.

Accordingly, for all the reasons discussed herein, the Court **SANCTIONS** these three Ramey law firm attorneys under Rule 11 in light of the applicable legal standards for *sua sponte* Rule 11 sanctions and in light of the record as a whole, after giving them notice and an opportunity to respond.

## II. Sanctions Under the Court's Inherent Authority

As noted above, Renesas's motion for fees also includes a request for imposition of sanctions under the Court's inherent powers. [Dkt. 18 at 24]. "[T]he district court has the inherent authority to impose sanctions for bad faith, which includes a broad range of willful improper conduct." *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001). "The imposition of sanctions under the inherent power of the court is proper where counsel has 'willfull[y] abuse[d]

judicial process' or otherwise conducted litigation in bad faith." *In re Itel Sec. Litig.*, 791 F.2d 672, 675 (9th Cir. 1986) (citations omitted).  "For purposes of imposing sanctions under the inherent power of the court, a finding of bad faith 'does not require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or *mala fides*, the assertion of a colorable claim will not bar the assessment of attorney's fees.'" *Id.* (citation omitted).

At the August 22, 2024 hearing, Ms. Kalra attempted to raise, but then withdrew, an argument that this Court somehow lacks jurisdiction to consider disciplining either Mr. Ramey or Mr. Kubiak under Rule 11 because they were never admitted *pro hac vice* in this case.  As the Court indicated at that hearing, the Court was prepared to grant Mr. Ramey and Mr. Kubiak *pro hac vice* status *sua sponte* to address any such procedural argument, but none of the attorneys argued lack of jurisdiction in direct response to the OSC.  The Court does not lack jurisdiction since both Mr. Ramey and Mr. Kubiak appeared on the pleadings (either in the signature block and/or on the cover page) and Mr. Ramey signed at least some pleadings.  *See Holgate v. Baldwin*, 425 F.3d 671, 677 (9th Cir. 2005) ("The signing requirement in Rule 11 makes clear that any attorney who, at any time, certified to the court that a pleading complies with Rule 11 is subject to the rule, even if the attorney later withdraws from the case.").  Further, the fact that Koji voluntarily dismissed this third lawsuit does not deprive the Court of jurisdiction to oversee discipline of these attorneys.  *See Itel*, 791 F.2d at 675 (A lawyer cannot "escape sanctions for misconduct simply by withdrawing from a case before opposing counsel applies for sanctions.").

Notably, Mr. Ramey does not argue that his conduct falls outside Rule 11 because he signed only the last page of each of the complaints in the Second and Third Actions (but not the penultimate page of those documents).  Mr. Kubiak likewise does not argue that his conduct falls outside Rule 11's ambit because he personally did not sign the complaints in the Second and Third Actions, but is merely listed as one of the Attorneys for Plaintiff on those pleadings.  *See* Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment ("The sanction should be imposed on the persons—whether attorneys, law firms, or parties—who have violated the rule or who may be determined to be responsible for the violation. . . . The revision [to subsection (c)] permits the

court to consider whether other attorneys in the firm, co-counsel, other law firms, or the party itself should be held accountable for their part in causing a violation."); *see also Religious Tech. Ctr. v. Gerbode*, No. CV 93-2226 AWT, 1994 WL 228607, at *5 (C.D. Cal. May 2, 1994) ("[T]he court has the authority to sanction a co-counsel law firm, as well as the primary offending firm, even though co-counsel did not sign the offending pleading."); *Blossom v. Blackhawk Datsun, Inc.*, 120 F.R.D. 91, 101-02 (S.D. Ind. 1988) (holding that attorney, who did not "sign" the pleading but whose name appeared on the pleading, waived any objection that he did not "sign" the pleading forming the basis of Rule 11 sanctions where the attorney "ratified that everything in the case was done with his full knowledge and approval" and admitted that "any violation known to exist in th[e] case was the result of his own conduct").

However, even assuming Rule 11 somehow did *not* govern these attorneys' conduct here, the Court **FINDS** that all three attorneys are subject to sanctions under the Court's inherent powers with regard to their conduct discussed herein. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991) ("[W]hen there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the rules, the court ordinarily should rely on the rules rather than the inherent power. But if in the informed discretion of the court, neither the statute nor the rules are up to the task, the court may safely rely on its inherent power.").

As discussed in detail above, the three Ramey law firm attorneys engaged in bad faith litigation here. Attorneys Ramey, Kalra, and Kubiak failed to investigate an obvious and serious issue and undertook actions in filing the third complaint in ways which are cause for grave concern. "Sanctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Fink*, 239 F.3d at 994. As discussed above, the filing of the third complaint without investigating the Rule 41 issue was willful, if not reckless, and that filing was frivolous in light of the two previous dismissals. The immediate willful attempt to seek settlement payment from Renesas after filing the unfounded third complaint was harassment and tantamount to bad faith.

The Court therefore exercises its discretion and **FINDS** that sanctions under the Court's inherent powers are also appropriate here, particularly to the extent Rule 11 somehow does not

apply to these three lawyers.

