1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6                            SAN FRANCISCO DIVISION

7

8    KOJI IP, LLC,                          Case No. 24-cv-03089-PHK

9                    Plaintiff,             **ORDER GRANTING MOTION FOR**
                                            **ATTORNEYS' FEES AND SANCTIONS**
10         v.
                                            Re: Dkt. 18
11   RENESAS ELECTRONICS AMERICA,
     INC.,
12
                    Defendant.
13

14         "Exceptional cases are, by definition, the exception.  But since *Octane*'s change in the

15   standard, the rule seems to be for prevailing parties to bring an exceptional case motion.  This case

16   is no exception. But it is exceptional."  *Universal Elecs., Inc. v. Universal Remote Control, Inc.*,

17   No. SACV 12-00329 AG (JPRx), 2015 WL 12733442, at *1 (C.D. Cal. Mar. 10, 2015), *aff'd*, 669

18   F. App'x 575 (Fed. Cir. Oct. 17, 2016).

19         This is the third in a series of identical patent infringement actions brought by Plaintiff

20   Koji IP, LLC ("Koji")—represented by the Ramey law firm—against Defendant Renesas

21   Electronics America, Inc. ("REA"), asserting the exact same patent in each case.  *See* Dkt. 1.  The

22   Parties have consented to proceed before a Magistrate Judge for all purposes, including the entry

23   of a final judgment under 28 U.S.C. § 636(c).  [Dkt. 10; Dkt. 20].

24         After the filing of this lawsuit and after the Parties exchanged correspondence, Koji filed a

25   notice of voluntary dismissal with prejudice under Federal Rule of Civil Procedure 41(a)(1)(A)(i).

26   [Dkt. 12].  Now before the Court is REA's motion for attorneys' fees under 35 U.S.C. § 285 and

27   requesting that those fees be levied against not just Koji but also Koji's counsel jointly and

28   severally under 28 U.S.C. § 1927 and the Court's inherent authority.  [Dkt. 18].  Koji has filed an

United States District Court
Northern District of California

opposition to REA's motion and REA has filed a reply.  [Dkt. 24; Dkt. 25].  The Court heard oral argument on the instant motion on August 22, 2024.  *See* Dkt. 26.  Having reviewed the Parties' written submissions and oral arguments, the Court **GRANTS** the motion in light of applicable legal standards for the reasons discussed herein.

On March 26, 2025, the Court issued an Order sanctioning Koji's counsel in this matter. [Dkt. 27].  That Order discusses the procedural history and course of conduct in this case in further detail.  Familiarity with that concurrently issued Order is assumed, and the factual discussion in that Order is incorporated herein.

## BACKGROUND

Koji is the owner by assignment of U.S. Patent No. 10,790,703 ("the '703 Patent").  The '703 Patent, entitled "Smart Wireless Power Transfer Between Devices," relates generally to a wireless power transfer system consisting of a "powering device" that is configured to wirelessly charge a "powered device."  The claims are, in general, directed to controlling wireless charging operations performed by the powering device based on how the charging operation affects the battery used to power the powering device.

On June 30, 2023, Koji—represented by the Ramey law firm—filed the first of three patent infringement lawsuits against REA in the District of Colorado ("First Action") alleging infringement of the '703 Patent.  Complaint, *Koji IP, LLC v. Renesas Electronics America, Inc.* ("*Koji I*"), No. 1:23-cv-01674-SKC (D. Colo. Jun. 30, 2023), ECF No. 1.  On August 25, 2023, REA filed a motion to dismiss Koji's complaint in the First Action, pursuant to Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6), arguing that venue in Colorado was improper and that the infringement allegations were inadequately pleaded.  Motion to Dismiss, *Koji I*, No. 1:23-cv-01674-SKC (D. Colo. Aug. 25, 2023), ECF No. 14.  On the merits, REA argued, specifically, that Koji's direct infringement allegations were deficient because the accused product lacked components required to meet each limitation of each claim of the asserted patent, and that the indirect infringement claims were subject to dismissal for failure to allege REA's pre-suit knowledge of the patent-in-suit.  In lieu of filing an opposition to the motion to dismiss, on September 6, 2023, Koji instead filed a voluntary notice of dismissal of the First Action without

United States District Court
Northern District of California

2

prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).  Notice of Voluntary Dismissal of Case, *Koji I*, No. 1:23-cv-01674-SKC (D. Colo. Sept. 6, 2023), ECF No. 18.

Shortly thereafter, on November 8, 2023, Koji—through the same counsel, the Ramey law firm—filed a second, identical patent infringement lawsuit against REA in the Northern District of California ("Second Action"), using an identically worded complaint alleging infringement of the same '703 Patent against the same defendant, REA.  Complaint, *Koji IP, LLC v. Renesas Electronics America, Inc.* ("*Koji II*"), No. 3:23-cv-05752-LJC (N.D. Cal. Nov. 8, 2023), ECF No. 1.  That Second Action complaint was facially copied from the First Action complaint—indeed, several paragraphs in the Second Action complaint still contain language regarding jurisdiction and venue being proper in Colorado (the venue of the First Action, not the venue of the Second Action).  *Id.* at ¶¶ 3, 5-6.  On December 22, 2023, REA sent Koji a letter regarding the complaint in the Second Action, identifying what REA alleged to be multiple pleading and infringement accusation failures, including several deficiencies that were previously raised in its motion to dismiss the First Action in Colorado.  [Dkt. 19-1 at 132-38].  In that letter, REA's counsel advised Koji's counsel that if the matter were to move forward, REA would seek to have the case declared exceptional and would seek an award of attorneys' fees.  *Id.* at 137.

In response, on January 3, 2024, Attorney William P. Ramey, III, on behalf of Koji, identified to REA three new products that Koji claimed also infringe the '703 Patent.  [Dkt. 19-1 at 140 ("we also wanted to make you aware of the products that will be included in our infringement contentions," identifying the PTX30W, REA RX111, and ISL1801 products)].  Notably, among the three REA products accused of infringing—and which Koji stated its intent to add to its infringement contentions in the Second Action—was the Renesas PTX30W product.  *Id.*  Mr. Ramey told REA that "we think there may be other products" at issue.  *Id.* at 151.  That same day, Mr. Ramey sent a separate email addressing some of the arguments in REA's earlier letter regarding the allegedly insufficient direct infringement allegations in the claims chart attached to the complaint.  *Id.* at 142.

On January 12, 2024, Mr. Ramey sent an email to REA's counsel asking if REA had a settlement counteroffer, stating that: "Our initial offer was very low.  Let me know if we can close

the case." *Id.* at 152.  REA's counsel responded that same day, indicating that REA's counteroffer would be for Koji to voluntarily dismiss this case, and in return, REA would not seek its fees and costs.  *Id.* at 151.  Later that same day (January 12, 2024), Mr. Ramey responded further on behalf of Koji, stating: "My client has agreed to accept $5k in resolution of the case.  While we think there may be other products, we extend this offer in good faith on what you have told us."  *Id.*

On January 18, 2024, REA responded in writing, arguing that Koji's infringement allegations remained frivolous and presenting data sheets demonstrating that two of the newly accused products (the RX111 and ISL1801) were prior art, one of which predated the provisional application for the '703 patent by over two years.  [Dkt. 19-1 at 158].  In that letter, REA's counsel argued that the newly identified PTX30W does not infringe the '703 patent on several grounds, and further advised Koji's counsel that if the matter were to move forward, REA would seek to have the case declared exceptional and would seek an award of attorneys' fees.  *Id.* at 158-59.  In a further email on January 18, 2024, REA's counsel reiterated REA's position that the case should be voluntarily dismissed by Koji, in return for which REA would not seek fees or costs, and that otherwise, REA would file a motion to dismiss.  *Id.* at 318.

Mr. Ramey, in response, sent an email to REA's counsel, dated January 23, 2024, stating "[h]ere is another product we are accusing," and attaching an infringement claims chart.  [Dkt. 19-1 at 328].  That email was sent not only to REA's counsel but also to Mr. Kubiak and Ms. Kalra, both counsel of record for Koji in this case.  *Id.*  The attachment to that email is a file titled, "EoU_CC-US10790703_ Koji Yoden - wireless power transfer v. Renesas Electronics's PTX130W_PTX30W (Claim 1) GSS.pdf."  *Id.*  The claims chart attached to Mr. Ramey's January 23, 2024 email accuses REA's PTX130W/PTX30W product—the same product Mr. Ramey identified as an accused infringing product in his prior January 3, 2024 email.  [Dkt. 19-1 at 329-38].  The claims chart includes excerpts from a data sheet for "PTX130W/PTX30W Hardware Integration."  *Id.* at 331.  Koji's infringement claims chart explicitly states that the PTX30W is included in the infringement accusation: "*Renesas Electronics's PTX130W/PTX30W (MUST BE BOUGHT TOGETHER IN ORDER TO ACHIEVE POWER TRANSFER) is a wireless power transfer system for wirelessly charging a powered device.*"  *Id.* (emphasis in original).  The claims

United States District Court
Northern District of California

4

United States District Court
Northern District of California

chart includes explicit accusations and images of REA's PTX30W product.  *Id.* at 333-35, 337-38 (identifying PTX30W as part of the accused "receiver" and labeled as "Listener"); *id.* at 336 (image labeled "PTX30W board" with accused PTX30W chip component circled in yellow as corresponding to claim limitation).

On January 23, 2024, REA's counsel replied by email, arguing that the accused PTX30W product does not infringe for several reasons.  *Id.* at 340.  REA's counsel informed Mr. Ramey, Mr. Kubiak, and Ms. Kalra—all recipients of this email—that REA intended to file a motion to dismiss.  *Id.*  Two weeks later, on January 30, 2024, Koji, in response, filed a voluntary notice of dismissal of the Second Action pursuant to Rule 41(a)(1)(A)(i).  Notice of Voluntary Dismissal, *Koji II*, No. 3:23-cv-05752-LJC (N.D. Cal. Jan. 30, 2024), ECF No. 12.  This Notice of Voluntary Dismissal—signed by both Mr. Ramey and Ms. Kalra—states that it purports to be "without prejudice" and states (without citation or support) that "each party shall bear its own costs, expenses and attorneys' fees."  *Id.* at 2.

