Susan Kalra (SBN 167940)
4140 Innovator Drive, Apt. 4201
Sacramento, CA 95834
(650) 678-4644
Email: sqklaw@gmail.com

***Attorneys for***
***Koji IP, LLC, and***
***Submitted on behalf of William P. Ramey, III,***
***Susan Kalra and Jeffrey E. Kubiak***

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| KOJI IP, LLC,<br><br>            Plaintiff,<br><br>   v.<br><br>RENESAS ELECTRONICS AMERICA, INC.,<br><br>            Defendant. | Case No.: 3:24-cv-03089-PHK<br><br>**SANCTIONED PARTIES' EMERGENCY MOTION TO SET BOND AND STAY ENFORCEMENT OF JUDGMENT PENDING APPEAL** |

# TABLE OF CONTENTS

I.     INTRODUCTION AND RELEVANT FACTS ........................................................... 1

II.    APPLICABLE LEGAL STANDARDS ................................................................... 4

III.   ARGUMENT ............................................................................................. 4

  A.  The Sanctioned Parties are Likely to Prevail on Appeal .......................................... 5

       1.    Monetary Sanctions Under Rule 11 Are Not Allowed Because the OSC
             Issued After the Case Was Dismissed ........................................................... 5

       2.    There Can be No Rule 11 Violation When the Filing is Allowed Under the
             Law.................................................................................................... 6

       3.    Inherent Power Sanctions are Improper as there is No Bad Faith ............................... 8

       4.    The Sanctioned Parties Were Not Practicing Law in California ................................. 9

       5.    If a Sanction is Deemed Warranted, a Less Severe Sanction is
             Appropriate......................................................................................... 12

  B.  The Sanctioned Parties will be Irreparably Harmed.................................................. 13

  C.  The Requested Stay Will Not Injure Any Party ...................................................... 14

  D.  The Public Interest Will Not Be Adversely Affected ............................................... 14

  E.  The Four Factors Weigh Heavily in Favor of Staying Execution .................................... 14

IV.    CONCLUSION ......................................................................................... 15

1

2

## TABLE OF AUTHORITIES

3

**Cases**

4

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991)...............................5

5

*Christian v. Mattel, Inc.*, 286 F.3d 1118 (9th Cir. 2002) ........................................................8

6

*Com. Space Mgmt. Co. v. Boeing Co.,* 193 F.3d 1074 (9th Cir. 1999)................................................6, 8

7

*Gibson v. Credit Suisse AG*, No. 1:10-CV-00001-JLQ, 2015 WL 105999 (D. Idaho Jan. 7, 2015).13, 14

8

*Hilton v. Braunskill,* 481 U.S. 770 (1987).................................................................. 4, 13, 14

9

*In re Hall, Bayou Associates Ltd.*, 939 F.2d 802 (9th Cir. 1991) ........................................6

10

*In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431 (9th Cir. 1996) ........................................7

11

*Lair,* 697 F.3d at 1204  (9th Cir. 2012)...........................................................................4

12

*Lake at Las Vegas Invs. Grp., Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724 (9th Cir. 1991) ................6

13

*Leiva–Perez v. Holder,* 640 F.3d 962 (9thCir.2011) ........................................................4

14

*Milkcrate Athletics, Inc.*, 619 F. Supp. 3d 1025  (2022)  ........................................................8

15

*Nken v. Holder,* 556 U.S. 418 (2009)................................................................ 4, 13, 14

16

*Operating Eng'rs Pension Tr. v. A-C Co.*, 859 F.2d 1336 (9th Cir. 1988) ................................8

17

*Rose Ct., LLC v. Select Portfolio Servicing, Inc.*, 119 F.4th 679 (9th Cir. 2024) ...............................7, 8

18

*Spanos v. Skouras Theatres Corp.*, 364 F.2d 161 (2d Cir. 1966)....................................... 11, 12

19

*Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815 (9th Cir. 2009).................................. 10, 11

20

**Rules & Regulations**

21

Fed. R. Civ. P. 11.................................................................................................5, 8, 12

22

23

24

25

26

27

28

Koji IP, LLC ("Koji"), William P. Ramey, III ("Mr. Ramey"), Susan S.Q. Kalra ("Ms. Kalra") and Jeffrey E. Kubiak ("Mr. Kubiak") (collectively, "Sanctioned Parties") respectfully move this Court for an Order staying enforcement of (1) the Order Regarding OSC and Imposing Sanctions on Ramey Firm Lawyers ("Magistrate's Order")(Doc. No. 42)[1] and staying the reporting requirements in (2) the Order Granting Motion for Attorneys' Fees and Sanctions ("Magistrate's Second Order")(Doc. No. 43),[2] pending appeal.  The Sanctioned Parties are not currently seeking a stay of any future monetary award from the Order of Doc. No. 43 as no such award has been set by the Court and cannot be until the briefing is complete on the matter.

