UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| KOJI IP, LLC,<br><br>Plaintiff,<br><br>v.<br><br>RENESAS ELECTRONICS AMERICA, INC.,<br><br>Defendant. | Case No. 24-cv-03089-PHK<br><br>**ORDER DENYING MOTIONS FOR RELIEF FROM ORDERS RELATING TO SANCTIONS PREVIOUSLY IMPOSED AND DENYING MOTION FOR STAY PENDING APPEAL**<br><br>Re: Dkts. 51, 52, 54, 57, 64, 65, 79, 89, 102 |

This is a patent infringement action. The Parties have consented to proceed before a Magistrate Judge for all purposes, consistent with 28 U.S.C. § 636(c). *See* Dkts. 10, 20.

Presently before the Court are nine motions filed by Plaintiff Koji IP, LLC ("Koji") and its counsel from the Ramey Law Firm, Attorneys William P. Ramey, III, Susan S.Q. Kalra, and Jeffrey E. Kubiak (collectively, "Sanctioned Parties"), seeking relief from this Court's previous Orders relating generally to the Court's prior decision to impose sanctions. [Dkt. 51; Dkt. 52; Dkt. 54; Dkt. 57; Dkt. 64; Dkt. 65; Dkt. 79; Dkt. 89; Dkt. 102]. Defendant Renesas Electronics America, Inc. ("REA") has responded in opposition to these motions, and the Sanctioned Parties have filed replies. [Dkt. 59; Dkt. 67; Dkt. 68; Dkt. 72; Dkt. 73; Dkt. 101; Dkt. 107; Dkt. 108; Dkt. 113]. The Court heard oral argument regarding certain of these motions on April 23, 2025. *See* Dkts. 80, 90. The Court deems the remainder of the motions suitable for resolution without oral argument. *See* Civil L.R. 7-1(b). For the following reasons, all of these motions are **DENIED WITH PREJUDICE**.

<strong><u>RELEVANT BACKGROUND</u></strong>

The facts of this case are well known to the Parties and were discussed in extensive detail

in this Court's Orders dated March 26, 2025 and March 31, 2025, and thus will not be repeated in the same level of detail here. *See Koji IP, LLC v. Renesas Elecs. Am., Inc.*, No. 24-cv-03089-PHK, 2025 WL 917110 (N.D. Cal. Mar. 26, 2025); *Koji IP, LLC v. Renesas Elecs. Am., Inc.*, No. 24-cv-03089-PHK, 2025 WL 980796 (N.D. Cal. Mar. 31, 2025). Those prior Orders are incorporated by reference.

Following the issuance of an Order to Show Cause and a hearing on the same, on March 26, 2025, this Court issued an Order (hereinafter, "Sanctions Order"), imposing sanctions on Plaintiff's counsel listed above—Mr. Ramey, Ms. Kalra, and Mr. Kubiak—pursuant to the Court's inherent authority, the Court's authority under the Civil Local Rules, and the Court's authority under Federal Rule of Civil Procedure 11, for engaging in bad faith litigation conduct in violation of Rule 11, as well as for engaging in (in the case of Mr. Ramey and Mr. Kubiak) the unauthorized practice of law in California federal court and for aiding and abetting (in the case of Ms. Kalra) this unauthorized practice of law by Mr. Ramey and Mr. Kubiak. *Koji*, 2025 WL 917110, at *7-18. As sanctions, the Court ordered Mr. Ramey to pay $45,264, Mr. Kubiak to pay $10,496, and Ms. Kalra to pay $8,364. *Id.* at *21-22. Those monetary sanctions have since been paid.

The Court further ordered the Sanctioned Parties to each self-report the imposed sanctions and provide a copy of the Sanctions Order to the relevant disciplinary committees or offices of the State Bar of California, the State Bar of Texas, the Bar of the United States District Court for the District of Colorado, the United States Patent and Trademark Office, any other state and federal bars of which they are members, the Northern District of California's Standing Committee on Professional Conduct, the Central District of California's Standing Committee on Professional Conduct, and the judges presiding over every other case currently pending in the Northern District of California in which the Sanctioned Parties' names appear on the pleadings. *Id.* at *21. The Court further ordered the Sanctioned Parties to attach a copy of the Sanctions Order to any motion for *pro hac vice* admission filed by or on their behalf in California federal court during the next five years. *Id.* The Court further ordered Mr. Ramey and Mr. Kubiak to complete at least two hours of in-person, California bar-approved continuing legal education (CLE) classes on Legal Ethics and/or Professional Conduct, and at least two additional hours of in-person, California bar-

approved CLE classes on Law Practice Management. *Id.* at *23.

Following full briefing on Defendant's motion for attorneys' fees and a hearing on the same, on March 31, 2025, the Court issued a separate Order (hereinafter, "Fees Order") granting Defendant's motion for attorneys' fees under 35 U.S.C. § 285, and imposing additional sanctions against Plaintiff's same counsel, pursuant to 28 U.S.C. § 1927 and the Court's inherent authority. *Koji*, 2025 WL 980796, at *6-18. As sanctions for the conduct outlined in the Fees Order, the Court ordered that Mr. Ramey, Ms. Kalra, and Mr. Kubiak each complete at least two hours of in-person, California bar-approved CLE classes on Federal Court Litigation, and at least two hour of such CLE classes on Patent Litigation. *Id.* at *19. The Court further ordered the Sanctioned Parties to self-report the imposed sanctions to the relevant disciplinary committees or offices of the State Bar of California, the State Bar of Texas, the Bar of the United States District Court for the District of Colorado, the United States Patent and Trademark Office, any other state and federal bars of which they are members, the Northern District of California's Standing Committee of Professional Conduct, and the judges presiding over every other case currently pending in the Northern District of California in which the Sanctioned Parties' names appear on the pleadings. *Id.* at *20. The Court directed Defendant to submit documentation justifying the amount of fees sought by no later than April 14, 2025, the Sanctioned Parties to file an opposition, if any, by no later than April 28, 2025, and Defendant to file a reply, if any, by no later than May 5, 2025. *Id.* at *19.

Following the Court's issuance of these two Orders, the Sanctioned Parties filed the instant motions, all of which assert overlapping and repetitive arguments challenging the undersigned's authority to issue rulings in this case.

On April 7, 2025 and April 8, 2025, the Sanctioned Parties filed three motions, each entitled "Motion for Relief from Magistrate Judge's Nondispositive Order," seeking relief from the Sanctions Order and the Fees Order under Civil Local Rules 72-2 and 72-3. [Dkt. 47 (seeking relief from Sanctions Order); Dkt. 51 (seeking relief from Fees Order); Dkt. 52 (styled as a "corrected" motion seeking relief from Sanctions Order)].

On April 8, 2025, the Sanctioned Parties filed a motion, entitled "Emergency Motion to Set

Bond and Stay Enforcement of Judgment Pending Appeal," seeking a stay of enforcement of the imposed monetary sanctions and self-reporting requirements pending appeal, and requesting expedited briefing on the motion. [Dkt. 54].

On April 9, 2025, the Court issued a Text Order, directing Defendant to file an expedited response only as to the Sanctioned Parties' request for expedited briefing on the motion to stay. [Dkt. 56].

On April 10, 2025, the Sanctioned Parties filed a motion, entitled "Motion for Relief from Nondispositive Pretrial Order of Magistrate Judge," seeking relief from the Court's April 9, 2025 Text Order under Civil Local Rules 72-2 and 72-3. [Dkt. 57].

On April 14, 2025, the Court issued further Text Orders, setting a briefing schedule on the remainder of the pending motions and setting a consolidated hearing on the motions for April 23, 2025. [Dkt. 60; Dkt. 61].

On April 15, 2025, the Sanctioned Parties filed two additional motions, each entitled "Motion for Relief from Nondispositive Pretrial Order of Magistrate Judge," seeking relief from the Court's April 14, 2025 Text Orders under Civil Local Rules 72-2 and 72-3. [Dkt. 64; Dkt. 65].

On April 23, 2025, the Sanctioned Parties filed a motion, entitled "Motion to Amend a Judgment Pursuant to Rule 59," seeking relief from the Court's Sanctions Order under Federal Rule of Civil Procedure 59(e). [Dkt. 79].

On April 23, 2025, the Court held a hearing on the Sanctioned Parties' motion to stay and motions seeking relief from the Sanctions Order and the Fees Order under Civil Local Rules 72-2 and 72-3. *See* Dkts. 80, 90. Following that hearing, on April 25, 2025, the Court issued the following Text Order:

> **[IN-CHAMBERS TEXT ONLY ORDER]:** On April 23, 2025, the Court held oral argument on Koji's motions for relief from the Court's previous Orders and for a stay pending appeal. *See* Dkt. 80. At the conclusion of the hearing, all counsel agreed that these motions are now submitted.
>
> Having carefully considered the arguments and materials submitted, the Court **DENIES** the [Dkt. 51; Dkt. 52] motions for relief from the Court's previous Orders, and **DENIES** the [Dkt. 54] motion for a stay pending appeal. In sum, because all Parties fully consented to Magistrate Judge jurisdiction for all

United States District Court
Northern District of California

4

proceedings in this case, the Court has jurisdiction over the case, including jurisdiction to issue the Orders challenged by Koji. To the extent that Koji's motions seek reconsideration of the Court's previous Orders, the motions fail procedurally, because they do not comply with the requirements set forth in Civil Local Rule 7-9, and substantively, because they merely rehash arguments previously raised or which could have been previously raised. Further, Koji has failed to meet its burden to demonstrate that a stay pending appeal is warranted, because it has not shown a likelihood of success with respect to its appeal (which is both premature and substantively weak), and because it has not demonstrated irreparable harm with reliable evidence (where rhetoric about "career ending" sanctions is not substantiated by the record). The deadlines in the Court's [Dkt. 42; Dkt. 43] Orders remain as set.

The Court issues this summary Text Order as a courtesy to the Parties to avoid delay. A memorandum order on the resolution of these motions will issue in due course.

