UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| KOJI IP, LLC,<br><br>        Plaintiff,<br><br>        v.<br><br>RENESAS ELECTRONICS AMERICA, INC.,<br><br>        Defendant. | Case No. 24-cv-03089-PHK<br><br>**ORDER QUANTIFYING AND AWARDING ATTORNEYS' FEES; ORDER TO SHOW CAUSE**<br><br>Re: Dkts. 18, 43, 62, 66, 96 |

This is the third patent infringement action brought by Plaintiff Koji IP, LLC ("Koji") against Defendant Renesas Electronics America, Inc. ("REA"), asserting the exact same patent against the same products in each case. By executing and filing the Court's standard consent form, all Parties consented to proceed before a Magistrate Judge for all proceedings in this case, in accordance with 28 U.S.C. § 636(c). [Dkt. 10; Dkt. 20].

On June 26, 2024, REA filed a motion to recover its attorneys' fees under 35 U.S.C. § 285, and to have those amounts jointly and severally levied against Koji and its counsel (collectively, the "Sanctioned Parties"), pursuant to 28 U.S.C. § 1927. [Dkt. 18]. On March 31, 2025, the Court granted REA's motion, finding that REA had established entitlement to fees, but finding that the existing record was insufficient to calculate the exact amount of the award. [Dkt. 43]. The Court ordered REA to submit complete justification for the fees sought to which it was entitled, and directed the Parties to file supplemental briefing regarding REA's submission, if any. *Id.*

As directed by the Court, on April 14, 2025, REA's counsel filed a declaration and supplemental evidence in support of REA's fees request. [Dkt. 62]. On April 16, 2025, the Sanctioned Parties filed objections to the declaration, to which REA filed a response on May 5,

2025.  [Dkt. 66; Dkt. 96].

The Court finds the matter suitable for resolution without need for additional oral argument.  *See* Civil L.R. 7-1(b).  As discussed herein, this Order sets forth the amount of attorneys' fees that the Court awards REA in accordance with the Court's March 31, 2025 Order.

## **RELEVANT BACKGROUND**

Familiarity with the detailed history of this series of three cases is assumed, as set forth in this Court's Orders, dated March 26, 2025 and March 31, 2025, incorporated by reference here.  *See Koji IP, LLC v. Renesas Elecs. Am., Inc.*, No. 24-cv-03089-PHK, 2025 WL 917110 (N.D. Cal. Mar. 26, 2025); *Koji IP, LLC v. Renesas Elecs. Am., Inc.*, No. 24-cv-03089-PHK, 2025 WL 980796 (N.D. Cal. Mar. 31, 2025).

In sum, Koji filed the first of three identical patent lawsuits against REA in the District of Colorado (*Koji I* or the "First Action"), and after correspondence between the Parties, Koji filed a notice of voluntary dismissal of *Koji I*.  Koji then filed the second of these three identical lawsuits against REA in the Northern District of California (*Koji II* or the "Second Action"), and after correspondence between the Parties, Koji filed a notice of voluntary dismissal of *Koji II*.  Despite these two prior dismissals, Koji filed this Third Action between Koji and REA (*Koji III* or the "Third Action"), and after the Parties exchanged correspondence, Koji filed a notice of voluntary dismissal with prejudice in this case under Federal Rule of Civil Procedure 41(a)(1)(A)(i).  [Dkt. 12].  Prior to filing the notice of voluntary dismissal here, Koji's counsel executed and filed Koji's consent to Magistrate Judge jurisdiction in this case for all further proceedings.  [Dkt. 10].

Because Koji filed its notice of voluntary dismissal in this case before completing service of process, and thus without filing proof of service of the complaint and summons on REA, REA never had opportunity to respond to the complaint formally.  REA's counsel filed a notice of appearance on June 26, 2024 and, on that same day, REA's counsel executed and filed REA's consent to Magistrate Judge jurisdiction in this case for all further proceedings.  [Dkt. 14; Dkt. 20].

REA subsequently filed the instant motion to recover its attorneys' fees and requested that those fees be levied against not just Koji but also Koji's counsel jointly and severally under 28

2

U.S.C. § 1927 and the Court's inherent authority. [Dkt. 18]. In support of the motion, REA submitted a declaration and exhibits of one of its attorneys, Mr. Charkow. [Dkt. 19]. Koji filed an opposition to REA's motion and REA filed a reply. [Dkt. 24; Dkt. 25]. The Court heard oral argument on the motion on August 22, 2024. *See* Dkt. 26.