**III. The Unauthorized Practice of Law**

Attorneys practicing in the Northern District of California must either be members of the Court's bar, or alternatively, admitted to practice in a particular case pending in the Court *pro hac vice*. *See* Civil L.R. 11-1(a), 11-3. Neither Mr. Ramey nor Mr. Kubiak is a member of the Northern District of California Bar. *See United States v. Author Servs., Inc.*, 804 F.2d 1520 (9th Cir. 1986) ("It is well established that a court may take judicial notice of its own records."); *Hymes v. Procunier*, 428 F.2d 824, 824 (9th Cir. 1970) ("Of course, the district court can take judicial notice of its own records[.]").

One prerequisite to be admitted to the Bar of this Court is that an attorney must be an active member in good standing of the Bar of the State of California. *See* Civil L.R. 11-1(b). Neither Mr. Ramey nor Mr. Kubiak is a member of the Bar of the State of California. *See Castillo-Perez v. I.N.S.*, 212 F.3d 518, 524 n.6 (9th Cir. 2000) (taking judicial notice of the membership records of the State Bar of California); *White v. Martel*, 601 F.3d 882, 885 (9th Cir. 2010) (taking judicial notice of state bar records regarding attorney disciplinary proceedings). Accordingly, Mr. Ramey and Mr. Kubiak may not practice in the Northern District of California unless they are admitted (on a case-by-case basis) to appear *pro hac vice*.

"[T]here is no fundamental right to appear pro hac vice." *Paciulan v. George*, 38 F. Supp. 2d 1128, 1144 (N.D. Cal. 1999), *aff'd*, 229 F.3d 1226 (9th Cir. 2000); *see Frazier v. Heebe*, 482 U.S. 641, 647 (1987) (describing attorneys admitted *pro hac vice* as "one-time or occasional practitioners"). "The district court has the power to deny or revoke an attorney's pro hac vice status, which is grounded within the court's inherent power 'to control admission to its bar and to discipline attorneys who appear before it.' The court's decision to do so is reviewed for abuse of discretion." *Robles v. In the Name of Humanity*, 2018 WL 2329728 at *4 (N.D. Cal. May 23, 2018) (citation omitted).

Civil Local Rule 11-3, which sets forth the requirements for *pro hac vice* applications, provides that an attorney who is a member in good standing and eligible to practice before the Bar of any United States Court or of the highest Court of any State may in a particular case be

permitted to practice within this District on a *pro hac vice* basis upon application and discretion of this Court. Civil L.R. 11-3(a). Relevant here, an attorney seeking *pro hac vice* status must submit their application and admission fee "*at the time of the filing of a complaint* or the attorney's first appearance in the case." Civil L.R. 11-3(b) (emphasis added). Further, an attorney who "regularly engage[s] in the practice of law in the State of California" is disqualified from *pro hac vice* admission (absent certain exceptions not germane here). Civil L.R. 11-3(c). In addition to the application documents, an applicant for *pro hac vice* admission must pay the fee for such admission at the time of the application (currently set at $328 per applicant, per case). Civil L.R. 11-3(e); *see* https://www.cand.uscourts.gov/about/clerks-office/court-fees/.

The Court may impose sanctions for violations of its local rules concerning *pro hac vice* admission. *See* Civil L.R. 11-8 ("A person who exercises, or pretends to be entitled to exercise, any of the privileges of membership in the bar of this Court, when that person is not entitled to exercise such privileges, may be referred to the Standing Committee in addition to any action authorized by applicable law.") It is axiomatic that the Court has authority to enforce its local rules. 28 U.S.C. § 2071. A district court's order regarding compliance with local rules is reviewed for abuse of discretion and broad deference is given to a court's interpretation of its local rules. *Bias v. Moynihan*, 508 F.3d 1212, 1223 (9th Cir. 2007).

Canon 3(B)(6) for the Code of Conduct for United States Judges provides that "[a] judge should take appropriate action upon receipt of reliable information indicating the likelihood that . . . a lawyer violated applicable rules of professional conduct." The unauthorized practice of law and the aiding of another's unauthorized practice of law violate California's ethical rules and such conduct may lead to disciplinary proceedings and other adverse consequences. *See* California Rules of Professional Conduct 5.5(a)-(b); State Bar of California Rule 1-300 (prohibiting unauthorized practice of law); CAL. BUS. & PROF. CODE § 6125 ("No person shall practice law in California unless the person is an active member of the State Bar."). The unauthorized practice of law and the aiding of another's unauthorized practice of law also violate this Court's standards for professional conduct and may lead to disciplinary proceedings and other adverse consequences.

Mr. Ramey and Mr. Kubiak are both members of the State Bar of Texas. The Texas

Disciplinary Rules of Professional Conduct provide, among other things, that a lawyer shall not "practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction[.]" Texas Disciplinary Rule of Professional Conduct 5.05(a). A lawyer is subject to sanctions by the State Bar of Texas "for conduct occurring in another jurisdiction or resulting in lawyer discipline in another jurisdiction." *See* Texas Rules of Disciplinary Procedure CC.2 (defining sanctionable attorney conduct to include "[a]ttorney conduct that occurs in another jurisdiction, including before any federal court or federal agency, and results in the discipling of an attorney in that other jurisdiction").