On May 22, 2024, Koji—still represented by the Ramey firm—filed the complaint in this Third Action against REA, again alleging infringement of the same '703 Patent.  [Dkt. 1].  The claims chart attached to the complaint in this Third Action is identical (or nearly identical) to the claims chart Mr. Ramey sent to REA's lawyer on January 23, 2024 in connection with the Second Action and prior to dismissal of that case.  *Compare* Dkt. 1-2 at 2-11, *with* Dkt. 19-1 at 329-38. As with the claims chart sent in connection with the Second Action, the claims chart attached to the complaint in this Third Action accuses REA's PTX130W/PTX30W.  [Dkt. 1-2 at 4].  Like the claims chart sent by Mr. Ramey in connection with the Second Action, the claims chart attached to the Third Action complaint includes excerpts from a data sheet for REA's "PTX120W/PTX30W Hardware Integration."  *Id.*  Like the claims chart sent by Mr. Ramey in connection with the Second Action, the claims chart attached to the This Action complaint explicitly states that the PTX30W is included in the infringement accusation: "*Renesas Electronics's PTX130W/PTX30W (MUST BE BOUGHT TOGETHER IN ORDER TO ACHIEVE POWER TRANSFER) is a wireless power transfer system for wirelessly charging a powered device.*"  *Id.* (emphasis in original). And, just like the Second Action claims chart, the claims chart attached to the Third Action

complaint includes the same explicit accusations and images of the Renesas PTX30W product. *Id.*
at 6-8, 10-11 (identifying PTX30W as part of the accused "receiver" labeled as a "Listener"); *id.* at
9 (image labeled "PTX30W board" with accused PTX30W chip component circled in yellow).

Two days after commencing this Third Action (but before service of process), Mr. Ramey,
on behalf of Koji, sent a letter, dated May 24, 2024, directly to an in-house employee of REA (and
not their counsel), enclosing a copy of the complaint in this Third Action as well as a demand to
settle the case in its entirety for $59,000. *Id.* at 374. The letter instructed REA to respond by
email to both Mr. Ramey and Mr. Kubiak. *Id.* The letter stated that the offer would be withdrawn
if REA responded to the complaint. *Id.*

On May 31, 2024, REA's counsel sent a letter to Koji, stating that the Third Action was
"plainly barred under Federal Rule of Civil Procedure 41(a)(1)(B) and should be promptly
dismissed." *Id.* at 376. REA's counsel noted that "[t]he complaints are substantively identical and
the Second and Third actions appear to be largely cut-and-paste versions of the First Action." *Id.*
REA's counsel also noted that the fact that the dismissal of the Second Action included the phrase
"without prejudice" was legally irrelevant for purposes of the impact of Rule 41 under the two-
dismissal rule. *Id.* at 378. REA's counsel further summarized the asserted reasons—previously
asserted in connection with the Second Action—why the PTX30W does not infringe. *Id.* REA's
counsel also informed Koji's counsel that "the facts strongly suggest that these cases were filed for
an improper purpose: to leverage the substantial cost of litigation to obtain a modest settlement
notwithstanding the absence of a meritorious claim." *Id.* REA's counsel reiterated that REA
might seek an award of its fees under § 285. *Id.* at 379. Instead of responding on the merits, on
June 12, 2024, Koji filed a notice of voluntary dismissal of this Third Action with prejudice
pursuant to Rule 41(a)(1)(a)(i). [Dkt. 12].

Following Koji's voluntary dismissal of this Third Action, on June 26, 2024, REA filed the
instant motion, seeking reimbursement for the attorney fees it incurred in defending against the
Second and Third Actions, pursuant to 35 U.S.C. § 285, and seeking to have those amounts levied
against Koji's counsel as sanctions, pursuant to 28 U.S.C. § 1927 and/or this Court's inherent
authority. [Dkt. 18].

1

**LEGAL STANDARDS**

2

The so-called American Rule "generally requires each party to bear his own litigation

3

expenses, including attorney's fees, regardless whether he wins or loses." *Fox v. Vice*, 563 U.S.

4

826, 832 (2011) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975)).

5

The general American Rule does not allow for fee-shifting by prevailing parties unless specifically

6

authorized by law. *Peter v. Nantkwest, Inc.*, 589 U.S. 23, 29-30 (2019).

7

**I.      Attorneys' Fees Under 35 U.S.C. § 285**

8

Section 285 of the Patent Act provides that, in patent actions, a court may award

9

"reasonable attorney fees to the prevailing party" in "exceptional cases." 35 U.S.C. § 285.

10

Whether to award such fees is governed by Federal Circuit law. *See Realtime Adaptive Streaming*

11

*LLC v. Netflix, Inc.*, 41 F.4th 1372, 1378 (Fed. Cir. 2022) ("Federal Circuit precedent applies to a

12

district court's decision to award fees pursuant to § 285. *Blackbird Tech LLC v. Health in Motion*

13

*LLC*, 944 F.3d 910, 914 (Fed. Cir. 2019) ('We apply Federal Circuit case[ ]law to the § 285

14

analysis, as it is unique to patent law.')").

15

"Under § 285, a district court 'may award' attorneys' fees to 'the prevailing party' in

16

'exceptional cases.'" *Realtime Adaptive Streaming*, 41 F.4th at 1378. "The text of § 285 . . . is

17

patently clear. It imposes one and only one constraint on district courts' discretion to award

18

attorney's fees in patent litigation: The power is reserved for 'exceptional' cases." *Octane Fitness,*

19

*LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553 (2014).

20

"An 'exceptional' case is simply one that stands out from others with respect to the

21

substantive strength of a party's litigating position or the unreasonable manner in which the case

22

was litigated." *Dragon Intellectual Prop. LLC v. DISH Network LLC*, 101 F.4th 1366, 1369-70

23

(Fed. Cir. 2024) (quoting *Octane Fitness*, 572 U.S. at 554) (alterations omitted). "The party

24

seeking fees must prove that the case is exceptional by a preponderance of the evidence[.]"

25

*Energy Heating, LLC v. Heat-On-The-Fly, LLC*, 15 F.4th 1378, 1382 (Fed. Cir. 2021) (citing

26

*Octane Fitness*, 572 U.S. at 557-58)). "[W]hether a patent case is exceptional is decided as a

27

matter of discretion by a district court." *OneSubsea IP UK Ltd. v. FMC Techs., Inc.*, 68 F.4th

28

1285, 1294 (Fed. Cir. 2023) (citing *Highmark Inc. v. Allcare Health Mgmt. Sys. Inc.*, 572 U.S.

United States District Court
Northern District of California

559, 564 (2014)).  "A district court must 'provide a concise but clear explanation of its reasons for the fee award.'"  *Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 963 F.3d 1371, 1376 (Fed. Cir. 2020) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

"[A] district court makes the exceptional-case determination on a case-by-case basis considering the totality of the circumstances."  *Energy Heating*, 15 F.4th at 1382 (citing *Octane Fitness*, 572 U.S. at 554).  There is "no precise rule or formula" for making this determination.  *Octane Fitness*, 572 U.S. at 554 (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994)).  Relevant factors may include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."  *Id.* at 554 n.6 (quoting *Fogerty*, 510 U.S. at 534 n.19).  "[A] district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees."  *Id.* at 555.  "[A] case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award."  *Id.* (citation omitted).

However, courts do not award attorneys' fees as "a penalty for failure to win a patent infringement suit."  *Id.* at 548.  The legislative purpose of the fee-shifting provision is to prevent "gross injustice," not to punish a party for losing.  *Munchkin, Inc. v. Luv n' Care, Ltd.*, 960 F.3d 1373, 1378 (Fed. Cir. 2020) (citation omitted).

"Because § 285 commits the determination whether a case is 'exceptional' to the discretion of the district court, that decision is to be reviewed on appeal for abuse of discretion."  *Highmark*, 572 U.S. at 563.  The abuse-of-discretion standard applies to "all aspects of a district court's § 285 determination."  *Id.* at 564.  "Section 285 demands a simple discretionary inquiry; it imposes no specific evidentiary burden, much less such a high one.  Indeed, patent-infringement litigation has always been governed by a preponderance of the evidence standard[.]"  *Octane Fitness*, 572 U.S. at 557.

## II.    Sanctions Under 28 U.S.C. § 1927

"An attorney . . . who so multiplies the proceedings in any case unreasonably and

vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Whether to impose sanctions under § 1927 is governed by Ninth Circuit law. *United Cannabis Corp. v. Pure Hemp Collective, Inc.*, 66 F.4th 1362, 1367 (Fed. Cir. 2023) ("We review § 1927 motions under the law of the regional circuit."). "The key term in the statute is 'vexatiously'; carelessly, negligently, or unreasonably multiplying the proceedings is not enough." *In re Girardi*, 611 F.3d 1027, 1061 (9th Cir. 2010).

"[S]anctions pursuant to section 1927 must be supported by a finding of subjective bad faith." *Lake v. Gates*, --- F.4th ----, 2025 WL 815191, at *5 (9th Cir. 2025) (quoting *Blixseth v. Yellowstone Mountain Club, LLC*, 796 F.3d 1004, 1007 (9th Cir. 2015)). "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent." *Id.* (quoting *Blixseth*, 796 F.3d at 1007) (alteration omitted). "A district court may find such bad faith 'when an attorney has acted recklessly if there is something more,' such as frivolousness, harassment, or an improper purpose." *Indiezone, Inc. v. Rooke*, 720 Fed. Appx. 333, 337 (9th Cir. 2017). A "'finding that the attorney recklessly or intentionally misled the court' or 'a finding that the attorney[] recklessly raised a frivolous argument which resulted in the multiplication of the proceedings' amounts to the requisite level of bad faith. In addition, 'recklessly or intentionally misrepresenting facts constitutes the requisite bad faith' to warrant sanctions, as does 'recklessly making frivolous filings.'" *Id.* (citations omitted).

"[W]ith § 1927 as with other sanction provisions, 'district courts enjoy much discretion in determining whether and how much sanctions are appropriate.'" *Haynes v. City & Cnty. of S.F.*, 688 F.3d 984, 987 (9th Cir. 2012) (quoting *Trulis v. Barton*, 107 F.3d 685, 694 (9th Cir. 1995)) (alteration omitted).

### III.    Sanctions Under the Court's Inherent Authority

District courts have inherent authority to manage their own affairs. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). This includes the power to order appropriate sanctions as discipline. *Id.* A district court "may award attorneys' fees when the interests of justice so require." *Hall v.*

1    *Cole*, 412 U.S. 1, 4-5 (1973).  A court has the inherent power to levy fee-based sanctions "when

2    the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Octane*

3    *Fitness*, 572 U.S. at 557 (quoting *Alyeska Pipeline*, 421 U.S. at 258-59) (alterations omitted).

4          Whether to impose sanctions in the form of attorneys' fees under this Court's inherent

5    authority is governed by Ninth Circuit law.  *Realtime Adaptive Streaming*, 41 F.4th at 1377

6    ("Because a district court's inherent power to impose sanctions in the form of attorneys' fees is not

7    a substantive patent question, we apply the law of the regional circuit, here, the Ninth Circuit.").