The Sanctioned Parties respectfully request that the Court order expedite briefing on this and require Defendant's response, if any, by April 11, 2025, as the Magistrate's Order[3] and Magistrate's Second Order[4] require both the payment of monetary sanctions and self-reporting before the Magistrate's Second Order concludes briefing on May 5, 2025.[5]

## I.    INTRODUCTION AND RELEVANT FACTS

Plaintiff Koji IP, LLC ("Koji") sued Defendant Renesas Electronics America, Inc., ("Renesas") alleging that Renesas infringes U.S. Pat. Nos. 10,790,703 ("the '703 Patent"), entitled "Smart Wireless Power Transfer Between Devices" ("Patent-in-Suit") in the District of Colorado on June 30, 2023.[6] The claim chart used with the original complaint was prepared through the collaboration of Simon Sunatori, William Ramey, and Carlos Gorrichategui.[7]

Renesas's in-house counsel and director of intellectual property, Mr. Masaki Yabe, directly

---

[1] Doc. No. 42.
[2] Doc. No. 43 (reporting requirements are Doc. No. 34 at 35-36 (at items 5-8)).
[3] Doc. No. 42 at 37-44.
[4] Doc. No. 43 at 34-36.
[5] Doc. No. 43 at 35:2-3.
[6] Ramey Decl. at ¶4.
[7] Ramey Decl. at ¶24; Declaration of Carlos Gorrichategui, Ph.D ("Gorrichategui Decl.") at ¶¶2-4, 14.

contacted Mr. Ramey On July 3, 2023 about the lawsuit filed a few days earlier. Mr. Yabe offered to discuss a royalty rate for the alleged infringement and requested an extension, which was freely offered. On July 11, 2023, Mr. Yabe agreed to waive service of the summons.[8] On July 20, 2023, Jason Crotty appeared as counsel for Renesas and opened a dialogue with Ramey LLP. Mr. Crotty asked that the suit be dismissed because there was low sales volume, Renesas disagreed with infringement, and stated venue was improperly based on a distributor.[9] Koji immediately began communicating with Defendant about the case, including both infringement and Defendant's contention that venue was improper.[10] Koji dismissed its lawsuit on September 6, 2023 without burdening the court or Renesas with a venue fight.[11]

On November 8, 2023, Koji refiled the lawsuit in the Northern District of California.[12] The claim charts used were those previously prepared[13] and where Renesas' non-infringement position had been considered.[14] Koji immediately began discussions with counsel for Renesas about additional accused products,[15] Renesas maintained that the sales volume of the accused product was very low.[16] Koji and its counsel looked for additional products from Defendant.[17] However, to not burden Renesas, on January 30, 2024, Koji agreed to dismiss without prejudice its lawsuit, to which Renesas agreed.[18] The lawsuit was dismissed due to the low sales volume. Defendant had not filed any motions in the case

---

[8] Ex. A, July 3, 2023 e-mail chain (e-mail at the end of the chain), to the Ramey Decl.; Ramey Decl at ¶5.

[9] Ex. B, July 20, 2023 e-mail chain (July 18, 2023 e-mail from Crotty to Kubiak), to the Ramey Decl.; Ramey Decl. at ¶6.

[10] Ex. B, July 20, 2023 e-mail chain; Ramey Decl. at ¶7.

[11] Ramey Decl. at ¶10.

[12] Ex. G, Doc. No. 1 at 3 from Cause No. 5:23-cv-5750, to the Ramey Decl.

[13] Ramey Decl. at ¶¶11, 14, 27, 28; *Compare* Doc. No. 1-2 in 5:23-cv-05752 to Doc. No. 1-2 at 1:23-cv-01674.

[14] Ex. E, claim chart rebuttal attached to August 1, 2023 e-mail chain.

[15] Ex. H, January 23, 2024 e-mail chain, to the Ramey Decl.; Ramey Decl. at ¶12.

[16] Ramey Decl. at ¶12.

[17] Ramey Decl. at ¶11, 14; Gorrichategui Decl. at ¶¶9-11, 14.