The [Dkt. 46; Dkt. 50] administrative motions for leave to file excess pages in connection with the motions for relief are **GRANTED**. The [Dkt. 47] motion for relief is **DENIED AS MOOT** because that originally filed motion was superseded by the [Dkt. 52] "corrected" motion.

[Dkt. 81].

On April 28, 2025, the Sanctioned Parties filed a motion, entitled "Motion to Amend a Judgment Pursuant to Rule 59," seeking relief from the Fees Order under Federal Rule of Civil Procedure 59(e). [Dkt. 89].

On May 9, 2025, the Sanctioned Parties filed a motion, entitled "Motion for Relief from Nondispositive Pretrial Order of Magistrate Judge," seeking relief from the Court's April 25, 2025 Text Order under Civil Local Rules 72-2 and 72-3. [Dkt. 102].

On April 8, 2025, the Sanctioned Parties filed a notice of appeal of the Sanctions Order and the Fees Order to the Federal Circuit. [Dkt. 53]; *see Koji IP, LLC v. Renesas Elecs. Am., Inc.*, No. 25-1639, ECF No. 1 (Fed. Cir. Apr. 11, 2025). On April 16, 2026, Defendant filed a motion to dismiss that appeal as premature, because the attorneys' fees imposed by the Fees Order had not yet been quantified by this Court, and because the Sanctioned Parties' instant motions challenging the undersigned's rulings were still pending before this Court. *Koji*, No. 25-1639, ECF No. 10 (Fed. Cir. Apr. 16, 2025). On May 19, 2025, the Federal Circuit granted Defendant's motion to dismiss the appeal, in part, holding the action in abeyance until this Court's resolution of "all issues regarding the March 26 and 31, 2025 orders, including sanctions and quantified attorney fees." [Dkt. 109].

In this Order, the Court now turns to resolving the various motions filed by the Sanctioned Parties which, in overlapping and repetitive procedural and substantive ways, challenge the Sanctions Order and the Fees Order. For clarity of the record, the Court issues a separate Order addressing the discrete issues regarding quantifying the amount of fees and costs awarded.

## ANALYSIS

### I.    Motions for Relief Pursuant to Civil Local Rules 72-2 and 72-3

As summarized above, the Sanctioned Parties have filed multiple motions, citing Civil Local Rules 72-2 and 72-3, each entitled "Motion for Relief From Nondispositive Pretrial Order of Magistrate Judge." [Dkt. 51; Dkt. 52; Dkt, 57; Dkt. 64; Dkt. 65; Dkt. 102]. In these motions, the Sanctioned Parties lodge "objections" to, and seek a District Judge's review of, this Court's previous Orders, including the Sanctions Order, the Fees Order, and several Text Orders. These motions are substantively repetitive and assert many of the same numbered paragraphs of "objections" and arguments.

### Civil Local Rules 72-2 and 73-2

As noted, each of the motions at issue seek review of the undersigned's previous rulings under Civil Local Rules 72-2 and 72-3. Civil Local Rule 72-2 provides that "[a]ny objection filed pursuant to Fed. R. Civ. P. 72(a) and 28 U.S.C. § 636(b)(1)(A) must be made as a 'Motion for Relief from Nondispositive Pretrial Order of Magistrate Judge.'" Civil L.R. 72-2(a). Civil Local Rule 72-3 provides that "[a]ny objection filed pursuant to Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636(b)(1)(B) must be made as a 'Motion for De Novo Determination of Dispositive Matter Referred to Magistrate Judge.'" Civil L.R. 72-3(a).

Federal Rule of Procedure 72(a) authorizes a District Judge to refer a nondispositive matter to a Magistrate Judge for resolution (which a party may object to within fourteen days). "This subdivision [of Rule 72] addresses court-ordered referrals of nondispositive matters under 28 U.S.C. §636(b)(1)(A)." Fed. R. Civ. P. 72 advisory committee's note to 1983 amendment. Rule 72(b) authorizes a District Judge to refer a dispositive matter to a Magistrate Judge for a recommended disposition (which a party may object to within fourteen days). "This subdivision [of Rule 72] governs court-ordered referrals of dispositive pretrial matters and prisoner petitions

United States District Court
Northern District of California

challenging conditions of confinement, pursuant to statutory authorization in 28 U.S.C. §636(b)(1)(B)." *Id.*

As summarized above, the Parties here filed their consent forms on the docket and consented to Magistrate Judge jurisdiction over this case under 28 U.S.C. § 636(c). [Dkt. 10; Dkt. 20]. Accordingly, the undersigned has had the full scope of jurisdiction over all matters in this case since June 26, 2024, months prior to the issuance of the Orders at issue here. More importantly, because this is a Magistrate Judge "consent case" under 28 U.S.C. § 636(c), there has never been a need for, and never has been, any kind of referral by a District Judge of either dispositive or nondispositive matters pursuant to Rule 72.

"The Federal Magistrate Act provides that '[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct *any or all proceedings* in a jury or nonjury civil matter and order the entry of judgment in the case[.]'" *Roell v. Withrow*, 538 U.S. 580, 585 (2003) (quoting 28 U.S.C. § 636(c)(1)) (emphasis added). "[A] § 636(c)(1) referral gives the magistrate judge full authority over dispositive motions, conduct of trial, and entry of final judgment, *all without district court review*." *Id.* (emphasis added). As the Ninth Circuit has explained:

> Jurisdiction under § 636(c) is distinct from that under § 636(b), which governs referral jurisdiction and sets out procedures through which magistrate judges consider non-dispositive pretrial matters and provide reports and recommendations on dispositive pretrial matters. Unlike § 636(b)(1), jurisdiction under § 636(c)(1) gives the magistrate judge's ruling "the same effect as if it had been made by a district judge."

*Washington v. Kijakazi*, 72 F.4th 1029, 1035 (9th Cir. 2023) (citations omitted).

By definition, when all parties consent to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c), the provisions of Rule 72 regarding District Judge review are inapplicable by their express terms. In such cases, appeal from a Magistrate Judge's judgment lies in the appropriate federal appellate court, not the district court. 28 U.S.C. § 636(c)(3) ("Upon entry of judgment in any case referred under paragraph (1) of this subsection, an aggrieved party *may appeal directly to the appropriate United States court of appeals* from the judgment of the magistrate judge *in the same manner as an appeal from any other judgment of a district court*.") (emphasis added); Fed. R. Civ.

7

P. 73(c) ("In accordance with 28 U.S.C. § 636(c)(3), an appeal from a judgment entered at a magistrate judge's direction may be taken to the court of appeals as would any other appeal from a district-court judgment.").  In a consent case under 28 U.S.C. § 636(c), review of the Magistrate Judge's rulings by a District Judge is not the proper procedure.  Thus, Civil Local Rules 72-2 and 72-3 are inapplicable to a case such as this, in which the Parties have fully consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c).

Accordingly, to the extent that the Sanctioned Parties move for relief under Civil Local Rules 72-2 and 72-3, the motions are procedurally and legally improper.  *See Branch v. Umphenour*, 936 F.3d 994, 1001 (9th Cir. 2019) ("By consenting to the magistrate judge's plenary jurisdiction, Branch gave up the right to have the magistrate judge's decisions reviewed by the district judge.  Thus, once the magistrate acquired full jurisdiction over the case, Branch had no right to have any Rule 72(a) motion decided *at all*, much less by the district judge.  Under these circumstances, the magistrate judge reasonably construed Branch's motions as motions for reconsideration[.]"); *Steshenko v. Bd. of Trs. of Foothill-De Anza Cmty. College Dist.*, No. 24-cv-06126-SVK, 2025 WL 1404003, at *1 (N.D. Cal. Apr. 17, 2025 ) ("[T]he procedure set forth in Local Rule 72-2, upon which Plaintiff rests the Motion to Stay, relates only to rulings by a magistrate judge on nondispositive matters referred by the District Judge presiding over a case. . . . That procedure is not available in 'consent cases' such as this one."); *Erickson Prods. Inc. v. Kast*, No. 13-cv-05472-DMR, 2023 WL 4295512, at *1 n.2 (N.D. Cal. June 30, 2023) ("Local Rule 72-2 does not apply to this motion. . . . Because the parties consented to the jurisdiction of a magistrate judge, . . . the proper way to seek relief from the court's Order Denying Transfer is through a motion for leave to file a motion for reconsideration under Local Rule 7-9."); *Coston v. Rahimifar*, No. 1:17-cv-000765-HBK, 2021 WL 736217, at *1 (E.D. Cal. Feb. 25, 2021) ("Plaintiff, citing to Federal Rule of Civil Procedure 72(a) and Local Rule 303(f), requests the district court to 'modify' Peterson's September 22, 2020 Order because 'it is erroneous and contrary to law.' Because this is a 'consent case,' Rule 72 and Local Rule 303 do not govern this action. . . . [B]ecause Plaintiff improperly seeks relief under Local Rule 303 and Fed. R. Civ. P. 72, both of which govern magistrate judge's orders in non-consent cases, his motion is due to be denied.").

United States District Court
Northern District of California

8

Thus, to the extent that the Sanctioned Parties' motions are predicated on Civil Local Rules 72-2 and 72-3, the motions lack legal and procedural basis and are subject to denial on that basis. Similarly, to the extent that the motions implicate or rely on Rule 72, the motions are equally baseless both legally and procedurally and subject to denial on that basis.

### Magistrate Judge Jurisdiction and Consent

Broadly construing the Sanctioned Parties' repetitive motions at issue, the Sanctioned Parties raise essentially the same argument challenging the exercise of Magistrate Judge jurisdiction in this matter with regard to the Sanctions Order and the Fees Order.