On March 31, 2025, the Court issued an Order (hereinafter, "Fees Order"), granting REA's motion for attorneys' fees. *Koji*, 2025 WL 980796, at *1. The Court determined that, pursuant to 35 U.S.C. § 285, REA was entitled to: (1) fees incurred by REA in the Second Action between Koji and REA on or after January 3, 2024; and (2) fees incurred in the Third Action associated with responding to the complaint in this Third Action. *Id.* at *15. The Court further determined that, pursuant to 28 U.S.C. § 1927, REA was entitled to fees incurred in the Third Action associated with litigating the fees motion and the Order to Show Cause. *Id.* at *17. Based on the Court's finding that Koji's filing of the Third Action was frivolous and Koji's counsel acted in bad faith on multiple occasions, the Court found the Ramey firm lawyers jointly and severally liable for the attorneys' fees awarded under 28 U.S.C. § 1927 and under the Court's inherent authority. *Id.* The Court directed REA to submit a complete justification of its fees including the rates charged and time spent, organized to facilitate the Court's review and adjustment of those fees. *Id.* at *19.

On April 14, 2025, REA's counsel timely filed a declaration with exhibits in support of the fee amount. [Dkt. 62].

On April 16, 2025, the Sanctioned Parties filed objections to REA's declaration, arguing that it should be stricken in its entirety. [Dkt. 66]. Specifically, the Sanctioned Parties argue that: (1) the declaration fails to comply with Civil Local Rule 54-5(b)(2); (2) REA improperly submitted time entries concerning work performed in the Second Action; (3) REA improperly submitted time entries concerning work performed after Koji's voluntary dismissal of the Third Action on June 12, 2024; (4) REA improperly submitted time entries concerning work performed on the Order to Show Cause; and (5) REA improperly submitted time entries concerning work performed by "attorneys who had not entered an appearance when they billed the time." *Id.* at 2-6. The Sanctioned Parties raise no objections to, or otherwise address, the reasonableness of the

hourly billing rates, the reasonableness of the number of hours billed, or REA's allocation of fees.

On May 5, 2025, REA filed its response to Koji's objections. [Dkt. 96]. REA opposes the request to have REA's fees declaration stricken. *Id.* at 2. REA notes that, in the objections, "Koji did not object to the hourly rates set forth in the declaration, nor did it contest any of the tasks performed or the allocation of the fees under 35 U.S.C. § 285, under 28 U.S.C. § 1927, including the carveouts based on the *Keegan* case, or the total amount of recoverable fees." *Id.* (internal citations omitted).

The ancillary procedural history relating to REA's motion for attorneys' fees and the resulting Fees Order shows a multi-pronged set of "objections" and motions filed by the Sanctioned Parties challenging the Fees Order and seeking various forms of relief. The Court has issued a separate Order resolving all of these various objections and motions, because the arguments raised therein are distinct from the issue addressed in this Order (quantifying the amount of fees to be awarded). [Dkt. 119]. That separate contemporaneous Order is incorporated by reference.

In addition to the motions practice in this Court, on April 8, 2025, Koji also filed an appeal to the Federal Circuit seeking review of the Fees Order. [Dkt. 53]; *see Koji IP, LLC v. Renesas Elecs. Am., Inc.*, No. 25-1639, ECF No. 1 (Fed. Cir. Apr. 11, 2025). REA filed a motion to dismiss the appeal as premature. *Koji*, No. 25-1639, ECF No. 10 (Fed. Cir. Apr. 16, 2025). On May 19, 2025, the Federal Circuit granted REA's motion to dismiss the appeal, in part, holding the action in abeyance until this Court's resolution of "all issues regarding the March 26 and 31, 2025 orders, including sanctions and quantified attorney fees." [Dkt. 109].

On April 22, 2025, the Sanctioned Parties filed an application with the United States Supreme Court seeking a stay of enforcement of the Fees Order. [Dkt. 74]. The Chief Justice denied that application on April 25, 2025. *Koji IP, LLC v. Renesas Elecs. Am., Inc.*, No. 24A1034 (U.S. Apr. 25, 2025) (Roberts, C.J., in chambers).