As noted, these attorneys filed three successive cases on behalf of this same Plaintiff, Koji, against this same Defendant, Renesas, asserting infringement of the same patent in each case. The first of the three cases was filed in the District of Colorado. *See* Complaint, *Koji I*, No. 23-cv-01674-SKC (D. Colo. June 30, 2023), ECF No. 1. Mr. Ramey signed the complaint in the First Action, he is listed as counsel on the civil cover sheet, and he signed the notice of voluntary dismissal of the first case. *Id.* The complaint in the First Action lists both Mr. Ramey and Mr. Kubiak as "Attorneys for KOJI IP, LLC." *Id.* The Court takes judicial notice that Mr. Ramey, Mr. Kubiak, and Ms. Kalra are all members in good standing of the District of Colorado's Bar. The District of Colorado's Standards of Professional Conduct adopt the Colorado Rules of Professional Conduct for members of the Colorado Bar Association. D.C.COLO.LAttyR 2(a). The Colorado Rules of Professional Conduct provide, among other things, that a lawyer shall not "practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction[.]" Colo. R. Prof'l. Cond. 5.5(a)(2).

Further, the Court takes judicial notice that Mr. Ramey and Mr. Kubiak are registered to practice as patent attorneys before the United States Patent and Trademark Office ("USPTO"). The USPTO's Rules of Professional Conduct provide, among other things, that a "practitioner shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so." 37 C.F.R. § 11.505. A registered patent attorney is subject to discipline for "professional misconduct" by the USPTO, where misconduct includes being "publicly disciplined on ethical or professional misconduct grounds by any duly constituted

authority of: (1) A State, [or] (2) The United States." *Id.* § 11.804(h)(1)-(2).

As noted, pursuant to Civil Local Rule 11-3(c), an attorney who is "regularly engaged in the practice of law in the State of California" is ineligible for *pro hac vice* admission. Given the sheer number of cases in this District alone in which Mr. Ramey and Mr. Kubiak have been involved in recent years, had they properly filed motions for *pro hac vice* admission in these cases, they would certainly have reached the point of disqualification for *pro hac* admission due to their regular engagement in the practice of law in California. *See, e.g.*, *Guguni v. Chertoff*, No. C 08-1850 JL, 2008 WL 2080788, at *1 (N.D. Cal. May 14, 2008) (denying *pro hac vice* application on grounds of regular practice in California for attorney who appeared in the Northern District in at least five other cases); *see also Wang v. Future Motion, Inc.*, 646 F. Supp. 3d 1147, 1151-52 (N.D. Cal. 2022) (denying *pro hac vice* application for attorney who appeared in at least one new case each year since 2002 in the Northern District of California). The Court also notes that, for purposes of determining whether these attorneys have been regularly engaged in the practice of law in California, the numerous cases in which they have also appeared in the Central District of California discussed above would further weigh in favor of that finding. *See Wang*, 646 F. Supp. 3d at 1152 (noting attorney Berman has appeared in 189 cases in the Central District of California and finding "that [attorney] Berman appearing as an attorney in over 480 California federal cases is pertinent to the Court's analysis of whether Berman is 'regularly engaged in the practice of law' in California").

As discussed above, the Ramey firm's business model includes filing and then quickly settling patent infringement lawsuits. In response to the OSC, Mr. Kubiak admitted that "[a] decision was made by Mr. Ramey to attempt reduce costs on cases that resolved quickly, by not automatically filing a request for *pro hac vice* admission." [Dkt. 28-15 at 4]. In that regard, Mr. Ramey's declaration admits the following:

> A decision was made by me, at the request of [Koji's] Carlos Gorrichategui in early 2022, a client manager, to attempt reduce costs on cases that resolved quickly, by not automatically filing a request for pro hac vice admission. Beginning in around 2022, I directed that Ramey LLP stopped filing for pro hac vice applications in all cases but I incorrectly left a signature line with an attorney, that, if the case progressed, would later seek pro hac vice admission. That was my

mistake.

[Dkt. 28-2 at 7]. At the OSC hearing, Mr. Ramey conceded that the out-of-state attorneys at his firm purposefully avoid filing *pro hac vice* motions in this Court to avoid the *pro hac* application fees, because so few cases proceed beyond the pleading stages in light of the business model under which so many of his law firm's cases settle early for low or nuisance value.

Mr. Ramey's declaration is not accurate or candid, because as shown above, the Ramey lawyers have failed to file applications for *pro hac vice* admission in dozens of cases pre-dating the alleged 2022 request from Koji to stop filing such applications. Mr. Ramey's attempt to lay responsibility for the lack of *pro hac vice* applications on his client's request in 2022 is contrary to the objective facts. The Ramey firm represented numerous plaintiffs in this Court prior to 2022 without filing applications for *pro hac vice* admission. Nothing supports the averment in the declaration that this practice was spurred by Koji. Accordingly, the Court is troubled by Mr. Ramey's apparent attempt to deflect responsibility and obfuscate the timing of his law firm's practices in this declaration.

The Court **FINDS** that the two out-of-state attorneys from the Ramey firm do, in fact, regularly practice law in California, given the number of cases involving these attorneys in the Northern District of California and the Central District of California identified to date. If Mr. Ramey and Mr. Kubiak had properly filed applications for *pro hac vice* admission in each of the listed cases above and had they accurately listed the number of times they applied previously for *pro hac vice* admission, their *pro hac vice* applications filed at this point would be denied on the grounds that they are regularly engaged in the practice of law in California.