8          To impose sanctions under its inherent power, the Court must find "bad faith or conduct

9    tantamount to bad faith." *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001).  "For purposes of

10   imposing sanctions under the inherent power of the court, a finding of bad faith does not require

11   that the legal and factual basis for the action prove totally frivolous; where a litigant is

12   substantially motivated by vindictiveness, obduracy, or mala fides, the assertion of a colorable

13   claim will not bar the assessment of attorney's fees." *Id.* at 992 (quoting *In re Itel Secs. Litig.*, 791

14   F.2d 672, 675 (9th Cir. 1986)) (internal quotation marks omitted).  "[S]anctions are justified when

15   a party acts *for an improper purpose*—even if the act consists of making a truthful statement or a

16   non-frivolous argument or objection." *Id.* (citing *Itel*, 791 F.2d at 675) (emphasis in original).

17         The Court must exercise its inherent power with "restraint and discretion." *Caputo v.*

18   *Tungsten Heavy Powder Inc.*, 96 F.4th 1111, 1148 (9th Cir. 2024) (quoting *Chambers*, 501 U.S. at

19   44).  Any award must "go no further than to redress the wronged party 'for losses sustained'; it

20   may not impose an additional amount as punishment for the sanctioned party's misbehavior." *Lu*

21   *v. United States*, 921 F.3d 850, 859 (9th Cir. 2019) (quoting *Goodyear Tire & Rubber Co. v.*

22   *Haeger*, 581 U.S. 101, 108 (2017)).

23                              **ANALYSIS**

24   **I.      Whether to Award Attorneys' Fees under § 285**

25           **a.    Whether REA is the Prevailing Party**

26         To be eligible for an award of fees under § 285, REA must first be the prevailing party.

27   The Parties dispute whether, and the extent which, REA is the "prevailing party" for purposes of

28   § 285.  Whether a litigant is a prevailing party in a patent case is a question of Federal Circuit law.

United States District Court
Northern District of California

*SSL Servs., LLC v. Citrix Sys., Inc.*, 769 F.3d 1073, 1086 (Fed. Cir. 2014) ("In a patent case, Federal Circuit law governs the determination of which party has prevailed.").  "[F]or there to be a prevailing party, there must be: (1) a change in the parties' legal relationship, and (2) the change must be judicially sanctioned or otherwise carry sufficient judicial imprimatur." *Buckhannon Bd. & Care Home, Inc. v. W.V. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001).  "The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties.  This change must be marked by judicial imprimatur." *O.F. Mossberg & Sons, Inc. v. Timney Triggers, LLC*, 955 F.3d 990, 992 (Fed. Cir. 2020) (quoting *CRST Van Expedited, Inc. v. EEOC*, 578 U.S. 419, 422 (2016)) (alteration omitted).  A litigant "need not prevail on the merits to be classified as a 'prevailing party.'" *Id.* (citation omitted).

The Federal Circuit has held that a defendant "prevails" as the result of a Rule 41 dismissal where the dismissal has "sufficient judicial imprimatur to constitute a 'judicially sanctioned change in the legal relationship of the parties.'" *Highway Equip. Co. v. FECO, Ltd.*, 469 F.3d 1027, 1034 (Fed. Cir. 2006) (quoting *Buckhannon*, 532 U.S. at 605).  Such a change in the legal relationship of the parties includes a voluntary dismissal with prejudice. *Raniere v. Microsoft Corp.*, 887 F.3d 1298, 1307 (Fed. Cir. 2018) ("[T]he dismissal of a claim with prejudice, however, is a judgment on the merits under the law of the Federal Circuit."); *see also Highway Equip.*, 469 F.3d at 1032 ("[T]he question of the effect of a dismissal with prejudice on 35 U.S.C. § 285 is a matter of Federal Circuit law.").

With regard to this Third Action, the procedural history demonstrates that REA is the prevailing party.  As discussed above (and in further detail in the Court's March 26, 2025 Order), Koji authorized its counsel to first file this action on May 22, 2024.  *See* Dkt. 28-2 at ¶ 14 ("I and my client's representative, Carlos Gorrichategui, Ph.D, discussed whether the sales of the newly charted product had been included in the prior numbers and came to the conclusion it was not based on what had been provided to Renesas in the prior lawsuits. . . . Accordingly, Koji asked Ramey LLP to file a new lawsuit based on the newly charted product created by Sunatori and Ramey LLP."); Dkt. 28-17 at ¶ 11 ("On April 25, 2024, I told William Ramey that my team and I revisited the Renesas Electronics claim chart and wanted to seek damages on a new product we

United States District Court
Northern District of California

1   charted.  I authorized the filing of the Third suit if we could.  William Ramey informed me that we

2   could file the Third lawsuit.").

3          In response to correspondence from REA's counsel, Koji agreed to voluntarily dismiss this

4   case **with prejudice** on June 12, 2024.  *See* Dkt. 28-17 at ¶¶ 12-13 ("On May 31, 2024, William

5   Ramey forwarded us '2024.05.31 Letter to Koji IP re third case.pdf[.]'  I discussed the matter with

6   William Ramey and authorized him to dismiss the suit to avoid a fight on a motion for

7   sanctions."); *see also* Dkt. 28-2 at ¶¶ 15-18 ("Renesas's lawyer responded by letter on May 31,

8   2024, that Koji's lawsuit was foreclosed as it had been dismissed twice.  The letter asked that the

9   lawsuit be promptly dismissed.  After further discussions with Renesas's counsel, the lawsuit was

10  dismissed with prejudice on June 12, 2024. . . . Koji instructed me to seek a dismissal with each

11  party bearing its own fees and costs but Renesas refused.  Rather than fight motion practice and

12  increase the costs for both sides, I dismissed *with prejudice* Koji's lawsuit over all products that

13  might infringe the '703 patent.") (emphasis in original).

14         The notice of voluntary dismissal filed by Koji explicitly states that the dismissal is with

15  prejudice.  [Dkt. 12].  A notice of voluntary dismissal operates immediately and does not require a

16  further court order to effectuate the dismissal.  *See* Fed. R. Civ. P. 41(a)(1)(A) ("Without a Court

17  Order . . .  the plaintiff may dismiss an action without a court order[.]"); *Com. Space Mgt. Co. v.*

18  *Boeing Co.*, 193 F.3d 1074, 1077 (9th Cir. 1999) ("Because the dismissal is effective on filing and

19  no court order is required, '[t]he filing of a notice of voluntary dismissal with the court

20  automatically terminates the action as to the defendants who are the subjects of the notice.'").

21  Analogously, the Federal Circuit has held that "a voluntary dismissal with prejudice under Federal

22  Rule of Civil Procedure 41(a)(2) 'has the necessary judicial imprimatur to constitute a judicially

23  sanctioned change in the legal relationship of the parties, such that the district court properly could

24  entertain [the defendant's] fee claim under 35 U.S.C. § 285.'"  *Raniere v. Microsoft Corp.*, 887

25  F.3d 1298, 1307-08 (Fed. Cir. 2018) (holding that order of dismissal with prejudice under Rule

26  41(b) suffices to make defendants prevailing parties, where "[t]he dismissal of a claim with

27  prejudice, however, is a judgment on the merits under the law of the Federal Circuit").

28         Accordingly, the Court finds that REA is the prevailing party in this Third Action because

Koji voluntarily dismissed this case *with* prejudice.  By definition, a dismissal with prejudice operates to change the legal relationship of the Parties with respect to the disputes raised in the Complaint in this action (for example, with regard to the Parties' legal relationship under the doctrines of *res judicata* or claim preclusion, issues on which the Federal Circuit applies regional circuit law.  *See Ford-Clifton v. Dep't of Veterans Affairs*, 661 F.3d 655, 660 (Fed. Cir. 2011) ("A voluntary dismissal with prejudice is an adjudication on the merits for purposes of *res judicata*.").

With regard to the Second Action, as an initial matter, the Court notes that the determination of the impact of the two dismissals (of the First and Second Actions) is now ripe for adjudication because it has been raised now in this Third Action.  *See Com. Space Mgt.*, 193 F.3d at 1080.  The Court finds that REA is also the prevailing party in the Second Action by operation of the "two-dismissal rule" under Rule 41(a)(1)(B).  Specifically, Rule 41(a)(1)(B) provides, in pertinent part, that "[i]f the plaintiff previously dismissed any . . . action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits."  As detailed above and in March 26, 2025 Order, Koji filed two identical cases (the first in Colorado, the second in this Court) against REA, asserting the exact same patent against the exact same products.  *See* Dkt. 28-2 at 10 n.7 ("The claim chart filed with the first lawsuit was the same claim chart filed with the second lawsuit."); Dkt. 28-17 at ¶ 5 ("William Ramey informed me that we would likely lose the venue motion and I authorized him to dismiss the Colorado [sic], if we could refile elsewhere.  I was informed the case would be refiled in California.").

Mr. Gorrichategui of Koji authorized Mr. Ramey to dismiss the First Action in Colorado, and thus, Koji voluntarily dismissed the First Action by filing a voluntary notice of dismissal signed by Mr. Ramey as counsel for Koji—and not by stipulation signed by both Parties—under Rule 41(a)(1)(A)(i).  [Dkt. 19-1 at 114].  After refiling the identical case here in the Northern District of California, Mr. Gorrichategui of Koji authorized dismissal, and thus, Koji voluntarily dismissed that Second Action, again by filing a voluntary notice of dismissal under Rule 41(a)(1)(A)(i).  [Dkt. 19-1 at 371]; *see also* Dkt. 28-2 at ¶¶ 11-13 ("On November 8, 2023, I had Susan Kalra refile the lawsuit in the Northern District of California and shortly thereafter began discussions with counsel for Renesas. . . . The lawsuit was dismissed due to the low sales

13

United States District Court
Northern District of California

1    volume."); Dkt. 28-17 at ¶ 5 ("Based on low sales volumes I authorized the dismissal of the

2    lawsuit due to the low sales volumes.").

3         The Federal Circuit has recognized that the two-dismissal rule under Rule 41(a)(1)(B) "by

4    its terms applies only if 'the plaintiff' (in the action whose dismissal would become an

5    adjudication on the merits) previously dismissed an action (based on or including the same claim).

6    The plaintiff in the second action must be the same person as the plaintiff in the first action at the

7    time of the voluntary dismissal."  *Astornet Techs. Inc. v. BAE Sys.*, 802 F.2d 1271, 1281 (Fed. Cir.