[18] Ex. J, January 30, 2024 e-mail chain, to the Ramey Decl.

or otherwise appeared or responded.[19]

Shortly thereafter, William Ramey and his client's representative, Carlos Gorrichategui, Ph.D, discussed whether the sales of a newly charted product that was located had been included in the prior numbers and came to the conclusion it was not based on what had been provided to Renesas in the prior lawsuit. Accordingly, Koji asked Ramey LLP to file a new lawsuit based on the newly charted product.[20] On May 22, 2024, Koji filed the new lawsuit, accusing the entirely different Renesas system.[21] Renesas's lawyer responded by letter on May 31, 2024, that Koji's lawsuit was foreclosed as it had been dismissed twice.[22] The letter asked that the lawsuit be promptly dismissed. After further discussions with Renesas's counsel, the lawsuit was dismissed with prejudice on June 12, 2024.[23] Renesas had not entered an appearance or filed any documents in the case. On June 26, 2024, Renesas filed its Motion for Attorneys' Fees.[24] The Court set a hearing on August 22, 2024, on Renesas's Motion for Attorneys' Fees.[25] On August 29, 2024, the Court issued an Order to Show Cause to Mr. Ramey, Mr. Kubiak and Ms. Kalra ("OSC").[26] On September 12, 2024, Mr. Ramey, Mr. Kubiak and Ms. Kalra responded to the Court's OSC.[27] On September 19, 2024, the Court held a hearing on the OSC.[28] On March 26, 2025, the Court issued the Order Regarding OSC and Imposing Sanctions on Ramey Firm Lawyers ("Magistrate's Order")(Doc. No. 42).[29] On March 31, 2025, the Court issued the Order Granting Motion for Attorneys' Fees and Sanctions ("Magistrate's Second Order")(Doc. No. 43).[30]

---

[19] Ramey Decl. at ¶13.
[20] Ramey Decl. at ¶14; Gorrichategui Decl. at ¶11.
[21] Ex. K, Doc. No. 1-2, to the Ramey Decl.
[22] Ex. L, Letter to Ramey from Crotty at 1, to the Ramey Decl.; Ramey Decl. at ¶15.
[23] Doc. No. 12.
[24] Doc. No. 18.
[25] Doc. No. 22.
[26] Doc. No. 27.
[27] Doc. No. 28.
[28] Doc. Nol. 30.
[29] Doc. No. 42.
[30] Doc. No. 43.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## II.    APPLICABLE LEGAL STANDARDS

In considering a motion to stay pending appeal, the factors regulating the issuance of a stay are: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."[31]  The first two factors are the "most critical."[32]

For the first factor, the Ninth Circuit Court of Appeals has characterized a "strong showing" to include "reasonable probability," "fair prospect," "substantial case on the merits," and "serious legal questions ... raised."[33]  The descriptions are largely interchangeable and require the movant to show that "at a minimum ... that there is a substantial case for relief on the merits."[34]  In regards to the second factor, the movant must demonstrate that there is a probability that he or she will suffer an irreparable injury if the stay is not granted.[35] Regardless of the possible irreparable harm, a stay is not a matter of right rather, a stay is "an exercise of judicial discretion" and the "propriety of its issue is dependent upon the circumstances of the particular case."[36]  "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion."[37]

## III.    ARGUMENT

A stay of enforcement of the monetary sanction issued in the Magistrate's Order[38] and staying the reporting/CLE requirements in the Magistrate's Order[39] and staying the reporting/CLE requirements

---

[31] *Hilton v. Braunskill,* 481 U.S. 770, 776 (1987); *see also Nken v. Holder,* 556 U.S. 418, 433 (2009).
[32] *Nken,* 556 U.S. at 434.
[33] *Leiva–Perez v. Holder,* 640 F.3d 962, 967–68 (9thCir.2011).
[34] *Lair,* 697 F.3d at 1204; *Leiva–Perez,* 640 F.3d at 967–68.
[35] *Lair,* 697 F.3d at 1215; *Leiva–Perez,* 640 F.3d at 969.
[36] *Nken,* 556 U.S. at 433–34 (2009); *Lair,* 697 F.3d at 1203.
[37] *Id.*
[38] Doc. No. 42 at 38:24-43:2 (items 5-8).
[39] Doc. No. 42 at 37:22-44:7 (items 1-4 and 9-11).

in the Magistrate's Second Order[40] is warranted because of irreparable harm the Sanctioned Parties will suffer if required during appeal to self-report the sanctions and the Sanctioned Parties' likelihood of success reversing the Rule 11 monetary sanction.