"A party to a federal civil case has, subject to some exceptions, a constitutional right to proceed before an Article III judge." *Dixon v. Ylst*, 990 F.2d 478, 479 (9th Cir. 1993). This right can be waived, however, if all parties to a civil action consent to Magistrate Judge jurisdiction. *Id.* at 480; 28 U.S.C. § 636(c)(1). "Magistrate judges exercise jurisdiction in accordance with 28 U.S.C. § 636." *Williams v. King*, 875 F.3d 500, 502 (9th Cir. 2017) (citation omitted). Regarding the scope of jurisdiction conferred by that statute, the Ninth Circuit has explained:

> The law currently provides a three-tiered system of magistrate judge jurisdiction. First, a magistrate judge may be designated to determine most pretrial matters directly, except that the parties can ask the district judge to "reconsider" any such matter if "the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). Second, when it comes to certain dispositive or extremely important motions—such as motions for summary judgment or injunctive relief— the magistrate judge does not issue a ruling, but may conduct hearings and submit a report and recommendation to the district judge, who will ultimately determine the matter de novo. *Id.* § 636(b)(1)(B), (C). Finally, "[u]pon the consent of the parties," a magistrate judge "may conduct any or all proceedings in a . . . civil matter and order the entry of judgment in the case." *Id.* § 636(c)(1).

*Branch*, 936 F.3d at 1000.

Once a civil case is referred to a Magistrate Judge under 28 U.S.C. § 636(c), the reference can be withdrawn only "for good cause on its own motion, or under extraordinary circumstances shown by any party." 28 U.S.C. § 636(c)(4); Fed. R. Civ. P. 73(b)(3); *Branch*, 936 F.3d at 1002. "Good cause" and "extraordinary circumstances" are difficult standards to satisfy. *Branch*, 936 F.3d at 1004. "Neither mere dissatisfaction with a magistrate judge's decisions, nor unadorned accusations that such decisions reflect judicial bias, will suffice." *Id.*

As noted, all Parties consented to Magistrate Judge jurisdiction in this case, consistent with 28 U.S.C. § 636(c), prior to this Court's issuance of the Orders challenged by the Sanctioned Parties here. This lawsuit started on May 22, 2024. [Dkt. 1]. On June 10, 2024, Plaintiff executed and filed this District's standardized consent form, entitled "Consent or Declination to Magistrate Judge Jurisdiction," indicating Plaintiff's voluntary and express consent to Magistrate Judge jurisdiction in this case. [Dkt. 10]. The standardized consent form states, in pertinent part: "In accordance with the provisions of 28 U.S.C. § 636(c), I voluntarily **consent** to have a United States magistrate judge conduct all further proceedings in this case, including trial and entry of final judgment. I understand that appeal from the judgment shall be taken directly to the United States Court of Appeals for the Ninth Circuit." *Id.* (emphasis in original).

On June 26, 2024, Defendant executed and filed the identical standardized consent form as Plaintiff, indicating Defendant's own voluntary and express consent to Magistrate Judge jurisdiction in this matter. [Dkt. 20].

Accordingly, upon Defendant's filing of the consent form, all Parties to this action were on record as consenting to the undersigned Magistrate Judge's exercise of plenary jurisdiction over this case. By operation of 28 U.S.C. § 636(c), on June 26, 2024, this case was thus assigned to the undersigned to conduct "any and all" further proceedings. As of that date, the undersigned was "authorized" under 28 U.S.C. § 636(c) "to conduct" this "civil action or proceeding, including a jury or nonjury trial." Fed. R. Civ. P. 73(a); *see also* Fed. R. Civ. P. 73 advisory committee's note to 1983 amendment (Rule 73(a) "implements the broad authority of the 1979 amendments to the Magistrates Act, 28 U.S.C. §636(c), which permit a magistrate to sit in lieu of a district judge and exercise civil jurisdiction over a case, when the parties consent.").

In the various motions at issue here, the Sanctioned Parties argue that the undersigned somehow never obtained the required consent of all Parties to exercise jurisdiction under 28 U.S.C. § 636(c), because Plaintiff voluntarily dismissed the action with prejudice, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), on June 12, 2024. According to the Sanctioned Parties, Plaintiff, by signing the standardized consent form on June 10, 2024, "limited its consent to Final Judgment." [Dkt. 51 at 4]. The Sanctioned Parties argue that because Defendant did not

United States District Court
Northern District of California

consent until June 26, 2024 (*i.e.,* fourteen days after Plaintiff voluntarily dismissed the case), "Defendant's consent was not effective as it was after Final Judgment, the limit of [Plaintiff's] consent." *Id.* at 4-5.

First, the Sanctioned Parties' argument relies on construing the language of this District's standardized consent form as imposing some sort of temporal limit on a signing party's consent. This argument lacks support in the text of the consent form as executed. The consent form unequivocally states that the signing party consents "to have a United States magistrate judge conduct *all further proceedings in this case, including* trial and entry of final judgment." https://cand.uscourts.gov/sites/default/files/forms/MJ_Consent-Declination_Form_10-2020.pdf (emphasis added). The consent form's use of the word "including" makes clear that entry of final judgment is simply one example of "all further proceedings" which may be conducted by a Magistrate Judge in accordance with 28 U.S.C. § 636(c). *See, e.g.*, *Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100 (1941) ("[T]he term 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle."); *In re Mark Anthony Constr., Inc.*, 886 F.2d 1101, 1106 (9th Cir. 1989) (It is "'hornbook law' that list following the word 'including' is 'illustrative, not exclusive.'"); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1108 (N.D. Cal. 2015) ("Use of the word 'including' indicates the enumerated ways is not exhaustive.") (alterations omitted). The Sanctioned Parties' argument that they limited their consent up to only final judgment is simply wrong as a matter of law. Consent under 28 U.S.C. § 636(c) runs to all proceedings in a civil action (both pre- and post-trial); it is not limited to just one phase of the case. As noted by Defendant, there is no basis in law or in the text of the consent form for an argument that consent expires upon the occurrence of certain events or after a certain time period. [Dkt. 68 at 8].

Further, to the extent that the Sanctioned Parties argue that Defendant filed its consent form "too late" because of the timing of the filing of the voluntary dismissal, that argument similarly relies on construing consent to be limited by some kind of temporal deadline or time limit. There is nothing in the language of the consent form filed by Defendant (and nothing in the law cited by the Sanctioned Parties) which imports a temporal deadline for a party to file its

United States District Court
Northern District of California

United States District Court
Northern District of California

consent form.  To the extent that the Sanctioned Parties argue that the filing of a Rule 41 dismissal precludes parties from subsequently consenting to a Magistrate Judge deciding issues pending in the case, the argument is without merit.  *See GameTech Int'l, Inc. v. Trend Gaming Sys., LLC*, No. CV-01-540-PHX-LOA, 2008 WL 4571424, at *10 (D. Ariz. Oct. 14, 2008) ("Absent from § 636(c) is any suggestion that Congress intended for magistrate judge jurisdiction, once properly conferred, to expire upon the happening of a particular event.").

To the extent that the Sanctioned Parties argue that a party's filing of a Rule 41 dismissal notice terminates or otherwise limits a district court's authority either to rule on subsequently filed motions for attorneys' fees or to impose sanctions against a party or their counsel, these arguments are also without legal support and lack merit.  *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395-96 (1990) ("In our view, nothing in the language of Rule 41(a)(1)(i), Rule 11, or other statute or Federal Rule terminates a district court's authority to impose sanctions after [a voluntary] dismissal."); *Moore v. Permanente Med. Grp., Inc.*, 981 F.2d 443, 445 (9th Cir. 1992) ("[I]t is clear that an award of attorney's fees is a collateral matter over which a court normally retains jurisdiction even after being divested of jurisdiction on the merits.").  There is no real dispute that a District Judge would retain jurisdiction to rule on sanctions and fees issues post-dismissal of a case.  Because a Magistrate Judge presiding with full consent under 28 U.S.C. § 636(c) has the same plenary jurisdiction as a District Judge, a Magistrate Judge in a consent case (such as this one) retains jurisdiction to rule on post-dismissal sanctions and fees issues as well.

The Sanctioned Parties' reliance on *Commercial Space Management Co. v. Boeing Co.*, 193 F.3d 1074 (9th Cir. 1999) is misplaced.  *See, e.g.*, Dkt. 51 at n.10.[1]  *Commercial Space Management* involved the application of Rule 41(a)'s two-dismissal rule, where the defendant filed a Rule 59(e) motion to amend the judgment in the second dismissed case, seeking to change the dismissal from "without prejudice" to "with prejudice."  193 F.3d at 1076.  While the Ninth Circuit affirmed the district court's denial of the Rule 59(e) motion, contrary to the Sanctioned Parties' arguments, the Ninth Circuit expressly recognized that a district court retains jurisdiction

---

[1] The Sanctioned Parties cite this same case in all other motions at issue.  For ease of reference, the Court refers to Dkt. 51 as exemplary of all other motions at issue.

12

United States District Court
Northern District of California

over sanctions issues, even in a two-dismissal rule case:

> The court in *Bolivar* was concerned with whether the district court had jurisdiction to impose sanctions against plaintiffs following entry of a judgment dismissing the case "without prejudice" pursuant to Rule 41(a)(1), not with whether it had jurisdiction either to enter an order conditioning the dismissal as "with" or "without" prejudice under the two dismissal rule or to change such an order once entered. The *Bolivar* district court had jurisdiction after the dismissal was filed because a voluntary dismissal under Rule 41(a)(1)(i) *does not divest the district court of jurisdiction to impose sanctions*[.]

*Id.* at 1079 n.8 (citing *Cooter*, 496 U.S. at 393-98) (internal citation omitted) (emphasis added).

Under the express holding of *Commercial Space Management*, Plaintiff's filing of voluntary dismissal in this case did not, as a matter of law, deprive this Court of jurisdiction to determine the sanctions and fees issues. If the filing of dismissal did not deprive this Court of jurisdiction to determine those issues, that dismissal necessarily did not deprive Defendant of the ability to consent to Magistrate Judge jurisdiction for those purposes as well. Accordingly, *Commercial Space Management* is fully consistent with the Court's prior rulings and does not support the Sanctioned Parties' arguments here.