## **LEGAL STANDARD**

In patent cases, the calculation of fees under 35 U.S.C. § 285 is governed by Federal Circuit law; the calculation of fees under 28 U.S.C. § 1927 is governed by the law of the regional

4

circuit. *EscapeX IP, LLC v. Google LLC*, 159 F.4th 1360, 1365 (Fed. Cir. 2025); *Bywaters v. United States*, 670 F.3d 1221, 1227-28 (Fed. Cir. 2012) ("[W]e have consistently applied our law to claims for attorneys' fees under section 285 of the Patent Act because section 285 relates to an area of substantive law within our exclusive jurisdiction."). While the Court applies the appropriate law for establishing the amount of fees under each statute herein (as discussed below), the Court notes that there are no materially substantive differences between Federal Circuit and Ninth Circuit jurisprudence on these issues.

An award of attorneys' fees must be reasonable. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 562 (1986) ("There are over 100 separate statutes providing for the award of attorney's fees; and although these provisions cover a wide variety of contexts and causes of action, the benchmark for the awards under nearly all of these statutes is that the attorney's fee must be 'reasonable.'"); *Mathis v. Spears*, 857 F.2d 749, 754 (Fed. Cir. 1988) ("Section 285's requirement that the fees awarded be 'reasonable' is a safeguard against excessive reimbursement."); *Matter of Yagman*, 796 F.2d 1165, 1185 (9th Cir. 1986) ("Recovery should never exceed those expenses and fees that were reasonable necessary to resist the offending action."). The Court has discretion to determine what constitutes a reasonable amount. *Lumen View Techs. LLC v. Findthebest.com, Inc.*, 811 F.3d 479, 483 (Fed. Cir. 2016) (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 558 (2010)); *EscapeX IP*, 159 F.4th at 1365; *see also Homeland Housewares, LLC v. Sorensen Rsch*, 581 F. App'x 877, 881 (Fed. Cir. 2014) (District courts have "considerable discretion" in determining the amount of fees under § 285.).

The starting point for calculating attorneys' fees is the "lodestar" figure, which is the number of hours reasonably expended in the litigation multiplied by a reasonable hourly rate. *Perdue*, 559 U.S. at 558; *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (Supreme Court "case law construing what is a 'reasonable' fee applies uniformly to all" federal fee-shifting statutes that permit the award of reasonable fees.). "This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley*, 461 U.S. at 433. There is a "strong presumption" that the lodestar amount represents a reasonable fee. *Perdue*, 559 U.S. at 553-54.

5

Only in "rare circumstances" should the lodestar figure be adjusted on the basis of other considerations. *Id.*

In determining a reasonable hourly rate, courts are guided by the rate "prevailing in the community for similar services by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of L.A.*, 796 F.2d 1205, 1210-11 (9th Cir. 1986) (citing *Blum v. Stensen*, 465 U.S. 886, 895 n.11 (1984)); *see also Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1349 (Fed. Cir. 2008) ("[T]o determine an award of attorneys' fees, a court in general should use the forum rate in the lodestar calculation."). The requesting party has the burden to demonstrate that the rates requested are "in line" with the prevailing market rate of the relevant community. *Blum*, 465 U.S. at 895 n.11 ("To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.").

In determining a reasonable amount of time spent, courts are instructed to award fees only for "hours reasonably expended on the litigation" and to exclude "hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 433-34. "There is no precise rule or formula for making these determinations." *Id.* at 436. "The court necessarily has discretion in making this equitable judgment." *Id.* at 437.

The party seeking fees bears burden of establishing the hours expended litigating the case and must provide detailed time records documenting the tasks completed and the amount of time spent. *Id.* at 434. "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.* at 433. However, the party seeking fees need not provide comprehensive documentation to prevail. *Id.* at 437 & n.12.

## ANALYSIS

### I.    Reasonableness of Hourly Billing Rate

To determine the appropriate lodestar amount, the Court must assess the reasonableness of counsel's claimed hourly billing rate. As noted above, in making this determination, the Court is guided by the prevailing rate in the relevant legal community for similar services performed by

United States District Court
Northern District of California

lawyers of comparable skill, experience, and reputation. *Blum*, 465 U.S. at 895 n.11. The Court also considers: (1) the novelty and complexity of the issues; (2) the special skill and experience of counsel; (3) the quality of representation; and (4) the results obtained from the litigation. *Delaware Valley*, 478 U.S. at 565.