As discussed above, Mr. Ramey and his firm have been sanctioned by numerous other courts across the country. Mr. Ramey's and the Ramey law firm's long history of repeated instances of rules violations and noncompliance impacts the Court's decision regarding the imposition of sanctions here. It is clear that the conduct at issue in this case is not due to excusable neglect or oversight. Rather, as admitted, the conduct here was based on a conscious decision to avoid the application fees. By failing consistently to file for *pro hac vice* admission, this pattern of conduct all but deprived this Court (and other judges in California) of the

information necessary to determine whether or not the Ramey attorneys from Texas are regularly engaged in the practice of law in California. While an attorney's failure to pay *pro hac* admission fees in any one case may involve relatively minor costs, the repeated nature of the rules violations here and the pattern of conduct makes clear that this conduct is capable of repetition (and indeed has been repeated) while evading review, because the early settlement of the Ramey firm's cases has impeded other courts' abilities to address the conduct squarely.

The conduct here is consistent with a pattern and practice of violating and flouting ethical rules. *See ZT IP, LLC v. VMware, Inc.*, No. 3:22-CV-0970-X, 2023 WL 1785769, at *3 (N.D. Tex. Feb. 6, 2023) ("[W]hether it acted in ignorance or negligence, ZT looks worse because of its counsel's previous failure in a similar situation [to comply with Rule 11]. . . . ZT finds itself in a similar position today with [Attorney William Ramey] again serving as counsel. The standard for an exceptional case does not change based on counsel's previous failures; however, a previous warning about certain pre-filing failures aids the Court in finding frivolousness, motivation, and the need to advance considerations of compensation and deterrence.").

Accordingly, in light of the totality of the factual circumstances and pursuant to applicable legal standards, the Court **FINDS** that Mr. Ramey and Mr. Kubiak have in this case, and repeatedly and knowingly in many other cases, engaged in the unauthorized practice of law in the Northern District of California and in the State of California; have in this case, and repeatedly and knowingly in many other cases, violated applicable rules of professional conduct to which they are bound due to their licensing in various jurisdictions; have in this case, and repeatedly and knowingly in many other cases, violated the Northern District of California's Civil Local Rules (including, especially, the rules governing *pro hac vice* admissions); and have failed to provide sufficient justification for these instances of repeated willful misconduct.

Further, the Court **FINDS** that Ms. Kalra has in this case, and repeatedly and knowingly in many other cases, aided and abetted Mr. Ramey and Mr. Kubiak in engaging in their unauthorized practice of law in this Court and in the State of California; has in this case, and repeatedly and knowingly in many other cases, violated the California Rules of Professional Conduct and the Northern District of California's guidelines for professional conduct; has in this case, and

repeatedly and knowingly in many other cases, violated the Northern District of California's Civil Local Rules (including especially the rules governing *pro hac vice* admissions); and has failed to provide sufficient justification for these instances of repeated misconduct.

The Court therefore **ORDERS** that Attorneys Ramey, Kubiak, and Kalra are hereby sanctioned as set forth further in this Order, pursuant to the Court's inherent authority, the Court's authority under the Civil Local Rules, and the Court's authority under Rule 11 and applicable law.

**IV. Deterrence of Future Conduct**

The conduct at issue here sparked significant discussion both in the briefing and at oral argument. The manner in which these attorneys indicate they have or would modify their approach to the practice of law impacts the nature and extent of sanctions the Court has considered. *See* Fed. R. Civ. P. 11 advisory committee's note to 1983 amendment (A "court, however, retains the necessary flexibility to deal appropriately with violations of the rule. It has discretion to tailor sanctions to the particular facts of the case, with which it should be well acquainted."); *In re Yagman*, 796 F.2d 1165, 1182-83 (9th Cir. 1986) ("Each case must be taken individually and evaluated in light of its own peculiar circumstances. If sanctions are warranted by those circumstances, the court should not waiver in imposing them. In so doing, however, the court must be meticulously aware that this precarious balance can only be maintained if the sanctions are justly imposed. . . . It also means that the amount of the sanctions and the manner in which they are imposed cannot be inconsistent with the purpose and directive of the authority on which the sanctions are based."); *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 404 (1990) ("The district court is best acquainted with the local bar's litigation practices and thus best situated to determine when a sanction is warranted to serve Rule 11's goal of specific and general deterrence.").

At the OSC hearing, Mr. Ramey represented to this Court that he and his law firm changed their procedures so that neither his name nor Mr. Kubiak's name would appear on future filings or pleadings (even though they would continue to work on cases pending in this Court in the future). Mr. Ramey represented that the only counsel named on the pleadings would be Ms. Kalra because she is a member of the California bar. Mr. Ramey and Mr. Kubiak indicated no intention to obtain

California State Bar membership, and at the hearing, declined the Court's suggestion that they take the California bar exam given how frequently they litigate in California.

In essence, Mr. Ramey's plan to avoid the same issues detailed in this Order going forward is to work on California cases by ghostwriting pleadings, briefs, and infringement contentions, as well as lead settlement negotiations, all in the background without informing the judge (or their opponents) of the substantial work they are doing on those cases. According to Mr. Ramey, the plan for all members of the Ramey firm who are not members of the California bar is to identify only Ms. Kalra (or any member of the California bar who signs pleadings in their own name) as the sole counsel of record for their clients, and thus, as the only attorney subject to a court's express oversight and discipline.