8    2015).  Here, there is no dispute that Koji is the same plaintiff in the First Action and the Second

9    Action; there is no dispute that the cause of action asserting the same '703 patent in the Second

10   Action was identical to the First Action (that is, the Second Action was a "refiled" version of the

11   First Action with the identical claims chart attached to the complaints in each, with the only

12   difference being the venue); and there is no dispute that Koji filed notices of voluntary dismissal

13   in both the First Action and the Second Action.

14        Koji's notice of voluntary dismissal of the Second Action facially states that the dismissal

15   was *without* prejudice, but that labelling is of no legal import.  "[T]he label a plaintiff attaches to a

16   second Rule 41(a)(1) dismissal is irrelevant if a subsequent action is filed 'based on or including

17   the same claim,' because Rule 41(a)(1) itself instructs that such a dismissal 'operates as an

18   adjudication upon the merits.'"  *Com. Space Mgt.*, 193 F.3d at 1080; *see also Vanover v. Bohnert*,

19   11 Fed. Appx. 679, 680-81 (8th Cir. 2001); 9 CHARLES ALAN WRIGHT & ARTHUR R. MILLER,

20   FEDERAL PRACTICE AND PROCEDURE § 2368 (4th ed.) ("When a second dismissal is by notice

21   under Rule 41(a), it is, by operation of the terms of the Federal Rule itself, an adjudication on the

22   merits; thus, it is with prejudice *even if the notice states that the dismissal is without prejudice*.")

23   (emphasis added).  While the Federal Circuit does not appear to have addressed the specific issue

24   of "labelling" a second notice of dismissal, the great weight of precedent makes clear that a

25   plaintiff cannot avoid the effect of Rule 41(a)(1)(B) merely by adding "without prejudice" to the

26   dismissal notice.  Indeed, the text of the rule expressly states that the dismissal of the second case

27   "operates" as an adjudication on the merits—meaning that the operation or effect of the dismissal

28   is a judgment on the merits, without providing any exception for the form or textual attempts to

United States District Court
Northern District of California

1  avoid that operation.  *See Robertshaw-Fulton Controls Co. v. Noma Elec. Corp.*, 10 F.R.D. 32, 34

2  (D. Md. 1950) ("It is clear from this language that the plaintiff in the present case could not, by the

3  mere recital in its notice of dismissal of July 22, 1949 that such notice is 'without prejudice and

4  without costs,' defeat the express language of the Rule above quoted [Rule 41(a)(1)(B)].").  Koji's

5  position is not well-reasoned, because a party could avoid the operation of Rule 41(a)(1)(B) by

6  merely adding the magic language "without prejudice" in a second notice of dismissal, thus

7  rendering the Rule ineffective by easy and unconstrained expedient.

8      While the Parties have not identified Federal Circuit precedent affirming an award of fees

9  based on a finding of a prevailing party under Rule 41(a)(1)(B)'s two-dismissal rule, the Federal

10  Circuit has recognized the two-dismissal rule's reach.  Specifically, in *Astornet*, the Federal

11  Circuit recognized that the two-dismissal rule applies "in the action whose dismissal would

12  become an adjudication on the merits" where the same plaintiff had "previously dismissed an

13  action (based on or including the same claim)."  802 F.3d at 1281 (finding two-dismissal rule did

14  not apply to the facts in that case).  By operation of Rule 41(a)(1)(B), a notice of voluntary

15  dismissal in the second case operates as an adjudication on the merits and a dismissal with

16  prejudice is "tantamount to a decision on the merits."  *Raniere*, 887 F.3d at 1307.  The Supreme

17  Court has held that a decision on the merits is not required for a party to be found the "prevailing

18  party."  *CRST Van Expedited, Inc. v. EEOC*, 578 U.S. 419, 431-32 (2016).  Analogously, the

19  Federal Circuit has held that "as a matter of patent law" a dismissal with prejudice by court order

20  under Rule 41(a)(2) "has the necessary judicial imprimatur to constitute a judicially sanctioned

21  change in the legal relationship of the parties, such that the district court properly could entertain

22  [defendant] FECO's fee claim under 35 U.S.C. § 285."  *Highway Equip.*, 469 F.3d at 1035.

23      The Federal Circuit has made clear that the impact of two dismissals under Rule

24  41(a)(1)(B) may only be raised and decided in a third case, if and when a third case is filed.  *Com.*

25  *Space Mgmt.*, 193 F.3d at 1080.  As such, the instant Order in this Third Action is by definition a

26  court order (and "judicial imprimatur") which constitutes a judicially sanctioned change in the

27  legal relationship of the Parties here.  That is, to the extent that the notice of dismissal of the

28  Second Action, standing in isolation, somehow does not have sufficient judicial imprimatur, this

United States District Court
Northern District of California

very Order—which finds that the effect of the voluntary dismissal of the Second Action operates as an adjudication on the merits and which could not issue until this Third Action—constitutes a judicially sanctioned and recognized change in the legal relationship of the Parties that was effectuated by that second dismissal.

Other district courts faced with this scenario have concluded that the two-dismissal rule results in an adjudication on the merits and is therefore sufficient to confer "prevailing party" status on the defendant for purposes of § 285. *See, e.g., Realtime Adaptive Streaming LLC v. Netflix, Inc.*, No. CV-19-6361-GW-JCx, 2020 WL 8024356, at *3 (C.D. Cal. Nov. 23, 2020), *aff'd on other grounds*, 41 F.4th 1372 (Fed. Cir. 2022); *Young Lee v. Summit Trustee Servs., LLC*, No. CV 19-3814-DMG (Ex), 2020 WL 10313718, at *1 (C.D. Cal. Nov. 20, 2020) ("[U]nder the 'two dismissal rule,' the second dismissal operates as an adjudication on the merits of allegations of wrongful foreclosure, quiet title, violation of financial code, and unfair competition, notwithstanding that Plaintiff characterized the dismissal as 'without prejudice.'");  *Uniloc USA, Inc. v. Blackberry Corp.*, No. 3:18-cv-1883-N, 2021 WL 12104812, at *1 (N.D. Tex. July 1, 2021).  The Court is persuaded by these cases and their reasoning.

Accordingly, the Court finds that REA is the prevailing party in both the Second Action and this Third Action.

### b.  Whether the Second and Third Actions are "Exceptional"

In evaluating whether a case is "exceptional" for purposes of § 285, the Court has discretion to consider various non-exclusive factors, including "the litigant's objective unreasonableness in litigating the case, subjective bad faith, frivolousness, motivation, and the need in particular circumstances to advance considerations of compensation and deterrence." *Bayer CropScience AG v. Dow AgroSciences LLC*, 851 F.3d 1302, 1306 (Fed. Cir. 2017) (citing *Octane Fitness*, 572 U.S. at 554 & n.6).

<u>Koji's Litigating Position</u>

A case presenting "exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award."  *Octane Fitness*, 572 U.S. at 555.  An objectively baseless patent case is one in which the patentee's assertions—whether manifested in its infringement

16

allegations or its claim construction positions—are "such that no reasonable litigant could reasonably expect success on the merits." *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1327 (Fed. Cir. 2013) (quoting *Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d 1254, 1260 (Fed. Cir. 2008)); *Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1330 (Fed. Cir. 2003) ("A frivolous infringement suit is one which the patentee knew, or on reasonable investigation, should have known, was baseless.").

Courts in this District have found that a plaintiff's failure to adequately investigate their patent infringement claim "weighs in favor of finding that [the] case is exceptional." *Yufa v. TSI Inc.*, No. 09-cv-01315-KAW, 2014 WL 4071902, at *3 (N.D. Cal. Aug. 14, 2014) (awarding § 285 fees where the plaintiff failed to purchase or test any of the accused products to support its infringement claims); *IPVX Patent Holdings, Inc. v. Voxernet LLC*, No. 5:13-cv-01708 HRL, 2014 WL 5795545, at *6 (N.D. Cal. Nov. 6, 2014).

As discussed in detail in this Court's March 26, 2025 Order, it is clear that Koji's counsel conducted zero (or near-zero) prefiling investigation regarding the effect of the dismissal of the Second Action on Koji's ability to file this Third Action under the "two dismissal" rule of Rule 41(a)(1)(B). [Dkt. 21]. Koji admits that the First Action filed in Colorado was identical to the Second Action filed in this Court. [Dkt. 28 at 16 ("Koji admits that it refiled the same infringement allegations it previously dismissed in Colorado in the Northern District of California.")]. Koji admits that it voluntarily dismissed the First Action under Rule 41 by notice. *Id.* at 15. And Koji admits that it voluntarily dismissed the identical Second Action under Rule 41 by notice. *Id.* at 16-17. Because Koji previously dismissed the same claim in the First Action, the notice of dismissal in the Second Action operated as an adjudication on the merits. Fed. R. Civ. P. 41(a)(1)(B).

At the August 22, 2024 hearing, Ms. Kalra was unable to identify any pre-filing inquiry by herself (or by any other Ramey LLP attorney) regarding Rule 41's effect here, and regarding whether or not the complaint in this Third Action was warranted by existing law or any other permissible basis under Rule 11. Ms. Kalra was equally unable to identify whether any of the Ramey LLP lawyers performed any pre-filing inquiry as to the impact of the dismissal filed in the

United States District Court
Northern District of California

1    Second Action prior to the filing of that notice of dismissal.  At the hearing and in the briefing on

2    the instant motion, Plaintiff's counsel was unable to cite any law of which they were aware prior

3    to filing the complaint in this Third Action which reasonably supported the position that the

4    dismissals of the complaints in the previous two actions avoided an adjudication on the merits

5    under Rule 41.

6         In the opposition to the fees motion here, Koji argues that its "actions in filing multiple

7    lawsuits have been explained and have presented 'a persuasive explanation for the course of

8    litigation' and therefore Koji would not be liable under Rule 41 either."  [Dkt. 24 at 20-21 (citing

9    *Milkcrate Athletics, Inc. v. Adidas Am., Inc.*, 619 F. Supp. 3d 1009 (C.D. Cal. 2022)).  The

10   *Milkcrate* case cited by Koji does *not* discuss an exception to the dispositive effect of the two prior

11   dismissals under Rule 41.

12        In *Milkcrate*, the issue was whether or not the Court should award costs and fees to the

13   defendant under Federal Rule of Civil Procedure 41(d).  *Id.* at 1024-28; *see* Fed. R. Civ. P. 41(d)

14   ("If a plaintiff who previously dismissed an action in any court files an action based on or

15   including the same claim against the same defendant, the court . . . may order the plaintiff to pay

16   all or part of the costs of that previous action[.]").  Indeed, the quote from *Milkcrate* cited by

17   Koji's opposition brief here is taken out of context—the full text of the sentence states that "[a]n

18   'award under Rule 41(d) is appropriate' where 'the [movant] has failed to present a persuasive

19   explanation for the course of litigation' and the nonmovant shows it has 'incurred needless

20   expenditures as a result.'"  *Milkcrate*, 619 F. Supp. 3d at 1025.  *Milkcrate* was concerned with

21   whether to award costs to the defendant under Rule 41(d), not whether to award fees under § 285.