### A. The Sanctioned Parties are Likely to Prevail on Appeal

#### 1. Monetary Sanctions Under Rule 11 Are Not Allowed Because the OSC Issued After the Case Was Dismissed

The Sanctioned Parties are likely to prevail on their appeal of the monetary sanctions issued by the Magistrate's Order under Rule 11 because a monetary sanction is specifically excluded by Rule 11:

> **(c) Sanctions.**
> **…**
> **(5)** *Limitations on Monetary Sanctions.* The court *must not impose a monetary sanction*:
> **(A)** …; or
> **(B)** on its own, unless it issued the show-cause order under Rule 11(c)(3) before voluntary dismissal or settlement of the claims made by or against the party that is, or whose attorneys are, to be sanctioned.[41]

In the present case, Koji dismissed the lawsuit on June 12, 2024.[42] The Order to Show Cause was not issued until August 27, 2024.[43] Therefore, the literal language of Rule 11 does not allow the Court to impose a monetary sanction.[44] Thus, the Magistrate's Order is in error for issuing a monetary sanction under Rule 11. Likewise, the Court cannot resort to an inherent power sanction to do what it is prohibited from doing under the rules.[45] Therefore, the Sanctioned Parties are likely to prevail on their appeal of the Rule 11 monetary sanction issued by the Court in Doc. No. 42.

#### 2. There Can be No Rule 11 Violation When the Filing is Allowed Under the Law

---

[40] Doc. No. 43 at 35:4-36:24 (items 4-8).
[41] Fed. R. Civ. P. 11 (emphasis added).
[42] Doc. No. 12.
[43] Doc. No. 27.
[44] Fed. R. Civ. P. 11(c)(5)(B).
[45] *See, e.g., Chambers v. NASCO, Inc.*, 501 U.S. 32, 47, 111 S. Ct. 2123, 2134, 115 L. Ed. 2d 27 (1991).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The Sanctioned Parties are likely to prevail on reversing the Magistrate's Order's finding a violation of Rule 11.[46] The Magistrate's Order misapplies the law around a Rule 41(a) dismissal. The case of *Com. Space Mgmt. Co. v. Boeing Co.*[47] makes clear that the determination of whether a third cause of action is allowable can only be made once a third cause of action is filed.[48] The Magistrate's Order incorrectly begins with the premise that no third cause of action was permissible to file at all. The Colorado action was dismissed, after consulting with Renesas Electronics America, Inc. ("Renesas"), for venue and was then re-filed with a different venue assertion in the Northern District of California as *Koji IP, LLC v. Renesas Electronics America, Inc.* ("Koji II"), No. 3:23-cv-05752-LJC (N.D. Cal. Nov. 8, 2023), ECF No. 1. In filing Koji II, Koji changed its claim related to venue.[49] However, based on low sales volumes the case was dismissed.[50]    After further diligence on a new product that was not accused in Koji II, Koji filed a new Complaint, *Koji IP, LLC v. Renesas Electronics America, Inc.* ("Koji III"), No. 5:24-cv-03089 (N.D. Cal. May 22, 2024), ECF No. 1.[51]

The Ninth Circuit has recognized cases where exceptions have been found to the two-dismissal rule.[52]    In Koji I, the defendant argued the case lacked venue.   Rather than wasting resources fighting a venue challenge, the case was dismissed.  At the time of dismissal, Defendant had already filed a motion to dismiss based on venue that attached evidence that it did not have a regular and established place of business in Colorado.[53]    Based on that evidence, the case was likely going to be dismissed even though Defendant advertised it had an office in Denver.   The same patent infringement claims from the Colorado case were refiled in this District as Koji II.   Due to low sales, that case was soon

---

[46] Doc. No. 42 at 14-23.
[47] 193 F.3d 1074, 1080 (9th Cir. 1999).
[48] *Com. Space Mgmt. Co. v. Boeing Co.*, 193 F.3d at 1080.
[49] Doc. No. 24-2 at ¶¶14-15; In re Hall, Bayou Associates Ltd., 939 F.2d 802, 806 (9th Cir. 1991)
[50] Doc. No. 28-2 at pg 2cc from Koji II
[51] Doc. No. 24-2 at ¶¶14-15.
[52] *Lake at Las Vegas Invs. Grp., Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 727 (9th Cir. 1991).
[53] Doc. No. 24-8; Declaration of Carlos Gorrichategui ("Gorrichategui Decl.") at ¶5.