The second case cited by the Sanctioned Parties similarly does not support their arguments. *See* Dkt. 51 at 5 n.11 (citing *Anderson v. Woodcreek Venture Ltd.*, 351 F.3d 911, 915 (9th Cir. 2003)). In *Anderson*, the *pro se* plaintiffs filed a document, entitled "Plaintiffs Motion To Deny Magistrates [sic] Jurisdiction," which stated in part, "Plaintiffs Wills and Anderson do hereby deny Magistrates [sic] jurisdiction." 351 F.3d at 912-13. Later in *Anderson*, the plaintiffs filed another document, entitled "Plaintiffs Motion To Deny Magistrates [sic] Jurisdiction," which stated in part that, "[p]ursuant to Fed. R. Civ. P. 73[,] Plaintiffs do hereby deny Magistrates [sic] Jurisdiction and move the Court to assign a Federal District Court Judge to this instant case." *Id.* at 913. Following this, a District Judge denied the *Anderson* plaintiffs' "motion to deny magistrate judge jurisdiction" and, later in the case, the plaintiffs filed the District of Oregon's then-available Magistrate Judge consent form. The Ninth Circuit found that "there was a proper objection to magistrate judge jurisdiction, and there was no judicial response." *Id.* at 916. The Ninth Circuit held that the language in the District of Oregon's consent form was ambiguous with regard to the scope of consent, that the ruling on the "motion to deny magistrate judge

13

jurisdiction" did not clarify the scope of Magistrate Judge jurisdiction being affirmed, and that the failure to explicitly advise the *pro se* plaintiffs that they were free to withhold consent without adverse consequences under 28 U.S.C. § 636(c)(2) was problematic. *Id.* at 916-18. The Ninth Circuit held that the record was unclear as to whether consent to Magistrate Judge jurisdiction was explicit and found that implied consent was not appropriate in these circumstances. *Id.* The Ninth Circuit thus remanded "to the district court to determine whether Anderson voluntarily consented to proceed to judgment before the magistrate judge." *Id.* at 919.

The *Anderson* facts and circumstances are distinguishable. Here, Plaintiff is and was represented by experienced counsel, freely filed this District's consent form, never filed a motion to withdraw consent, and proceeded to litigate the sanctions and fees issues without objection to the undersigned's jurisdiction. Unlike the consent form at issue in *Anderson*, this District's consent form expressly states that consent to a Magistrate Judge covers "all further proceedings in this case, including trial and entry of final judgment" and "that appeal from the judgment shall be taken directly to the United States Court of Appeals for the Ninth Circuit" and thus appeal is not to a District Judge. Unlike in *Anderson*, early in this case (and prior to Defendant's allegedly "belated" consent), the Clerk of Court issued a Clerk's Notice, which stated in part: "Note that any party is free to withhold consent to proceed before a magistrate judge without adverse substantive consequences. The forms are available at: http://cand.uscourts.gov/civilforms. (Party/parties were also notified via telephone or email.)." [Dkt. 11]. For these reasons, the Sanctioned Parties' citation to *Anderson* is unavailing.

It is noteworthy that the Sanctioned Parties did not raise any challenges to this Court's authority to exercise plenary jurisdiction over this case, consistent with 28 U.S.C. § 636(c), until *after* this Court issued rulings which, for reasons expressed in their premature appeal to the Federal Circuit, the Sanctioned Parties disagree with strongly. The Sanctioned Parties made no arguments directed at the effectiveness of the Parties' consent to Magistrate Judge jurisdiction either in their briefing directed at the motion for attorneys' fees, at the hearing on that motion, in response to the Order to Show Cause, or at the hearing resulting in the Sanctions Order. *See Washington*, 72 F.4th at 1036 (A party impliedly consents to Magistrate Judge jurisdiction when

14

the party "was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case" before the Magistrate Judge.); *see also Roell*, 538 U.S. at 590 ("We think the better rule is to accept implied consent where, as here, the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case before the Magistrate Judge."). Certainly, all Parties fully litigated these issues and appeared at hearings on the underlying issues leading to the Sanctions Order and the Fees Order, without challenging or questioning Magistrate Judge jurisdiction here. It was only after the Court issued those two Orders that the Sanctioned Parties for the first time asserted the arguments repeated in the motions at issue regarding lack of consent and lack of Magistrate Judge jurisdiction. Thus, even if for some reason the express consent set forth in the Parties' consent forms was insufficient, there is more than sufficient basis here to find that all Parties impliedly consented to Magistrate Judge jurisdiction. *See Roell*, 538 U.S. at 590 ("Inferring consent in these circumstances thus checks the risk of gamesmanship by depriving the parties of the luxury of waiting for the outcome before denying the magistrate judge's authority.").

Further, to the extent that these arguments concerning lack of consent and lack of Magistrate Judge jurisdiction are raised belatedly by the Sanctioned Parties to collaterally attack the Sanctions Order and the Fees Order, the arguments were waived for failure to raise them in opposing the underlying Order to Show Cause and fees motion in the first place. And, despite this waiver, the Court has considered the substance of these arguments herein and, for the reasons discussed, finds that they lack legal merit.

Accordingly, pursuant to the Parties' full consent on June 26, 2024, the undersigned Magistrate Judge obtained and continues to possess the power under 28 U.S.C. § 636(c) to conduct any and all further proceedings in this matter. This includes the authority to issue all of the Orders challenged by the Sanctioned Parties here.

**Motions for Reconsideration**

While styled as motions seeking review or relief from prior Orders, fundamentally, the Sanctioned Parties' procedurally improper motions under Civil Local Rules 72-2 and 72-3 amount to motions seeking reconsideration of the rulings under Federal Rule of Civil Procedure 54(b) and

15

Civil Local Rule 7-9(a).  However, even construed charitably as such, the instant motions still fail both procedurally and substantively.

Under Rule 54(b), a district court has the inherent authority to revise any order "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." *United States v. Martin*, 226 F.3d 1042, 1049 (9th Cir. 2000) ("The authority of district courts to reconsider their own orders before they become final, absent some applicable rule or statute to the contrary, allows them to correct not only simple mistakes, but also decisions based on shifting precedent, rather than waiting for the time-consuming, costly process of appeal.").

In evaluating a motion seeking reconsideration of an interlocutory order in a patent action, the Court looks to Ninth Circuit law.  *See Fitness Anywhere LLC v. Woss Enters. LLC*, No. 14-cv-01725-BLF, 2017 WL 1833471, at *1 (N.D. Cal. May 8, 2017) (applying the law of the regional circuit to a motion seeking reconsideration of an interlocutory order in a patent infringement action); *23andMe, Inc. v. Ancestory.com DNA, LLC*, No. 18-cv-02791-EMC, 2018 WL 5793473, at *2 n.1 (N.D. Cal. Nov. 2, 2018) (finding no "clear difference" between the laws of the Federal Circuit and the Ninth Circuit with respect to a Rule 54(b) analysis).

"Reconsideration is an 'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources.'" *Gamevice, Inc. v. Nintendo Co.*, 677 F. Supp. 3d 1069, 1071 (N.D. Cal. 2023) (quoting *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003)). "As such, it should not be granted 'absent highly unusual circumstances.'" *Id.* (quoting *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009)). "A motion for reconsideration 'may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Marlyn*, 571 F.3d at 880 (citation omitted). "If a party simply inadvertently failed to raise the arguments earlier, the arguments are deemed waived." *Glavor v. Shearson Lehman Hutton, Inc.*, 879 F. Supp. 1028, 1033 (N.D. Cal. 1994) (citing *Publishers Res., Inc. v. Walker-Davis Publ'ns, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985)).

In this District, a party seeking reconsideration under Rule 54(b) must first seek leave to

16

United States District Court
Northern District of California

file such a motion. Civil L.R. 7-9(a). The moving party must then show that one of the following three circumstances exist:

(1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know of such fact or law at the time of the interlocutory order; or

(2) The emergence of new material facts or a change of law occurring after the time of such order; or

(3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

Civil L.R. 7-9(b).

In seeking leave, the moving party may not reargue any written or oral argument previously asserted to the Court. Civil L.R. 7-9(c). "Unless otherwise ordered by the assigned Judge, no response need be filed and no hearing will be held concerning a motion for leave to file a motion for reconsideration." Civil L.R. 7-9(d).

Whether to grant leave to file a motion for reconsideration under Civil Local Rule 7-2(a) is committed to this Court's sound discretion. *Montebueno Mktg., Inc. v. Del Monte Corp.-USA*, 570 F. App'x 675, 676 (9th Cir. 2014) (citing *Bias v. Moynihan*, 508 F.3d 1212, 1223 (9th Cir. 2007)). As discussed in detail specific to each of the various motions below, as a procedural matter, the Sanctioned Parties failed to file the requisite motions seeking leave to file motions for reconsideration under Civil Local Rule 7-9 in advance of filing the motions at issue, and thus, to the extent that they are moving for reconsideration, the motions are procedurally improper and subject to denial on that basis. The Court addresses the details of the various motions in turn further below.

**Motion Seeking Relief from the Sanctions Order**

On August 29, 2024, this Court issued an Order to Show Cause directed at Plaintiff's counsel from the Ramey Law Firm—Mr. Ramey, Ms. Kalra, and Mr. Kubiak—regarding why these attorneys should not be sanctioned for engaging in bad faith litigation conduct in violation of

17

Rule 11, as well as for engaging in the unauthorized practice of law and/or aiding and abetting the unauthorized practice of law. [Dkt. 27]. Following briefing and a hearing on these issues, on March 26, 2025, this Court issued the Sanctions Order, finding that Mr. Ramey and Mr. Kubiak had both regularly engaged in the unauthorized practice of law in California federal court and that Ms. Kalra had aided and abetted Mr. Ramey's and Mr. Kubiak's unauthorized practice of law, imposing monetary sanctions against each of them, ordering each of them to complete CLE courses, and ordering each of them to self-report these sanctions to the relevant disciplinary committees or offices of multiple bars and courts. *Koji*, 2025 WL 917110, at *7-18.