Here, REA seeks fees for work performed by four timekeepers:

- Attorney Jason A. Crotty, who represented REA in all three actions brought by Koji, is a partner at Maschoff Brennan. [Dkt. 62 at 3]. Mr. Crotty graduated from the University of Michigan Law School in 1997 and has approximately twenty-five years of patent litigation experience. *Id.* Mr. Crotty's hourly rate for work performed on this case is $575, which he avers is a "discounted rate." *Id.* at 4.

- Attorney Lance Jensen, who provided analysis of the asserted patent and its claims, is a partner at Maschoff Brennan. *Id.* at 3-4. Mr. Jensen graduated from the University of Texas School of Law in 2009. *Id.* at 4. He has a degree in electrical engineering and is a registered patent attorney. *Id.* Mr. Jensen's hourly rate for work performed on this case is $575, which is a "discounted rate." *Id.*

- Attorney Benjamin Charkow, who together with Mr. Crotty performed the majority of legal work for REA in this case, is a partner at Maschoff Brennan. *Id.* at 3-4. Mr. Charkow graduated from Cardozo Law School in 2003 and has more than twenty years of experience practicing law. *Id.* at 4. Mr. Charkow's hourly rate for work performed on this case is $525, which is a "discounted rate." *Id.*

- Emily Sullenberger is a paralegal at Maschoff Brennan who assisted the attorneys on this case. *Id.* at 3-4. Ms. Sullenberger's hourly rate for work performed on this case is $230, which is a "discounted rate." *Id.*

After reviewing the supporting declaration and considering these individuals' experience, their professional qualifications, and the nature of their responsibilities in this matter, the Court finds that the requested hourly rates are reasonable. As an initial matter, the Court notes that the Sanctioned Parties did not object to or otherwise address the reasonableness of the billed hourly rates, and therefore, have waived any arguments pertaining to those issues. As an additional point

United States District Court
Northern District of California

of reference, it is worth noting that the undersigned spent over thirty years in private practice prior to taking the bench, focusing primarily on patent litigation as a partner over the years both at a Silicon Valley patent boutique as well as a partner in the San Francisco and Palo Alto offices of two different international law firms. Based on the undersigned's personal and direct experience with billing rates for patent litigation attorneys in the Northern District of California, the requested rates are reasonable and in line with the market. *Blum*, 465 U.S. at 895 n.11; *Vargas v. Howell*, 949 F.3d 1188, 1199 (9th Cir. 2020) ("[J]udges are justified in relying on their own knowledge of customary rates and their experience concerning reasonable and proper fees."). Further, in support of the requested fees, REA's counsel's declaration includes an attestation by Mr. Crotty (the most senior partner working on this case) that, based on his knowledge and experience in this market, the requested rates are consistent with (and arguably lower than) the rates found reasonable for patent litigation lawyers in the Northern District of California. [Dkt. 62 at 4 (citing precedent in the Northern District of California in which rates for partners ranging from $475-$975 per hour, partner rates ranging from $850-$795 per hour, and associate rates ranging from $300-$490 per hour were all held reasonable).

Further, based on a review of fee awards in patent cases venued in the Northern District of California, the hourly rates requested for Mr. Crotty, Mr. Charkow, Mr. Jensen, and Ms. Sullenberger are within the range of reasonable hourly rates for legal professionals of comparable skill, experience, and reputation doing similar work in the relevant market. *See, e.g.*, *Max Sound Corp. v. Google Inc.*, No. 14-cv-04412-EJD, 2017 WL 4536342, at *12 (N.D. Cal. Oct. 11, 2017) (approving hourly rates ranging from $336/hour to $950/hour for "seasoned patent litigators with roughly to years of experience or more" to be "in line with the billing rates for attorneys with similar qualifications in the Bay Area"); *Dropbox, Inc. v. Thru Inc.*, No. 15-cv-01741-EMC, 2017 WL 914273, at *4 (N.D. Cal. Mar. 8, 2017) (finding "rates ranging from $275/hour for a paralegal to $900/hour for a senior partner" to be reasonable).

Accordingly, in light of the record presented (and the lack of objection) and applying appropriate legal standards, the Court **FINDS** that the requested rates are reasonable.