The flaw in this plan is that Mr. Ramey leads *all* litigation at his firm, from strategy, to client communications, to settlement negotiations. Further, under the proposed plan, other out-of-state lawyers from the Ramey firm's Texas office would continue to perform the actual, detailed, and significant legal work to analyze and interpret patent claims, develop infringement theories, work with expert consultants, and prepare infringement claims charts—just as happened in this case with regard to Mr. Kubiak. As admitted in the attorney declarations, Ms. Kalra relied heavily on Mr. Ramey and Mr. Kubiak for virtually all substantive work in preparing and filing the complaint here.

The Court is further aware of the number and volume of cases in California involving the Ramey firm. If, going forward, only Ms. Kalra (or some other California lawyer) is the sole attorney of record for all Ramey firm clients litigating in California, there would eventually arise questions as to how one lawyer can ethically and responsibly prepare, make inquiry and investigation, and then sign pleadings in dozens of patent lawsuits all pending at the same time. As members of the IP bar are well aware, patent lawsuits are typically complicated and time consuming; the Northern District of California's promulgation of specific Patent Local Rules unique to patent cases is in part a recognition of the unique challenges in the effective management of patent cases as compared to other subject matter areas. The long experience of the undersigned with patent litigation informs these concerns—it appears impractical (if not highly

improbable) for one local California attorney, such as Ms. Kalra, to fully comply with their obligations under Rule 11 for every pleading or filing in dozens of co-pending and active patent lawsuits. *See Little v. JB Pritzker for Governor*, No. 18 C 6954, 2021 WL 1165097, at *7 n.2 (N.D. Ill. Mar. 26, 2021) ("[I]t is the attorney's job to bite off only what he can competently chew.").

Further, this proposed remedial plan by Mr. Ramey and his firm would not appear to obviate the unauthorized practice of law by Mr. Ramey and Mr. Kubiak in future cases in California federal courts. As the Ninth Circuit has instructed, "[a]dmissions rules and procedure for federal court are independent of those that govern admission to practice in state courts." *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 820 (9th Cir. 2009) (citing *In re Poole*, 222 F.3d 618, 620–22 (9th Cir.2000)). "This is true even 'when admission to a federal court is predicated upon admission to the bar of the state court of last resort.'" *Id.* (quoting *Poole*, 222 F>3d at 620).

As noted, only lawyers admitted to this Court's bar may practice in cases in this District, and this Court's Civil Local Rules prohibit *pro hac vice* admission for lawyers who "regularly engage in the practice of law in the State of California" (absent certain exceptions not germane here). Civil L.R. 11-3(c). Given how many California cases Mr. Ramey and Mr. Kubiak have worked on in recent years, it is likely that they have already maxed out on their *pro hac* admissions. If they continue to work on California cases as they have done in the past, but simply avoid putting their names on the pleadings, that merely hides the identities of the lawyers actually working on the bulk of the case from the court. The Ramey firm is not planning to transfer the control and lead of cases to Ms. Kalra (or some other California lawyer). As represented to this Court, the Ramey firm's plan is to continue to perform the bulk of substantive work, including overall case strategy, from their offices in Texas. Such an arrangement has been held to be the unauthorized practice of law in a sister federal court in California. *See G&G Closed Circuit Events, LLC v. Hernandez*, No. 3:22-cv-00398-JAH-MDD, 2023 WL 5020259, at *2-3 (S.D. Cal. Aug. 7, 2023).

The Ramey firm plan is particularly concerning with respect to Ms. Kalra (or the sole

California lawyer listed on the pleadings) because the practical effect of the plan is for that sole local attorney to essentially act as a pass-through for work product prepared by out-of-state lawyers, and as the sole California lawyer, she would bear the initial and perhaps primary risk under Rule 11. As noted above, a magistrate judge in the Southern District of Florida recently recommended that sanctions be imposed against the Ramey firm's local counsel (and sole counsel on the pleadings) in another patent case, where the Ramey firm appears to have followed the same plan they intend to follow in this Court going forward:

> [Ramey's local counsel] Attorney Brieant, as the only counsel of record in this matter for the plaintiff, unreasonably and without sufficient diligence allowed this matter to proceed when all facts compelled a different response…. Attorney Brieant's conduct resulted from following the lead of Attorney William Ramey. Operating behind the scenes and driving the process, attorneys for the Defendant often found themselves working with Attorney Ramey, who never filed a notice of appearance or attempted to pro hac vice himself as a party to the case…. Despite failing to move for pro hac vice admission or otherwise appearing in this matter, Attorney Ramey functioned in a primary role spearheading the interactions with Defendant's counsel, while Brieant took a back-seat.

*mCom IP*, 2025 U.S. Dist. LEXIS 43754, at *13-15.

While "reliance on forwarding co-counsel may in certain circumstances satisfy an attorney's duty of reasonable inquiry," the Ninth Circuit has made clear that "[i]n relying on another lawyer, . . . counsel must 'acquire[] knowledge of facts sufficient to enable him to certify that the paper is well-grounded in fact.' An attorney who signs the pleading cannot simply delegate to forwarding co-counsel his duty of reasonable inquiry." *Unioil, Inc. v. E.F. Hutton & Co.*, 809 F.2d 548, 558 (9th Cir. 1986) (citation omitted). As noted above, given the high-volume nature of the Ramey firm's practice, there appear to be non-trivial risks as to one lawyer's ability to perform a reasonable inquiry for the numerous active co-pending cases involving that firm in this Court alone (much less in the entirety of California). *Cf. In re Qinghe Liu*, 2024 USPTO OED LEXIS 27 (U.S. PTO Nov. 21, 2024) (suspending lawyer who was designated as attorney of record in over 1,000 trademark applications in a two-year period).