22   Indeed, Koji itself confusingly argues that "Renesas did not move under Rule 41." [Dkt. 24 at 20].

23        Further, even if somehow the "persuasive explanation for the course of litigation" rule in

24   *Milkcrate* for avoiding costs under Rule 41(d) were somehow analogized to or extended by

25   implication to Rule 41(a)(1)(B), the application of that rule in *Milkcrate* is contrary to Koji's

26   opposition.  In *Milkcrate*, the court actually *awarded* costs to the defendant because the plaintiff

27   filed a second action after dismissing a previous action, where the allegations in both cases

28   concerned "the same operative facts and include[d] the same copyright infringement claim at

United States District Court
Northern District of California

issue[.]" 619 F. Supp. 3d at 1025-26. That is the same situation here—Koji filed this Third Action even after voluntarily dismissing the previous two cases, even though all three cases concerned the same operative facts and included the same patent infringement claims at issue. If anything, *Milkcrate* teaches that an award of costs is appropriate in the analogous factual situation as is present here, due to a failure to present a "persuasive explanation for the course of litigation" where multiple suits are filed and dismissed.

At the hearing on the Order to Show Cause, Mr. Ramey admitted that *Milkcrate* is not legal support for an exception under Rule 41(a)(1)(B) for filing the complaint in this Third Action after previously dismissing two identical or substantially identical prior complaints. Mr. Ramey also admitted that *Milkcrate* is not support for the assertion that he somehow "knew" based on his experience of any such exception to Rule 41 that would have allowed or excused the filing of the third complaint here. The record shows that Koji (and its lawyers) did not analyze *Milkcrate* or any definitive cases on the issues as part of any pre-filing diligence before filing the Third Action complaint here. In his declaration in opposition to the instant motion, Mr. Ramey states that, in responding to REA's counsel *after* the Third Action was already filed, "[o]ur opinion was that the dismissal of the Colorado lawsuit did not count as a prior dismissal for purposes of Rule 41 as it was done on venue grounds and to conserve the resources of the parties. However, further research did not provide a definitive case on the issues so Koji decided to dismiss the lawsuit with prejudice before Renesas would be required to expend resources answering or otherwise responding." [Dkt. 24-2 at ¶ 17]. Similarly, in response to the Order to Show Cause, the Ramey law firm attorneys simply refer to their unexplained "opinion" that the dismissal of the first lawsuit in Colorado somehow did not count for purposes of Rule 41, that based on their years of experience there are unidentified "exceptions" to Rule 41, and that they "believed" the circumstances allowed them to refile the complaint. [Dkt. 28-1 a ¶ 12; Dkt. 28-2 at ¶ 17; Dkt. 28-3 at ¶ 20].

Koji has provided no legal support which justifies the filing of the third complaint here. At best, Koji argues that the prior dismissals were motivated by a desire to reduce costs and out of concern for the convenience to the Parties. [Dkt. 24 at 8-10]. Koji argues that the dismissal of the

United States District Court
Northern District of California

1    First Action in Colorado occurred after Koji received sworn statements from REA "that likely

2    established that the location relied upon for venue was not a location of Renesas, Koji dismissed

3    its lawsuit on September 6, 2023 without burdening the court or Renesas to address the

4    arguments." *Id.* at 8.  Koji's brief concludes this argument with a circular statement that "[t]he

5    dismissal was filed solely to effectuate dismissal." *Id.*  Similarly, with regard to the Second

6    Action, Koji argues that REA "maintained that the sales volume of the accused product was very

7    low.  Koji and its counsel looked for additional products from [REA] but were unable to locate

8    any at the time. Therefore, to not burden [REA], on January 30, 2024, Koji agreed to dismiss

9    without prejudice its lawsuit, to which [REA] agreed.  The lawsuit was dismissed due to the low

10   sales volume." *Id.*

11        There is no provision of Rule 41 which somehow exempts the impact of a voluntary

12   dismissal if it is allegedly to avoid burdening the court or parties to address arguments, or if it is

13   due to low sales volumes of accused products.  The Ninth Circuit has held that Rule 41 "does not

14   consider the plaintiff's reasons for seeking a voluntary dismissal" and that "[t]he Rule does not

15   require an inquiry into the circumstances of the two dismissals." *Lake at Las Vegas Investors*

16   *Grp., Inc. v. Pac. Malibu Devel. Corp.*, 933 F.2d 724, 727 (9th Cir. 1991); *Thomas v. Wells Fargo*

17   *Bank, N.A.*, No. C 13-02065 JSW, 2013 WL 5313458, at *3 (N.D. Cal. Sept. 23, 2013) ("[T]he

18   Rule [Rule 41] does not to provide the Court with any discretion to avoid the impact of the two–

19   dismissal rule based on the Plaintiff's understanding or motivation in dismissing the second

20   action.").  Indeed, in response to the Order to Show Cause, Koji's lawyers admitted that the First

21   Action was dismissed because Koji determined it would lose a motion to dismiss or transfer for

22   improper venue, and thus, not merely to reduce burdens.  [Dkt. 28 at 15 ("The first [lawsuit] was

23   dismissed by Koji when it determined that it would likely lose a venue motion.")].  At the Order to

24   Show Cause hearing, Mr. Ramey conceded that he was unable to locate any case law supporting

25   the position that voluntary dismissal for "convenience" or to reduce costs (by avoiding a fight over

26   venue) is exempt from Rule 41's impact.  [Dkt. 40 at 50:22-51:20].

27        More significantly, Koji proffers no evidence that Koji (or its lawyers) performed any

28   diligence on the Rule 41 issue prior to filing this Third Action.  Instead, Koji admits that the

20

1  reason for filing this Third Action was because "sales of the newly charted product" were not

2  included in Koji's "prior numbers" for damages calculations.  [Dkt. 24 at 4].  That is, Koji's only

3  identified pre-filing investigation was to find a basis to assert higher damages claims and demand

4  a higher settlement, which Koji did immediately upon filing this Third Action, by raising its

5  demand from five thousand dollars at the end of the Second Action to fifty-nine thousand dollars

6  upon filing the Third Action.  [Dkt. 19-1 at 151, 374].

7       As discussed in detail in the March 26, 2025 Order, the Court is deeply troubled by Koji's

8  lack of diligence and apparent disregard for the two-dismissal rule issue prior to filing the Third

9  Action.  The two-dismissal rule "was intended to eliminate 'the annoying of a defendant by being

10  summoned into court in successive actions and then, if no settlement is arrived at, requiring him to

11  permit the action to be dismissed and another one commenced at leisure.'"  *Cooter & Gell v.*

12  *Hartmax Corp.*, 496 U.S. 384, 397 (1990) (citation omitted).  Koji has identified no legally

13  permissible excuses for its failures to investigate the Rule 41 issues, and its post-hoc arguments

14  about reducing burdens or convenience are simply irrelevant to Rule 41 (as is the only case law

15  cited by Koji).

16       The Court **FINDS** that Koji's filing of the complaint in this Third Action was frivolous and

17  legally baseless, and lacked adequate pre-suit diligence on the Rule 41 issues.  The timing of

18  Koji's immediate settlement demand after filing the Third Action, and Koji's avowed reason for

19  filing the Third Action (simply to demand a higher settlement figure than was demanded during

20  the Second Action) was an improper motivation and amounts to harassment.  The Court **FINDS**

21  that Koji litigated with subjective bad faith, that Koji's approach to litigating this Third Action

22  was objectively unreasonable where no reasonable litigant could reasonably expect success on the

23  merits, and that Koji's actions were at least reckless, if not willfully blinding themselves to the

24  defects in the Third Action, coupled with more conduct (including making misrepresentations to

25  this Court, as discussed below).  The Court therefore **FINDS** that the Third Action is an

26  exceptional case.

27       With regard to the Second Action, as detailed above, during the course of that lawsuit Koji

28  continued to add accused products to the case.  Specifically, Renesas's counsel sent Koji's counsel

United States District Court
Northern District of California

1    a letter on December 22, 2023 detailing numerous arguments why the infringement allegations

2    against the exemplary product accused in the claims chart attached to the complaint.  [Dkt. 19-1 at

3    132].  In response, on January 3, 2024, Mr. Ramey sent an email adding three additional products

4    to Koji's infringement contentions in the case.  *Id.* at 140.  After investigating, on January 18,

5    2024 REA's counsel replied by letter, explaining that two of the new accused products added to

6    the Second Action are prior art to the '703 patent, attaching as evidence data sheets for the two

7    prior art products.  *Id.* at 158.  Koji never responded to that letter and never commented on the

8    issue of whether it had accused prior art products of infringement.  Instead, on January 23, 2024,

9    Mr. Ramey sent REA's counsel a claims chart purporting to show infringement of '703 claim 1 by

10   the third product (the PTX130W/PTX30W) listed in the January 3, 2024 email.  *Id.* at 328-38.

11       "A century-old axiom of patent law holds that a product 'which would literally infringe if

12   later in time anticipates if earlier.'"  *Upsher-Smith Labs. v. Pamlab, L.L.C.*, 412 F.3d 1319, 1322

13   (Fed. Cir. 2005).  The Federal Circuit has affirmed the grant of summary judgment of invalidity of

14   a patent where the patentee accused the defendant's products of infringing the patent and where it

15   turned out that those accused products were for sale in the prior art time period.  *See Vanmoor v.*

16   *Wal-Mart Stores, Inc.*, 201 F.3d 1363, 1366-67 (Fed. Cir. 2000) ("[T]he entire basis of the patent

17   infringement claim is Vanmoor's (the patentee's) contention that the accused cartridges infringe

18   the '331 patent. . . . Although Wal–Mart and the manufacturers bore the burden of proving that the

19   cartridges that were the subject of the pre-critical date sales anticipated the '331 patent, that burden

20   was satisfied by Vanmoor's allegation that the accused cartridges infringe the '331 patent."); *see*

21   *also Gammino v. Sw. Bell Tel., L.P.*, 512 F. Supp. 2d 626, 635-38 (N.D. Tex. Mar. 23, 2007) ("In

22   this case, [patentee] Gammino has accused two of [defendant] SWB's call-blocking services. . . .