dismissed.[54]  After further review, Koji III was filed on a different Renesas product.[55]  Koji III is not the same case as Koji II, the prior California case, as Koji II accused a different product, thus a different claim. Also, Koji II differed from the Colorado case, Koji I, as Koji II was in a different venue from Koji I.  The Ninth Circuit uses a "transactional approach for purposes of the two-dismissal rule and holds that a subsequent claim is the same as a previously dismissed claim if it arises from the same set of facts as the first action and the claim could have been or was raised in the preceding action."[56] The accused product in the present case is different than the accused product in the prior California case, Koji II, the facts and thus the claim, differs and therefore the two dismissal rule would not apply, i.e. a negative ruling, such as a finding of noninfringement in the first California action would not be res judicata to the second California action as the second action accused a different product. It was error for the Magistrate's Order to find bad faith based on the filing of          Koji III.[57]  There can be no abuse of the judicial system if the filing is warranted as it is here.[58]  Further, the Magistrate's Order erred by analyzing the subjective intent of the Sanctioned Parties as to whether they had case law to support what they did "[b]ecause the frivolousness prong of Rule 11 is measured by *objective* reasonableness, [citation omitted], whether [a party] actually relied on" the cases which show its claims aren't frivolous is irrelevant. [citation omitted] The same rule must apply to the factual basis for a claim.[59] The commentary on Rule 11 emphasizes that the Rule "is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories."[60]  Therefore, it is likely the sanctioned Parties will reverse the Rule 11 sanction.

---

[54] Doc. No. 24-2 at ¶¶12-15; Gorrichategui Decl. at ¶¶6-7.
[55] Doc. No. 24-2 at ¶¶5-15.
[56] *Rose Ct., LLC v. Select Portfolio Servicing, Inc.*, 119 F.4th 679, 686 (9th Cir. 2024).
[57] Doc. No. 42 at 24-25.
[58] *See, e.g., Rose Ct., LLC*, 119 F.4th at 686.
[59] *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 434 (9th Cir. 1996)
[60] *Operating Eng'rs Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988) *citing* Fed.R.Civ.P. 11, Notes of Advisory Committee on Rules.

### 3.   Inherent Power Sanctions are Improper as there is No Bad Faith

To impose sanctions under its inherent authority or potentially award attorneys' fees under Rule 41(d), a court must "make an explicit finding that counsel's conduct constituted or was tantamount to bad faith."[61]   The Magistrate's Order erred when it found bad faith of the Sanctioned Parties filing the Third Action, Koji III,[62] as caselaw specifically allows the filing of the Third Action[63] and without sanction provided a persuasive explanation is provided as to why it was filed.[64]   Further, the Ninth Circuit recognizes exceptions to the two dismissal rule that should have precluded the imposition of sanctions as the Sanctioned Parties had a reasonable argument as to why they could file the third lawsuit.[65]   Mr. Ramey believed the dismissal based on venue of the first case was a persuasive explanation for refiling the case.[66]   Additionally, an entirely new product was accused of infringement and therefore the facts and claims are not the same.[67] The law is clear that filing even the same lawsuit three times is not automatically barred.[68]   It was error for the Magistrate's Order to find that bad faith was shown through not investigating Rule 41 and otherwise filing Koji III as there was a good faith basis.[69]   Therefore, it is likely the inherent power sanctions will be reversed.

### 4.   The Sanctioned Parties Were Not Practicing Law in California

The Sanctioned Parties are likely to prevail that they were not practicing law in California and therefore Ms. Kalra was not aiding and abetting and thus there is no violation of the Court's authority under the Civil Local Rules.  Since beginning to work with the firm,  Ms. Kalra was the lead attorney

---

[61] *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1131 (9th Cir. 2002).
[62] Doc. No. 42 at 24.
[63] *See, e.g., Rose Ct., LLC*, 119 F.4th at 686.
[64] *Milkcrate Athletics, Inc.*, 619 F. Supp. 3d at 1025.
[65] *Com. Space Mgmt. Co. v. Boeing Co.*, 193 F.3d at 1080.
[66] Ex. A, Hearing Transcript at 42:15-43:21; Doc. No. 24-2 at ¶¶14-18.
[67] Doc. No. 24-2 at ¶¶14-15.
[68] *See, e.g., Rose Ct., LLC*, 119 F.4th at 686; *Milkcrate Athletics, Inc.*, 619 F. Supp. 3d at 1025; Doc. No. 24-2 at ¶¶5-15.
[69] Ex. A at 45:6-17; Doc. No. 28-2 at ¶¶17, 27-28.