On April 8, 2025, the Sanctioned Parties filed a motion seeking relief from the Sanctions Order under Civil Local Rules 72-2 and 72-3. [Dkt. 52]. In the motion, the Sanctioned Parties lodge a laundry list of "objections" to the Sanctions Order, arguing that: (1) the Court lacked the authority to issue the Sanctions Order; (2) the Court misapplied the law with respect to its imposition of monetary sanctions; (3) the Court misapplied the law with respect to its finding that the filing of this lawsuit violated Rule 11; (4) the Court misapplied the law and misconstrued the facts with respect to its finding that Mr. Ramey and Mr. Kubiak engaged in the unauthorized practice of law and that Ms. Kubiak aided and abetted the unauthorized practice of law; (5) the Court's citation to "other cases where sanctions have been awarded or discussed" in the Sanctions Order was in error; (6) the sanctions imposed were not "appropriate" or "proper;" and (7) the Court's imposition of sanctions violated the Sanctioned Parties' due process rights. [Dkt. 52].

As discussed in detail herein, to the extent that the Sanctioned Parties seek relief under Civil Local Rules 72-2 and 72-3, the motion is procedurally improper and subject to denial on that basis.

To the extent that the Sanctioned Parties' motion could be construed as a motion for reconsideration of the Sanctions Order under Rule 54(b), the Sanctioned Parties did not file a motion for leave to file a motion for reconsideration and, therefore, the motion is procedurally improper under Civil Local Rule 7-9(a) and subject to denial on that basis. *See Hadsell v. United States*, No. 20-cv-03512-VKD, 2021 WL 5889174, at *2 (N.D. Cal. Dec. 13, 2021) ("Mr. Hadsell's present motion for reconsideration was filed without leave of court and is denied

as procedurally improper."); *Gauntlett v. Ill. Union Ins. Co.*, No. 5:11-cv-00455 EJD, 2012 WL 4051218, at *7 (N.D. Cal. Sept. 13, 2012) ("[T]he motion for reconsideration, which was filed without leave of court, is procedurally improper and is therefore DENIED.").

Even assuming the motion for reconsideration of the Sanctions Order was procedurally proper, the motion fails on the merits as well. Specifically, the Sanctioned Parties have not identified any new material facts or changes in law occurring since the Court's issuance of the Sanctions Order, nor have they shown that there is a material difference in fact or law from that which was previously presented to the Court. Civil L.R. 7-9(b)(1)-(2). Further, the Sanctioned Parties have not offered any evidence of "manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order." Civil L.R. 7-9(b)(3).

Further, as discussed in detail above, the Sanctioned Parties' arguments that Plaintiff's consent was "limited" up to final judgment, that Defendant's consent form was filed too late, and that the undersigned lacked jurisdiction or authority to issue the Sanctions Order is without merit.

The Sanctioned Parties argue that the Court's imposition of monetary sanctions against them was in error, "because Rule 11 specifically excludes a monetary award under the facts of this case." [Dkt. 52 at 6]. This argument fails for three reasons.

First, the Sanctioned Parties did not raise this argument in their written response to the Order to Show Cause, or at the hearing itself. Accordingly, the argument is waived. *Glavor*, 879 F. Supp. at 1033.

Second, the argument fails on the merits. Rule 11(c)(5)(B) provides that *sua sponte* monetary sanctions cannot be imposed unless the court "issued the show-cause order under Rule 11(c)(3) before voluntary dismissal or settlement of the claims made by or against the party . . . whose attorneys are[] to be sanctioned." As explained by this Court in both the Sanctions Order and the Fees Order, this case constitutes Plaintiff Koji's third identical patent infringement action against Defendant REA alleging infringement of the same patent against the same products. When Plaintiff voluntarily dismissed the second of these actions, that dismissal constituted an adjudication or judgment on the merits by operation of law. *See* Fed. R. Civ. P. 41(a)(1)(B). As

noted in the Court's prior Orders, at the time that Plaintiff Koji filed the complaint in this third patent infringement action against Defendant REA, there was no reasonable basis to re-raise the same claims against the same defendant—that is, because of the operation of Rule 41(a)(1)(B), no claims survived to assert. While Plaintiff styled its dismissal of this third action as a voluntary dismissal with prejudice, *see* Dkt. 12, that inherently assumes that there existed legally viable claims to dismiss in the first instance. Rule 11(c)(5)(B)'s limitations are intended to address the concern that "[p]arties settling a case should not be subsequently faced with an unexpected order from the court leading to monetary sanctions that might have affected their willingness to settle or voluntarily dismiss a case." Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment.

As explained by the Ninth Circuit, in a two-dismissal rule case, it is only in the third or later case (after the second dismissal) that there exists jurisdiction and ability for a court to determine whether the second dismissal operated as a judgment on the merits affecting the third case. *Comm. Space Mgmt.*, 193 F.3d at 1080 ( "The preclusive effect of that [second] dismissal, if any, is for determination in a subsequently filed action that implicates the two dismissal rule."). The Ninth Circuit has made clear that a plaintiff's labelling of a dismissal in a two-dismissal rule situation is not dispositive. *Id.* ("By the same token, the label a plaintiff attaches to a second Rule 41(a)(1) dismissal is irrelevant if a subsequent action is filed 'based on or including the same claim,' because Rule 41(a)(1) itself instructs that such a dismissal 'operates as an adjudication upon the merits.'"). This case is the third, subsequently filed action that implicates the two-dismissal rule; accordingly, it was in this case that the determination of reasonable basis for asserting the claim took place. While Plaintiff styled the dismissal of this third action as a voluntary dismissal with prejudice, by operation of law, court intervention was required (as directed by *Commercial Space Management*) to determine the effect of the dismissal here and in the previously dismissed second case. The Court's findings here were adverse to Plaintiff's arguments as to the effect of the dismissals, and thus involuntary to that extent. Indeed, even now in the motions to amend judgment, Plaintiff argues that the two-dismissal rule does not apply to this series of cases and dismissals. [Dkt. 79 at 11-12; Dkt. 89 at 10-16]. The Court's rulings on the effect of the dismissals here were involuntary as to Plaintiff, and because Plaintiff continues to

20

disclaim the effect of Rule 41 on the dismissals, the Court's rulings in the Sanctions Order and the Fees Order substantively transform the "voluntary dismissals" into judgment on the merits, and thus, transform the dismissals from voluntary to involuntary under Rule 41(b) (because the Sanctioned Parties position required a court order to confirm that the dismissal of this action operated as an adjudication on the merits, as set forth in Rule 41(b)). Therefore, Rule 11(c)(5)(B)'s limitation on the circumstances in which a monetary sanction may be imposed under Rule 11 is inapplicable.

Finally, as discussed in the Sanctions Order and the Fees Order, the Court relied on multiple legal bases for imposing monetary sanctions against Plaintiff's counsel for their conduct beyond Rule 11, including under the Court's inherent authority. *Koji*, 2025 WL 917110 at \*13-14; *Koji*, 2025 WL 980796, at \*15-19. Accordingly, the Sanctioned Parties' arguments concerning Rule 11(c)(5)(B), which were not raised in briefing or at the hearings leading to this Court's issuance of the Sanctions Order and the Fees Order, are unavailing in any event because they do not raise any issues concerning the Court's reasoning and legal bases to impose sanctions under other sources of law including the Court's inherent power.

In that regard, the Sanctioned Parties argue that the Court "cannot resort to an inherent power sanction to do what it is prohibited from doing under the rules." [Dkt. 52 at 6]. However, the Sanctioned Parties provide no legal support for that assertion, and the Ninth Circuit has recognized that there exist separate, independent legal grounds for a court to impose sanctions beyond Rule 11. The Sanctioned Parties cite *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). [Dkt. 54 at 8 n.45]. As *Chambers* explicitly holds:

> Rule 11 "does not repeal or modify existing authority of federal courts to deal with abuses . . . under the court's inherent power." . . . Furthermore, when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power. But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power.

501 U.S. at 48-50.

There is no logical reason why such legally separate grounds for imposing sanctions are or should be limited by the specifics of Rule 11. And again, the Sanctioned Parties did not raise this

United States District Court
Northern District of California

argument previously (and thus it was waived).

The remainder of the Sanctioned Parties' motion challenging the Sanctions Order rehashes identical arguments previously raised in the briefing and/or at the hearings.  The Sanctioned Parties outline their various disagreements with the Sanctions Order but fail to point to any dispositive facts or issues, presented to the Court before the issuance of the Sanctions Order, that the Court failed to consider.  To the extent that the Sanctioned Parties make new arguments not previously raised with the Court, they do not identify any new material facts or changes in the law after the Court's issuance of the Sanctions Order that would warrant reconsideration of that decision.  Further, to the extent that the Sanctioned Parties make new arguments not previously raised with the Court, they do not explain how or why they reasonably could not have raised such arguments in the first place and at the appropriate time.

Accordingly, for all of these reasons, the Sanctioned Parties' motion seeking relief from the Sanctions Order under Civil Local Rules 72-2 and 72-3 [Dkt. 52] is **DENIED WITH PREJUDICE**.

### Motion Seeking Relief from the Fees Order

On March 31, 2025, this Court issued the Fees Order, granting Defendant's motion for attorneys' fees under 35 U.S.C. § 285, and imposing sanctions against Plaintiff's counsel, pursuant to 28 U.S.C. § 1927 and the Court's inherent authority.  *Koji*, 2025 WL 980796, at *6-18.

On April 7, 2025, the Sanctioned Parties filed a motion seeking relief from the Fees Order under Civil Local Rules 72-2 and 72-3, arguing a similar laundry list of objections that: (1) the Court lacked the authority to issue the Fees Order; (2) the Court's finding that the filing of this lawsuit constituted the filing of the same lawsuit three times was in error; (3) the Court's finding that Plaintiff accused prior art of infringing the asserted patent was in error; (4) the Court's finding of exceptionality was in error; (5) the Court's finding that the filing of this action was frivolous was in error; (6) the Court's imposition of sanctions under 28 U.S.C. § 1927 was in error; (7) the Court's imposition of sanctions under its inherent authority was in error; (8) the Court's assessment of the amount of monetary sanctions was in error; and (9) the Court's imposition of non-monetary sanctions was improper.  [Dkt. 51].