**II.    Reasonableness of Hours Billed**

To determine whether the number of hours billed is reasonable, the party seeking fees must submit detailed time records justifying the hours claimed to have been expended. *Hensley*, 461 U.S. at 433-34. A court may reduce the hours in its discretion "where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; [or] if hours expended are deemed excessive or otherwise unnecessary." *Chalmers*, 796 F.2d at 1210.

In the Fees Order, the Court awarded REA attorneys' fees for a portion of the work in the Second Action (from January 3, 2024 onward), as well as for the entirety of the Third Action excluding time spent on responding to the complaint in accordance with the Ninth Circuit's holding in *In re Keegan Management Co., Securities Litigation*, 78 F.3d 431 (9th Cir. 1996). *Koji*, 2025 WL 980796, at *15, *17. Further, in connection with the Third Action, the Court awarded fees to REA for work on the Order to Show Cause under 28 U.S.C. § 1927. *Koji*, 2025 WL 980796, at *17. To the extent that the Fees Order was ambiguous, the Court clarifies that fees for work on the Order to Show Cause were also awarded pursuant to the Court's inherent powers.

The Court has reviewed the materials submitted by REA's counsel and finds that the number of hours billed is reasonable. Mr. Crotty's declaration attests that, in connection with the Second Action, REA was invoiced a total of $16,910.00 for attorneys' fees for work for the period from January 3, 2024 through January 30, 2024. [Dkt. 62 at 5]. Thus, REA appropriately limited its request and evidence to the time period consistent with the Fees Order.

Similarly, the supporting declaration from Mr. Crotty attests that, in connection with this Third Action, REA was invoiced a total of $80,277.00. *Id.* at 5-6. Mr. Crotty attests that the fees incurred by REA in connection with the Order to Show Cause totaled $10,202.50, and that this amount is not included in the $80,277.00 (to avoid double recovery). *Id.* at 6. Thus, REA appropriately separated its evidence of hours spent based on the Court's Fees Order and the difference in grounds for the fees awarded.

For simplicity and to be conservative, REA does not seek fees relating to the Crotty declaration. All fees requested were incurred between January 2024 and September 2024. REA's counsel attests that all of the relevant invoices were paid in full by REA. *Id.* at 6-7.

9

The Crotty declaration summarizes the requested fees based on the hours spent as follows: $97,187.00 for the fees under 35 U.S.C. § 285 for part of the Second Action and the Third Action (including the subset of those fees allowable under 28 U.S.C. § 1927); and $10,202.50 for the fees under 28 U.S.C. § 1927 (but not included in the 35 U.S.C. § 285 calculation, to avoid double recovery of any fees). *Id.* at 7. Thus, the overall requested fees total $107,389.50.

To support the request for fees based on hours spent, REA's counsel submitted four spreadsheets as exhibits to the Crotty declaration. *See* Dkts. 62-1, 62-2, 62-3, 62-4. These spreadsheets or charts are based on information from defense counsel's billing software: Exbibit A sets forth the time billed on the Second Action, from January 3, 2024, to January 31, 2024; Exhibit B sets forth the time billed on the Third Action, from May 22, 2024, to August 22, 2024; Exhibit C sets forth the time associated with the Order to Show Cause, from August 23, 2024, to September 20, 2024; Exhibit D sets forth the time for recovery pursuant to 28 U.S.C. § 1927. Each of these charts lists chronological entries for each timekeeper (identified by name, title, and billing rate), along with number of hours billed that day and the dollar value of that time billed.

The Crotty declaration describes the tasks represented by these time entries for the work performed in the Second Action. The "work included correspondence with Mr. Ramey regarding an amended complaint (to correct cut-and-paste errors); drafting a motion to dismiss; communicating with Mr. Ramey regarding newly accused products and analyzing those products; drafting and sending correspondence regarding the newly accused products; preparing the Rule 26(f) statement; and communicating with REA regarding the case[.]" [Dkt. 62 at 5]. The original Charkow declaration filed in support of the fees motion also attaches materials describing (and constituting) work performed in the Second Action. [Dkt. 19]. The total hours spent on the Second Action (for which fees are requested) are thus a combined 29.6 hours for Mr. Crotty and Mr. Charkow, and 2.0 hours for Ms. Sullenberger (for a total for all timekeepers of 31.6 hours).