The proposed plan for future conduct by the Ramey firm—in reaction to the OSC and apparently in anticipation of this Order—also appears to be an attempt to avoid exposing Mr.

Ramey and other out-of-state lawyers in his firm to the supervision and discipline of the Northern District of California in future patent cases. The undersigned is cognizant that California lawyers can, within the bounds of the rules of professional conduct, rely on work product from non-California lawyers in appropriate circumstances. *See Gabriel Techs. Corp. v. Qualcomm Inc.*, No. 08cv1992 AJB (MDD), 2013 WL 410103, at *12 (S.D. Cal. Feb. 1, 2013) ("As a general matter, the Court recognizes that local counsel plays a unique role in the litigation process. The local rules require out-of-state attorneys to acquire local counsel, and often local counsel serves primarily in an administrative capacity for the limited purpose of filing documents with the Court."). There are limits, however, and merely rubber-stamping the work product of an out-of-state lawyer exposes a California lawyer to risks which require careful consideration and procedures to ethically avoid. *Id.* (noting that, while "the reasonable inquiry required for local counsel under Rule 11 may not be the same as that required for lead counsel in many situations," the rule "remains applicable and sanctions may be imposed against local counsel when appropriate under the circumstances"). Further, an out-of-state lawyer who ghostwrites work product and works more than occasionally on a case in this Court does not enjoy blanket immunity from supervision by a California district court. *Winterrowd*, 556 F.3d at 825 ("An out of state attorney must still apply for *pro hac vice* admission if that attorney appears in court, signs pleadings, or is the exclusive contact in a case with the client or opposing counsel."). Therefore, as discussed below, the Court finds that the Ramey firm's plan is properly the subject of consideration as to deterrence of future conduct when crafting and considering the sanctions herein.

## CONCLUSION

The Court's analysis of the issues in this Order is not a critique of the IP plaintiffs' bar or of non-practicing entities; as discussed in detail herein, the failures that resulted in the conclusions here are specific to the actions taken (or not taken) by the three attorneys at issue on the extraordinary facts presented in the record. In this Court's many decades of experience in the law (particularly patent litigation), the facts here are truly extraordinary, evincing a pattern of conduct spanning many cases, over many years, specific to this one law firm and its namesake attorney.

Accordingly, **IT IS ORDERED THAT**:

1. The Order to Show Cause [Dkt. 27] is **DISCHARGED-IN-PART** subject to and as discussed by this Order.
2. Attorneys William P. Ramey, III, Jeffrey E. Kubiak, and Susan S.Q. Kalra are each sanctioned for their conduct detailed herein.
3. By no later than **April 26, 2025** each of these attorneys **SHALL** self-report the sanctions imposed on them herein and provide a copy of this Order to the relevant disciplinary committees or offices of the State Bar of California, the State Bar of Texas, the Bar of the United States District Court for the District of Colorado, the United States Patent and Trademark Office, and any other state or federal bars of which they are members. Within **ten (10) business days** of completing the self-reporting requirements, these attorneys **SHALL** file with this Court a certification under oath certifying they have self-reported as required.
4. By no later than **April 26, 2025** each of these attorneys **SHALL** self-report this sanction and provide a copy of this Order to the Northern District of California's Standing Committee of Professional Conduct, to the judges presiding over every other case currently pending in the Norther District of California in which any of these attorneys' names appears on any filings or pleadings (including all cases in which their names appear as "*pro hac vice* anticipated" or similar language), to the Central District of California's Standing Committee on Professional Conduct, and as an attachment to any motion for *pro hac vice* admission filed by or on behalf of any of these lawyers in any action filed in a California federal court **during the next five years**. Within **ten (10) business days** of completing these self-reporting requirements, these attorneys **SHALL** file with this Court a certification under oath certifying they have self-reported as required.
5. As discussed, Mr. Ramey has worked on and appeared on the pleadings in forty-six other cases in the Northern District of California without filing the required motion for *pro hac vice* admission. The fee for *pro hac vice* admission is currently $328. By working on each of these cases without applying for *pro hac vice* admission, Mr. Ramey appropriated for himself the privilege of practicing in the Northern District of California as if he had been