23   These services were implemented in SWB's central office switches and were publicly available for

24   purchase before Gammino even conceived of his invention. . . . [SWB's] burden of proving

25   anticipation was satisfied by Gammino's allegation that the accused call-blocking services

26   infringed his patents.  Stated differently, the fact that Gammino bases his infringement claims

27   against SWB on SWB's own prior art call-blocking services renders the claims of his patents

28   invalid."), *aff'd*, 267 Fed. Appx. 949 (Fed. Cir. 2008) ("No purpose would be served by simply

United States District Court
Northern District of California

retracing the analysis of the district court, which is fully sufficient to resolve this appeal.").

The factual situation here is similar to those in *Realtek Semiconductor Corp. v. Marvell Semiconductor, Inc.*, No. C-04-4265 MMC, 2005 WL 3634617 (N.D. Cal. Nov. 21, 2005). There, the patentee sued Marvell for infringing a Realtek patent, and Realtek accused several Marvell products by model number. During discovery, Marvell established that Realtek was in possession of a report from a consultant which showed the prior art date of the accused Marvell product. Thus, after Marvell showed in discovery that one of the specifically accused Marvell products was prior art to the Realtek patent, Marvell served a Rule 11 notice on Realtek and filed a motion for summary judgment of invalidity of the asserted patent because the accused Marvell product was prior art to the patent. Subsequently, Realtek granted Marvel a covenant not to sue and sought dismissal of the case. Marvell then filed a motion for attorneys' fees under § 285. *Id.* at *1-2.

In finding the case exceptional, Judge Chesney wrote that "[patentee] Realtek initiated the instant litigation 'without investigating the facts staring them in the face.' Moreover, Realtek does not explain why it continued to pursue the instant lawsuit after April 8, 2005, the date on which Marvell produced sales data showing numerous sales of the accused product during the year 2000. . . . Realtek knew or should have known, before filing the instant lawsuit, that it had no chance of success on the merits of its infringement claim, because Marvell's allegedly infringing product was made and sold before the invention date of the '608 patent." *Id.* at *5-6. Judge Chesney held that Realtek acted in subjective bad faith in filing the action, ultimately awarding Marvell roughly $550,000 in fees and expenses. *Id.* at *6, 8.

Here, as in *Realtek*, the plaintiff accused products of infringing, where those products were shown by documentary evidence to be prior art. Here, as in *Realtek*, the plaintiff continued to pursue the case even after being made aware that it had accused prior art products of infringement, after documentary evidence showing the products are prior art was disclosed, and after defense counsel raised concerns about Rule 11 violations, sanctions under § 1927, and attorneys' fees under § 285. [Dkt. 19-1 at 158-59]. Here, as in *Realtek*, the plaintiff did not offer persuasive explanation for its lack of diligence in investigating the products prior to accusing them of infringement, and did not offer persuasive explanation for why it continued to pursue the lawsuit

23

for some period of time after being made aware of the facts.  While the time frame here is shorter than in *Realtek* (Koji accused the prior art products of infringement on January 3, 2024 and ultimately filed the notice of voluntary dismissal of the Second Action on January 30, 2024), the conduct is strikingly similar.

As noted, Koji never responded to REA about the fact that Koji accused two prior art products of infringing the '703 patent.  And in the opposition to the instant motion, Koji does not provide any persuasive argument on this issue.  As discussed in the detailed timeline above, after Koji added the new accused products to the Second Action (on January 3, 2024), Koji sent two emails on January 12, 2024, seeking a settlement counteroffer and making a settlement demand of five thousand dollars.  *Id.* at 318-19.  And then on January 23, 2024, Koji sent another infringement claims chart for a third product recently added to the case, without discussing the accused prior art products.

In light of the facts discussed above and in light of the applicable legal standards, the Court **FINDS** that, starting on January 3, 2024 and thereafter, Koji litigated the Second Action with subjective bad faith by accusing infringement by products which Koji knew no later than January 18, 2024—and with the exercise of minimal diligence, should have known prior to adding them to the infringement contentions in this case—were prior art products.  The Court finds that Koji's accusation of prior art products was frivolous and objectively unreasonable, because no reasonable litigant could reasonably expect success on the merits of such a position.  Koji's insistence on pursuing settlement demands during this period of the Third Action, and Koji's avowed reason for filing the Third Action (simply to demand a higher settlement figure than was demanded during the Second Action) was an improper motivation and amounts to harassment.  The Court **FINDS** that Koji's actions were at least reckless, if not willfully blinding themselves to the defects in the Third Action, coupled with more conduct (including making misrepresentations to this Court, as discussed below).  The Court therefore **FINDS** that the Second Action is an exceptional case from January 3, 2024 onward.

<u>Koji's Manner of Litigation</u>

REA also argues that the Second and Third Actions were exceptional because of the

United States District Court
Northern District of California

1    unreasonable manner in which they were litigated.  Specifically, REA argues that Koji filed these

2    lawsuits solely to extract nuisance settlements, stressing that: (1) Koji made repeated settlement

3    offers "far below the cost of defense" during each case (particularly at the outset of each); (2) Koji

4    strategically avoided any testing of the merits of its patent infringement claims in all three

5    lawsuits; and (3) Koji had actual notice of the weakness of its claims as well as of REA's intention

6    to seek fees under § 285.

7             Koji's manner of litigation and the broader context of its lawsuit against REA are relevant

8    to the Court's inquiry under § 285.  *SFA Sys., LLC v. Newegg, Inc.*, 793 F.3d 1344, 1350 (Fed.

9    Cir. 2015) ("[A] pattern of litigation abuses characterized by the repeated filing of patent

10   infringement actions for the sole purpose of forcing settlements, with no intention of testing the

11   merits of one's claims, is relevant to a district court's exceptional case determination under

12   § 285."); *Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 963 F.3d 1371, 1377 (Fed.

13   Cir. 2020) ("ECT's demand for a low-value settlement—ranging from $15,000 to $30,000—and

14   subsequent steps—such as failure to proceed in litigation past claim construction hearings—

15   indicates the use of litigation to achieve a quick settlement with no intention of testing the strength

16   of the patent or its allegations of infringement.").  As discussed above, in the Second and Third

17   Actions, Koji made settlement demands as low as $5K and only as high as $59K.  According to

18   American Intellectual Property Law Association's "2019 Report of the Economic Survey" (which

19   reports on median costs of patent litigation as reported by the survey participants), the median

20   reported fees costs for defending the lowest risk category of patent infringement case (less than $1

21   million at risk) filed by a non-practicing entity through claim construction was $250,000, and the

22   median fees and costs for defending such a case through trial and appeal was $750,000.  *See*

23   https://ipwatchdog.com/wp-content/uploads/2021/08/AIPLA-Report-of-the-Economic-Survey-

24   Relevant-Excerpts.pdf (last visited March 28, 2025).  Reported decisions on fee awards in patent

25   cases (such as the *Realtek* case discussed previously) similarly demonstrate that Koji's $59K

26   demand was well below the cost of litigation and barely above the AIPLA survey's reported fees

27   and costs to defend a case through initial case management of $40,000.  *Id.*  Indeed, even Koji's

28   lead counsel Mr. Ramey stated that Koji's "initial offer was very low."  [Dkt. 19-1 at 152].

1    Notice of a frivolous position is relevant to the exceptional case analysis. *See Thermolife*

2    *Int'l LLC v. GNC Corp.*, 922 F.3d 1347, 1357 (Fed. Cir. 2019) ("[O]ne consideration that can and

3    often should be important to an exceptional-case determination is whether the party seeking fees

4    'provide[d] early, focused, and supported notice of its belief that it was being subjected to

5    exceptional litigation behavior.'").  Here, as detailed above, REA provided notice to Koji in the

6    Second Action that the manner of litigating that case raised Rule 11 issues, sanctions issues under

7    § 1927, as well as exceptional litigation behavior under § 285.  And as soon as the Third Action

8    was filed, Renesas gave similar notice to Koji, particularly with regard to the two-dismissal rule

9    issue.

10    More significantly, the Court takes special note of the apparent misrepresentations by Koji

11    in its brief opposing fees and in the declarations opposing this motion and in response to the Order

12    to Show Cause.  As detailed above, one of Koji's arguments why the two-dismissal rule should

13    not apply is because the claim in the Second Action somehow differed from the claim in the Third

14    Action, primarily because the claims chart attached to the complaint in the Second Action accused

15    a different product than in the claims chart attached to the complaint in the Third Action.  [Dkt. 24

16    at 9].  In briefing, Koji stated flatly that, for the Third Action, "Koji asked Ramey LLP to file a

17    new lawsuit based on the newly charted product.  On May 22, 2024, Koji filed the new lawsuit,

18    accusing the entirely different Renesas system." *Id.* at 8-9.  Similarly, Koji stated in its brief that

19    "[o]n reflection that a charted product was not included in the sales volume, Koji filed a new

20    lawsuit accusing a new product." *Id.* at 9; *see also id.* at 17 ("Ramey LLP determined that the

21    additional product charted had not been accounted for in the sales volume and advised its client

22    that the suit could be refiled as new complaint against was against a new product.  On May 22,

23    2024, Koji filed a new lawsuit against Renesas asserting the '703 patent against a new product that

24    was not previously sued").  Mr. Ramey's declaration in opposition to the instant motion makes

25    similar averments under oath.  Dkt. 24-2 at ¶¶ 12-14  And in response to the Order to Show Cause,

26    all three lawyers of record for Koji, as well as Koji's corporate representative Mr. Gorrichategui,

27    made similar statements under oath.  Dkt. 28-2 at ¶¶ 12-14; Dkt. 28-1 at ¶¶ 9-10; Dkt. 28-15 at ¶

28    21; Dkt. 28-17 at ¶¶ 7-12.

The troubling aspect of Koji's statements and the sworn declarations of its lawyers and corporate head is that they are demonstrably misleading and misrepresent the facts. As detailed above, during the pendency of the Second Action, on January 3, 2024, Mr. Ramey identified three REA products as newly accused infringing products *in the Second Action*, and he explicitly stated that Koji was adding these products to its infringement contentions. [Dkt. 19-1 at 140]. One of the three accused products added to the Second Action by Mr. Ramey on January 3, 2024 was the REA product model number PTX130W/PTX30W. And, as discussed above, on January 23, 2024, Mr. Ramey (along with Mr. Kubiak and Ms. Kalra as cc recipients) communicated with REA's counsel, stating "[h]ere is another product we are accusing," and attaching an infringement claims chart for the PTX130W/PTX30W. *Id.* at 328-38.