in every case filed in California.[70]  Therefore, a licensed California attorney was always lead on the case and responsible for all filings.  As a preliminary matter, the Sanctioned Parties note that each firmly believed that what they were doing was well within the letter of the law, but more importantly, the Sanctioned Parties instantly modified their behavior and discontinued the practices that the Court said were improper.[71]  As such, the conduct is not likely to be repeated and the conduct was not thought to violate any ethical rule or rule of practice at the time it occurred.[72]  As the actions were not intentional violations, if a sanction is determined appropriate, a written reprimand is more appropriate rather than the Magistrate's Order issuing sanctions that quite likely will be career altering.  In fact, Ms. Kalra has resigned from her new law firm over the Magistrate's Order.[73]  As well, Mr. Ramey has been censored by Gene Quinn of IP Watchdog at least in part because of the Magistrate's Order.[74]  IP Watchdog is removing previously published articles from Mr. Ramey and scrubbing his profile from the website.[75]  Damage has already been done by the Magistrate's Order.

Caselaw provides that the State Supreme Court in California views that for conduct to be the practice of law in California it must entail sufficient contact with a *California* client to render the nature of the legal service a clear legal representation and the nature of the unlicensed lawyer's activities in the state must be examined.[76]  Mere fortuitous or attenuated contacts will not sustain a finding that the unlicensed lawyer practiced law in California. The primary inquiry turns on whether the unlicensed lawyer engaged in sufficient activities or created a continuing relationship with a *California* client that included legal duties and obligations.[77]  The Ninth Circuit went on to distinguish the facts from the

---

[70] Ex. A at 10:13-22; 31:16-34:9.
[71] Doc. No. 28-1 at ¶¶14, 20-23; Doc. No. 28-2 at ¶¶19-23; and, Doc. No. 28-15 at ¶¶10-14.
[72] Doc. No. 28-1 at ¶¶ 20-23; Doc. No. 28-2 at ¶¶20-23; and, Doc. No. 28-15 at ¶¶11-14.
[73] Declaration of Susan S.Q. Kalra ("Kalra Decl.") at ¶3.
[74] Ex. E, Ramey Decl. at ¶10.
[75] Putting aside likely FTC violation, the journalistic integrity of IP Watchdog is highly questionable.
[76] *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 821–23 (9th Cir. 2009).
[77] *Winterrowd*, 556 F.3d at 821–23.

California Supreme Court case finding that the legal services of a lawyer wholly performed in a state other than California were not the unauthorized practice of law as the legal services had more to do with an issue of federal ERISA law than state law.[78]  Likewise, the Court in *Winterrowd* further found that an out of state lawyer was not practicing law in California because the arrangement the out of state lawyer had with the in state lawyer was more like a partnership, which is exactly the situation of the present case, Ms. Kalra was the California lawyer on the case and responsible as lead attorney.[79]  For all practical purposes, the arrangement between Mr. Ramey, Mr. Kubiak and Ms. Kalra is analogous to a partnership for the prosecution of the patent infringement claim against the Defendant which is similar to the type of partnership found in *Winterrowd*.[80]  The Ninth Circuit found it very relevant if one of the lawyers performing the work is licensed in California.[81]

The Ninth Circuit went further and held that state law was not determinative of whether a lawyer practicing in federal court is authorized to practice and recognized that an out of state lawyer could always seek admission by *pro hac vice* admission.[82]  The Magistrate's Order did find that each of Mr. Ramey and Mr. Kubiak were regularly practicing law in California but without any specificity as to what acts constituted the practice of law in California and thus in error.[83]  That Mr. Ramey and Mr. Kubiak appeared on pleadings with the modifier "*pro hac vice anticipated*" or the like is precisely the type of attenuated contact that the California Supreme Court said would not support that either was practicing law in California.[84]  In fact, the modifier makes it very clear that both are not licensed.

---

[78] *Winterrowd*, 556 F.3d at 821–22.
[79] *Id*.
[80] *See, e.g., Id.* at 821–23.
[81] *See, e.g., Id.* at 822.
[82] *See, e.g., Id.* at 823.
[83] Doc. No. 42 at 32-33.
[84] *See, e.g., Winterrowd*, 556 F.3d at 821–23.