22

As discussed above, to the extent that the Sanctioned Parties seek relief from the Fees Order under Civil Local Rules 72-2 and 72-3, the motion is procedurally improper and subject to denial on that basis.

Further, to the extent that the Sanctioned Parties' motion could be construed as a motion for reconsideration of the Fees Order under Rule 54(b), the Sanctioned Parties did not file a motion for leave to file a motion for reconsideration and, therefore, the request is procedurally improper under Civil Local Rule 7-9(a) and subject to denial on that basis.

Even assuming the Sanctioned Parties' motion challenging the Fees Order was procedurally proper, the motion fails on the merits.  As with their motion directed at the Sanctions Order, the Sanctioned Parties' motion seeking relief from the Fees Order essentially rehashes arguments previously raised in the briefing and/or at the hearings, or raises "objections" which could have reasonably been raised in prior briefing but without explanation as to why such arguments were incapable of being raised at the proper time.

Accordingly, for all of these reasons, the Sanctioned Parties' motion seeking relief from the Fees Order under Civil Local Rules 72-2 and 72-3 [Dkt. 51] is **DENIED WITH PREJUDICE**.

### Motions Seeking Relief from Text Orders

On April 9, 2025 and April 14, 2025, the Court issued a series of Text Orders, setting a briefing schedule and consolidated hearing on the Sanctioned Parties' pending motions directed at the Sanctions Order and the Fees Order.  [Dkt. 56; Dkt. 60; Dkt. 61].  Following that hearing, on April 25, 2025, the Court issued a Text Order denying the Sanctioned Parties' motions with this written memorandum decision to follow.  [Dkt. 81].

The Sanctioned Parties move for relief from these Text Orders under Civil Local Rules 72-2 and 72-3.  [Dkt. 57; Dkt. 64; Dkt. 65; Dkt. 102].

The Sanctioned Parties "object" to the April 9, 2025 Text Order on four grounds (set forth in numbered "objections"), arguing that the Court erred by: (1) issuing the Text Order without the authority to do so because Plaintiff "limited" its consent to final judgment and because Defendant filed its consent form too late; (2) "not granting" the Sanctioned Parties' request for expedited

briefing on the motion to stay; (3) "requiring an in person hearing" on the pending motions; and (4) not affording the Sanctioned Parties "proper due process" or "procedural fairness."  [Dkt. 57].

The Sanctioned Parties "object" to the April 14, 2025 Text Orders on essentially the same grounds (repeated in numbered "objections"), arguing that the Court erred by: (1) issuing the Text Orders without the authority to do so because Plaintiff "limited" its consent to final judgment and because Defendant filed its consent form too late; (2) "retaining jurisdiction and issuing orders" that "directly affect the issues" under appeal; (3) "not granting" the Sanctioned Parties' request for expedited briefing on the motion to stay; (4) "requiring an in person hearing" on the pending motions; and (5) not affording the Sanctioned Parties "proper due process" or "procedural fairness."  [Dkt. 64; Dkt. 65].

The Sanctioned Parties "object" to the April 25, 2025 Text Order, arguing that: (1) the Court lacked authority to issue the Text Order because Plaintiff "limited" its consent to final judgment and because Defendant filed its consent form too late; (2) the issue of Magistrate Judge jurisdiction should have been decided by a District Judge; (3) the Court erred in finding that the motions challenging the Fees Order and the Sanctions Order were procedurally improper motions for reconsideration; and (4) the Court erred in denying the motion to stay pending appeal because the underlying Sanctions Order was erroneously decided and the non-monetary sanctions would impose "immediate and severe" harm if not stayed.  [Dkt. 102].

In these various "objections," the Sanctioned Parties seek relief under Civil Local Rules 72-2 and 72-3.  As analyzed above, Civil Local Rules 72-2 and 72-3 are inapplicable to this case, and thus, each of these motions is procedurally improper and subject to denial on that basis.

To the extent that the Sanctioned Parties' motions challenging the Text Orders could be construed as motions for reconsideration under Rule 54(b), for the reasons discussed in detail above, the Sanctioned Parties did not file corresponding motions for leave to file a motion for reconsideration and, therefore, all of these motions are procedurally improper under Civil Local Rule 7-9(a) and subject to denial on that basis.

Even assuming these motions were procedurally proper motions for reconsideration, they fail substantively.  In large part, these motions raise the same arguments regarding lack of consent

24

United States District Court
Northern District of California

to Magistrate Judge jurisdiction discussed above, and for the same reasons, the arguments are rejected as legally and substantively baseless.

To the extent that the Sanctioned Parties raise arguments concerning their requests for expedited briefing on the motion to stay and to be exempt from an in-person motion hearing, those arguments are wholly without merit. First, the motion seeking expedited briefing did not comply with Civil Local Rule 6-3, which requires, among other things, that a party seeking modification of a deadline submit a declaration that sets forth with particularity the reasons for the requested enlargement or shortening of time; describes the efforts the party has made to obtain a stipulation to the time change; identifies the substantial harm or prejudice that would occur if the Court did not change the time; if the motion is to shorten time for the Court to hear a motion, describes the moving party's compliance with Civil L.R. 37-1(a), where applicable, and describes the nature of the underlying dispute that would be addressed in the motion and briefly summarizes the position each party had taken; discloses all previous time modifications in the case, whether by stipulation or Court order; and describes the effect the requested time modification would have on the schedule for the case. Civil L.R. 6-3(a). No such declaration was filed by the Sanctioned Parties here.

Second, on the merits of the Sanctioned Parties' request for expedited briefing, their arguments were not persuasive and the undersigned, in the full exercise of discretion to control the docket, found the arguments unavailing. "The Court has the inherent power to modify the [motion briefing] deadline codified in the Local Rules and to manage its docket." *Bishop v. Potter*, No. 2:08-cv-00726-RLH-GWF, 2010 WL 11579259, at *3 (D. Nev. Apr. 12, 2010) (overruling party's objection to Magistrate Judge's minute order on expedited briefing for motion). "'The decision to grant expedited briefing' is also 'a matter left to the Court's discretion.'" *Eteros Techs. USA, Inc. v. United States*, 774 F. Supp. 3d 1358, 1361 (Ct. Int'l Trade 2025) (denying motion to expedite briefing) (citation omitted).

To the extent that the Sanctioned Parties argue that holding an in-person hearing (as opposed to a remote hearing or no hearing) was error, the request for relief fails to comply with Civil Local Rule 7-11, which requires, among other things, that a party seeking administrative

25

relief submit "a declaration that explains why a stipulation could not be obtained." Civil L.R. 7-11(a). No such declaration was filed by the Sanctioned Parties here.

Further, the merits of Sanctioned Parties' arguments seeking exemption from attending the hearing in-person were not persuasive and the undersigned, in the full exercise of discretion to manage cases, found those arguments unavailing. District courts "are afforded broad discretion to control and manage their dockets[.]" *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1358 (Fed. Cir. 2008) (applying Ninth Circuit law on procedural issues). A "district court's decision whether to hold a hearing on a motion" is within the scope of the court's discretion. *United States v. Marks*, 530 F.3d 799, 810 (9th Cir. 2008). Because the decision on whether to even hold oral argument is a matter within a court's discretion, it follows that a district court's "conduct of oral argument" and "structuring of oral argument" are reviewed for abuse of discretion. *See United States v. Rewald*, 889 F.2d 836, 855 (9th Cir. 1989). Here, mere inconvenience and cost are not sufficient cause to exempt a party or counsel from attending hearings in person, particularly where the issues involved evaluating counsel's actions which were subject (at the time of the hearings) to potential sanctions and a request for attorneys' fees. *See, e.g., Backertop Licensing LLC v. Canary Connect, Inc.*, 107 F.4th 1335, 1343-44 (Fed. Cir. 2024) (holding that a district court's order requiring a party representative "to appear at an in-person hearing falls squarely within its [the district court's inherent powers]" and that compelling attendance "was not an abuse of discretion of the District Court's inherent authority" where "attendance in person was required to assess her credibility"); *Ward v. Wesley Med. Ctr., LLC*, No. 23-1091-HLT-BGS, 2024 WL 989880, at *3 (D. Kan. Mar. 7, 2024) ("The Court has discretion to order in-person hearings when appropriate.").

Finally, for the reasons discussed above, to the extent that the Sanctioned Parties' motions "objecting" to this Court's Text Orders amount to motions for reconsideration of the Fees Order and the Sanctions Order, the motions are procedurally defective under Civil Local Rule 7-9 (because no corresponding motions seeking leave to file for reconsideration were filed or granted). Moreover, these motions are substantively deficient because they either repeat arguments made in opposing the underlying Orders or raise arguments and issues which, in the exercise of reasonable

26

diligence, could have been raised in opposing the issuance of the underlying Orders (and no excuse or reasons are given as to why they could not have been raised timely).

Accordingly, for all of these reasons, the Sanctioned Parties' "objections" are overruled and the motions seeking relief from the Court's Text Orders [Dkt. 57; Dkt. 64; Dkt. 65; Dkt. 102] are **DENIED WITH PREJUDICE**.

## II.    Motions for Relief under Rule 59(e)

In addition to their motions seeking relief under Civil Local Rules 72-2 and 72-3, the Sanctioned Parties filed separate motions seeking relief from the Sanctions Order and the Fees Order under Rule 59(e), styled as "Motions to Amend Judgment." [Dkt. 79; Dkt. 89]. Defendant filed a combined opposition to these motions, and Plaintiff filed separate replies. [Dkt. 101; Dkt. 107; Dkt. 108].

Federal Rule of Civil Procedure 59(e) allows a party to file a motion to alter or amend a judgment within twenty-eight days after entry of the challenged judgment. Whether to grant a motion under Rule 59(e) is governed by Ninth Circuit law. *See EscapeX IP, LLC v. Google LLC*, 159 F.4th 1360, 1365 (Fed. Cir. 2025) ("We [] review a district court's denial of a Rule 59(e) motion to amend a judgment under the regional circuit's law.") (alteration omitted).