The Crotty declaration further describes the tasks represented by the time entries for the work performed in the Third Action. The "work included an initial analysis of the complaint; research and analysis of the two-dismissal rule and drafting a letter to Mr. Ramey regarding that rule; reviewing settlement correspondence from Mr. Ramey; and communicating with REA

10

regarding the case.  The work also included preparing and filing the initial papers (e.g., notices of appearance, disclosure statement, pro hac vice application, etc.); researching, drafting, and revising the motion for attorneys' fees; analyzing Koji's opposition brief, including analysis of the case law cited therein; drafting and revising the reply brief; and preparing for and attending the hearing on August 22, 2024[.]" [Dkt. 62 at 5-6].  The original Charkow declaration filed in support of the fees motion also attaches materials describing (and constituting) work performed in the Third Action.  [Dkt. 19].  The total hours spent on the Third Action (for which fees are requested) are thus a combined 135.6 hours for Mr. Crotty, Mr. Charkow, and Mr. Jensen, and 13.9 hours for Ms. Sullenberger (for a total of 149.5 hours for all timekeepers).

Based on a thorough review of the declarations and exhibits, the Court **FINDS** that the record presented reasonably corresponds with the hours spent with the work tasks that REA's counsel attests were undertaken in this case; that the amount of time counsel and the paralegal spent on these activities was reasonable; and that all of the billed activities themselves were reasonable undertakings.  As noted, REA has excluded from its requested hours and fees time spent on responding to the complaint in the Third Action and time spent on the Crotty declaration in support of the instant motion.  Further, the Court finds that counsel has made "a good faith effort to exclude from [its] fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.  As noted, the Sanctioned Parties did not object to, or otherwise substantively address, the reasonableness of the number of hours billed, and therefore, have waived any arguments on that issue.  [Dkt. 66].

Here, REA's counsel submitted sufficiently detailed documentation of billing records describing the work performed on the Second Action for the period from January 3, 2024 through January 30, 2024; on the Third Action for the period from May 22, 2024 through August 22, 2024; and on the Third Action for the period from August 23, 2024 through September 20, 2024 (on the Order to Show Cause).  In total, counsel seeks to recover $107,389.50 for 181.1 hours of work performed in the Second and Third Actions, consisting of $97,187.00 under 35 U.S.C. § 285 (including the subset of those fees allowable under 28 U.S.C. § 1927) and $10,202.50 under 28 U.S.C. § 1927 (and the Court's inherent authority) with regard to those fees associated with the

11

Order to Show Cause.

Accordingly, the Court finds that the total amount of hours billed by REA's counsel is reasonable.

### III.    The Sanctioned Parties' Objections

The Court next addresses the Sanctioned Parties' objections to REA's counsel's fees declaration. The Sanctioned Parties first argue that the declaration should be stricken for failure to comply with the procedural requirements governing motions for attorneys' fees set forth in Civil Local Rule 54-5(b)(2). [Dkt. 66 at 2-4]. Civil Local Rule 54-5(b) requires that a motion for attorneys' fees be supported by declarations or affidavits containing, among other things, "[a] statement of the services rendered by each person for whose services fees are claimed, together with a summary of the time spent by each person, and a statement describing the manner in which time records were maintained." Civil L.R. 54-5(b)(2). As summarized above, the Crotty declaration submitted by REA sufficiently complies with this requirement. The Crotty declaration includes a "statement of the services rendered by each person for whose services fees are claimed," and the attached spreadsheets provide "a summary of the time spent by each person." Further, the Crotty declaration includes a "statement describing the manner in which time records were maintained" by attesting that the exhibits are based on data from his law firm's billing software. To the extent that the Sanctioned Parties' objection assumes that Civil Local Rule 54-5(b) requires the actual invoices with time entries as issued to REA, that objection misreads the local rule which explicitly contemplates that the Court may, in addition depending on the circumstances, require *in camera* review of the actual contemporary time records *or* an abstract thereof. Civil L.R. 54-5(b)(2) ("Depending on the circumstances, the Court may require production of an abstract of or the contemporary time records for inspection, including *in camera* inspection, as the Judge deems appropriate[.]"). The Court finds that the declaration and exhibits as submitted by REA's counsel provide sufficient information and data adequately to justify the hours spent and the amount of fees requested. Accordingly, the Sanctioned Parties' first objection is overruled. *See EscapeX IP, LLC v. Google LLC*, No. 22-cv-08711-VC, 2023 WL 5257691, at *2 (N.D. Cal. Aug. 16, 2023) (overruling identical objection), *affirmed by* 159 F.4th 1360 (Fed.