admitted, without allowing each judge in each of those cases to determine from the relevant facts whether or not Mr. Ramey was regularly engaged in the practice of law in the State of California and thus ineligible for *pro hac vice* admission. Mr. Ramey has repeatedly engaged in the unauthorized practice of law in this Court (including in this case) and in other California federal courts. Further, Mr. Ramey deprived the Court of the *pro hac vice* fee he would have otherwise paid for working on each of these cases, which totals $15,088. Mr. Ramey is the founding, named partner and managing partner of his law firm, according to his law firm's website, with over twenty years of experience, and he is the avowed lead counsel representing his client in this and other cases. The Court further finds that Mr. Ramey's declaration in response to the OSC was less than candid and borders on misleading, in that Mr. Ramey placed responsibility on his client, Koji, for the decision to not file *pro hac vice* applications since 2022, even though (as detailed above) Mr. Ramey has appeared in numerous other cases in this District prior to 2022 without filing *pro hac vice* applications and without representing Koji. Additionally, as detailed herein, Mr. Ramey knowingly directed the filing of the third complaint on behalf of Plaintiff Koji against Defendant Renesas asserting the exact same patent, despite voluntarily dismissing two prior identical cases. Mr. Ramey offered no legally supported excuses for filing the complaint in this case, identified no reasonable inquiry prior to the filing in light of Rule 41, and as discussed, this amounted to bad faith, harassment, and an abuse of the federal court system. An attorney of his experience level should know better than undertake all of these actions, and he admits that he knowingly undertook the conduct at issue here. The undersigned therefore **PERSONALLY SANCTIONS Attorney William P. Ramey III** triple the amount of unpaid *pro hac vice* fees otherwise due, for **a total of $45,264**, for his intentional conduct herein and to deter him (and others) from such conduct in the future. Mr. Ramey **SHALL** pay this amount directly and personally (and this amount shall not be paid by his law firm or by his client) by no later than **April 26, 2025**, to the Clerk of the United States District Court for the Northern District of California. Mr. Ramey **SHALL** attach a copy of this Order to his payment.

6. As discussed, Mr. Kubiak has worked on and appeared on the pleadings in sixteen cases in the Northern District of California without filing the required motion for *pro hac vice* admission. The fee for *pro hac vice* admission is currently $328. By working on each of these cases without applying for *pro hac vice* admission, Mr. Kubiak appropriated for himself the privilege of practicing in the Northern District of California as if he had been admitted, without allowing each judge in each of those cases to determine from the relevant facts whether or not Mr. Kubiak was regularly engaged in the practice of law in the State of California and thus ineligible for *pro hac vice* admission. Mr. Kubiak has repeatedly engaged in the unauthorized practice of law in this Court (including in this case) and in other California federal courts. Further, Mr. Kubiak deprived the Court of the *pro hac vice* fee he would have otherwise paid for working on each of these cases, which totals $5,248. Mr. Kubiak has "acknowledge[d] that my prior practice [of not filing *pro hac vice* applications] was in error." [Dkt. 28-15 at ¶ 13]. Mr. Kubiak has been a partner of the Ramey firm since 2012, according to the firm's website, and has been practicing law for over twenty years. Additionally, as detailed herein, Mr. Kubiak knowingly participated in the preparation for and the filing of the third complaint on behalf of Plaintiff Koji against Defendant Renesas asserting the exact same patent, despite voluntarily dismissing two prior identical cases. Mr. Kubiak offered no legally supported excuses for filing the complaint in this case, identified no reasonable inquiry prior to the filing in light of Rule 41, and as discussed, this amounted to bad faith, harassment, and an abuse of the federal court system. An attorney of his experience should know better than undertake all of these actions, and he admits to having knowingly undertaken the conduct here. The Court therefore **PERSONALLY SANCTIONS Attorney Jeffrey E. Kubiak** double the amount of unpaid *pro hac vice* fees due, for **a total of $10,496**, for his conduct herein and to deter him (and others) from such conduct in future. Mr. Kubiak **SHALL** pay this amount directly and personally (and this amount shall not be paid by his law firm or by his client), by no later than **April 26, 2025**, to the Clerk of the United States District Court for the Northern District of California. Mr. Kubiak **SHALL** attach a copy of this Order to his

payment.

7. Ms. Kalra worked as Counsel of the Ramey firm from February 2023 until quite recently. As of the date of the OSC hearing, she was still Counsel with the Ramey firm, but according to that firm's website and her current firm's website, she appears to have separated from the Ramey firm in either November or December 2024. Since February 2023, Ms. Kalra worked on and appeared on the pleadings in at least thirty-five cases filed in the Northern District of California in which Mr. Ramey failed to file the required motion for *pro hac vice* admission, and in at least sixteen cases filed in this Court in which Mr. Kubiak failed to file the required *pro hac vice* application. The fee for *pro hac vice* admission is currently $328. By working on each of these cases without ensuring the filing of the requisite motion for *pro hac vice* admission on behalf of other attorneys of her law firm, Ms. Kalra aided and abetted Mr. Ramey and Mr. Kubiak in their unauthorized practice of law in this Court, without allowing each judge in each of those cases to determine from the relevant facts whether or not Mr. Ramey and Mr. Kubiak were regularly engaged in the practice of law in the State of California and thus ineligible for *pro hac vice* admission. Ms. Kalra has repeatedly aided and abetted Mr. Ramey and Mr. Kubiak to engage in the unauthorized practice of law in this Court (including in this case) and in other California federal courts. Further, Ms. Kalra aided and abetted the deprivation of the *pro hac vice* fees due to this Court that Mr. Ramey would have otherwise paid for working on each of the thirty-five cases in which they were co-counsel, which totals $11,480. Similarly, Ms. Kalra's actions aided and abetted the deprivation of the *pro hac vice* fees due to this Court that Mr. Kubiak would have otherwise paid for working on each of the sixteen cases in which they were co-counsel, which totals $5,248. Thus, the total *pro hac vice* application fees which were never paid due to Ms. Kalra's actions totals $16,728. Ms. Kalra "acknowledge[s] that the firm's prior practice [of avoiding filing *pro hac vice* applications] was in error[.]" [Dkt. 28-1 at ¶ 22. Ms. Kalra has been a member of the California bar for over thirty years. Additionally, as detailed herein, Ms. Kalra knowingly signed and filed the third complaint on behalf of Plaintiff Koji against