Koji's representation that the Third Action accused a "new" or "completely different" product of infringement is false. The claims chart attached to the complaint in this Third Action is the same claims chart Koji sent to REA in connection with the Second Action. *Compare* Dkt. 1-2 at 2-11, *with* Dkt. 19-1 at 329-38. Both claims charts accuse the PTX130W/PTX30W, include the same excerpts from a data sheet for the "PTX130W/PTX30W Hardware Integration," and state expressly that the PTX30W is included in the infringement accusation: "*Renesas Electronics's PTX130W/PTX30W (MUST BE BOUGHT TOGETHER IN ORDER TO ACHIEVE POWER TRANSFER) is a wireless power transfer system for wirelessly charging a powered device.*" Both claims charts also include the same explicit accusations and images of the REA PTX30W product, with the same block diagrams and images of the PTX30W board with the same annotations.

As discussed in detail in the Court's March 26, 2025 Order, the breadth of the infringement pleadings and requests for relief for patent infringement in both the Second Action complaint and the Third Action complaint are virtually identical. Both complaints are drafted so as to explicitly *not* limit Koji's infringement allegations in either case solely to the products identified in the claims charts attached to each complaint. From the literal face of the pleadings alone, Koji asserted literally the same cause of action in the Second and Third Actions based on alleged infringement of the '703 patent. Thus, even putting aside the fact that Mr. Ramey expressly included the PTX130W/PTX30W as an accused product during the Second Action, and then

United States District Court
Northern District of California

1    attached the same claims chart accusing that product for the complaint in this Third Action, the

2    face of the two complaints completely belies Koji's argument that the product in the Third Action

3    was "new."  The assertion that the Third Action is "new" or accused a "new product" is simply not

4    borne out by the express language of the two complaints when compared to each other.

5         Accordingly, on this record and in light of the applicable legal standards, the Court **FINDS**

6    that the relevant factors weigh in favor of finding that the entirety of the Third Action is an

7    exceptional case, and that the Second Action starting from January 3, 2024 and thereafter is an

8    exceptional case, such that fees under § 285 are warranted.

9    **II.    Sanctions Under § 1927**

10        REA ask the Court to levy the fees against Koji's counsel as a sanction, pursuant to § 1927

11   and the Court's inherent powers.  [Dkt. 18 at 24].  REA argues that such sanctions are warranted

12   under § 1927 because the attorneys' conduct—"pursuing baseless infringement claims and filing

13   the Third Action despite the two dismissal rule operating as an adjudication on the merits"—was

14   "reckless."  *Id.*

15        Koji and its lawyers oppose REA's request for sanctions, arguing that: (1) REA has made

16   "no showing" that its counsel acted in bad faith or with reckless disregard of their duties to the

17   Court; (2) this was "routine litigation" with "no evidence to the contrary;" and (3) REA's request

18   for sanctions "is designed to have a chilling effect on Ramey LLP and its ability to file lawsuits."

19   [Dkt. 24 at 21].

20        As discussed above, the Court **FINDS** that the litigation of the Third Action was conducted

21   with subjective bad faith and that the filing of the Third Action's complaint was frivolous.  Mr.

22   Ramey advised Mr. Gorrichategui that the Third Action could be filed based solely (as far as the

23   record demonstrates) on whether or not more damages (and a higher settlement demand) could be

24   sought for the allegedly "newly charted" product (the PTX130W/PTX30W as discussed above,

25   which was demonstrably not new).  The Ramey lawyers' filing of the Third Action, without

26   performing any adequate pre-filing investigation into the two-dismissal rule issue under Rule 41,

27   multiplied the proceedings vexatiously.  The filing of the Third Action was vexatious because, as

28   discussed above and in the March 26, 2025 Order, upon filing the Third Action, Mr. Ramey

immediately communicated with REA to demand a settlement amount more than ten times higher than what Koji had demanded just a few months earlier during the Second Action. As discussed above and in the March 26, 2025 Order, this conduct amounted to harassment.

During the Second Action, Koji's counsel accused two prior art products of infringement and told REA that these products "will be included in our infringement contentions" in that Second Action. [Dkt. 19-1 at 140]. This necessarily required REA and its counsel to investigate the accused products, determine that they were prior art, obtain the evidence to show their prior art dates, draft a response letter to Koji, and then follow up in further emails. *Id.* at 158-316. Mr. Ramey's addition of these products obviously multiplied the proceedings because his actions precipitated additional arguments and meet and confers between counsel about the merits of the case. Much of the activity in modern federal court litigation (particularly patent litigation) consists of correspondence, phone calls, and exchanges between counsel even without formal discovery or Patent Local Rule disclosures, and certainly long before additional pleadings or briefs are filed on the docket. And for all the reasons discussed above and in the Court's March 26, 2025 Order, Mr. Ramey's multiplication of the proceedings in the Second Action amounted to harassment and vexatious conduct. At a minimum, Mr. Ramey's actions were reckless or undertaken with willful blindness and were coupled with additional troubling behavior.

Again, as discussed above and in the March 26, 2025 Order, the actions of Koji's counsel here were undertaken with subjective bad faith. "[S]anctions pursuant to section 1927 must be supported by a finding of subjective bad faith." *Lake*, --- F.4th ----, 2025 WL 815191, at *5 (quoting *Blixseth*, 796 F.3d at 1007). "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent." *Id.* (quoting *Blixseth*, 796 F.3d at 1007) (alteration omitted). "A district court may find such bad faith 'when an attorney has acted recklessly if there is something more,' such as frivolousness, harassment, or an improper purpose." *Indiezone*, 720 Fed. Appx. At 337.

A "'finding that the attorney recklessly or intentionally misled the court' or 'a finding that the attorney[] recklessly raised a frivolous argument which resulted in the multiplication of the proceedings' amounts to the requisite level of bad faith. In addition, 'recklessly or intentionally

1    misrepresenting facts constitutes the requisite bad faith' to warrant sanctions, as does 'recklessly

2    making frivolous filings.'" *Id.* (citations omitted).

3         As discussed above, Mr. Ramey, Mr. Kubiak, and Ms. Kalra all misrepresented the facts

4    regarding whether or not REA's PTX130W/PTX30W was a "new" product in the Third Action as

5    compared to the Second Action.  Mr. Ramey expressly and directly accused the

6    PTX130W/PTX30W of infringing in the Second Action.  Mr. Ramey, along with Mr. Kubiak and

7    Ms. Kalra, communicated the PTX130W/PTX30W claims chart to REA during the Second

8    Action.  Mr. Ramey and Ms. Kalra signed the complaint in this Third Action, which attached the

9    same claims chart accusing the PTX130W/PTX30W sent to REA during the Second Action.

10        Despite this, Mr. Ramey submitted a declaration to this Court under oath averring that this

11   Third Action was "accusing an entirely different Renesas system."  [Dkt. 28-2 at ¶ 14].  Ms. Kalra

12   likewise stated under oath that this Third Action—which she refers to as the "new lawsuit in this

13   Court"—was "accusing an entirely different Renesas system through a complaint I approved."

14   [Dkt. 28-1 at ¶ 10].  Mr. Kubiak similarly declared under oath that the infringement accusation in

15   this Third Action was for "a new product," even though he was on the email during the Second

16   Action when the claims chart for this same product was sent to REA.  [Dkt. 28-15 at ¶ 19].

17        It is clear from the record in this case that Mr. Ramey was personally and directly involved

18   in the decision-making for the troubling actions taken here.  For example, Koji's corporate

19   representative, Mr. Gorrichategui, stated under oath that, after the voluntary dismissal of the

20   Second Action, "[o]n April 25, 2024, I told William Ramey that my team and I revisited the

21   Renesas Electronics claim chart and wanted to seek damages on a new product we charted.  I

22   authorized the filing of the Third suit if we could.  William Ramey informed me that we could file

23   the Third lawsuit."  [Dkt. 28-17 at ¶ 11].  First, Mr. Gorrichategui's sworn statement that the Third

24   Action involved "a new product we charted" is again demonstrably misleading—the PTX30W

25   was directly at issue in the Second Action.  This misrepresentation of facts is further support for

26   the finding of bad faith as against Koji itself for the award of fees discussed above.  Second, and

27   more importantly for § 1927, Mr. Gorrichategui's declaration demonstrates that Mr. Ramey

28   advised Koji expressly that they could file the Third Action simply to seek more damages without

United States District Court
Northern District of California

1    any evidence in the record as to any pre-filing diligence (or even mention) of the two-dismissal

2    rule under Rule 41(a)(1)(B).

3          Additionally, as discussed in the March 26, 2025 Order, Mr. Ramey misrepresented the

4    timing and reasons for Ramey firm lawyers' failure to file *pro hac vice* applications in this and

5    dozens of other cases, by trying to place the blame for that decision on an alleged directive from

6    Mr. Gorrichategui in 2022.  Mr. Ramey's declaration in that regard was demonstrably false in

7    light of the numerous failures to file *pro hac vice* applications for numerous other clients prior to

8    2022.

9          As discussed above, Koji's counsels' conduct during this litigation was exceptionally

10   unjustified and undertaken with bad faith (and at least recklessness or willful blindness): despite

11   knowing facts from the outset that should have put these lawyers on notice that pre-filing inquiry

12   into the two-dismissal rule was necessary before filing the Third Action, these lawyers did not

13   conduct an adequate pre-filing investigation (and according to the declarations, the only

14   investigation was whether the allegedly "new" product could be accused in the Third Action for an

15   increase in damages claimed).  Through this conduct (including misrepresenting facts to this

16   Court), Koji was able to drag out this litigation across three cases in two separate venues, forcing

17   REA to incur significant additional expenses in numerous ways, including briefing on the instant

18   motion and the time and effort expended to correspond with Koji's counsel regarding the merits of

19   the cases.

20         The Ninth Circuit has made clear that the filing of a complaint cannot be the basis for

21   sanctions under § 1927.  *See In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 435 (9th Cir. 1996)

22   ("Because [§ 1927] authorizes sanctions only for the 'multipli[cation of] proceedings,' it applies

23   only to unnecessary filings and tactics once a lawsuit has begun.  We have twice expressly held

24   that § 1927 cannot be applied to an initial pleading.").  Accordingly, the Court limits the sanctions

25   under § 1927 to exclude any attorneys' fees incurred by REA with regard to work undertaken to

26   respond to the complaint in the Third Action, but to include work subsequent to that time period

27   including the time spent on the instant motion and any work undertaken with regard to the Order

28   to Show Cause.  The conduct of Koji's lawyers here with regard to the Second Action all took

place after that action had commenced, and thus, is not impacted by the limitation of *Keegan*. Therefore, pursuant to § 1927, the Court **FINDS** that the three Ramey law firm lawyers—Mr. Ramey, Mr. Kubiak, and Ms. Kalra—shall be jointly and severally liable along with Koji for the fees awarded to REA with regard to the time period of the Second Action discussed above (January 3, 2024 onward), and with regard to fees incurred by REA separate from and after the work undertaken to respond to the complaint in the Third Action, up to and including the present.