The Magistrate's Order commits error by finding that Mr. Ramey and Mr. Kubiak were engaged in the unauthorized practice of law and that Ms. Kalra aided and abetted that practice as the contacts are attenuated. The Sanctioned Parties formed a partnership where Ms. Kalra handled the state law matters and Mr. Ramey and Mr. Kubiak delivered highly specialized advice on federal patent litigation.[85] Further, much like in *Winterrowd*, if required, there is no reason Mr. Ramey or Mr Kubiak would not be admitted *pro hac* vice. Both are members in good standing with the Texas State Bar[86] and each have over 25 years practice.[87] As in *Spanos,* there has been "no suggestion of any unlawyerlike conduct on his part," prior to the Magistrate's Order.[88] While the Magistrate's Order does make a finding that Mr Ramey and Mr. Kubiak are regularly engaged in the practice of law in California,[89] which might disqualify each from *pro hac vice* admission under Civil L.R. 11-3(c), the record evidence is believed to show only attenuated contact on the highly specialized area of patent litigation. The evidence of record is that a California lawyer was lead counsel for all cases, except for the three transferred cases discussed above that were very short lived and in the process of being dismissed at the time of transfer.[90] Moreover, to the extent the Magistrate's Order seeks to limit Koji from using any of the Ramey Firm lawyers, the privileges and immunities clause of the U.S. Constitution prohibits a state from denying a citizen with a federal claim or defense from engaging an out-of-state lawyer to collaborate with an in-state lawyer and give legal advice concerning it within the state.[91] For the reasons provided herein, The Sanctioned Parties are likely to prevail and reverse Magistrate's Order's finding that Mr. Ramey and Mr. Kubiak were engaged in the unauthorized

---

[85] *See, e.g., Winterrowd*, 556 F.3d at 821–23.
[86] Ramey Decl. at ¶8.
[87] Ramey Decl. at ¶9.
[88] *Spanos v. Skouras Theatres Corp.*, 364 F.2d 161, 168 (2d Cir. 1966).
[89] Doc. No. 42 at 28.
[90] Ramey Decl. at ¶¶5-7.
[91] *Spanos v. Skouras Theatres Corp.*, 364 F.2d 161, 170 (2d Cir. 1966).

practice of law and that Ms. Kalra aided and abetted that practice and that each should be sanctioned pursuant to the Court's inherent authority, the Court's authority under the Civil Local Rules, and the Court's authority under Rule 11 and applicable law.[92]

### 5.  If a Sanction is Deemed Warranted, a Less Severe Sanction is Appropriate

The Sanctioned Parties object to the sanctions issued as not being proper.[93]  Sanctions imposed should be limited to what is "sufficient to deter repetition of such conduct or comparable conduct by others similarly situated."[94] If a violation is found and a sanction deemed appropriate, a more appropriate sanction would be admonishment of the conduct as it has already stopped and was not done to circumvent any rule.  The evidence of record is that the procedure used by the Ramey Firm was believed to be in compliance but that immediately after the August 22, 2024, hearing, the process was changed.[95]  As such, there is little chance the conduct repeats.  It is error for the Magistrate's Order to require the Sanctioned Parties self-report the sanctions imposed on them and engage in CLE study.[96] It is further error for the Magistrate's Order to require the Sanctioned Parties further self-report.[97] It is further error for the Magistrate's Order to require Mr. Ramey and Mr. Kubiak "to each complete at least two hours of in-person, California bar-approved CLE classes on Legal Ethics and/or Professional Conduct, and at least an additional two hours of in-person, California bar-approved CLE on Law Practice Management."[98]  These sanctions are severe and unwarranted, potentially career ending, and unreasonable as to the length of 5 years.  The Sanctioned Parties have already discontinued the practice and it is not likely to be repeated.[99]

---

[92] Doc. No. 42 at 33.
[93] Doc. No. 42 at 37-44.
[94] Fed.R.Civ.P. 11(b)(2)(A).
[95] Doc. No. 28-1 at ¶14; Doc. No. 28-2 at ¶19; and, Doc. No. 28-15 at ¶10.
[96] Doc. No. 42 at 38.
[97] Doc. No. 42 at 38.
[98] Doc. No. 42 at 43.
[99] Doc. No. 28-1 at ¶14; Doc. No. 28-2 at ¶19; and, Doc. No. 28-15 at ¶10.