District courts have "considerable discretion" when ruling on a motion under Rule 59(e). *Kaufmann v. Kijakazi*, 32 F.4th 843, 850 (9th Cir. 2022) (quoting *Turner v. Burlington N. Santa Fe R.R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003)). Further, "[a] Rule 59(e) motion is an 'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources.'" *Id.* (quoting *Wood v. Ryan*, 759 F.3d 1117, 1121 (9th Cir. 2014)). Relief pursuant to Rule 59(e) is granted only in "highly unusual circumstances." *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999). "A Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier." *EscapeX IP*, 159 F.4th at 1368 (quoting *Wells Fargo Bank, N.A. v. Mahogany Meadows Ave. Tr.*, 979 F.3d 1209, 1218 (9th Cir. 2020)).

There are four grounds upon which a Rule 59(e) motion may be granted: (1) the motion is necessary to correct manifest errors of law or fact upon which the judgment is based; (2) the

27

moving party presents newly discovered or previously unavailable evidence; (3) the motion is necessary to prevent manifest injustice; or (4) there is an intervening change in controlling law. *Turner*, 338 F.3d at 1063.

With respect to their Rule 59(e) motion directed at the Sanctions Order, the Sanctioned Parties argue that: (1) the Court lacked authority to issue the Sanctions Order; (2) the Court's imposition of monetary sanctions under Rule 11 constituted a manifest error in law; (3) the Court's finding that Plaintiff's filing of this third action against Defendant violated Rule 11 was a manifest error in law; (4) the Court's finding that Mr. Ramey and Mr. Kubiak engaged in the unauthorized practice of law in California and that Ms. Kalra aided and abetted the unauthorized practice of law was a manifest error in law and fact; (5) the Court's reference to other cases where sanctions had been awarded constituted a manifest error in law and fact; (6) the Court committed "manifest error" by "issuing sanctions in closed cases;" (7) the Court's imposition of sanctions under its inherent authority was a manifest error in law; (8) the Court's finding that any future cases by clients of the Ramey Law Firm filed in California would be in violation of the rules was "manifest error;" (9) the sanctions imposed by the Court were "improper;" and (10) the Court's finding that Mr. Ramey's declaration was inaccurate was a manifest error in fact.  [Dkt. 79].

With regard to the Rule 59(e) motion directed at the Fees Order, the Sanctioned Parties similarly argue that: (1) the Court lacked jurisdiction to issue the Fees Order; (2) the Court's finding that the filing of the instant action violated the two-dismissal rule was a manifest error in law and fact; (3) the Court's finding that Plaintiff accused prior art of infringing the asserted patent claims was a manifest error of law and fact; (4) the Court's finding that the instant case was "exceptional" was a manifest error of law and fact; (5) the Court's finding that this action was frivolous was a manifest error in law and fact; (6) the Court's imposition of sanctions under 28 U.S.C. § 1927 was a manifest error of law and fact; (7) the Court's imposition of sanctions under its inherent authority was a manifest error of law and fact; (8) the Court's awarding of fees was in error; and (9) the sanctions were "improper" and "manifest error in law."  [Dkt. 89].

As an initial matter, to the extent that the Sanctioned Parties seek relief under Rule 59(e), the motions are procedurally and jurisdictionally improper and subject to denial on that basis.  As

United States District Court
Northern District of California

United States District Court
Northern District of California

expressly held by the Federal Circuit, because this Court has not yet determined the amount of Defendant's recoverable attorneys' fees, the Fees Order lacks finality under Rule 54. *See Special Devices, Inc. v. OEA, Inc.*, 269 F.3d 1340, 1343 (Fed. Cir. 2001); *Falana v. Kent State Univ.*, 669 F.3d 1349, 1359 (Fed. Cir. 2012) ("A decision to award attorney fees under 35 U.S.C. § 285 is not final and appealable before the award has been quantified."). Here, the Federal Circuit granted Defendant's motion to dismiss Plaintiff's appeal of the Fees Order and the Sanctions Order as premature, to the extent that the appeal was held in abeyance until this Court's resolution of "all issues regarding the March 26 and 31, 2025 orders, including sanctions and quantified attorney fees." [Dkt. 109 at 2].

And, while the monetary sanctions imposed by this Court in the Sanctions Order have been quantified, the Sanctions Order only discharged the Order to Show Cause in part, subject to the Sanctioned Parties' compliance with the Court's other directives set forth in that Order. *Koji*, 2025 WL 917110, at *21. Thus, with regard to the Sanctions Order, the Court cannot enter a final judgment for purposes of Rule 59(e) until after the Sanctioned Parties have fully complied with the non-monetary terms of the Sanctions Order and reported the same to this Court. *See United States v. F&M Schaefer Brewing Co.*, 356 U.S. 227, 232 (1958) (A pronouncement amounts to a final judgment where it "clearly evidences the judge's intention that it shall be his final act in the case."); *Nat'l Distrib. Agency v. Nationwide Mut. Ins. Co.*, 117 F.3d 432, 434 (9th Cir. 1997) ("What essentially is required is some clear and unequivocal manifestation by the trial court of its belief that the decision made, so far as it is concerned, is the end of the case.").

For these reasons, there has not yet been entry of judgment adjudicating all claims and all Parties' rights and liabilities to preclude relief under Civil Local Rule 7-9(a) and Rule 54(b). Rule 59(e), which allows relief from "judgments," is therefore not the proper vehicle for seeking relief. *See Jones v. Nat'l R.R. Passenger Corp.*, No. 15-cv-02726-TSH, 2023 WL 6450528, at *2 (N.D. Cal. Oct. 2, 2023).

Even if these procedural barriers were set aside, substantively, the Sanctioned Parties have not shown that relief is warranted under Rule 59(e) as to either the Sanctions Order or the Fees Order on any of the grounds summarized above. To the contrary, on the whole, the Sanctioned

29

United States District Court
Northern District of California

Parties simply disagree with the Court's analysis in those two Orders and repeat their arguments on the merits, which is not a sufficient basis for modifying a judgment under Rule 59(e).

Nor are the Sanctioned Parties entitled to relief under Rule 59(e), to the extent that they attempt to present additional facts and/or raise new arguments that were available to them during the proceedings in this case. *See Marlyn*, 571 F.3d at 880 ("A motion for reconsideration may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation."); *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999) (finding no abuse of discretion where court declined to address issue raised for the first time in a Rule 59(e) motion). Indeed, at the conclusion of the final hearing on these matters, counsel all agreed that the matters were submitted.

In the motions seeking relief under Rule 59(e), the Sanctioned Parties provide no excuses or reasonable bases as to why their non-repetitive arguments and factual assertions (to the extent any are new or cite case law that was not previously cited) could not have been raised reasonably at the appropriate time in the original briefing or at the hearings opposing the issuance of the Fees Order and the Sanctions Order. Indeed, three of the declarations submitted in support of the Rule 59(e) motion directed at the Sanctions Order are declarations from the Sanctioned Parties themselves (Mr. Ramey, Ms. Kalra, and Mr. Kubiak), one of which attaches multiple exhibits which either predate the hearing on the sanctions issue, or discuss facts which predate the hearing. [Dkts. 79-1; Dkt. 79-15; Dkt. 79-16]. Similarly, the fourth declaration submitted in support of this motion is from the principal of Koji, discussing facts which predate the hearings on the sanctions and fees issues. [Dkt. 79-17]. Clearly, the information available to these sanctioned attorneys and their client was always available to them to submit to the Court at the appropriate time, and not belatedly on this motion.

In support of the Rule 59(e) motion directed at the Fees Order, the Sanctioned Parties submit virtually identical declarations from sanctioned attorney, Mr. Ramey, and from the principal of Koji. *See* Dkt. 89-1, 89-11. This information was clearly available to Mr. Ramey and his client to submit to the Court at the appropriate time, and not belatedly on this motion. The Sanctioned Parties make no effort to avoid the legal doctrine that a "Rule 59(e) motion may not be

30

United States District Court
Northern District of California

used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier." *EscapeX IP*, 159 F.4th at 1368.

Accordingly, the Sanctioned Parties' motions to amend judgment with regard to the Sanctions Order and the Fees Order under Rule 59(e) [Dkt. 79; Dkt. 89] are **DENIED WITH PREJUDICE**.

### III.    Motion to Stay

On April 8, 2025, the Sanctioned Parties filed a motion to stay enforcement of the monetary sanctions and self-reporting requirements imposed by this Court pending appeal. [Dkt. 54]. Defendant filed a response in opposition to the motion, and the Sanctioned Parties filed a reply. [Dkt. 67; Dkt. 73].

As discussed above, the Court held a hearing on the motion to stay on April 23, 2025, and on April 25, 2025, the Court issued a Text Order denying the motion with this written memorandum to follow. [Dkt. 81].

In patent cases, Ninth Circuit law governs whether to grant a motion to stay pending appeal. *ASUSTek Comput. Inc. v. Ricoh Co.*, No. C 07-01942 MHP, 2007 WL 4190689, at *2 (N.D Cal. Nov. 21, 2007). The grant of a stay pending appeal is "an exercise of judicial discretion" and "[t]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Vasquez Perdomo v. Noem*, 148 F.4th 656, 678 (9th Cir. 2025) (quoting *Nken v. Holder*, 556 U.S. 418, 433-34 (2009)); *see also Clinton v. Jones*, 520 U.S. 681, 708 (1997).

In determining whether a stay pending appeal is warranted, the Court considers four factors: (1) whether the applicant has made a strong showing that they will likely succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Vasquez Perdomo*, 148 F.4th at 678 (quoting *Newsom v. Trump*, 141 F.4th 1032, 1044 (9th Cir. 2025)). The first two factors are the "most critical" in evaluating whether to grant a motion to stay. *Id.* at 689 (quoting *Nken*, 556 U.S. at 434). Under the first factor, the burden is on the moving party to make a "strong showing" that they are likely to succeed on the

31

merits of the appeal. *Id.* at 678 (quoting *Nken*, 556 U.S. at 434).