Cir. 2025).

The Sanctioned Parties next raise a series of objections to the Crotty declaration which are, in actuality, challenges to the substance of the Fees Order. [Dkt. 66 at 4-5]. The "second objection" objects to fees being awarded in connection with the Second Action, and the "third objection" and "fourth objection" argue that fees should not be awarded for work performed in the Third Action after June 12, 2024 for work on the Order to Show Cause. *Id.* at 5. These arguments are not directed at the sufficiency of REA's justification for the amount of fees to which the Court has found REA to be entitled to recover. Rather, these arguments are directed at whether fees should be awarded in the first instance. Thus, these objections are procedurally improper attempts to seek reconsideration of issues addressed in the Fees Order without following the requirements of Civil Local Rule 7-9(a) (which requires filing a motion seeking authorization from the Court for leave to file a motion for reconsideration prior to seeking reconsideration). Accordingly, the Court overrules these objections.

The Sanctioned Parties' final objection to REA's declaration is that fees should not be awarded for time billed by any attorney prior to that attorney's filing of a formal notice of appearance in this action. However, the Sanctioned Parties cite no authority for the proposition that fees incurred before an attorney working on a case formally enters appearance are unrecoverable. First, fees are clearly recoverable by timekeepers such as paralegals who never enter appearance on the docket of a case. Second, as noted above, Koji voluntarily dismissed this case without ever serving the complaint, and thus, REA never had the chance to formally respond to the complaint (which is typically how defense counsel enter their appearance). Third, limiting fee awards only to time spent by attorneys who formally entered appearance would, as REA's counsel notes, categorically preclude prevailing parties from ever being able to fully recover their incurred attorneys' fees. Accordingly, this objection is overruled as well.

Finally, in a footnote, the Sanctioned Parties mention in passing that, "[t]o the extent necessary, the Sanctioned Parties are also filing these objections as a Motion for De Novo Determination of Dispositive Matter Referred to Magistrate Judge pursuant to NDCA Local Rule 72.3." *Id.* at 2 n.4. As discussed above, the Court has issued a separate, contemporaneous Order

United States District Court
Northern District of California

resolving numerous motions filed by the Sanctioned Parties which challenge, object to, and/or seek District Judge review of this Court's Orders. [Dkt. 119]. That Order discusses in detail why Civil Local Rule 72-3 is inapplicable to this case, because all Parties here have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c). That Order is incorporated herein by reference. To the extent that this footnote purports to convert the Sanctioned Parties' "objections" into some kind of motion, the motion is **DENIED WITH PREJUDICE**.

### IV.     Lodestar Calculation and Adjustments

As discussed above, the Court finds that REA's counsel's hourly billing rate and number of hours billed are reasonable. Multiplying the hours billed by the rates charged results in a total lodestar amount of $107,389.50. More specifically, REA seeks to recover $107,389.50 for 181.1 hours of work performed in the Second and Third Actions, consisting of $97,187.00 under 35 U.S.C. § 285 (including the subset of those fees allowable under 28 U.S.C. § 1927) and $10,202.50 under 28 U.S.C. § 1927 (and the Court's inherent authority) with regard to those fees associated with the Order to Show Cause.

Based on the detailed discussion above regarding the hourly rates and the hours spent (and the Sanctioned Parties' failure to challenge the rates requested and failure to persuasively challenge the hours spent), the Court **FINDS** that no adjustment to the lodestar amount is warranted.

Accordingly, the Court awards REA attorneys' fees in the total amount of $107,389.50 for fees incurred in the Second and Third Actions, consisting of $97,187.00 under 35 U.S.C. § 285 (including the subset of those fees allowable under 28 U.S.C. § 1927) and $10,202.50 under 28 U.S.C. § 1927 (and the Court's inherent authority) with regard to those fees associated with the Order to Show Cause.