United States District Court
Northern District of California

United States District Court
Northern District of California

Defendant Renesas asserting the exact same patent, despite voluntarily dismissing two prior identical cases. Ms. Kalra offered no legally supported excuses for filing the complaint in this case, identified no reasonable inquiry prior to the filing in light of Rule 41, and as discussed, this amounted to bad faith, harassment, and an abuse of the federal court system. Ms. Kalra avers in her declaration that "at all times, I was acting as lead attorney on all California matters and William Ramey and Jeffrey Kubiak were practicing under my license." [Dkt. 28-1 at ¶ 22]. Ms. Kubiak nowhere explains (and did not explain at the OSC hearing) how an out-of-state attorney can "practice under the license" of a California attorney without being admitted *pro hac vice*. Mr. Ramey and Mr. Kubiak similarly failed to explain how they could "practice under" Ms. Kalra's bar admission or license in California without being admitted *pro hac vice*. [Dkt. 28-15 at ¶ 13; Dkt. 28-2 at ¶ 20]. An attorney of Ms. Kalra's experience level should know better than undertake all of these actions, and she admits to having knowingly undertaken the conduct at issue here. Because Ms. Kalra aided and abetted the conduct at issue, and because Ms. Kalra appears to have separated from the Ramey firm (and thus, is no longer involved in the business practices at issue here in the foreseeable future), the Court therefore **PERSONALLY SANCTIONS Attorney Susan S.Q. Kalra** by a reduced one-half of the amount of *pro hac vice* application fees that would have otherwise been paid for the two attorneys she aided and abetted, for **a total of $8,364**, for her conduct herein and to deter her (and others) from such conduct in future. Ms. Kalra **SHALL** pay this amount directly and personally (and this amount shall not be paid by the Ramey law firm or by Koji) by no later than **April 26, 2025**, to the Clerk of the United States District Court for the Northern District of California. Ms. Kalra **SHALL** attach a copy of this Order to his payment.

8. To be clear, while the amounts of monetary sanctions imposed are derived from the amount of *pro hac vice* fees that went unpaid, the Court utilized that rubric within its discretion to rationally and proportionally determine an appropriate amount of monetary sanctions to impose for all of the conduct and failures described herein. Further, as indicated, the Court enhanced or diminished the amount based on unpaid *pro hac vice* fees

as a reflection of the level of responsibility for each attorney in the conduct at issue, the seriousness of the conduct, and as a deterrent for future conduct.

9.  As discussed in detail herein, Mr. Ramey informed the Court of his intention to undertake future work in this Court and in other California district courts by simply removing his (and Mr. Kubiak's) names from the pleadings.  As discussed, this course of action raises concerns, particularly as to how it would be ethically, professionally, and competently administered.  The record indicates that the Ramey firm has followed that practice in at least one other district court, and has been subject to sanctions along with its local counsel for their conduct using this plan.  The Court therefore finds that monetary sanctions alone are not sufficient to deter the conduct at issue and finds that additional monetary sanctions would not be proportionate and would not serve the goal of deterrence under Rule 11.  Accordingly, the Court further **ORDERS** Mr. Ramey and Mr. Kubiak to each complete at least two hours of in-person, California bar-approved CLE classes on Legal Ethics and/or Professional Conduct, and at least an additional two hours of in-person, California bar-approved CLE on Law Practice Management, all such CLE to be completed by no later than **March 27, 2026**.  Mr. Ramey and Mr. Kubiak **SHALL** file with the Court a certification, under oath, that each has completed such CLE by the deadline (attaching any certificate of completion from the CLE provider(s)), where such certification shall be filed within **ten (10) business days** of the completion of each such CLE course.

10. As noted, the record indicates that the conduct at issue here resulted from practices or policies of the Ramey law firm with regard to handling (and not filing) *pro hac vice* applications and a failure to conduct reasonable pre-filing inquiry before filing a third complaint after two prior voluntary dismissals of the same cause of action.  Therefore, the Court further **ORDERS** Mr. Ramey and Mr. Kubiak to provide all attorneys of the Ramey law firm copies of this Order as well as copies of all educational materials received in connected with the CLE courses ordered above.  The required distribution of this Order **SHALL** be completed by no later than **April 2, 2025**.  The required distribution of CLE educational materials within the Ramey firm **SHALL** be completed within **ten (10)**

**business days** of the completion of each of the CLE courses ordered herein. The certifications ordered above **SHALL** include certifications by Mr. Ramey and Mr. Kubiak of the distribution of this Order and the CLE educational materials to all Ramey firm lawyers.

11. The Court **SHALL** retain jurisdiction over these attorneys, pending completion of the payments, CLEs, and certifications required by this Order, and to ensure proper compliance with this Order and the Court's directives.

**IT IS SO ORDERED.**

Dated: March 26, 2025

PETER H. KANG
United States Magistrate Judge

United States District Court
Northern District of California