### III.    Sanctions Under the Court's Inherent Powers

REA argues that imposing the fee award against Koji's lawyers as a sanction is also appropriate under the Court's inherent authority, because "the filing and re-filing of these cases is conduct tantamount to bad faith." [Dkt. 18 at 24-26].

Koji and its lawyers oppose REA's request for sanctions as against the lawyers on the same grounds argued to oppose sanctions under § 1927: (1) REA has made "no showing" that its counsel acted in bad faith or with reckless disregard of their duties to the Court; (2) this was "routine litigation" with "no evidence to the contrary;" and (3) REA's request for sanctions "is designed to have a chilling effect on Ramey LLP and its ability to file lawsuits." [Dkt. 24 at 21].

For all the reasons discussed above with regard to § 1927, with respect to the Court's inherent power to issue sanctions, the Court **FINDS** find that Koji's counsel's actions were "tantamount to bad faith." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1131 (9th Cir. 2002). As discussed above, the filing and prosecution of the Third Action (without any adequate pre-filing investigation into the Rule 41 issue) was subjective bad faith, frivolous, and undertaken vexatiously, for improper purpose, and to harass REA. And, as discussed above, the accusation of prior art products in the Second Action was similarly done with subjective bad faith, frivolous, and undertaken vexatiously, for improper purpose, and to harass REA. Further, the three lawyers here misrepresented facts to this Court, as detailed above.

"The filing of a complaint may be sanctioned pursuant to Rule 11 or a court's inherent power, but it may not be sanctioned pursuant to § 1927." *Keegan*, 78 F.3d at 435. Accordingly, the Court will not limit the sanctions under its inherent powers and will not exclude any attorneys' fees incurred by Renesas with regard to work undertaken to respond to the complaint in the Third

United States District Court
Northern District of California

1    Action.  Therefore, in the full exercise of the Court's inherent authority, the Court **FINDS** that the

2    three Ramey law firm lawyers—Mr. Ramey, Mr. Kubiak, and Ms. Kalra—shall be jointly and

3    severally liable along with Koji for the fees awarded to REA with regard to the time period of the

4    Second Action discussed above (January 3, 2024 onward), and with regard to fees incurred by

5    Renesas with regard to the entirety of the Third Action, up to and including the present.

6       **IV.**    **Amount of Fees**

7         Having determined that attorney fees are warranted under § 285, the Court must determine

8    the reasonable amount of the award.  *See Mathis v. Spears*, 857 F.2d 749, 754 (Fed. Cir. 1988)

9    ("Section 285's requirement that the fees awarded be 'reasonable' is a safeguard against excessive

10   reimbursement.").

11        The customary method of determining attorney fees is known as the lodestar method.  The

12   Court must first calculate a "lodestar" figure by "multiplying the number of hours reasonably

13   expended on the litigation times a reasonable hourly rate."  *Vargas v. Howell*, 949 F.3d 1188,

14   1194 (9th Cir. 2020) (citing *Blum v. Stenson*, 465 U.S. 886, 888 (1984)).  The lodestar figure is

15   presumptively reasonable.  *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).  While this

16   lodestar amount is presumed to represent an appropriate fee, under certain circumstances, a court

17   may then adjust the award upward or downward to take into account special factors.  "Only in rare

18   instances should the lodestar figure be adjusted on the basis of other considerations."  *United*

19   *States v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1108 (9th Cir. 2015) (quoting *Harris v.*

20   *Marhoefer*, 24 F.3d 16, 18 (9th Cir. 1994)).

21        Here, REA has submitted supporting materials for its request for fees as of June 26, 2024,

22   totaling $37,503.50.  [Dkt. 18 at 26].  However, as discussed herein, the fee award includes only a

23   portion of the time spent on the Second Action and, for the Third Action, potentially extends

24   beyond June 2024.  The Supreme Court has cautioned for "the need in particular circumstances to

25   advance considerations of compensation and deterrence."  *Octane*, 572 U.S. at 554 n.6 (quoting

26   *Fogerty*, 510 U.S. at 534 n.19).  Here, compensation and deterrence considerations are adequately

27   served by requiring Koji to pay for the portions of the Second Action attributable to the accusation

28   of prior art products.  It is axiomatic that requiring a plaintiff to pay a defendant's fees for portions

United States District Court
Northern District of California

33

of the case that were not exceptional is beyond the purposes of § 285, would be punitive instead of compensatory, and could have some impact in unintentionally deterring legitimate claims.

Further, as discussed above, the calculation of fees to be awarded jointly and severally as against both Koji and the three lawyers under § 1927 differs from the fees to be awarded jointly and severally under the Court's inherent authority. Accordingly, updated and edited submissions from REA are required for the Court to be able to meaningfully determine (a) the total amount of fees to be awarded under § 285 as against Koji and awarded jointly and severally as against both Koji and the three Ramey lawyers under the Court's inherent powers, and (b) the subset of fees to be awarded jointly and severally as against Koji and the three Ramey lawyers under § 1927.

A final word on sanction: again, as discussed in the March 26, 2025 Order, the conduct here is truly extraordinary. Contrary to Koji's arguments that this litigation was "routine," the facts detailed here demonstrate a pattern and practice of egregious behavior by the lawyers involved. In particular, the manner of litigation here, including the misrepresentations by counsel, is unprecedented in the decades of the undersigned's experience in patent law and litigation both on and off the bench. The robust, constitutionally derived patent system depends on attorneys adhering at a minimum to the rules of law and legal guidelines for the normative prosecution of meritorious claims and pursuit of appropriate defenses. This Order is specific to the conduct detailed herein, which is decidedly not a mine-run case.

## CONCLUSION

Accordingly, **IT IS ORDERED THAT:**

1. The motion for fees and sanctions [Dkt. 18] is **GRANTED**.

2. REA **SHALL** submit a complete justification for the fees it seeks, by no later than **April 14, 2025**, including justification for the rates charged and the time spent, organized to facilitate the Court's review and adjustment of the requested fees. REA's submission shall be organized in a way which readily enables the Court to determine (a) the total amount of fees to be awarded under § 285 as against Koji and to be awarded jointly and severally as against both Koji and the three Ramey lawyers under the Court's inherent authority, and (b) the subset of fees to be awarded jointly and severally as against Koji and the three

United States District Court
Northern District of California

1    Ramey lawyers under § 1927.

2    3.    Koji **SHALL** file its objections, if any, to REA's submission, by no later than **April 28,**

3    **2025**.  REA may file a response to Koji's objections, if any, by no later than **May 5, 2025**.

4    4.    Attorneys William P. Ramey, III, Jeffrey E. Kubiak, and Susan S.Q. Kalra are each

5    **SANCTIONED** for their conduct detailed herein under both § 1927 and the Court's

6    inherent authority.

7    5.    The Court finds that monetary sanctions alone are not sufficient to deter the conduct at

8    issue here and finds that additional monetary sanctions would not be appropriate

9    compensation and would not serve the goal of deterrence.  Accordingly, in the full exercise

10    of the Court's inherent authority, the Court further **ORDERS** Mr. Ramey, Mr. Kubiak, and

11    Ms. Kalra to each complete at least two hours of in-person, California bar-approved CLE

12    classes on Federal Court Litigation (one hour of which shall include a Legal Ethics

13    component or credit), and at least an additional two hours of in-person, California bar-

14    approved CLE on Patent Litigation (one hour of which shall include a Legal Ethics

15    component or credit), by no later than **March 31, 2026**.  Mr. Ramey, Mr. Kubiak, and Ms.

16    Kalra **SHALL** each file with the Court a certification, under oath, that each has completed

17    such CLE by the deadline (attaching any certificate of completion from the CLE

18    provider(s)), where such certification shall be filed within **ten (10) business days** of the

19    completion of each such CLE course.

20    6.    In the exercise of the Court's inherent authority, by no later than **May 1, 2025**, Mr. Ramey,

21    Mr. Kubiak, and Ms. Kalra **SHALL** each self-report the sanctions imposed on them herein

22    and provide a copy of this Order to the relevant disciplinary committees or offices of the

23    State Bar of California, the State Bar of Texas, the bar of the United States District Court

24    for the District of Colorado, the United States Patent and Trademark Office, and any other

25    state or federal bars of which they are members.  Within **ten (10) business days** of

26    completing the self-reporting requirements, these attorneys **SHALL** file with this Court a

27    certification under oath certifying they have self-reported as required.

28    7.    In the exercise of the Court's inherent authority, by no later than **May 1, 2025** each of

United States District Court
Northern District of California

35

United States District Court
Northern District of California

these attorneys **SHALL** self-report the sanctions imposed on them herein and provide a copy of this Order to the Northern District of California's Standing Committee of Professional Conduct, to the judges presiding over every other case currently pending in the Norther District of California in which any of these attorneys' names appears on any filings or pleadings (including all cases in which their names appear as "*pro hac vice* anticipated" or similar language), and as an attachment to any motion for *pro hac vice* admission filed by or on behalf of any of these lawyers in any action filed in this Court **during the next five years**.  Within **ten (10) business days** of completing these self-reporting requirements, these attorneys **SHALL** file with this Court a certification under oath certifying they have self-reported as required.

8. As noted, the record indicates that the conduct at issue here resulted from practices or policies of the Ramey law firm with regard to failure to conduct reasonable pre-filing inquiry before filing a third complaint after two prior voluntary dismissals of the same cause of action.  Therefore, the Court further **ORDERS** Mr. Ramey, Mr. Kubiak, and Ms. Kalra to provide all attorneys of the Ramey law firm copies of this Order as well as copies of all educational materials received in connected with the CLE courses ordered above.  The required distribution of this Order shall be completed by no later than **April 7, 2025**.  The required distribution of CLE educational materials shall be completed within **ten (10) business days** of the completion of each of the CLE courses ordered herein.  The certifications ordered above **SHALL** include certifications by Mr. Ramey and Mr. Kubiak of the distribution of this Order and the CLE educational materials to all Ramey firm lawyers.  The Court **SHALL** retain jurisdiction over these attorneys, pending completion of the payments, CLEs, and certifications required by this Order, and to ensure proper compliance with this Order and the Court's directives.

**IT IS SO ORDERED.**

Dated:  March 31, 2025

_____
PETER H. KANG
United States Magistrate Judge

36