It is error for the Magistrate's Second Order to require the Sanctioned Parties to complete CLE.[100] It is further error for the Magistrate's Second Order to require the Sanctioned Parties each to self-report the sanctions imposed prior to appeal.[101] It is further error for the Magistrate's Second Order to require the Sanctioned Parties to self- report.[102] These sanctions are severe and unwarranted, potentially career ending, and unreasonable as to the next 5 years. The Sanctioned Parties have already discontinued the practice and it is not likely to be repeated.[103] A stay for any self-reporting, and other sanctions, should be afforded the Sanctioned Parties pending any appeal as once reported the sanctions cannot be undone.[104] The harm will be immediate and severe.[105]

**B. The Sanctioned Parties will be Irreparably Harmed**

These sanctions are severe and unwarranted, potentially career ending, and unreasonable as to the next 5 years. The Sanctioned Parties have already discontinued the practice and it is not likely to be repeated.[106] A stay for any self-reporting, and other sanctions, should be afforded the Sanctioned Parties pending any appeal as once reported the sanctions cannot be undone.[107] The harm will be immediate and severe.[108] Once reported to bar organizations, even if successful on appeal, the Sanctioned parties will not be able to un      ring that bell. The harm is immediate and substantial.

---

[100] Doc. No. 43 at 35.
[101] Doc. No. 42 at 38.
[102] Doc. No. 43 at 36.
[103] Doc. No. 28-1 at ¶14; Doc. No. 28-2 at ¶19; and, Doc. No. 28-15 at ¶10.
[104] *Gibson v. Credit Suisse AG*, No. 1:10-CV-00001-JLQ, 2015 WL 105999, at *1-2 (D. Idaho Jan. 7, 2015) citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *see also Nken v. Holder*, 556 U.S. 418, 433 (2009).
[105] *Gibson v. Credit Suisse AG*, No. 1:10-CV-00001-JLQ, 2015 WL 105999, at *2 (D. Idaho Jan. 7, 2015)
[106] Doc. No. 28-1 at ¶14; Doc. No. 28-2 at ¶19; and, Doc. No. 28-15 at ¶10.
[107] *Gibson v. Credit Suisse AG*, No. 1:10-CV-00001-JLQ, 2015 WL 105999, at *1-2 (D. Idaho Jan. 7, 2015) citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *see also Nken v. Holder*, 556 U.S. 418, 433 (2009).
[108] *Gibson v. Credit Suisse AG*, No. 1:10-CV-00001-JLQ, 2015 WL 105999, at *2 (D. Idaho Jan. 7, 2015)

**C.  The Requested Stay Will Not Injure Any Party**

The requested stay is not a request to stay any payment to Defendant.  No party will be injured by the requested stay.

**D.  The Public Interest Will Not Be Adversely Affected**

While the public certainly has an interest in lawyers performing their duties properly, the public interest is not served by permanently damaging the Sanctioned Parties' careers with orders that are capable of modification, especially when no harm will come to Defendant.

**E.  The Four Factors Weigh Heavily in Favor of Staying Execution**

All factors support stay of enforcement of the monetary sanction issued in the Magistrate's Order,[109] a stay of enforcement of the reporting/CLE requirements in the Magistrate's Order[110] and a stay of the reporting/CLE requirements in the Magistrate's Second Order[111] pending the appeal.  The irreparable harm absent a stay is significant and the Sanctioned Parties have shown the likelihood of prevailing on appeal.

**IV.    CONCLUSION**

Koji IP, LLC ("Koji"), William P. Ramey, III ("Mr. Ramey"), Susan S.Q. Kalra ("Ms. Kalra") and Jeffrey E. Kubiak ("Mr. Kubiak") (collectively, "Sanctioned Parties") respectfully pray this Court enter an order staying enforcement of the Magistrate's Order and the Reporting/CLE requirements of the Magistrate's Second Order during the pendency of the appeals.

Respectfully submitted,

/s/ Susan Kalra
Susan Kalra (SBN 167940)
4140 Innovator Drive, Apt. 4201
Sacramento, CA 95834
(650) 678-4644

---

[109] Doc. No. 42 at 38:24-43:2 (items 5-8).
[110] Doc. No. 42 at 37:22-44:7 (items 1-4 and 9-11).
[111] Doc. No. 43 at 35:4-36:24 (items 4-8).

Email: sqklaw@gmail.com

**_Attorneys for Koji IP, LLC, William P. Ramey, III,_**
**_Susan S. Q. Kalra and Jeffrey E. Kubiak_**

### CERTIFICATE OF CONFERENCE

I confirm that I conferred with counsel for Defendant on October 8, 2024, via e-mail. Defendant takes no position with regards to the stay of the Order of Doc. No. 42 and is still deciding its position with regard to Doc. No. 43.

_/s/ William P. Ramey, III_
William P. Ramey, III

### CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure, I hereby certify that all counsel of record who have appeared in this case are being served today, with a copy of the foregoing via the Court's CM/ECF system.

_/s/ Susan S. Q. Kalra_
Susan S. Q. Kalra