Here, the Sanctioned Parties fail to meet their burden to show entitlement to stay of enforcement of the imposed sanctions pending appeal.

First, the Sanctioned Parties have not shown a significant chance of success on appeal; rather, the Sanctioned Parties either rehash arguments previously raised (and found unpersuasive) or make arguments which reasonably could have been raised previously at the appropriate time. The Sanctioned Parties repeat their arguments, discussed and rejected in detail above, that the Court lacked authority to impose sanctions under Rule 11 because the Order to Show Cause issued "too late" and that somehow sanctions under the Court's inherent power is limited by Rule 11. [Dkt. 54 at 8]. As discussed above, the caselaw cited by Sanctioned Parties holds explicitly to the contrary. *See Chambers*, 501 U.S. at 48-50 ("Rule 11 'does not repeal or modify existing authority of federal courts to deal with abuses . . . under the court's inherent power.' . . . [N]othing in the other sanctioning mechanisms or prior cases interpreting them that warrants a conclusion that a federal court may not, as a matter of law, resort to its inherent power to impose attorney's fees as a sanction for bad-faith conduct. This is plainly the case where the conduct at issue is not covered by one of the other sanctioning provisions. But neither is a federal court forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned under the statute or the Rules.").

Further, the Sanctioned Parties repeat their previously rejected arguments that the two-dismissal rule does not apply to the circumstances here. [Dkt. 54 at 8-10]. Citing *Lake at Las Vegas Investors Group, Inc. v. Pacific Malibu Development Corp.*, 933 F.2d 724 (9th Cir. 1991), the Sanctioned Parties argue that "[t]he Ninth Circuit has recognized cases where exceptions have been found to the two-dismissal rule." *Id.* at 9 n.52. However, the Sanctioned Parties' reliance on *Lake at Las Vegas* is without merit.

First, no reasons are provided as to why the Sanctioned Parties could not have reasonably cited *Lake at Las Vegas* in their original briefing on this issue. Even more importantly, in *Lake at Las Vegas*, the Ninth Circuit recognized only that *the Second Circuit* has recognized an exception to the two-dismissal rule (specifically, where one of the prior dismissals was accomplished by

stipulation knowingly consented to by all parties).  933 F.2d at 727.  The Ninth Circuit found that this Second Circuit exception "when followed, has been limited to its facts and does not preclude application of the [two-dismissal] bar where the voluntary dismissal is unilateral."  *Id.*  Thus, contrary to the Sanctioned Parties' conclusory and unexplained argument, the Ninth Circuit has not itself recognized an exception to the two-dismissal rule; rather, the Ninth Circuit has merely recognized that the Second Circuit's exception exists and has been limited to its facts.  Notably, such facts are wholly absent here—none of the dismissals filed by Koji in the trilogy of patent infringement actions against REA was the result of a stipulation knowingly consented to by REA.  Rather, the dismissals in all three cases were unilaterally filed by Koji and thus, under the very case law cited by the Sanctioned Parties, nothing "preclude[s] application of the [two-dismissal] bar where the voluntary dismissal is unilateral."  *Id.*

Accordingly, the Sanctioned Parties have not made an adequate showing that they will likely succeed on the merits on appeal and, thus, the first factor does not support a stay.

As to the second factor, the Sanctioned Parties have not shown that they will be irreparably harmed absent a stay.  As noted, the Sanctions Order and the Fees Order require the Sanctioned Parties to self-report to certain bars of which they are admitted and to certain courts, as well as to take CLE classes on legal ethics, professional conduct, and law practice management.  *Koji*, 2025 WL 917110, at *23; *Koji*, 2025 WL 980796, at *19.  The Sanctioned Parties argue that these non-monetary sanctions are "severe and unwarranted" and are "potentially career ending."  [Dkt. 54 at 16].

As to the required self-reporting to bars of which they are members, all three sanctioned attorneys have already complied.  *See* Dkts. 86, 87, 88.  Thus, a stay of those portions of the Court's Orders is moot.

As to the requirement that the sanctioned attorneys attend CLE classes as a non-monetary sanction, the deadline for completion is March 27, 2026.  Accordingly, assuming the Sanctioned Parties have diligently worked towards compliance with the requirement to attend CLE classes since March 2025, a stay of that portion of the Court's Orders is or will soon be moot as well.

Further, requiring attorneys to attend CLE classes is a usual and often-imposed sanction

United States District Court
Northern District of California

for attorney misconduct, and this sanction is less severe than other non-monetary sanctions, such as a pre-filing injunction. *Cf. mCom IP, LLC v. Cisco Sys., Inc.*, No. 6:22-cv-00261-ADA, ECF No. 78 at 14-18 (W.D. Tex. Dec. 18, 2025) (imposing injunction against sanctioned attorney Mr. Ramey and Ramey LLP, enjoining them "from filing future complaints in the Western District of Texas asserting a claim of patent infringement without the advance permission from a judge of the Western District of Texas, the Fifth Circuit, or a delegee thereof").

The Sanctioned Parties complain of the severity of the requirement that they attach the Sanctions Order and the Fees Order to any motions for *pro hac vice* admission filed, either by them or on their behalf, in any California federal court for the five-year period from the date of the Sanctions Order. This appears to be the primary basis for the Sanctioned Parties' assertions that the sanctions are "potentially career ending" and overly harsh. Rhetoric aside, the Sanctioned Parties' arguments are contradicted by facts. First, even after being presented with the Sanctions Order and the Fees Order, the State Bar of Texas issued a final decision *not* to open grievance proceedings against Mr. Ramey and closed the matter. [Dkt. 118]. According to online bar membership records, all three sanctioned attorneys retain their membership in their respective local state bars. Further, a DocketNavigator database search for patent lawsuits filed during the period from March 27, 2026 through March 2, 2026 indicates that the Ramey Law Firm has commenced over 180 new patent lawsuits in federal district courts nationwide since the Sanctions Order issued. As of March 2, 2026, 105 of those patent lawsuits remain active. Further, a press report, dated October 14, 2025, states that sanctioned attorney, Mr. Ramey, "remains one of the country's most prolific filers of patent infringement lawsuits even as courts have sanctioned his firm and/or his clients at least 23 times." Lauren Castle, *Ramey's Proxy Patent Tactics Put Local Attorneys in Jeopardy*, BLOOMBERG LAW (Oct. 14, 2025), https://news.bloomberglaw.com/ip-law/rameys-proxy-patent-tactics-put-local-attorneys-in-jeopardy. There is simply no factual basis for the allegations of risk of harm to the Sanctioned Parties' careers.

Accordingly, for these reasons, the Sanctioned Parties have failed to demonstrate that they will be irreparably injured absent a stay, and thus, the second factor does not support a stay. For these same reasons and for the simple reason that the motion to stay fails to substantively discuss

34

the request to set a bond referenced in the motion's title, the Sanctioned Parties have failed to demonstrate that a bond should be set for a stay pending appeal.

As to the third factor, the Sanctioned Parties do not identify any other parties that would suffer injury from a stay, referring only to risk of professional harm to themselves. The Sanctioned Parties argue that Defendant would not be harmed by a stay, because they do not seek a stay of any payment to Defendant. [Dkt. 54 at 17]. However, this argument is illusory because the Fees Order only granted Defendant's motion for attorneys' fees without quantifying the amount of that award—by definition, the stay motion could not impact an award of actual fees because the fees have not yet been quantified. Accordingly, the Sanctioned Parties have not persuasively addressed whether other parties interested in the proceedings will be substantially injured by a stay. Thus, the third factor is, at best, neutral with regard to a stay and, at worst, slightly militates against a stay.

As to the fourth factor, the Sanctioned Parties do not make any argument regarding the public's interest in a stay. Indeed, the Sanctioned Parties admit that "the public certainly has an interest in lawyers performing their duties properly[.]" [Dkt. 54 at 17]. This admission militates against a stay. The Sanctioned Parties do not discuss whether or how the public interest would support a stay, because the "public interest" portion of the motion focuses almost exclusively on the Sanctioned Parties' private interests. *Id.* (arguing for a stay because of asserted risk of damage to Sanctioned Parties' careers with allegedly no harm to Defendant). Accordingly, the Sanctioned Parties have failed to persuasively address the public interest issue. Thus, the fourth factor is, at best, neutral with regard to a stay and, at worst, slightly militates against a stay.

Having considered all of these factors together (including the first two factors which are most critical), the Court finds in its discretion that the Sanctioned Parties have failed to meet their burden to show that a stay of enforcement pending appeal would be warranted. Therefore, the Sanctioned Parties' motion for a stay [Dkt. 54] is **DENIED WITH PREJUDICE**.

## **CONCLUSION**

Accordingly, for all of the reasons discussed herein, **IT IS HEREBY ORDERED THAT**:

1.  The Sanctioned Parties' motion seeking relief from the Sanctions Order [Dkt. 52] is

35

United States District Court
Northern District of California

**DENIED WITH PREJUDICE**.

2. The Sanctioned Parties' motion seeking relief from the Fees Order [Dkt. 51] is **DENIED WITH PREJUDICE**.

3. The Sanctioned Parties' motions seeking relief from the Court's Text Orders [Dkt. 57; Dkt. 64; Dkt. 65; Dkt. 102] are **DENIED WITH PREJUDICE**.

4. The Sanctioned Parties' motions to amend judgment under Federal Rule of Civil Procedure 59(e) [Dkt. 79; Dkt. 89] are **DENIED WITH PREJUDICE**.

5. The Sanctioned Parties' motion for a stay pending appeal of the Sanctions Order and the Fees Order [Dkt. 54] is **DENIED WITH PREJUDICE**.

**IT IS SO ORDERED.**

Dated:  March 20, 2026

PETER H. KANG
United States Magistrate Judge