### CONCLUSION

For the foregoing reasons, **IT IS ORDERED THAT**:

1. Defendant REA is **AWARDED** reasonable attorneys' fees in the amount of **$107,389.50**.

2. Pursuant to 35 U.S.C. § 285, Plaintiff Koji is **ORDERED** to reimburse Defendant REA for its attorneys' fees in the amount of **$97,187.00**. As the Court previously ordered in the

United States District Court
Northern District of California

14

United States District Court
Northern District of California

Fees Order and as clarified herein, Sanctioned Attorneys William P. Ramey, III, Jeffrey E. Kubiak, and Susan S.Q. Kalra are jointly and severally liable for this amount, pursuant to 28 U.S.C. § 1927 and the Court's inherent authority. Thus, the obligation to reimburse Defendant REA's attorneys' fees as to the amount awarded under 35 U.S.C. § 285 is joint and several as between Plaintiff Koji and these Sanctioned Attorneys, and payment by either Plaintiff Koji or any of these Sanctioned Attorneys shall be deemed to have satisfied the fees awarded under 35 U.S.C. § 285.

3. Pursuant to 28 U.S.C. § 1927, Sanctioned Attorneys William P. Ramey, III, Jeffrey E. Kubiak, and Susan S.Q. Kalra are **ORDERED** to reimburse Defendant REA for its attorneys' fees in the amount of **$10,202.50**. As the Court previously ordered in the Fees Order and as clarified herein, these Sanctioned Attorneys are jointly and severally liable for this amount, pursuant to 28 U.S.C. § 1927 and the Court's inherent authority.

4. Full payment as ordered herein to Defendant REA **SHALL** be made, by no later than **May 15, 2026** (unless the Parties reach agreement otherwise, which they are free to do). The Parties **SHALL** file a joint status report on reimbursement of the fees awarded, by no later than **May 18, 2026**.

5. **JUDGMENT** is hereby **ENTERED** in favor of Defendant REA and against Plaintiff Koji and the Sanctioned Attorneys, in the amount of **$107,389.50**, the total amount of attorneys' fees awarded by this Order.

6. As noted in the Fees Order and the Sanctions Order, the Court imposed certain non-monetary sanctions on the Sanctioned Attorneys with requirements for reporting to the Court their compliance with these non-monetary sanctions upon completion. As discussed in the Fees Order and the Sanctions Order, part of the conduct underlying the award of fees under 28 U.S.C. § 1927 (and the Court's inherent authority) concerns the repeated unauthorized practice of law in California by Mr. Ramey and Mr. Kubiak (and the aiding and abetting of the same by Ms. Kalra). Accordingly, the Fees Order and the Sanctions Order directed that the Sanctioned Attorneys self-report by attaching copies of those Orders to any applications for *pro hac vice* admission filed by them or on their behalf in a

United States District Court
Northern District of California

California federal court during the next five years. Both Orders required the Sanctioned Attorneys to file with this Court a certification under oath certifying that they have self-reported as required within ten business days of self-reporting. In preparation of this Order, it has come to the Court's attention that, weeks after the issuance of the Fees Order and the Sanctions Order, on April 14, 2025, a motion for *pro hac vice* admission was filed by or on behalf of Mr. Ramey in a case pending within this District, without the Fees Order and the Sanctions Order attached. *Lime Green Lighting, LLC v. Brilliant NextGen Inc.*, No. 5:25-cv-00950-VKD, ECF No. 8 (N.D. Cal. Apr. 14, 2025). On April 16, 2025 and April 17, 2025, amended motions for *pro hac vice* admission were filed by or on behalf of Mr. Ramey in that same case, with the Fees Order and the Sanctions Order correctly attached. *Id.* at ECF Nos. 9-10. However, to date, Mr. Ramey has not filed any certification under oath in this case of his compliance with the self-reporting requirements with regard to the *pro hac vice* motions filed by him or on his behalf in the *Lime Green Lighting* case. Accordingly, by no later than **April 17, 2026**, Mr. Ramey is **ORDERED TO SHOW CAUSE** as to why he should not be sanctioned for the failure to file the required certification under oath of self-reporting with regard to his *pro hac vice* motions in the *Lime Green Lighting* case. Any averments of facts in the written response to this Order to Show Cause **SHALL** be supported by a declaration under oath with any exhibits, if appropriate.

7. The Court **RETAINS** jurisdiction over the Sanctioned Parties (including the Sanctioned Attorneys) to ensure continuing compliance with the Fees Order, the Sanctions Order, and this Order.

**IT IS SO ORDERED.**

Dated: March 20, 2026

_____
PETER H. KANG
United States Magistrate Judge

16